Peter M. Gilhuly (CA Bar No. 151516)
peter.gilhuly@lw.com
Kimberly A. Posin (CA Bar No. 223091)
kim.posin@lw.com
Ted A. Dillman (CA Bar No. 258499)
ted.dillman@lw.com
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 91107-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Counsel to Howrey LLP

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>Howrey LLP,<br><br>　　　　　　　Debtor. | Case No. 11-31376-DM<br><br>(Involuntary Chapter 7)<br><br>**HOWREY LLP'S MOTION TO DISMISS INVOLUNTARY PETITION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:　　June 8, 2011<br>Time:　　　　　9:30 a.m.<br>Place:　　　　　Courtroom 22<br>　　　　　　　　235 Pine Street, 19th Floor<br>　　　　　　　　San Francisco, CA 94104<br>Judge:　　　　　Hon. Dennis Montali |

LATHAM&WATKINS LLP
Attorneys At Law
Los Angeles

LA\2250894.6

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Case: 11-31376    Doc# 13    Filed: 05/03/11    Entered: 05/03/11 12:25:48    Page 1 of 22

# TABLE OF CONTENTS

Introduction ................................................................................................................................ 1

Jurisdiction ................................................................................................................................ 2

Factual Background ................................................................................................................... 2

Argument ................................................................................................................................... 5

I.      The Chapter 7 Case Should Be Dismissed Because The Northern District
        Of California Is Not A Proper Venue ............................................................................. 5

II.     The Chapter 7 Case Should Be Dismissed Even If This Court Were To
        Determine That The Northern District Of California Is A Proper Venue ...................... 9

III.    In the Alternative, Venue Should Be Transferred to the Chapter 11
        Bankruptcy Court For the Convenience of the Parties and In the Interests
        of Justice ..................................................................................................................... 11

        A.      Proximity of Creditors ..................................................................................... 13

        B.      Proximity of Howrey and Witnesses Necessary to Administration
                of the Estate to the Chapter 11 Bankruptcy Court ........................................... 14

        C.      Location of Assets ............................................................................................ 14

        D.      Economic and Efficient Administration of the Case ....................................... 14

IV.     If Dismissal of the Chapter 7 Case is Granted, this Court Should Grant
        Howrey Costs and Attorneys' Fees ................................................................................ 15

Conclusion ............................................................................................................................... 16

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2250894.6

i

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Case: 11-31376    Doc# 13    Filed: 05/03/11    Entered: 05/03/11 12:25:48    Page 2 of 22

# TABLE OF AUTHORITIES

## CASES

*Carranza v. Con-Way Inc.*,
   2010 U.S. Dist. LEXIS 121889 (D. Ariz. Oct. 29, 2010) ................................................... 12

*Donald v. Curry (In re Donald)*,
   328 B.R. 192 (B.A.P. 9th Cir. 2005) .................................................................................. 13

*Eastman v. Eastman (In re Eastman)*,
   188 B.R. 621 (B.A.P. 9th Cir. 1995) .................................................................................... 9

*Hertz Corp. v. Friend*,
   130 S. Ct. 1181 (2010) ......................................................................................................... 7

*Higgins v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Sys.)*,
   379 F.3d 701 (9th Cir. 2004) .............................................................................................. 15

*In re AMC Investors, LLC*,
   406 B.R. 478 (Bankr. D. Del. 2009) ................................................................................... 10

*In re Colonial Ford, Inc.*,
   24 B.R. 1014 (Bankr. Utah 1982) ......................................................................................... 5

*In re DGE Corp.*,
   2006 Bankr. LEXIS 4096 (Bankr. D.N.J. Feb. 6, 2006) ..................................................... 11

*In re Greenridge Apartments*,
   13 B.R. 510 (Bankr. D. Haw. 1981) ..................................................................................... 6

*In re Iowa Coal Mining Co., Inc.*,
   242 B.R. 661 (Bankr. S.D. Iowa 1999) ............................................................................... 10

*In re LaGuardia Assocs., L.P.*,
   316 B.R. 832 (Bankr. E.D. Pa. 2004) ................................................................................... 6

*In re Mazzocone*,
   200 B.R. 568 (E.D. Pa. 1996) ............................................................................................. 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2250894.6

ii

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Case: 11-31376    Doc# 13    Filed: 05/03/11    Entered: 05/03/11 12:25:48    Page 3 of 22

*In re Mylotte, David & Fitzpatrick,*

2007 Bankr. LEXIS 3572 (Bankr. E.D. Pa. Oct. 11, 2007).....................................................5

*In re NRG Energy, Inc.,*

294 B.R. 71 (Bankr. D. Minn. 2003) .................................................................................9, 10

*In re O'Neil Village Personal Care Corp.,*

88 B.R. 76 (Bankr. W.D. Pa. 1988) .........................................................................................11

*In re Orchards Vill. Invs., LLC,*

405 B.R. 341 (Bankr. D. Or. 2009) ..........................................................................................10

*In re Peachtree Lane Assocs., Ltd.,*

150 F.3d 788 (7th Cir. 1998) ......................................................................................................6

*In re Petrie,*

142 B.R. 404 (Bankr. D. Nev. 1992) .........................................................................................12

*In re Shelton,*

2001 Bankr. LEXIS 2213 (Bankr. D. Idaho Oct. 12, 2001) .......................................................8

*In re Spade,*

269 B.R. 225 (D. Colo. 2001) ....................................................................................................10

*In re Vienna Park Properties,*

120 B.R. 320 (Bankr. S.D.N.Y. 1990) ........................................................................................6

*Industrial Tectonics v. Aero Alloy,*

912 F.2d 1090 (9th Cir. 1990) ....................................................................................................6

*Inland Rubber Corp. v. Triple A Tire Service, Inc.,*

220 F. Supp. 490 (S.D.N.Y. 1963)..............................................................................................6

*Scot Typewriter Co. v. Underwood Corp.,*

170 F. Supp. 862 (S.D.N.Y. 1959)..............................................................................................6

*Thompson v. Greenwood,*

507 F.3d 416 (6th Cir. 2007) ....................................................................................................12

*U.S. Trustee v. Sorrells (In re Sorrells),*

218 B.R. 580 (B.A.P. 10th Cir. 1998) ......................................................................................12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2250894.6

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

*Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.),*

    370 B.R. 236 (B.A.P. 9th Cir. 2007).................................................................................. 10

**STATUTES**

11 U.S.C. § 101-1532 ...................................................................................................................... 2

11 U.S.C. § 303(i)(1) .................................................................................................................... 15

11 U.S.C. § 305 ................................................................................................................... 1, 2, 10

11 U.S.C. § 305(a) .......................................................................................................................... 9

11 U.S.C. § 305(a)(1) ................................................................................................................. 5, 9

11 U.S.C. § 305(c) .......................................................................................................................... 9

11 U.S.C. § 706(a) ........................................................................................................................ 11

28 U.S.C. § 1332(c)(1) ................................................................................................................... 6

28 U.S.C. § 1334(b) ....................................................................................................................... 2

28 U.S.C. § 1406 .......................................................................................................................... 12

28 U.S.C. § 1406(a) ................................................................................................................. 11, 12

28 U.S.C. § 1408 ............................................................................................................................ 5

28 U.S.C. § 1408(1) ....................................................................................................................... 5

28 U.S.C. § 1412 ................................................................................................................. 1, 2, 12

28 U.S.C. § 157(b) .......................................................................................................................... 2

29 U.S.C. § 2101 et seq................................................................................................................. 13

**OTHER AUTHORITIES**

9-1014 Collier on Bankruptcy P 1014.03 ..................................................................................... 12

9-1014 Collier on Bankruptcy P 1014.04 ..................................................................................... 11

**RULES**

Fed. R. Bankr. P. 1011 ............................................................................................................... 1, 2

Fed. R. Bankr. P. 1011(a) ............................................................................................................... 5

Fed. R. Bankr. P. 1014 ................................................................................................................. 11

Fed. R. Bankr. P. 1014(a) ................................................................................................... 1, 2, 8, 12

Fed. R. Bankr. P. 1014(a)(1) ........................................................................................................ 12

LATHAM&WATKINS LLP LA\2250894.6
ATTORNEYS AT LAW
LOS ANGELES

iv

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Fed. R. Bankr. P. 1014(a)(2) ................................................................................. 5, 12

Fed. R. Bankr. P. 1014(b) .................................................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP   LA\2250894.6
ATTORNEYS AT LAW
LOS ANGELES

v

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Howrey LLP, through counsel and pursuant to 28 U.S.C. § 1412, 11 U.S.C. § 305, and Rules 1011 and 1014(a) of the Federal Rules of Bankruptcy Procedure (the "Federal Rules"), appears before the United States Bankruptcy Court for the Northern District of California, San Francisco Division, and submits this memorandum and the Declaration of Robert Ruyak in Support of the Motion to Dismiss Involuntary Petition Or, In the Alternative, to Transfer Venue (the "Ruyak Declaration") in support of its motion to dismiss the involuntary petition filed against Howrey or, in the alternative, to transfer venue (the "Motion") of the above-captioned chapter 7 case (the "Chapter 7 Case"). The Motion seeks to dismiss the Chapter 7 Case on the grounds that it was not filed in a proper venue.[1] In the alternative, the Motion seeks to transfer the venue of this case from this Court to the Chapter 11 Bankruptcy Court.

**Introduction**

Howrey is the alleged debtor in the Chapter 7 Case. Prior to its dissolution on March 15, 2011, Howrey provided legal services, maintained 19 law offices and employed, together with its subsidiary, CapAnalysis Group, LLC ("Cap Analysis"), more than 1,300 employees worldwide. Only 171 of these employees and partners worked out of Howrey's Northern California offices located in San Francisco and Silicon Valley, while 610 employees, attorneys and partners worked out of Howrey's offices in the Washington Metropolitan Area, its headquarters and principal place of business. In addition, the vast majority of Howrey's global administrative functions were performed in the Washington Metropolitan Area, and, at one time, over 400 employees and attorneys provided global litigation support services as part of Howrey's Capital Litigation Support division in Northern Virginia. Finally, Howrey's remaining domestic data center, approximately 80% of its servers, which contain Howrey's operational and client/case information, and the majority of its remaining tangible assets are currently located in the Washington Metropolitan Area. Since March 15, 2011, Howrey has ceased the practice of

---

[1] Prior to its March 15, 2011 dissolution, Howrey maintained two offices and other facilities in the District of Columbia and Northern Virginia (together, the "Washington Metropolitan Area"). Howrey fully intends to file a voluntary chapter 11 petition in the Washington Metropolitan Area, in either the United States Bankruptcy Court for the Eastern District of Virginia or the United States Bankruptcy Court for the District of Columbia (the "Chapter 11 Bankruptcy Court"), prior to the date that the Motion has been set for hearing.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2250894.6

1

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Case: 11-31376   Doc# 13   Filed: 05/03/11   Entered: 05/03/11 12:25:48   Page 7 of 22

law, except in very limited cases, and all of its offices have closed except that approximately 68 remaining employees and the Dissolution Committee, consisting of five members, continue to maintain an office in the District of Columbia (although one member of the Dissolution Committee does not reside in the Washington Metropolitan Area) and Howrey's remaining domestic data center continues to be maintained in Northern Virginia.

The Chapter 7 Case should be dismissed because venue is not proper in this Court since Howrey at no time maintained its principal place of business, its management, or significant information or assets in Northern California. If, however, this Court is not inclined to dismiss the Chapter 7 Case, the forgoing facts, discussed in more detail below, provide a compelling reason to transfer the case to the Chapter 11 Bankruptcy Court for the convenience of the parties and in the interest of justice. The major issues in this case will involve witnesses located in the Washington Metropolitan Area. Moreover, Howrey's unsecured creditors will be deprived, as a practical matter, of the opportunity to participate in the Chapter 7 Case if venue is retained in this Court.

These and the other factors discussed below demonstrate that this Court is not a proper venue for the Chapter 7 Case and the Chapter 11 Bankruptcy Court is the proper and most efficient venue for the convenience of the parties and in the interest of justice.

### Jurisdiction

The Court has jurisdiction of the Motion pursuant to 28 U.S.C. § 1334(b). The Motion is a core proceeding as defined by 28 U.S.C. § 157(b). The relief requested in the Motion is sought under 28 U.S.C. § 1412, Section 305 of Title 11 of the United States Code, 11 U.S.C. § 101-1532 (as amended, the "Bankruptcy Code"), and Federal Rules 1011 and 1014(a).

### Factual Background

Howrey is a limited liability partnership organized under the laws of the District of Columbia. A substantial amount of Howrey's electronic data has historically been kept and maintained in its District of Columbia office and at adjacent facilities in Falls Church and Ashburn, Virginia and its books and records have historically been maintained at its District of Columbia office.

LATHAM&WATKINS LLP   LA\2250894.6
ATTORNEYS AT LAW
LOS ANGELES

2

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Case: 11-31376   Doc# 13   Filed: 05/03/11   Entered: 05/03/11 12:25:48   Page 8 of 22

In 1956, Howrey opened an office in the District of Columbia for the purpose of practicing law. At inception, the District of Columbia office employed four attorneys plus support staff. Over subsequent years, Howrey opened legal and support offices in Chicago, Illinois; Houston, Texas; Irvine, San Francisco, and Los Angeles, California; Silicon Valley in California; Falls Church, Virginia; New York, New York; Salt Lake City, Utah; and eight international offices in Amsterdam, Brussels, Dusseldorf, London, Madrid, Munich, Paris, and Taiwan.

During the 180 days prior to April 11, 2011, the date that the involuntary petition was filed, the number of employees and partners that were employed in Howrey's District of Columbia office peaked at approximately 550 (almost 42% of the total number of worldwide employees and partners) and included Howrey's Managing Partner, Chief Executive Officer, Chief Human Resources Officer, Chief Financial Officer, Chief Administrative Officer, and Chief Information Officer. Howrey's adjacent Falls Church, Virginia office, at its peak during this period, employed 62 employees and housed Howrey's Capital Litigation Support division, which, at one time, employed 130 staff attorneys, timekeepers and administrative staff and as many as 300 contract attorneys operating one of the largest document review centers in the United States. CapAnalysis, which also maintained its principal office in the District of Columbia, consisted of recognized professionals in their fields who provided in-depth financial, accounting, economic, environmental, and litigation consulting services to Howrey's attorneys and clients. The most employees and partners employed during the period 180 days prior to April 11 at Howrey's San Francisco office peaked at 89 and the Palo Alto office at 82.

Howrey's offices in the District of Columbia contained more of Howrey's physical assets, including furniture, artwork, computers, hardware, software, peripherals, client files and library materials, than any other office location. Adjacent to the District of Columbia, Northern Virginia remains the location of Howrey's remaining domestic data center, which contain servers that historically have run Howrey's core systems, including the SAP financial system, e-mail, Capital Litigation Support, file shares and Sharepoint.

/ / /

During the 180 days prior to April 11, Howrey's offices and facilities in the Washington Metropolitan Area served as Howrey's headquarters. All global IT, global records management and global purchasing and sourcing functions were performed there and Howrey's key administrative functions, including accounting, human resources and benefits, technology, knowledge services, client services, practice operations, professional development and training, associate evaluations and compensation, secretarial administration, the paralegal program, docketing, marketing communications, records management, recruiting, word processing, conflicts and public relations, were carried on in the District of Columbia office. The District of Columbia office was also the location where Executive Committee meetings were held and Howrey's major business decisions were made regarding strategic planning, lateral growth and mergers, business development, conflicts and attorney programs. Finally, Howrey believes that many of its creditors maintain offices in or near the Washington Metropolitan Area or on the East Coast, including its secured creditor, Citibank, N.A. ("Citibank"), which is located in New York.

As the result of a significant decline in profits beginning in 2009 and the departure of approximately 30% of Howrey's partners in 2010, Howrey's remaining partners voted to dissolve the partnership effective March 15, 2011. Since that time, a Dissolution Committee has formed and all of Howrey's employees left to pursue other employment opportunities or were terminated with the exception of approximately 68 employees who have remained to assist in the wind down of Howrey's operations, nearly all of whom are located in the Washington Metropolitan Area. The Dissolution Committee and the remaining employees have been focused on the winding up of Howrey's affairs, including engaging in negotiations with Citibank, which is owed approximately $50 million, managing Howrey's remaining assets, transferring client files and information, and collecting accounts receivable. The Dissolution Committee, with the support of Citibank, made the considered decision to proceed with an out-of-court wind down of its operations in the short term so as to preserve as much value as possible for all of its creditors.

/ / /

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2250894.6

4

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Case: 11-31376   Doc# 13   Filed: 05/03/11   Entered: 05/03/11 12:29:48   Page 10 of 22

However, on April 11, 2011, Give Something Back, Inc., Jan Brown & Associates and Matura Farrington Staffing Services, Inc. (collectively, the "Initial Petitioners") filed an involuntary chapter 7 petition against Howrey in this Court. In addition, the following alleged creditors filed joinders in the involuntary petition: (1) Western Messenger Service, Inc. and L.A. Best Photocopies, Inc. on April 20, (2) Kent Daniels and Associates, Inc. on April 21, and (3) Advanced Discovery LLC on April 22 (collectively with the Initial Petitioners, the "Petitioners"). Although the Dissolution Committee previously determined that an out-of-court dissolution process was in the best interests of all of its creditors and stakeholders in the short term while Howrey efficiently paid down its secured debt, in light of the filing of the involuntary petition, Howrey intends to file a voluntary chapter 11 petition in the Washington Metropolitan Area, where venue is proper, within the next few weeks.

## Argument

The debtor named in an involuntary petition may contest the petition. *See* Fed. R. Bankr. P. 1011(a). Federal Rule 1014(a)(2) further provides that where an involuntary petition is filed in an improper district, the court may dismiss the case or transfer it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties. Section 305(a)(1) of the Bankruptcy Code further provides that a court may dismiss an involuntary case at any time if the interests of creditors and the debtor would be better served by such dismissal. *See* 11 U.S.C. § 305(a)(1); *In re Mylotte, David & Fitzpatrick*, 2007 Bankr. LEXIS 3572, at *16 (Bankr. E.D. Pa. Oct. 11, 2007) (". . . courts have applied section 305 to involuntary petitions.") (citing *In re Colonial Ford, Inc.*, 24 B.R. 1014, 1020 (Bankr. Utah 1982) ("Section 305(a)(1) applies in any case, voluntary or involuntary").)

## I. The Chapter 7 Case Should Be Dismissed Because The Northern District Of California Is Not A Proper Venue

Venue of cases under title 11 of the United States Code is governed by 28 U.S.C. § 1408, which provides that a case may be commenced in the district court for the district in which the domicile, residence, principal place of business in the United States, or principal assets in the United States of the entity that is subject to the case have been located for the 180 days

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2250894.6

Case: 11-31376   Doc# 13   Filed: 05/03/11   Entered: 05/03/11 12:29:48   Page 11 of 22

immediately preceding such commencement. *See* 28 U.S.C. § 1408(1). Although Section 1408(1) appears to provide four alternative tests for determining proper venue, the case law clarifies that the residence and domicile tests do not apply to partnerships. *See In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 792 (7th Cir. 1998); *In re LaGuardia Assocs.*, *L.P.*, 316 B.R. 832, 836 (Bankr. E.D. Pa. 2004); *In re Vienna Park Properties*, 120 B.R. 320, 327 (Bankr. S.D.N.Y. 1990 ("The proper venue of an action commenced by a partnership is difficult to ascertain, given the natural difficulty in determining the residence or domicile of a partnership. The only meaningful test for venue of a partnership, therefore, is where it has its principal place of business (the 'Nerve Center Test') or its principal assets in the United States (the 'Bulk of Activity Test')"), *vacated on other grounds*, 125 B.R. 84 (S.D.N.Y. 1991); *In re Greenridge Apartments*, 13 B.R. 510, 512 (Bankr. D. Haw. 1981) ("[T]he only meaningful test for venue with respect to a partnership is the district in which it has its principal place of business or its principal assets.")

When determining the principal place of business as it relates to subject matter jurisdiction, courts generally use either the "nerve center" test or the "place of operations" test. *See Industrial Tectonics v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). Under the "nerve center test," developed in *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959), a corporation's principal place of business is where its executive and administrative functions are performed. Under the "place of operations test," developed in *Inland Rubber Corp. v. Triple A Tire Service, Inc.*, 220 F. Supp. 490, 496 (S.D.N.Y. 1963), the principal place of business is the state which "contains a substantial predominance of corporate operations." Both tests support the "general rule that the 'bulk of corporate activity,' as evidenced by operating, administrative, and management activities, determines a corporation's principal place of business." *Industrial Tectonics*, 912 F.2d at 1093. Courts have generally determined which test to use based on the particular circumstances of the case historically assigning "greater importance to the corporate headquarters when no state is clearly center of corporate activity" and have assigned "greater importance to the location of the corporate business when substantially all business operations take place in a single state." *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2250894.6

6

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

1    In *Hertz Corp. v. Friend*, a Supreme Court case interpreting 28 U.S.C.

2    § 1332(c)(1), the federal diversity jurisdiction statute providing that "a corporation shall be

3    deemed to be a citizen of any State by which it has been incorporated and of the state where it

4    has its principal place of business," the Supreme Court concluded that

5        "principal place of business" is best read as referring to the place where
         the corporation's officers direct, control, and coordinate the corporation's
6        activities. It is the place that Courts of Appeals have called the
         corporation's "nerve center." And in practice it should normally be the
7        place where the corporation maintains its headquarters-provided that the
         headquarters is the actual center of direction, control, and coordination,
8        i.e. the "nerve center," and not simply an office where the corporation
         holds its board meetings (for example, attended by directors and officers
9        who have traveled there for the occasion).

10

11   130 S. Ct. 1181, 1192 (2010).

12       Under either test, Howrey's principal place of business is the Washington

13   Metropolitan Area. Howrey's main domestic data center and all global IT, global records

14   management and global purchasing and sourcing functions were performed there. In addition,

15   the District of Columbia is the location of Howrey's sole current office and most of its physical

16   assets, and is where it employed approximately 550 people prior to its dissolution, including

17   Howrey's Managing Partner, Chief Executive Officer, Chief Human Resources Officer, Chief

18   Financial Officer, Chief Administrative Officer, and Chief Information Officer. Together, these

19   offices and facilities served as the "nerve center" of Howrey's operations where all major

20   business decisions were made and the vast majority of global support services and administrative

21   functions were performed prior to its dissolution. In contrast, at its peak during the 180 days

22   prior to April 11, only 171 people worked in Howrey's Northern California offices and,

23   although, approximately 43 Howrey partners were resident in these offices, no major firm

24   business decisions were made in Northern California nor was any significant operating or

25   management related documentation maintained there.

26       In determining the principal place of a debtor's assets, the entirety of the debtor's

27   assets "must be evaluated to determine the quantum located in each district. From that, a

28   determination can be made as to where the majority of the assets are located." *In re Shelton*,

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES
LA\2250894.6

7

2001 Bankr. LEXIS 2213, at *18-21 and fn. 15 (Bankr. D. Idaho Oct. 12, 2001) (although "one might theorize situations where a particular asset, though not constituting the majority of dollar value of the debtors' estate, was of a chief, primary or "principal" character . . . the more logical approach, and less strained reading of the statute, requires a simple determination of where the greater dollar value of all property of the estate is located.").

The Washington Metropolitan Area also served as the location of Howrey's principal assets both prior and subsequent to its dissolution. Prior to its dissolution, a significant amount of Howrey's personal property, including fixtures, client files, artwork, library materials, furniture, and technology equipment were located in the District of Columbia and other major assets, including numerous servers, and its main domestic data center were located nearby in Northern Virginia. Today, Howrey maintains a single office in the District of Columbia where most of its remaining personal property and other major assets, other than its servers, are located. In addition, Howrey anticipates that significant contingency fees may arise out of litigation and other matters, which are being coordinated from Howrey's District of Columbia office. Howrey's only assets in Northern California, prior to March 15, 2011, were fixtures, furniture and equipment required to facilitate the provision of legal services from Howrey's Northern California offices. Howrey currently maintains no assets and no employees in Northern California.

Because Northern California is not, nor was it ever, Howrey's principal place of business, nor where its principal assets are or were housed, it is an improper venue for the Chapter 7 Case and the involuntary petition should be dismissed pursuant to Federal Rule 1014(a). As noted above, Howrey intends to file a voluntary chapter 11 bankruptcy petition in either the District of Columbia or directly across the Potomac River in Alexandria, Virginia within the next few weeks. Given that the Washington Metropolitan Area is the location of most of the members of the Dissolution Committee and all of Howrey's remaining employees and physical assets, a bankruptcy case in either of these venues will permit the most economic and efficient administration of Howrey's estate. In addition, because venue is not proper in this Court and it is in the best interests of Howrey and its creditors to proceed with a voluntary

LATHAM&WATKINS™ LA\2250894.6
ATTORNEYS AT LAW
LOS ANGELES

8

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

1  chapter 11 bankruptcy case in the Washington Metropolitan Area where the claims of Howrey's

2  creditors will not be diminished by witness travel costs and/or the costs of a chapter 7 trustee

3  whose costs to get up to speed on Howrey's wind down efforts and litigation assets would likely

4  be substantial, this Court should dismiss the involuntary Chapter 7 Case and permit Howrey's

5  chapter 11 bankruptcy case to proceed in the Chapter 11 Bankruptcy Court.[2]

6  **II.  The Chapter 7 Case Should Be Dismissed Even If This Court Were To Determine
7  That The Northern District Of California Is A Proper Venue**

8              Section 305(a) of the Bankruptcy Code grants the bankruptcy courts the power to

9  forego the exercise of jurisdiction even when jurisdiction is otherwise appropriate.  *See* 11

10  U.S.C. § 305(a) ("The court, after notice and a hearing, may dismiss a case under this title . . . at

11  any time if (1) the interests of creditors and the debtor would be better served by such dismissal. .

12  . ").  The grant of authority to a bankruptcy court to decline to exercise jurisdiction under Section

13  305 is extremely broad and it is within the court's discretion to determine whether such relief is

14  appropriate.  *See In re NRG Energy, Inc*., 294 B.R. 71, 80 (Bankr. D. Minn. 2003).  Some courts

15  have found Section 305(a)(1) to be an "extraordinary remedy" because the dismissal is not

16  reviewable by a court of appeals.  *Id.* ("[G]iven the limitation on appellate review, it is clear that

17  the issue of abstention under § 305(a) requires a thorough vetting of the relevant facts, and a

18  careful analysis of the consequences of the alternate results.  This is best done by identifying the

19  practical benefits to all constituencies of resolving a debtor's financial distress under the

20  respective legal regimes, and in their affiliated forums."); 11 U.S.C. § 305(c).  Nonetheless,

21  dismissal is appropriate when creditors and the debtor would be "better served" by a dismissal.

22  *See Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624-25 (B.A.P. 9th Cir. 1995) ("As the

23  statutory language and legislative history demonstrate, the test under section 305(a) is not

24  whether dismissal would give rise to a substantial prejudice to the debtor.  Nor is the test whether

25  a balancing process favors dismissal. Rather, the test is whether both the debtor and the creditors

26  would be 'better served' by a dismissal."); *In re AMC Investors, LLC,* 406 B.R. 478, 488 (Bankr.

---

27  _____
28  [2]       Nothing herein shall be construed as an admission by Howrey that the amounts asserted by the Petitioners in the involuntary petition are owed by Howrey.

LATHAM&WATKINS LLP   LA\2250894.6
ATTORNEYS AT LAW
LOS ANGELES

9

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

D. Del. 2009); *In re Iowa Coal Mining Co.*, *Inc.*, 242 B.R. 661, 670-71 (Bankr. S.D. Iowa 1999) ("The exercise of this power is not reviewable by the courts of appeal or the Supreme Court of the United States. Therefore, the power to dismiss or abstain is an extraordinary power, which should only be exercised in extraordinary circumstances. 'Nonetheless . . . this court will not hesitate to abstain where such action is called for.'") (citations omitted); *In re Mazzocone*, 200 B.R. 568, 575 (E.D. Pa. 1996) ("While it is true that the application of Section 305(a) is an extraordinary remedy, its application is appropriate when the interests of the creditors and the debtor are best served by dismissal or suspension.").

In determining whether dismissal is appropriate, courts generally consider the following factors: (1) *economy and efficiency of administration*; (2) *whether another forum is available to protect the interests of both parties* or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought. *See In re Orchards Vill. Invs.*, *LLC*, 405 B.R. 341, 351 (Bankr. D. Or. 2009).

However, these factors are not exclusive nor weighted equally. *See AMC Investors*, 406 B.R. at 488; *NRG Energy*, 294 B.R. at 81 ("[I]n passing on abstention under § 305, 'a bankruptcy court is not bound by a prescriptive template; it may consider any factors it deems relevant to the determination of whether it is in the best interests of the parties to the suit [*sic*] to seek dismissal.'") (quoting *In re Spade*, 269 B.R. 225 (D. Colo. 2001)). Whether to dismiss a case pursuant to Section 305 is committed to the discretion of the bankruptcy court, and is determined based upon the totality of the circumstances. *See Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 247 (B.A.P. 9th Cir. 2007).

As the statute and case law dictate, "the key issue in determining the propriety of a § 305 dismissal is whether it will serve the best interests of both the debtor *and* the creditors."

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2250894.6

Case: 11-31376   Doc# 13   Filed: 05/03/11   Entered: 05/03/11 12:29:48   Page 16 of
22

*In re DGE Corp.*, 2006 Bankr. LEXIS 4096, *8 (Bankr. D.N.J. Feb. 6, 2006) (emphasis in original). "Several courts have held that § 305 abstention or dismissal is appropriate when another forum is available to determine the parties' interests, and in fact, such an action has been commenced. . . . Still other courts have stated that economy and efficiency of administration must be key considerations in the abstention decision." *In re O'Neil Village Personal Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa. 1988).

Both of these factors (which are the only factors applicable to the Chapter 7 Case and this Motion) weigh in favor of dismissal. For all of the reasons discussed above, the most efficient and economic location for Howrey's bankruptcy case is the Washington Metropolitan Area given Howrey's significant contact with and activities in and around that location. Moreover, a chapter 11 proceeding, instead of a chapter 7 case, is in the best interests of all parties in interest given the institutional knowledge of the remaining Howrey employees and because Howrey employees are more likely to be successful in collecting outstanding accounts receivable than a chapter 7 trustee.

**III.    In the Alternative, Venue Should Be Transferred to the Chapter 11 Bankruptcy Court For the Convenience of the Parties and In the Interests of Justice**

Because venue is not proper in the Northern District of California, if this Court determines not to dismiss the Chapter 7 Case, then it must transfer the case to another district[3] that the court finds is in the "interest of justice" or "for the convenience of the parties."[4] *See*

---

[3]      Once transferred to the Chapter 11 Bankruptcy Court, Howrey would seek, pursuant to 11 U.S.C. § 706(a), to convert the Chapter 7 Case to a chapter 11 case.

[4]      Similarly, Federal Rule 1014(b) provides that when petitions involving the same debtor are filed in different courts, on motion filed in the district in which the petition filed first is pending and after hearing on notice, the court may determine, in the interest of justice or for the convenience of the parties, the district in which the case should proceed. Thus, the same test would be applied after Howrey files its voluntary chapter 11 case in the Washington Metropolitan Area upon the filing of a motion seeking to determine which venue should retain Howrey's bankruptcy proceeding. *See* 9-1014 Collier on Bankruptcy P 1014.04 ("The rule requires that a motion be filed in the district in which the first petition is pending and requires a 'hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court.' The court may then determine, 'in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed.' The standard is the same as that applied in determining whether a change of venue is appropriate, and similar

LATHAM&WATKINS LLP     LA\2250894.6
ATTORNEYS AT LAW
LOS ANGELES

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Federal Rule 1014; 28 U.S.C. § 1406(a) ("The district court in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought"); *Thompson v. Greenwood*, 507 F.3d 416, 421 (6th Cir. 2007) ("[T]here is no conflict between [Federal Rule 1014] and any applicable statute on the specific question at issue in this case-whether a bankruptcy court has authority to retain an improperly venued case over the timely objection of an interested party. Both Rule 1014(a)(2) and § 1406 answer that question in the negative."); *Carranza v. Con-Way Inc.*, 2010 U.S. Dist. LEXIS 121889, at * 7 (D. Ariz. Oct. 29, 2010) ("Thus, when a case is brought in an improper venue and timely objection made, a district court has only two options [pursuant to 28 U.S.C. § 1406(a)]: dismiss the case or transfer it to a jurisdiction of proper venue, if in the interest of justice."); *U.S. Trustee v. Sorrells (In re Sorrells)*, 218 B.R. 580, 586 (B.A.P. 10th Cir. 1998) ("The majority of courts have held that, if venue is contested and found to be improper, a bankruptcy court may not retain the case, but rather must dismiss it or transfer it pursuant to section 1406(a) and Bankruptcy Rule 1014(a)(2)."); *In re Petrie*, 142 B.R. 404, 406 (Bankr. D. Nev. 1992) ("It was Congress' intent that improperly venued bankruptcy cases "be treated the same as all other federal civil actions under § 1406, and that upon the motion of a party in interest, the case must either be dismissed or transferred.").

The courts have established criteria to assist them in determining under what circumstances these factors are met.[5]  In considering a transfer of venue, California bankruptcy courts consider the totality of the circumstances, including the following non-exclusive factors: (a) proximity of creditors to the court; (b) proximity of the debtor to the court; (c) proximity of

---

considerations should come into play in determining which of two or more districts is preferable for bringing the cases together.")

[5]     Even if venue were proper in the Northern District of California, which it is not, the same criteria are considered in determining whether a transfer is proper.  *See* 9-1014 Collier on Bankruptcy P 1014.03 ("The standard to be applied in deciding whether to transfer an improperly filed case is whether the transfer would be 'in the interest of justice or for the convenience of the parties.'  If not, the case probably must be dismissed.  Since the standard is the same as the standard applied to the transfer of a properly filed case, presumably similar considerations will come into play in determining when a transfer is appropriate.")  28 U.S.C. § 1412 and Federal Rule 1014(a)(1) permit a court to transfer a properly filed case to any other district if the court determines that the transfer is in the interest of justice  or for the convenience of the parties.

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

witnesses necessary to administration of the estate; (d) the location of assets; (e) economic and efficient administration of the case; and (f) the need for further administration if liquidation ensues. *See Donald v. Curry (In re Donald)*, 328 B.R. 192, 204 (B.A.P. 9th Cir. 2005). These factors overwhelmingly support the transfer of the Chapter 7 Case from this Court to the Chapter 11 Bankruptcy Court.

### A. Proximity of Creditors

Because the vast majority of Howrey's business operations were conducted in the Washington Metropolitan Area, Howrey believes that more of its unsecured creditors reside in and around this area than in any other jurisdiction in the United States. Were the Chapter 7 Case to continue in the Northern District of California, many of Howrey's unsecured creditors would be effectively excluded from participating in the proceedings given the expenses they would be forced to incur to travel across the country to appear in this Court. *See id.* ("[T]he integrity of the bankruptcy process requires that the natural enemies have reasonable access to the court."). Howrey's secured creditor, Citibank, is also located on the East Coast, in New York, and is expected to have a significant interest and role in Howrey's bankruptcy case.

In addition, prior to the filing of the involuntary petition, a class action complaint asserting violations of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 et seq., was filed in New York asserting damages arising out of the termination of between 250-275 employees in Falls Church, Virginia and Washington, D.C. and an additional approximately 300 employees nationwide. After the involuntary petition was filed, a substantially similar complaint was filed in the Chapter 7 Case. A separate WARN Act action against Howrey was also filed in the Northern District of California. As the WARN Act litigation will likely be a significant aspect of any bankruptcy case and approximately half of the members of the proposed class in the New York litigation were employed in the District of Columbia or Northern Virginia, a transfer to the Chapter 11 Bankruptcy Court would provide significantly more proposed class members with access to the courts and the litigation than any other venue.

/ / /

LATHAM&WATKINS LLP
Attorneys At Law
Los Angeles
LA\2250894.6

13

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Case: 11-31376   Doc# 13   Filed: 05/03/11   Entered: 05/03/11 12:29:48   Page 19 of
22

1    Finally, Howrey may have significant liabilities arising from its pre-dissolution

2    leases in the District of Columbia, Howrey's largest office by far, and Northern Virginia.

3    **B.    Proximity of Howrey and Witnesses Necessary to Administration of the
     Estate to the Chapter 11 Bankruptcy Court**

4

5    Prior to its dissolution, the majority of Howrey's domestic employees and

6    partners worked out of Howrey's offices in the Washington Metropolitan Area.  No other

7    jurisdiction housed a Howrey office with more employees and partners.  Howrey currently

8    maintains a single office in the District of Columbia to wind down its affairs and its remaining

9    domestic data center continues to be maintained in Northern Virginia.  Most Howrey witnesses

10   necessary to the administration of a bankruptcy estate will likely be members of the Dissolution

11   Committee or current employees who are engaged in the wind down process.  To the extent

12   additional witnesses are required, because most of Howrey's administrative functions were

13   performed by employees in its Washington Metropolitan Area offices prior to dissolution, such

14   witnesses are also likely to be located in or near the Chapter 11 Bankruptcy Court.  As a result, a

15   bankruptcy proceeding in the Chapter 11 Bankruptcy Court will be substantially less expensive,

16   which will benefit Howrey's creditors and other parties in interest.

17   **C.    Location of Assets**

18   As a legal services provider, Howrey did not own any real property in the

19   ordinary course of business.  Personal property owned by Howrey, including furniture, client

20   files, artwork, library materials, and technology equipment, was located in each of Howrey's

21   offices, with the majority residing in the District of Columbia office due to its size and because

22   most administrative tasks were performed from this office.  Howrey's main domestic data center

23   and the majority of its servers have historically been physically located nearby in Northern

24   Virginia.  Howrey does not currently have any assets or personnel in Northern California.

25   **D.    Economic and Efficient Administration of the Case**

26   Howrey's estate could be administered most efficiently in the Chapter 11

27   Bankruptcy Court because the Washington Metropolitan Area has always served as Howrey's

28   principal place of business and the location of the majority of its assets and employees, both pre

LATHAM&WATKINS LLP  LA\2250894.6
ATTORNEYS AT LAW
LOS ANGELES

14    HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE

Case: 11-31376   Doc# 13   Filed: 05/03/11   Entered: 05/03/11 12:29:48   Page 20 of
22

and post-dissolution.  In addition, the liquidation of Howrey's estate could most efficiently be administered in the Chapter 11 Bankruptcy Court as the majority of Howrey's remaining assets are located in the Washington Metropolitan Area.

Each of the factors to be considered by the Bankruptcy Court in determining whether venue should be transferred weigh heavily in favor of a transfer to the Chapter 11 Bankruptcy Court.

**IV.    If Dismissal of the Chapter 7 Case is Granted, this Court Should Grant Howrey Costs and Attorneys' Fees**

Section 303(i) of the Bankruptcy Code provides that, if a court dismisses an involuntary petition other than on consent of all petitioners and the debtor, the court may grant judgment against the petitioners and in favor of the debtor for costs or reasonable attorneys' fees.

Most courts addressing whether or not to award fees and costs under Section 303(i)(1) have adopted a "totality of the circumstances" test.  *Higgins v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Sys.)*, 379 F.3d 701, 707 (9th Cir. 2004) (awarding attorneys fees to debtor under Section 303(i)(1) after debtor successfully had involuntary petition dismissed).  In *Higgins*, the Ninth Circuit considered such factors as "(1) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken by the petitioning creditors; and (4) the motivation and objectives behind the filing of the petition."  *Id.*  However, this list is not exhaustive and a bankruptcy court may, in its discretion, also consider other factors it deems relevant.  *See id.* at 708.  Regardless, "any petitioning creditor in an involuntary case . . . should expect to pay the debtor's attorney's fees and costs if the petition is dismissed" and when an involuntary petition is dismissed on some ground other than consent of the parties, an involuntary debtor's motion for attorney's fees and costs under Section 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are authorized.  *Id.*  "This presumption helps reinforce the idea that 'the filing of an involuntary petition should not be lightly undertaken.'"  *Id.*

Given that there are simply no facts to support a proper bankruptcy filing in the Northern District of California, Howrey should be entitled to recover the costs and attorneys'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2250894.6

fees it and its attorneys expended in responding to the involuntary petition. As of the filing of this Motion, attorneys' fees and costs expended in researching and preparing this Motion totaled in excess of $40,000. Howrey respectfully requests that, if its request for dismissal of the Chapter 7 Case is granted, it be granted judgment against the Petitioners in this amount plus any additional attorneys' fees and costs incurred by Howrey related to the involuntary petition up to the date that a final order dismissing the case is granted.

## Conclusion

For each of the reasons set forth above, venue is not proper in Northern District of California and the involuntary petition should be dismissed to permit the chapter 11 case that Howrey intends to file in the Chapter 11 Bankruptcy Court to proceed and fees and costs should be awarded to Howrey. In the alternative, Howrey respectfully requests that the Bankruptcy Court transfer venue for the convenience of the parties and in the interest of justice to the Chapter 11 Bankruptcy Court.

Respectfully submitted,

Dated: May 3, 2011                    LATHAM & WATKINS LLP
                                      Peter M. Gilhuly
                                      Kimberly A. Posin
                                      Ted A. Dillman


                              By:     /s/ Kimberly A. Posin
                                      Counsel to Howrey LLP

LATHAM&WATKINS LLP    LA\2250894.6
ATTORNEYS AT LAW
LOS ANGELES

HOWREY LLP'S MOTION TO DISMISS
INVOLUNTARY PETITION OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE