H. JASON GOLD (Pro Hac Vice)
VALERIE P. MORRISON (Pro Hac Vice)
DYLAN G. TRACHE (Pro Hac Vice)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email: jgold@wileyrein.com
Email: vmorrison@wileyrein.com
Email: dtrache@wileyrein.com

ROBERT A. FRANKLIN (091653)
CRAIG M. PRIM (077820)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: rfranklin@murraylaw.com
Email: cprim@murraylaw.com

Counsel to Howrey LLP

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 11-31376-DM |
| HOWREY LLP, | Chapter 11 |
| A District of Columbia Limited Liability Partnership, | Date: June 8, 2011<br>Time: 9:30 a.m. |
| Debtor(s). | Dept: U.S. Bankruptcy Court<br>235 Pine Street, 22nd Floor<br>San Francisco, CA |
| 1299 Pennsylvania Avenue<br>Washington D.C., 20004 | Judge: Honorable Dennis Montali |
| Employer's Tax I.D. No: 53-0231650 | |

**MOTION OF THE DEBTOR FOR ORDER (A) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM; AND (B) AUTHORIZING CONTINUED USE OF THE DEBTOR'S EXISTING BANK ACCOUNTS AND BUSINESS FORMS**

**TO: THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR'S TWENTY LARGEST UNSECURED CREDITORS, THE DEBTOR'S SECURED LENDERS, THE PETITIONING CREDITORS AND OTHER PARTIES IN INTEREST:**

Howrey LLP, the debtor and debtor-in-possession in the above-captioned case (the "Debtor") hereby moves (the "Motion") this Court for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit "A"**, pursuant to Sections 105(a), 345, and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the continued use of the Debtor's existing cash management system and procedures (the "Cash Management System"); and (ii) authorizing the maintenance and continued use of the Debtor's existing bank accounts, checks and business forms. This Motion is based on the DECLARATION OF ROBERT RUYAK IN SUPPORT OF FIRST DAY MOTIONS (the "First Day Declaration"), filed concurrently herewith, which is fully incorporated herein by reference.[1]

The Debtor is in the process of winding down its business and affairs. Among the Debtor's assets are approximately $63 million in accounts receivable. The Debtor operates under a cash management system in the ordinary course of business which is designed to accurately and efficiently collect, transfer and disburse funds generated by the Debtor and to record each deposit, transfer, and disbursement made by the Debtor. It is critical that the Debtor's collection efforts continue uninterrupted and without any confusion that would result from closing existing accounts and otherwise modifying the Debtor's cash management system, so that receipts are not lost, misapplied or otherwise delayed. Accordingly, the Court should authorize the Debtor to maintain its current cash management system and waive any contrary requirements of the Bankruptcy Code, Bankruptcy Rules and United States Trustee Guidelines.

In support of the Motion, the Debtor respectfully represents the following:

/ / /

/ / /

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtor has filed a motion seeking to transfer the venue of this case, which is currently pending before the Court. By filing this Motion, the Debtor is not consenting to venue in this Court and expressly reserves its arguments that venue in this Court is both improper and inconvenient. No request for the appointment of a trustee or examiner has been made in this case, and no statutory official committees have been appointed or designated by the Office of the United States Trustee.

2. The statutory bases for the relief requested herein are Sections 105(a), 345, and 363 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

3. On April 11, 2011 (the "Petition Date"), certain alleged creditors of the Debtor filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code. Following the Petition Date, through the date of entry of an Order for Relief, the Debtor continued to operate its business in accordance with § 303(f) of the Bankruptcy Code.

4. The Debtor is a limited liability partnership organized under the laws of the District of Columbia, and was founded in 1956. A further description of the Debtor's business, and certain facts supporting the relief sought through this Motion are set forth in the First Day Declaration.

## BASIS FOR RELIEF

**A. Request for Authority to Continue Using the Debtor's Existing Cash Management System**

5. The Debtor, by this Motion, seeks to continue to use the Cash Management System after the entry of the Order for Relief in the ordinary course of the Debtor's business for the benefit of all parties in interest in the case.

6. The Debtor operates its Cash Management System in the ordinary course of its business. The Cash Management System is designed to accurately and efficiently collect, transfer and disburse funds generated by the Debtor and to record each deposit, transfer, and disbursement made by the Debtor. The Cash Management System enables the Debtor to (i) better forecast and

report its cash position, (ii) monitor collection and disbursement of funds and (iii) maintain control over the administration of their various bank accounts, all of which facilitates effective collection, disbursement and movement of cash.

7. The Debtor maintains 25 active bank accounts which are all linked to the Cash Management System (the "Bank Accounts"). Fourteen of these accounts are maintained in the United States, including twelve accounts at Citibank, N.A., one account at Northern Trust Bank of Texas and one account at Wells Fargo Bank, N.A. In addition, the Debtor maintains eleven international accounts, including four accounts at Fortis Banque S.A./N.V., three accounts at ABN AMRO Bank N.V., and four accounts at Deutsche Bank Attached hereto as **Exhibit "B"** is a list of the Bank Accounts maintained by the Debtor. A schematic of the Debtor's Cash Management System is attached hereto as **Exhibit "C"** (the "Schematic"). As shown in the Schematic, the Debtor's Cash Management System is built upon a main depository account for each country in which the Debtor operates and the Debtor's cash is consolidated for use in its operations in the respective countries.

8. The depository account (the "Domestic Depository") maintained by Citibank, N.A. ("Citibank") in Washington D.C. serves as the sole depository account for all domestic operations. The Domestic Depository is funded by deposits of accounts receivables from clients in the form of both checks and wires.

9. Disbursements on account of the Debtor's domestic general operating expenses are transferred from the Domestic Depository to a disbursement account held at Citibank for payment to creditors or employees of the Debtor.

10. Disbursements on account of the Debtor's domestic payroll and related obligations are transferred from the Domestic Depository to a payroll account held at Citibank through which payroll and payroll related payments are made by the Debtor to its employees.

11. Howrey maintains an imprest account at Citibank in Washington, D.C. for the funding of self insurance claims administered by CIGNA.

12. An additional account is held at Citibank in Washington, D.C. for administration of a terminated defined benefits plan. There are currently zero funds in that account and it is in the process of being closed.

13. Howrey maintains additional depository accounts (the "Foreign Depositories") in each of the foreign countries it operates including a depository account in the Netherlands (the "Amsterdam Depository") maintained by ABN AMRO Bank N.V. ("ABN AMRO") in Rotterdam; a depository account in Belgium (the "Brussels Depository") maintained by Fortis Banque S.A/N.V. ("Fortis") in Brussels; and a depository account in Germany (the "Munich Depository") maintained by Deutsche Bank in Munich. Disbursements on account of the Debtor's foreign general operating expenses are transferred from the respective Foreign Depositories to a disbursement account (at the same bank) in each of the countries for payment to creditors or employees of the Debtor.

14. In addition, Howrey maintains two foreign payroll accounts at each of Fortis (in Brussels, Belgium for Brussels payroll expenses); and Deutsche Bank (in Munich, Germany for Munich payroll expenses), through which payroll and payroll related payments were made by the Debtor to its employees in those offices. Foreign regulations prevent the Debtor from closing these accounts at this time.

15. Howrey maintains an additional operating account at Citibank in New York, NY to manage its swap agreement with Citibank. The Capital Markets Holding account is a hedge account used to mark the swap to market. The operating account is used to pay Citibank interest on the swap agreement.

16. Howrey maintains six domestic and three foreign escrow accounts. These accounts hold client funds in trust and are separate from the funds belonging to Howrey.

17. Howrey is also responsible for the administration of a class action settlement and holds an account with Citibank in New York, NY to disburse the proceeds of the settlement.

18. The Debtor's cash management procedures constitute ordinary course, essential business practices for the Debtor. The Debtor's current Bank Accounts provide significant benefits to the Debtor including, inter alia, the ability to (i) ensure that clients are able to deposit funds in accordance with prior instructions; (ii) ensure the maximum availability of funds when necessary,

and (iii) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance information. The Debtor submits that any serious disruption to its Cash Management System and existing Bank Accounts could have a severe and adverse impact upon its efforts to collect accounts receivable and otherwise maximize value.

19. Moreover, the Debtor intends to take reasonable steps to ensure that maintaining the present system, subject to any modifications discussed above, will not result in any prejudice to any party in interest. The Debtor will separately record, as of the entry of the Order for Relief, the consolidated balances of each of its Bank Accounts so as to distinguish those transfers and ensure that such transactions are adequately and promptly documented in their books and records.

20. A debtor's request to maintain its existing Cash Management System has been held to be entirely consistent with Section 363(c)(1) of the Bankruptcy Code, "which allows a debtor in possession to use property of the estate in the ordinary course of business." See Charter Co. v. Prudential Ins. Co. of America (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985). As courts have held, an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part and rev'd in part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." Id. at 1061; see also In re Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets"). In addition, § 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Therefore, the Court may grant the relief requested in the exercise of its equitable powers.

**B.     Request for Authority to Maintain Existing Bank Accounts and Business Forms**

21. The U.S. Trustee Guidelines were adopted in order to assist the U.S. Trustee in supervising the administration of chapter 11 cases. The U.S. Trustee Guidelines require chapter 11 debtors to, among other things:

(a) close all existing bank accounts and open new accounts which must be designated debtor in possession bank accounts; and

(b) establish and maintain a separate debtor-in-possession general account, for receipt of all revenues and all other income received by the debtors, payroll account, to fund all payroll expenses, and tax account, for the payment of taxes.

22. The U.S. Trustee Guidelines are designed to distinguish between prepetition and postpetition transactions and to prevent the inadvertent payment of prepetition claims. Notwithstanding these requirements, the continued use of the Bank Accounts is essential to a smooth and orderly transition into chapter 11. All parties in interest will be best served by the Debtor's continued use of the Bank Accounts, as it will minimize the disruption of the Debtor's efforts to wind down its operations. As such, the Debtor seeks a waiver of the U.S. Trustee requirement that its Bank Accounts be closed and that new postpetition bank accounts be opened. The Debtor further requests that the Bank Accounts be deemed debtor-in-possession accounts and that the Debtor be authorized to maintain and continue using these accounts in the same manner and with the same accounts numbers, styles and document forms as those employed during the prepetition period.

23. In addition, the Debtor hereby seeks a waiver of the requirement to establish specific bank accounts for tax payments and payroll expenses. The Debtor believes that (a) the Debtor's tax obligations and payroll obligations can be funded most efficiently out of the existing Bank Accounts, (b) the U.S. Trustee can adequately monitor the flow of funds into, between, and out of such accounts, and (c) the creation of new debtor-in-possession accounts designated solely for tax obligations and payroll obligations would be unnecessary and inefficient.

24. Accordingly, subject to a prohibition against honoring checks issued prior to the entry of the Order for Relief without specific authorization from this Court permitting the honoring of such checks, the Debtor requests that the Bank Accounts be deemed to be debtor-in-possession accounts and that their continued use, in the same manner employed immediately preceding the entry of the Order for Relief be authorized.

25. The Debtor represents that if the relief requested in this Motion is granted, it will not pay, and each of its banks will be directed not to pay, any debts incurred before the entry of the Order for Relief, other than as authorized by orders of this Court.

26. In an effort to minimize administrative expense and delay, the Debtor requests authority to continue to use its correspondence, business forms, including, but not limited to, letterhead, purchase orders, invoices, and checks (collectively, the "Business Forms") in the forms existing immediately prior to the entry of the Order for Relief, without reference to its status as a debtor-in-possession.

27. In addition to press releases, each of the Debtor's significant vendors will receive direct notice of these bankruptcy filings. Furthermore, changing the Business Forms would be expensive and burdensome to the Debtor's wind down efforts while conferring no benefit to those dealing with the Debtor. For these reasons, the Debtor seeks authorization to use existing Business Forms without being required to place the label "Debtor-in-Possession" on each.

## C. **Bankruptcy Rule 6003 Does Not Apply.**

28. The relief requested is also warranted under Bankruptcy Rule 6003, which provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001. Fed. R. Bankr. P. 6003.

29. This Motion was filed more than 21 days following the Petition Date. Accordingly, the restrictions set forth in Rule 6003 do not apply to the Motion. Moreover, to the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

30. Accordingly, the Court should allow for the continued use of the Debtor's Cash Management System and maintenance of its existing Bank Accounts.

**D.    Waiver of § 345 Investment Requirements.**

31.   Bankruptcy Code Section 345 authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a). Local Bankruptcy Rule 2015-1(b) provides that "[t]here shall be a rebuttable presumption that funds which are deposited with an entity which is included on the United States Trustee's most recent list of 'cooperating depositories' have been deposited in accordance with 11 U.S.C. § 345(b)."  Local Bankruptcy Rule 2015-1(b).  Certain of the Debtor's banks are not listed as "cooperating depositories."

32.   By this Motion, the Debtor also seeks a waiver of the investment and deposit requirements imposed by Bankruptcy Code Section 345(b).  Bankruptcy Code Section 345 authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).

33.   For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Section 345(b) provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise."  11 U.S.C. § 345(b).

34.   The Debtor believes that "cause" exists to waive the investment and deposit restrictions pursuant to Bankruptcy Code Section 345(b).

35.   Courts have considered a number of factors in seeking to determine whether "cause" exists pursuant to Bankruptcy Code Section 345(b).  See In re Service Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (identifying various factors relevant to the existence of "cause,"

including the sophistication and size of the debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver of the Section 345(b) requirements, the potential harm to the estate, and the reasonableness of such a waiver under the circumstances).

36. Congress has emphasized that the investment and deposit requirements set forth in Bankruptcy Code Section 345 may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, [but such requirements] can work to needlessly handcuff larger, more sophisticated debtors." H.R. Rep. 103-834, 103d Cong., 2d Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994). Thus, Congress added the waiver clause in Section 345(b) "to allow the courts to approve investments other than those permitted by Section 345(b) for just cause, thereby overruling In re Columbia Gas Sys., Inc., 33 F.3d 294, 1994 WL 463514 (3d Cir. Del. 1994)." Id.

37. To the extent that any account has a balance substantial enough to fall within the ambit of § 345, the Debtor believes that the safety presented by the financially stable, banking institutions with whom the Debtor banks constitutes sufficient cause pursuant to allow the Debtor to deviate from approved investment and deposit practices established by the Bankruptcy Code. The Debtor submits that "cause" exists pursuant to Section 345(b) of the Bankruptcy Code to waive this requirement because, among other considerations, (i) the Debtor's banks are highly-rated and regulated banks, (ii) the Debtor retains the right to remove funds and establish new bank accounts as needed, (iii) the cost associated with satisfying the requirements of § 345 of the Bankruptcy Code is burdensome and (iv) the process of satisfying those requirements would lead to needless inefficiencies in the management of the Debtor's business. Moreover, strict compliance with the requirements of § 345 of the Bankruptcy Code would not be practical in this case. A bond secured

by the undertaking of a corporate surety would be prohibitively expensive, if such bond is available at all. Given the relative security of the Debtor's Cash Management System, the Debtor submits that cause exists to grant a waiver of the requirements of § 345(b) of the Bankruptcy Code. Accordingly, the Debtor respectfully requests authority to maintain their Bank Accounts in a safe and prudent manner in accordance with their existing banking practices.

### WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

38. To implement the foregoing successfully, the Debtor seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and, to the extent it may apply, the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### NOTICE

39. The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee, (b) the creditors listed on the Debtor's list of 20 largest unsecured creditors, (c) counsel to the administrative agent for the lenders under the Debtor's prepetition credit facility, (d) the Internal Revenue Service, (e) the Department of Justice, (f) counsel to the petitioning creditors, (g) all parties that have filed a Request for Notice in this case; and (h) the Debtor's banks listed on Exhibit B. In light of the nature of the relief requested, the Debtor submits that no further notice is required or needed under the circumstances.

### NO PRIOR APPLICATION

40. No previous request for the relief sought herein has been made to this Court or any other court.

### CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court grant this Motion and enter the proposed Order,

/ / /

/ / /

/ / /

1. Authorizing the continued use of the Debtor's Cash Management System;

2. Authorizing the maintenance and continued use of the Debtor's existing Bank Accounts and Business Forms; and

3. Granting such other and further relief as this Court deems appropriate.

Dated: June 6, 2011

WILEY REIN LLP
    H. Jason Gold
    Valerie P. Morrison
    Dylan G. Trache

and

MURRAY & MURRAY

By: */s/ Robert A. Franklin*
    Robert A. Franklin
    Counsel to Howrey LLP