H. JASON GOLD (Pro Hac Vice)
VALERIE P. MORRISON (Pro Hac Vice)
DYLAN G. TRACHE (Pro Hac Vice)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email: jgold@wileyrein.com
Email: vmorrison@wileyrein.com
Email: dtrache@wileyrein.com

ROBERT A. FRANKLIN (091653)
CRAIG M. PRIM (077820)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: rfranklin@murraylaw.com
Email: cprim@murraylaw.com

Counsel to Howrey LLP

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 11-31376-DM |
| HOWREY LLP, | Chapter 11 |
| A District of Columbia Limited Liability Partnership, | Date: June 8, 2011<br>Time: 9:30 a.m.<br>Dept: U.S. Bankruptcy Court |
| Debtor(s). | 235 Pine Street, 22nd Floor<br>San Francisco, CA |
| 1299 Pennsylvania Avenue<br>Washington D.C., 20004 | Judge: Honorable Dennis Montali |
| Employer's Tax I.D. No: 53-0231650 | |

### EXHIBIT "A" TO

### MOTION OF DEBTOR FOR ORDER: (A) AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM AND FINAL BASIS; (B) GRANTING ADEQUATE PROTECTION AND RELATED RELIEF; AND (C) SCHEDULING FINAL HEARING ON USE OF CASH COLLATERAL

| | |
|---|---|
| 1 | H. JASON GOLD (Pro Hac Vice) |
| | VALERIE P. MORRISON (Pro Hac Vice) |
| 2 | DYLAN G. TRACHE (Pro Hac Vice) |
| | WILEY REIN LLP |
| 3 | 1776 K Street, N.W. |
| | Washington, D.C. 20006 |
| 4 | Telephone: (202) 719-7000 |
| | Facsimile: (202) 719-7049 |
| 5 | Email: jgold@wileyrein.com |
| | Email: vmorrison@wileyrein.com |
| 6 | Email: dtrache@wileyrein.com |
| 7 | ROBERT A. FRANKLIN (091653) |
| | CRAIG M. PRIM (077820) |
| 8 | MURRAY & MURRAY |
| | A Professional Corporation |
| 9 | 19400 Stevens Creek Blvd., Suite 200 |
| | Cupertino, CA 95014-2548 |
| 10 | Telephone: (650) 852-9000; (408) 907-9200 |
| | Facsimile: (650) 852-9244 |
| 11 | Email: rfranklin@murraylaw.com |
| | Email: cprim@murraylaw.com |
| 12 | |
| | Counsel to Howrey LLP |

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 11-31376-DM |
| HOWREY LLP, | Chapter 11 |
| A District of Columbia Limited Liability Partnership, | Date: June 8, 2011<br>Time: 9:30 a.m. |
| Debtor(s). | Dept: U.S. Bankruptcy Court<br>235 Pine Street, 22nd Floor<br>San Francisco, CA |
| 1299 Pennsylvania Avenue<br>Washington D.C., 20004 | Judge: Honorable Dennis Montali |
| Employer's Tax I.D. No: 53-0231650 | |

**INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION AND RELATED RELIEF; AND (C) SCHEDULING FINAL HEARING**

This matter came before the Court on the motion (the "***Motion***") of Howrey LLP, the above-captioned debtor ("***Howrey***" or "***Debtor***"), requesting that this Court enter an order (a) authorizing the Debtor's use of use cash collateral; (b) granting adequate protection to Citibank, N.A. ("***Citibank***"), as secured creditor, and other related relief; and (c) scheduling a final hearing

on the Motion; and it appearing that the relief requested by the Motion on an interim basis is necessary and in the best interests of the Debtor, its estate, and its creditors; and due notice of the Motion having been given to (i) the Office of the United States Trustee for the Northern District of California ("*US Trustee*"), (ii) counsel for Citibank, (iii) counsel for the Petitioning Creditors (defined below), and (iv) those creditors listed on the Debtor's list of the twenty largest unsecured creditors; and upon the record of the interim hearing on this matter, held on June 8, 2011, and the arguments of counsel made at the hearing; and it appearing that under the circumstances that the notice given by the Debtor of the Motion, the relief requested therein and the hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001, and no other or further notice of the relief sought at the hearing on an interim basis is necessary or required; and after due deliberation and consideration and sufficient cause appearing therefor; and objections, if any, having been withdrawn, resolved or overruled by the Court;

THIS ORDER SHALL CONSTITUTE THE COURT'S FINDINGS OF FACTS AND CONCLUSIONS OF LAW PURSUANT TO FED. R. BANKR. P. 7052, AND SHALL TAKE EFFECT AND BE FULLY ENFORCEABLE AS OF THE DATE IT IS ENTERED ON THE DOCKET.

A. On April 11, 2011 (the "*Filing Date*"), an involuntary petition (the "*Involuntary Case*") for relief under chapter 7 of title 11 of the United States Code (the "*Bankruptcy Code*") was filed with respect to the Debtor in the Bankruptcy Court for the Northern District of California, San Francisco Division (the "*Court*"). On May 3, 2011, the Debtor filed a motion to dismiss or transfer the Involuntary Case, which motion is scheduled to be heard on June 29, 2011. On June 6, 2011, the Debtor filed a Conditional Consent to Entry of Order for Relief and Motion to Convert Case specifying its agreement to consent to entry of an order for relief upon the conversion of the Involuntary Case to a case under chapter 11 of the Bankruptcy Code. By order entered June 6, 2011 (the "*Conversion Date*"), the order for relief was entered and the case was converted to chapter 11 (the "*Chapter 11 Case*," and together with the Involuntary Case, the "*Case*").

B. Without prejudice to the right of any party-in-interest to contest the statements made in this paragraph B and D, the Debtor and Citibank represent that

(i) the Debtor is a party to (a) the Fourth Amended and Restated Secured Loan Agreement dated as of October 19, 2010 by and between Howrey and Citibank, as Lender, as amended by a First Amendment thereto dated as of December 3, 2010, and as further amended by a Second Amendment thereto dated as of December 20, 2010 (as so amended, the "***Pre-Petition Financing Agreement***"), a copy of which is attached as **Exhibit "C"** to the Motion; (b) the Fourth Amended and Restated Security Agreement dated as of October 19, 2010 made by and among Howrey and certain domestic non-debtor affiliates,[1] as Grantors, in favor of Citibank (as so amended, the "***Security Agreement***"), a copy of which is attached as **Exhibit "D"** to the Motion; (c) certain guaranties by such non-debtor affiliates; (d) various promissory notes issued from time to time by Howrey in favor of Citibank in accordance with the Pre-Petition Financing Agreement; and (e) each other "Loan Document" as defined in the Pre-Petition Financing Agreement (collectively, the "***Pre-Petition Financing Documents***"). Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Pre-Petition Financing Agreement (or, if not defined in the Pre-Petition Financing Agreement, in such other Pre-Petition Financing Documents in which such term is defined).

(ii) Under the Pre-Petition Financing Documents, certain loans, advances and extensions of credit were made by Citibank to Howrey (including the issuance of certain letters of credit for the account of Howrey from time to time (the "***Letters of Credit***"). As of the Filing Date, the principal amount of loans outstanding under the Pre-Petition Financing Agreement was approximately $57 million, together with all interest, fees, undrawn Letters of Credit, unreimbursed drawings under Letters of Credit, swap obligations and other amounts owing under the Pre-Petition Financing Documents (the "***Pre-Petition Debt***"). Pursuant to the terms of the Pre-Petition Financing Agreement and the other Pre-Petition Financing Documents, the Pre-Petition Debt is secured by, among other things, liens and security interests (the "***Pre-Petition Liens***") granted by the Debtor on substantially all of its personal property assets, including,

---

[1] The Debtor's domestic non-debtor affiliates are The CapAnalysis Group, LLC ("CAG") and Maxiam, LLC ("Maxiam").

without limitation, all presently existing and hereafter acquired accounts and general intangibles, including all billed and unbilled accounts receivable, time and disbursements and all proceeds, products and/or property received on account of or in satisfaction thereof, all furniture, furnishings, fixtures, equipment and other tangible personal property, and all cash, securities entitlements, financial assets and deposit accounts, including the Debtor's main operating account maintained with Citibank (the "***Operating Account***") and all funds held therein and all certificates and instruments, if any, representing or evidencing same (collectively, the "***Pre-Petition Collateral***"), but such Pre-Petition Collateral excludes (x) any cash (the "***Debtor's Foreign Cash***") of the Debtor that was held as of the Conversion Date in accounts maintained by the Debtor outside of the United States (the "***Debtor's Foreign Accounts***") to the extent Citibank's lien does not extend thereto, (y) cash and assets (the "***Excluded Foreign Assets***") owned by any of the Debtor's foreign affiliates (the "***Foreign Affiliates***") and (z) any cash or other property held in any client trust accounts.[2]  As of the Filing Date, the net balance in the Operating Account was approximately $3,600,000 (the "***Pre-Petition Cash Collateral***").

    C.    Citibank consents to the Debtor's use of Cash Collateral, subject to the terms of this Order, and in accordance with the budget covering the rolling twelve-week period ending on August 26, 2011, a copy of which is attached to the Motion as **Exhibit "B"** (as may be updated or amended from time to time with the consent of Citibank, the "***Budget***").  Citibank is relying on the terms, conditions and protections provided herein in so consenting.

    D.    Since the Filing Date, the Debtor has paid certain funds to Citibank aggregating approximately $10,900,000 to satisfy the Pre-Petition Debt, including the reimbursement of drawings under letters of credit issued by Citibank for the account of the Debtor pursuant to the Pre-Petition Financing Documents.  As of the Conversion Date, the principal amount of loans outstanding under the Pre-Petition Financing Agreement was approximately $49 million.

---

[2] The foregoing description of the Pre-Petition Collateral is for background purposes only, and shall not be construed to restrict, limit, expand, establish or confirm whether or not any particular property is part of the Pre-Petition Collateral or whether the Pre-Petition Liens thereon were adequately perfected prior to the Filing Date.

E.   The agreements and arrangements regarding the use of Cash Collateral described in this Order are fair and reasonable under the circumstances, have been negotiated in good faith and at arm's length and are enforceable in accordance with their terms.

F.   The granting of the replacement liens and other agreements contained herein to provide adequate protection to Citibank for the Debtor's use of Cash Collateral are fair and reasonable under the circumstances, and are enforceable in accordance with their terms.

G.   The use of Cash Collateral as provided in the Budget and the granting of adequate protection on an interim and final basis as provided herein are necessary to the preservation of value of the Debtor's estate, and the use of the Cash Collateral specified in the Budget on an interim basis is necessary to prevent irreparable harm to the Debtor, the estate, and creditors.

H.   Good cause has been shown for entry of this Order. Among other things, entry of this Order will preserve and maintain the assets of the Debtor and its estate and help maximize the realization upon such assets. Accordingly, entry of this Order is in the best interest of the Debtor, its creditors, and estate. The terms and conditions of the use of Cash Collateral authorized hereby and the granting of adequate protection are fair and equitable under the circumstances.

**ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:**

1.   <u>Motion Granted</u>. The Motion is granted on an interim basis in accordance with the terms and conditions of this Order. In order to prevent immediate and irreparable harm to the Debtor and its estate and to maximize the realization upon assets that are property of the estate, pending the final hearing on the Motion (the "***Final Hearing***"), the Debtor requires the use of Cash Collateral to pay the expenses set forth in the Budget and the Debtor is authorized to do so.

2.   <u>Authorization to Use Cash Collateral; Budget</u>. Other than the Debtor's Foreign Cash, retainers paid to professionals and the proceeds of the Excluded Foreign Assets, all proceeds of Pre-Petition Collateral, including funds from time to time on and after the Conversion Date in the Operating Account (collectively, the "***Cash Collateral***") shall constitute cash collateral (as defined in Bankruptcy Code Section 363(a)) for purposes of this Order, and shall be subject to the terms and conditions of this Order. Subject to the terms and conditions of

this Order, the Debtor is authorized to use Cash Collateral (as well as the Debtor's Foreign Cash and any Excess Cash) to pay liabilities and obligations of the Debtor solely in accordance with the Budget (subject to Permitted Variance (as defined below)) or as agreed to by Citibank; provided that to the extent the Debtor's Foreign Cash is subject to foreign receivership or liquidation proceedings, then the Debtor shall be authorized to use such Debtor's Foreign Cash in the exercise of its reasonable business judgment or as otherwise required in connection with such proceedings; and provided further that nothing herein shall be construed as an approval by this Court of, or a consent by Citibank to, any payments to the Debtor's management or employees with respect to bonuses, retention payments, key employee incentive plans and other like payments or programs (whether or not in the Budget), the approval and payment of which shall be subject to notice and a hearing, with all parties rights to object thereto being fully reserved. The Debtor shall be permitted to exceed any line item on the Budget for any weekly period on a cumulative basis by an amount equal to 10% of the amount budgeted for such line item for such period ("**Permitted Variance**"); provided that any unpaid budgeted amounts may be carried forward and paid for in a subsequent period; and provided further that the fees and expenses of Case Professionals (including with respect to any claims and noticing agent as well as the US Trustee Fees) shall not be considered in determining whether the Debtor is in compliance with the Budget, and in all cases, the fees and expenses of Case Professionals shall be subject in all respects to paragraph 23 hereof and to any party-in-interest's (including Citibank's) right to object to the allowance of any such fees and expenses.[3] To the extent there are proceeds generated from the sale or other disposition of Excluded Foreign Assets in excess (the "*Excess Cash*") of amounts needed to satisfy the liabilities of the relevant Foreign Affiliate plus the fees and expenses associated with the dissolution or wind down of the applicable Foreign Affiliate (the "**Foreign Affiliate Liabilities**"), but subject and subordinate to any limitations imposed in connection with any foreign receivership or liquidation proceedings, the Debtor shall be authorized to use such Excess Cash to pay liabilities and obligations of the

---

[3] Citibank reserves the right to require in connection with the approval of the Motion on a final basis that the fees and expenses of Case Professionals be limited to amounts set forth in the Budget, subject to the Permitted Variance.

Debtor in accordance with the Budget and this Order, and such Excess Cash, the Debtor's Foreign Cash and any other funds held from time to time in Debtor's Foreign Accounts shall also constitute Post-Petition Collateral for purposes of, and subject to the terms and conditions of, this Order. The Debtor is further authorized in the exercise of its reasonable business judgment to use the Excluded Foreign Assets and any proceeds thereof to satisfy the related Foreign Affiliate Liabilities.

3. <u>Procedures for Collection and Use of the Cash Collateral</u>. Consistent with prior practice and subject to the approval of the Motion of the Debtor for Order (A) Authorizing Continued Use of Cash Management Systems; and (B) Authorizing Continued Use of the Debtor's Existing Bank Accounts and Business Forms, the Debtor shall continue to pursue collections from its account debtors and to direct all payments and collections in respect of the Debtor's pre-petition and post-petition accounts, together with all other payments and proceeds payable to the Debtor in respect of any of the Pre-Petition Collateral and any other Collateral (as defined below), to the Operating Account; <u>provided</u> that the Debtor may use the proceeds of the Excluded Foreign Assets to cover any related Foreign Affiliate Liabilities.

4. <u>Adequate Protection</u>. Subject to the Carve Out (as defined below), as adequate protection for the Debtor's use, sale or other disposition of the Pre-Petition Collateral, including the use of Cash Collateral pursuant to this Order (and any related final order) and the imposition of the automatic stay,

(a) to secure any diminution in Citibank's interest in the Pre-Petition Collateral (including any Cash Collateral) as a result of the imposition of the automatic stay and the Debtor's use, sale or other disposition of Pre-Petition Collateral, including the use of Cash Collateral, during the Term (the "**Diminution Amount**"), the Debtor hereby grants, and is hereby deemed to have granted *nunc pro tunc* to the Conversion Date, to Citibank a valid, perfected and enforceable security interest in and replacement lien (all such replacement liens on the Collateral, the "**Post-Petition Liens**") upon all assets and property of the Debtor and its estate of any kind or nature whatsoever and wherever located, now existing or hereafter acquired, including, without limitation, all accounts and general intangibles, including any billed and unbilled accounts

receivable, time and disbursements and all proceeds, products and/or property received on account of or in satisfaction thereof, all furniture, furnishings, fixtures, equipment and other tangible personal property, all cash, securities entitlements, financial assets and deposit accounts, including the Excess Cash, the Debtor's Foreign Cash, the Debtor's Foreign Accounts, the Operating Account and all funds held therein and all certificates and instruments, if any, representing or evidencing the foregoing (collectively, the "**Post-Petition Collateral**," together with the Pre-Petition Collateral, the "*Collateral*"); provided that the Post-Petition Liens shall be subject and subordinate to (x) any existing liens on the Collateral having priority over the Pre-Petition Liens (y) the rights of any receiver or liquidator appointed in any foreign receivership or liquidation proceedings with respect to the Debtor's Foreign Cash, the Debtor's Foreign Accounts, the Excluded Foreign Assets or any Foreign Affiliate and (z) the Carve Out;

(b) to the extent the Post-Petition Liens are insufficient to cover the Diminution Amount as provided in clause (a) above, Citibank shall also be granted a claim against the Debtor entitled to priority pursuant to Section 507(b) of the Bankruptcy Code in an amount equal to such diminution in value; and

(c) notwithstanding anything to the contrary, the Collateral shall not include (i) any claims and causes of action or the proceeds therefrom arising under Sections 544, 545, 547, 548 or 550 of the Bankruptcy Code, unless otherwise ordered by the Court at the Final Hearing or otherwise; or (ii) the Debtor's client trust accounts and other funds or property held by the Debtor for or on behalf of clients or other parties in a fiduciary capacity.

5. <u>Additional Adequate Protection</u>. Also subject to the Carve Out, as further adequate protection, but subject in all respect to recharacterization under Section 506(b) of the Bankruptcy Code of such payments as payments against the principal amount of the Pre-Petition Debt if and to the extent Citibank is determined by final order to be undersecured, for so long as the Debtor is authorized to use Cash Collateral pursuant to the terms of this Order, the Debtor is hereby authorized and directed to pay to Citibank (and Citibank is authorized to receive and if authorized by the Debtor to do so, to apply any funds in the Operating Account to effectuate same) any post-Filing Date accrued, but unpaid interest when due on the Pre-Petition Debt on the

terms set forth in the Pre-Petition Financing Documents ("**Post Petition Interest**") as well as any reasonable attorneys' fees and expenses incurred by Citibank from and after the Filing Date in connection with the Case and/or for the protection, preservation and enforcement by Citibank of its rights and remedies with respect to the Pre-Petition Debt, the Pre-Petition Financing Documents and the Pre-Petition Liens ("**Citibank Fees**") as and when such Citibank Fees are incurred by Citibank to the extent required by the Pre-Petition Financing Documents, and, in each case, the Debtor shall be authorized and directed to make such payments (or to offset against amounts in the Operating Account), whether or not such Citibank Fees and/or Post-Petition Interest are provided for in the Budget. In addition, as set forth in the Budget, at the end of each four-week period, the Debtor shall be authorized and directed to pay over to Citibank on account of the principal balance of the Pre-Petition Debt that amount of cash held in the Operating Account in excess of $4 million (and $7.5 million for the period ending August 26, 2011), which for this purpose shall assume that all available cash, including any then Excess Cash, shall have been swept into the Operating Account. In addition, the Debtor shall be authorized and directed to pay over to Citibank the amount of any recoveries paid to the Debtor for its own account with respect to any contingent fee cases, net of any amounts owed to third parties for goods provided or services performed in connection with the related contingent fee case, including expert witness fees, which are customarily paid out of the proceeds of any such recovery or required to be paid to effectuate the recovery. Nothing contained in the foregoing or otherwise in this Agreement shall be interpreted or construed to prejudice Citibank's rights to receive payment in full of all Pre-Petition Debt, interest, fees and expenses owing to Citibank under the Pre-Petition Financing Documents, including from and after the Filing Date, to the extent permitted by law.

      6.     <u>Carve Out</u>. For purposes of this Order, "**Carve Out**" means (a) the unpaid fees due and payable to the Clerk of the Court and the US Trustee under 28 U.S.C. § 1930(a) (collectively, the "**US Trustee's Fees**"), (b) all reasonable fees and expenses incurred by the trustee under Section 726(b) of the Bankruptcy Code in an amount not exceeding $50,000 in the aggregate, and (c) any unpaid fees and expenses incurred by professionals and agents ("**Case**

***Professionals***") retained by the Debtor and/or any statutory committee appointed in the Chapter 11 Case in an aggregate amount not to exceed $500,000, but subject in all respects to paragraph 23 hereof and to any party-in-interest's (including Citibank's) right to object to the allowance of any such fees and expenses. Each Case Professional shall share pro rata in the Carve Out based upon the percentage that the total unpaid fees and expenses for such professional bears to the total unpaid fees and expenses for all professionals, prior to application of any Case Professional's retainer. The Carve Out shall be senior to any claim, lien, or security interest in the Collateral or any of the Debtor's assets held by Citibank, whether arising before or after the Filing Date.

      7.    <u>Automatic Stay</u>. The automatic stay imposed by virtue of Section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Debtor or Citibank to (a) pay all amounts authorized to be paid to Citibank pursuant to this Order, and (b) take any action authorized or contemplated by this Order and to carry out the terms thereof, subject, however, to the satisfaction of any notice, procedural or other conditions contained in this Order.

      8.    <u>Priority of Liens and Claims; Perfection</u>. Subject to the Carve Out, during the Term, no costs or administrative expenses which have been or may be incurred in the Case or in any proceedings related thereto and no priority claims are or will be, pursuant to § 506(c) of the Bankruptcy Code or otherwise, prior to or on a parity with the Pre-Petition Liens or Post-Petition Liens. Citibank reserves the right to seek a permanent waiver under § 506(c) of the Bankruptcy Code at the Final Hearing, including with respect to the Post-Petition Liens until the Diminution Amount has been paid in full. The Post-Petition Liens granted hereunder shall be deemed perfected as of the Conversion Date without any act by the Debtor or Citibank or the obtaining of any consent, and Citibank shall not be required to file any UCC-1 financing statements, or any other document, or take any other action (including taking possession of any of the Post-Petition Collateral or executing control agreements with respect to the Debtor's deposit accounts) in order to validate or perfect the Post-Petition Liens granted to Citibank hereunder, as all such liens shall be deemed automatically perfected as of the Conversion Date upon entry of this

Case: 1-13-13756 Doc#: 64-1 Filed: 06/06/11 Entered: 06/06/11 14:37:42 Page 11 of 20

K:\Howrey\Bkcy\Cash Collateral\Interim Order-2.doc  INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL - 10

Order.  If Citibank shall, in its discretion, choose to file such UCC-1 financing statements (or amendments to or continuations of any existing financing statements) and otherwise confirm perfection of such liens, all such financing statements or similar instruments shall be deemed to have been filed or recorded as of the Conversion Date.  Citibank may, in its discretion, file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor is incorporated, has or maintains any Post-Petition Collateral or an office.  Without limiting the generality of the foregoing, Citibank is hereby authorized to take any and all steps it may elect in its discretion to perfect its Post-Petition Liens in any Collateral consistent with the terms of this Order; <u>provided</u> that such perfection steps may not restrict the ability of the Debtor or any Foreign Affiliate to satisfy the Foreign Affiliate Liabilities out of its respective Excluded Foreign Assets.  The Debtor shall concurrently herewith or hereafter, as requested by Citibank, execute and deliver to Citibank all such documents as Citibank may, in its discretion, reasonably request to effectuate, evidence, confirm, validate or perfect the Post-Petition Liens provided for herein, including, without limitation, UCC-1 financing statements and foreign deposit account control agreements (or instruments having comparable effect), subject to the limitations contained herein.

9. <u>Covenants</u>.  The Debtor's continued use of Cash Collateral under this Order shall be subject in all respects to the Debtor's compliance with, among other things, each of the following:

(a) The Debtor shall notify Citibank of any material adverse deviation of the Debtor's financial performance from that set forth in the Budget within three (3) business days after occurrence of such material adverse deviation, and shall also notify Citibank as soon as reasonably practical if it believes that the fees and expenses of Case Professionals retained by the Debtor during any given monthly period are have exceeded or are likely to exceed the budgeted amount for such period by more than 10%;

(b) The Debtor will provide to Citibank (i) within three (3) business days after the end of each week, a weekly report reflecting in reasonable detail the Debtor's actual cash inflows and outflows for such week as compared against the Budget, the amount and percentage

variance of actual cash inflows and outflows from those set forth on the Budget, the names of each payee and a short description of the amounts paid to, and the goods or serves provided by, each such payee during such week, the identity of each account debtor or other source of funds who has remitted payment during such week and the amount thereof, separate listing of the outstanding accounts receivable and work-in-progress for billable and contingent matters as of the prior week's close of business, and such other detail and information as may be reasonably requested by Citibank, (ii) on each business day a Daily Report in a form consistent with the daily reports currently being provided by the Debtor to Citibank showing the amount of cash outstanding in each of the Debtor's accounts (domestic and foreign) and a summary of the Debtor's accounts receivable and work-in-progress, in each case, as of the close of the previous business day, (iii) concurrently with the delivery thereof to the US Trustee, any other operating reports or other reports regarding the Debtor's operations, financial position or business and (iv) to the extent reasonably practicable, advanced notice and copies of any motions, applications or related documents to be filed in the Chapter 11 Case;

(c) The Debtor shall not, without the prior written consent of Citibank, (i) incur any debt for additional borrowed money (which, for avoidance of doubt, shall not include obligations incurred in the ordinary course of the Debtor's business under Section 364(a) of the Bankruptcy Code), including any request under Section 364 of the Bankruptcy Code for a debtor-in-possession credit facility, unless the proceeds of such indebtedness will be used to pay the Pre-Petition Debt, or (ii) grant or permit the creation of a lien or security interest in any of the Debtor's property other than as provided herein; and

(d) The Debtor shall permit Citibank's representatives, agents and/or employees to have reasonable access to the Debtor's premises and records upon reasonable notice during normal business hours (without unreasonable interference with the proper operation of the Debtor's business) and shall cooperate, consult with, and provide to such persons all such information as they may reasonably request.

10. <u>Term for Use of Cash Collateral</u>. The Debtor is expressly authorized to use Cash Collateral as provided herein commencing from the date of entry of this Order (the

"**Approval Date**"), but *nunc pro tunc* to the Conversion Date, until the earlier of (a) the date that is 45 days after the Approval Date (subject to extension by written agreement between the Debtor and Citibank) and (b) the date that is two (2) business days (the "**Notice Period**") following receipt of written notice from Citibank to the Debtor, its counsel and the US Trustee that a Termination Event (as defined below) has occurred and is continuing and, except as otherwise agreed, Citibank no longer consents to the Debtor's continued use Cash Collateral as a result thereof; <u>provided</u> that the Notice Period shall be automatically extended to five (5) business days as necessary to allow for an emergency hearing before the Court so long as the Debtor has made a request for such a hearing before the expiration of the initial Notice Period. The period during which the Debtor may use Cash Collateral hereunder shall be referred to herein as the "**Term**". Upon the expiration of the Term, the Debtor shall be prohibited from using Cash Collateral hereunder without further order of the Court or Citibank's consent. The expiration of the Term shall not otherwise affect the provisions of this Order including the liens, claims and rights granted to Citibank hereunder that arose prior to the expiration of the Term.

11. <u>Termination Event</u>. The occurrence of any of the following (but only after giving effect to any notice requirement (if any) and/or to any grace or cure period (if any) provided for in each particular case) shall constitute a termination event (each a "**Termination Event**") with respect to the within authorization to use Cash Collateral, unless otherwise waived in writing by Citibank and the Debtor in their discretion or ordered by the Court:

    (a) Entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

    (b) Entry of an order dismissing or suspending the Case, provided that for avoidance of doubt, Citibank's rights under this Order shall survive any such dismissal of the Case;

    (c) Entry of an order appointing or directing the election of a trustee under Section 1104 of the Bankruptcy Code for the Debtor;

(d) Without the prior written consent of Citibank, entry of any order (or other judicial action which has the effect of) amending, reversing, supplementing, staying the effectiveness of, vacating, or otherwise modifying this Order;

(e) Unless otherwise authorized by order of the Court on notice and a hearing or agreed by Citibank, the Debtor uses Cash Collateral for any purpose or in an amount or in a manner other than as permitted in this Order and in the Budget (subject to the Permitted Variance);

(f) Failure of the Debtor to comply with any other material term, condition or covenant contained in this Order if such failure is not cured on or prior to three (3) business days after written notice by Citibank is delivered to the Debtor and its counsel and counsel for any statutory committee;

(g) Commencement of any adversary proceeding, contested matter or other litigation by the Debtor against Citibank;

(h) The filing by the Debtor, without the prior consent of Citibank, of any application or motion for approval, or allowance of, or the entry of any order approving or allowing, any administrative expense claim or lien or security interest senior to, or *pari passu* with, any administrative priority or Post-Petition Lien established pursuant hereto or in the Pre-Petition Financing Documents;

(i) The granting of any application or motion for relief from the automatic stay with respect to assets having a value of more than $100,000; <u>provided</u> that the granting of any application or motion for relief from the automatic stay filed by a landlord to set off against amounts held by the landlord as security shall not constitute a Termination Event for purposes of this Order;

(j) The failure by the Debtors to obtain entry of a final order approving the Motion on substantially the terms set forth herein within 45 days of the Conversion Date (or such later date as shall be agreed to between the Debtor and Citibank);

(k) The Debtor's selling, leasing or otherwise disposing of the Collateral without the prior written consent of Citibank, except for collections of accounts receivable and dispositions of inventory in the ordinary course of business.

12. <u>Authorization and Further Assurances</u>. The Debtor and Citibank are authorized, and, to the extent expressly set forth herein, directed to comply with, the terms and conditions of this Order and to perform all acts and execute and comply with the terms hereof and of all such other documents, instruments and agreements as Citibank may reasonably require to effectuate the terms and conditions of this Order or to protect or facilitate the rights and protections granted hereby.

13. <u>Non-Control</u>. In authorizing use of Cash Collateral or in taking any other action reasonably related to the Motion or this Order, Citibank shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of the Debtor (as such terms, or any similar term, are used in the United States Comprehensive, Environmental Response, Compensation and Liability Act ("**CERCLA**"), as amended, or any similar Federal or state statute.

14. <u>Continuing Rights</u>. The Post-Petition Liens and administration claims granted hereunder to Citibank as adequate protection for the Diminution Amount and any actions taken pursuant hereto shall survive and shall not be modified, altered, or impaired in any manner by any plan or any confirmation order with respect to any such plan, by any other financings or extensions of credit or incurring of debt by the Debtor or any trustee or successor-in-interest, whether pursuant to Section 364 of the Bankruptcy Code or otherwise, by the entry of an order converting the Chapter 11 Case to a chapter 7 case or dismissing the Case or changing the venue of the Case to another court, by the entry of any other order, or by any act or omission whatsoever.

15. <u>Binding Effect</u>. The provisions of this Order shall be binding upon the Debtor, its estate and its successors and assigns (including any trustee or other estate representative hereinafter appointed as a representative of the estate herein or in any subsequent case or proceeding under the Bankruptcy Code). The provisions of this Order shall inure to the benefit

of Citibank, the Debtor, its estate and its successors, including any chapter 7 or chapter 11 trustee appointed in this or any other cases; *provided*, *however*, that Citibank shall have no obligation to consent to the continued use of Cash Collateral by any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed in these proceedings or by the Debtor or any other party in-interest in connection with any other proceedings.

16. <u>No Third Party Beneficiaries</u>. Other than as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any committee, any creditor (other than Citibank and its assignees and successors), or any direct, indirect or incidental beneficiary.

17. <u>Validity and Enforceability of Order</u>. If any or all of the provisions of this Order are hereafter modified, amended, vacated or stayed, or the authorizations granted herein expire at the conclusion of the Term, such modification, amendment, vacatur, stay or expiration shall not affect the validity, priority, enforceability or perfected status of any claim, lien or security interest granted to Citibank, the validity, priority and enforceability of any payment made to Citibank pursuant hereto, subject to recharacterization under Section 506(b), or the rights and remedies granted to Citibank.

18. <u>Headings</u>. The headings in this Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Order.

19. <u>Immediate Docketing and Effect of Order</u>. The Clerk of the Court is hereby directed to forthwith enter this Order on the docket of this Court maintained in regard to the Case. This Order shall be effective upon its entry and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy Rules including Bankruptcy Rule 4001(a)(3)).

20. <u>Amendments and Waivers</u>. The Debtor and Citibank may in writing amend, modify, supplement or waive any provision of this Order (i) if such amendment, modification, supplement or waiver is not material (in their good faith judgment), and (ii) if such amendment is otherwise expressly contemplated by and permitted under this Order (including any amendment to the Budget), in any such case without any need to apply to, or receive further approval from, the Court. Any material amendment, modification, supplement or waiver shall be in writing,

signed by the Debtor and Citibank, and approved by the Court on appropriate notice by the Debtor.

21. <u>Citibank Rights and Relief</u>. Nothing herein shall be prejudicial to, or deemed to be a waiver of, Citibank's right to set off against any Collateral, to request additional or further protection of its interests in any property of the Debtor, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the dismissal of this case, or to request any other relief, nor shall anything herein constitute an admission by Citibank of the quantity, quality or value of any Pre-Petition Collateral or Post-Petition Collateral or constitute a finding of adequate protection with respect to the interests of Citibank in any Pre-Petition Collateral or Post-Petition Collateral. Subject to the Carve Out, Citibank shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of the Pre-Petition Collateral or Post-Petition Collateral, to the extent that the protection afforded by this Order to Citibank's interests in any Pre-Petition Collateral or Post-Petition Collateral proves to be inadequate. Nothing herein shall be deemed to be a waiver by the Debtor or any party in interest of the right to object to any of the foregoing relief requested by Citibank.

22. <u>Debtor's Rights and Relief</u>. Nothing contained herein shall in any way prejudice the right of the Debtor to petition any court of competent jurisdiction for an Order authorizing the use of Cash Collateral other than as set forth in this Order, or to exercise any other rights permitted by the Bankruptcy Code or applicable law not expressly inconsistent with the terms of this Order.

23. <u>Reservation of Rights; Proscribed Use</u>. Nothing in this Order shall be construed as consent by Citibank to the allowance of any fees, disbursements, costs or expenses of any Case Professional, nor shall any such provision affect the rights any party-in-interest , including Citibank, to object to the allowance and payment of any such fees, disbursements, costs or expenses. In addition, Citibank shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professional incurred in connection with the Chapter 11 Case or any successor case under any chapter of the Bankruptcy Code. Notwithstanding

anything herein or in any order by the Bankruptcy Court to the contrary, without the express prior written consent of Citibank, no Cash Collateral may be used for any of the following purposes: (a) to object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under, or liens or claims granted under, any Pre-Petition Financing Documents or pursuant to this Order; or (b) to assert or prosecute any action for the establishment or avoidance of potential preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against Citibank in connection with matters related to the Pre-Petition Financing Documents or the Collateral; provided, however that a statutory committee appointed in this Chapter 11 Case and its professionals may investigate the validity, perfection, priority, extent or enforceability of any amount due under, or liens or claims granted under, any Pre-Petition Financing Documents at a cost not to exceed $50,000.

24. **Interim Effect and Final Hearing**. In accordance with Bankruptcy Rule 4001(b), this Order is hereby granted and effective on an interim basis. The Final Hearing on approval of the Motion on a final basis shall to be held on June __, 2011 at ___ _.m. The Debtor shall provide notice of the Final Hearing, including notice of the time and manner for filing objections to the Motion, by serving by regular mail a copy of this Order together with the Motion upon the US Trustee, counsel for Citibank, counsel for the Petitioning Creditors, those creditors listed on the Debtor's list of twenty largest unsecured creditors, the Internal Revenue Service, counsel to any statutory committee, all parties known to have asserted liens on the Debtor's Cash Collateral, and all parties that have filed a notice of appearance and request for service of pleadings in the Case. The foregoing notice shall constitute adequate and sufficient notice in accordance with the requirements of the Bankruptcy Code and the Bankruptcy Rules.

**END OF ORDER**

1  THE UNDERSIGNED HEREBY APPROVES THE ABOVE ORDER AS TO FORM:

3  Dated:  June 6, 2011

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Kelley A. Cornish

and

PEITZMAN, WEG & KEMPINSKY LLP
Lawrence Peitzman

By: _____
Lawrence Peitzman
Counsel to Citibank, N.A.