H. JASON GOLD (Pro Hac Vice)
VALERIE P. MORRISON (Pro Hac Vice)
DYLAN G. TRACHE (Pro Hac Vice)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email: jgold@wileyrein.com
Email: vmorrison@wileyrein.com
Email: dtrache@wileyrein.com

ROBERT A. FRANKLIN (091653)
CRAIG M. PRIM (077820)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: rfranklin@murraylaw.com
Email: cprim@murraylaw.com

Counsel to Howrey LLP

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No. 11-31376-DM |
| HOWREY LLP, | Chapter 11 |
| A District of Columbia Limited Liability Partnership, | Date: June 8, 2011<br>Time: 9:30 a.m. |
| Debtor(s). | Dept: U.S. Bankruptcy Court<br>235 Pine Street, 22nd Floor<br>San Francisco, CA |
| 1299 Pennsylvania Avenue<br>Washington D.C., 20004 | Judge: Honorable Dennis Montali |
| Employer's Tax I.D. No: 53-0231650 | |

**EXHIBIT "D" TO**

**MOTION OF DEBTOR FOR ORDER: (A) AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM AND FINAL BASIS; (B) GRANTING ADEQUATE PROTECTION AND RELATED RELIEF; AND (C) SCHEDULING FINAL HEARING ON USE OF CASH COLLATERAL**

# FOURTH AMENDED AND RESTATED SECURITY AGREEMENT

THIS FOURTH AMENDED AND RESTATED SECURITY AGREEMENT ("Agreement") made as of October 19, 2010, amends and restates the Third Amended and Restated Security Agreement dated as of as of March 6, 2008, by Howrey LLP, a District of Columbia limited liability partnership with an address of 1299 Pennsylvania Avenue, N.W., Washington, D.C. 20006 (the "Firm"), the entities listed on the signature page hereof as "Collateral Grantors" (the Firm and Collateral Grantors being, collectively the "Grantors"), and Citibank, N.A., with an address of 1101 Pennsylvania Avenue, N.W., 9th Floor, Washington, D.C. 20004 (together with its affiliates, the "Lender"), with reference to the following facts:

A. The Firm has, substantially concurrently with the date hereof, entered into a Fourth Amended and Restated Secured Loan Agreement (the "Loan Agreement") with the Lender, each of the terms of which Loan Agreement is incorporated fully herein by this reference. The Loan Agreement concerns a certain Term Loan in the original principal amount of $20,000,000, a certain Term Loan in the original principal amount of $9,000,000, a Demand Line of Credit of up to $90,000,000, a Committed Revolving Credit Facility of up to $25,000,000, a Demand Line of Credit of up to $10,000,000, a Demand Line of Credit for Contingency Cases of up to $10,000,000, evidenced or to be evidenced in each case by certain Notes, and certain Letters of Credit (including the Standalone Letters of Credit) issued by the Lender or its affiliates for the account of the Firm the repayment or reimbursement obligations, as the case may be, of which are secured by this Agreement. The Loan Agreement, the Notes, this Agreement and all other documents relating to the Loans and Letters of Credit (including the Standalone Letters of Credit) are collectively referred to herein as the "Loan Documents". Except as otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Loan Agreement.

B. The Loan Agreement requires Grantors to secure payment to the Lender and Citibank of all amounts due to the Lender pursuant to the Loan Documents with a first priority security interest in Grantors' Accounts Receivable, Billed Disbursements, Unbilled Time and Unbilled Disbursements, in certain tangible personal property of Grantors, and in the Cash Concentration Account as set forth herein.

NOW, THEREFORE, for value received and as an inducement to the Lender to enter into the Loan Agreement, the parties hereto agree as follows:

1. Security Interest. Each Grantor hereby grants to the Lender a continuing security interest in (a) all presently existing or hereafter acquired accounts and general intangibles (as such terms are defined in the UCC) of such Grantor, including, without limitation, (1) the Cash Concentration Account (as defined below) and all cash, security entitlements, financial assets and deposit accounts, (2) all presently existing or hereafter acquired Accounts Receivable of such Grantor and all presently existing or hereafter created Unbilled Time of such Grantor, along with any and all proceeds, products or increase of such Accounts Receivable or Unbilled Time, and any and all property which such Grantor may receive on account of or in satisfaction of such Accounts Receivable or Unbilled Time, and (3) all rights of such Grantor

with respect to Billed Disbursements and Unbilled Disbursements, along with any and all proceeds, products or increase of such Billed or Unbilled Disbursements and any and all property which such Grantor may receive on account of or in reimbursement of any such Billed Disbursements or Unbilled Disbursements, (b) all furniture, furnishings, fixtures, equipment and other tangible personal property (whether affixed to real property or not) presently owned or hereafter acquired by such Grantor (excluding client files and work product of such Grantor), along with any and all proceeds, products or increase of such furniture, furnishings, fixtures, equipment and other tangible personal property, and (c) all the Firm's right, title and interest in the Cash Concentration Account (as defined below), all funds held therein and all certificates and instruments, if any, representing or evidencing the Cash Concentration Account. Under no circumstances, however, shall the Collateral be construed to include (x) the Firm's client trust accounts or any interest therein; (y) other funds or property held by the Firm for or on behalf of clients; or (z) those specific items of tangible personal property in which the Firm has granted to Fleet a security interest pursuant to the Fleet Agreements.

2. Secured Obligations. The security interest granted herein is granted to secure the full and punctual performance of (a) all obligations of the Firm under the Loan Agreement, the Notes issued pursuant thereto and the other Loan documents, whether of principal, interest, fees, Letter of Credit reimbursement obligations, expense reimbursement, collection and enforcement costs or any other obligation thereunder, and including (but not limited to) obligations arising out of or in connection with any future amendments or modifications thereof, any future advances of funds thereunder and/or any future increases in the amount of credit extended thereunder (*provided* that nothing herein shall be construed to obligate the Lender to consider or agree to any such future amendments, modifications, advances or increases), and (b) any and all other obligations of the Firm to the Lender or its affiliates from time to time, including (but not limited to) obligations arising out of or in connection with any future agreements, hedge agreements, cash management agreements, overdraft on any depository accounts, notes or other documents between the Lender and the Firm, whether or not they expressly recite that they are secured by the Collateral pursuant to this Agreement or not (collectively, the "Secured Obligations").

3. Title to Collateral; Authority. Each Grantor represents and warrants that it holds title to the Collateral, that it has full power and authority to grant the security interest described herein without the consent or approval of any other person or authority, and that no other person has or claims any interest in the Collateral, except as expressly permitted herein.

4. Creation and Collection of Accounts Receivable and Billed Disbursements.

(a) Each Grantor agrees to promptly and diligently prepare and send invoices to its clients from time to time (consistent with such Grantor's standard billing practices) for unbilled services and Unbilled Disbursements (subject to such adjustments in the amount or value thereof as such Grantor may deem appropriate in the ordinary course of business), thereby converting such Grantor's Unbilled Time to Accounts Receivable and such Grantor's Unbilled Disbursements to Billed Disbursements.

2

(b) The Lender agrees that so long as the Firm is not in default under the Loan Documents, Grantors shall be entitled to collect the Accounts Receivable and Billed Disbursements and Grantors' clients and other account debtors shall not be notified by the Lender of the existence of the Lender's security interest hereunder.

(c) Upon and during the continuance of any Event of Default by the Firm under any of the Loan Documents, the Lender shall thereafter have the right to submit invoices for Unbilled Time and Unbilled Disbursements and to notify any or all of the account debtors on the Accounts Receivable or Billed Disbursements of the Lender's rights hereunder and, if the Lender so elects, to direct such account debtors to make payments with respect to their Accounts Receivable or Billed Disbursements directly to the Lender. Each Grantor agrees that any such payments to the Lender shall fully discharge all obligations of the payor with respect to the applicable Account Receivable or Billed Disbursement.

(d) Each Grantor hereby irrevocably appoints the Lender as Grantor's attorney-in-fact with limited Power of Attorney (which appointment is coupled with an interest) to act on behalf of such Grantor, and any officer of the Lender is expressly authorized from time to time upon and during the continuance of any Event of Default to execute any and all documents on behalf of such Grantor which may be or become necessary, in order to submit invoices for Unbilled Time and Unbilled Disbursements, notify such account debtors and collect the proceeds of such Accounts Receivable or Billed Disbursements in the exercise or satisfaction of the Lender's rights under this Agreement.

5. <u>Maintaining Cash Concentration Account</u>. The Firm has opened a non-interest/ bearing cash concentration account (the "<u>Cash Concentration Account</u>") with the Lender at its offices at 1101 Pennsylvania Avenue, N.W., 9th Floor, Washington, D.C. 20004, Account No. 37401505, in the name of the Firm. So long as any of the Secured Obligations remain outstanding:

(a) The Firm will maintain the Cash Concentration Account with the Lender.

(b) It shall be a term and condition of the Cash Concentration Account, notwithstanding any term or condition in any other agreement concerning the Cash Concentration Account, that no amount shall be paid or released to or for the account of any Grantor or any other person from the Cash Concentration Account; *provided, however*, that, so long as there is no outstanding Event of Default under any of the Loan Documents, the Lender will pay and release to the Firm or at its order at the request of the Firm, amounts on deposit in the Cash Concentration Account to the extent required by the Firm, in the exercise of its prudent business judgment, to be required for the conduct of its business operations in the ordinary course.

(c) Each Grantor shall deposit all payments received on account of or in satisfaction of the Accounts Receivable and Billed Disbursements and all other products or proceeds of the Accounts Receivable and Billed Disbursements, in the Cash Concentration Account as soon as practical after receipt of such payments, products or proceeds.

3

(d) If requested by the Firm, the Lender will, from time to time, invest amounts on deposit in the Cash Concentration Account in such cash equivalents as the Firm may select and the Lender may approve.

(e) Upon the occurrence and during the continuance of an Event of Default by the Firm under any of the Loan Documents, the Lender is authorized, to the fullest extent permitted by law, to set off and apply any and all amounts on deposit in the Cash Concentration Account against any of the Secured Obligations then outstanding, irrespective of whether such obligations may be unmatured, *provided* that the Lender shall have made a demand.

6. Intentionally Omitted.

7. No Prior Security Interest. Each Grantor warrants and represents that, it has not granted a security interest in the Collateral to any other party, except to the extent (if any) expressly disclosed in Exhibit XII to the Loan Agreement, and the parties agree that, except to the extent (if any) expressly disclosed in Exhibit XII to the Loan Agreement, no security interest in the Collateral is now or shall hereafter be senior to the security interest granted herein to the Lender, regardless of when the Lender's security interest and any such other security interest are or were granted or perfected. Each Grantor agrees to execute and deliver any documents reasonably required to subordinate any such other interest to the Lender's interest hereunder.

8. Further Documents. Each Grantor agrees to execute and deliver any and all further documents (including, but not limited to, financing statements, notices and assignments) necessary or otherwise reasonably requested by the Lender to carry out the provisions of this Agreement, to perfect the security interest granted herein and to preserve any remedy available to the Lender under applicable law.

9. UCC - Financing Statements. Each Grantor hereby authorizes the Lender to prepare and file, with the appropriate central and local filing authorities in each jurisdiction where such Grantor is organized or has a place of business, any and all UCC financing statements, including all amendments, corrections and continuation (including 'in lieu continuation') statements, that Lender in its sole discretion deems necessary or appropriate to assure the perfection and priority of all of Lender's Liens in the Collateral, each such financing statement to be in form and content satisfactory to the Lender and sufficient to give public notice of the security interest granted in this Agreement. The financing statements so filed may describe the Collateral as "all assets of the Debtor" and any other appropriate description selected by Lender and its legal counsel.

10. Tangible Personal Property. Each Grantor agrees to maintain, insure, repair and replace (as needed) all tangible Collateral in accordance with reasonable and prudent business practices and in accordance with the insurance requirements in Section 5.2.B of the Loan Agreement, and acknowledges that any replacements thus acquired by any Grantor shall become part of the Collateral in accordance with Section 1 above.

11. Rights Upon Default. Upon and during the continuance of any Event of Default by the Firm under any of the Loan Documents, (A) the Lender shall have the immediate and absolute right, in its sole discretion, in addition to any other remedies available to it under

4

the Loan Documents or under applicable law, to notify account debtors and collect the Accounts Receivable and Billed Disbursements, as provided above, and to apply any proceeds of such Accounts Receivable and Billed Disbursements in any of the following ways and in any order, in the Lender's sole and absolute discretion: (a) to cure any such default, (b) to reduce the principal balance of the Loans, (c) to reduce or satisfy any other monetary obligations of the Firm under the Loan Documents, or (d) any combination of the foregoing and (B) the Lender will, and the Grantor irrevocably instructs the Lender to, transfer to the Cash Concentration Account any credit balances of any other deposit or other interest bearing or non-interest bearing accounts of the Grantor maintained with the Lender. During the Initial Remedy Period, the Lender agrees to pursue in good faith enforcement of remedies against the Collateral and the Grantors and shall not pursue other remedies against any of the partners or guarantors of a Grantor, except in the case of a default under Section 7.8 or 7.9 of the Loan Agreement. Following the expiration of such Initial Remedy Period, each Grantor, on its own behalf and on behalf of its partners and guarantors, hereby expressly waives any right to require the Lender to pursue enforcement of remedies against the Collateral prior to pursuing other remedies against such Grantor or against such guarantors, and agrees that in the event of any default, the Lender may proceed concurrently or sequentially against any or all of Grantors, their partners, the guarantors who executed the Guarantees and/or the Collateral, in such manner and in such order as the Lender in its sole and absolute discretion may elect, without prejudice to the Lender's right following the expiration of the Initial Remedy Period to pursue other remedies available under any of the Loan Documents or under applicable law.

12. Insolvency; Creditors' Remedies. Each Grantor hereby agrees that if a voluntary or involuntary petition in bankruptcy is filed by or against such Grantor, or a receiver is appointed for such Grantor, or any writ of garnishment, attachment or any other execution writ is filed attempting to execute against any material portion of the Accounts Receivable, then the Lender shall have the immediate and absolute right, in its sole discretion, to collect and use the proceeds of the Accounts Receivable for any or all of the purposes set forth in this Agreement.

13. Duration. This Agreement shall continue in full force and effect until all obligations of the Firm under the Loan Documents and all other obligations (if any) secured by this Agreement as described in Section 2 hereof have been paid in full and discharged. This Agreement shall not be affected by any release of the Firm or any change in its status.

14. No Waiver. The Lender's failure, at any time or times hereafter, to require strict performance by the Firm of any provision of this Agreement or of any other of the Loan Documents shall not waive, affect or diminish any right of the Lender thereafter to demand strict compliance with and performance of such provision or constitute a suspension or waiver by the Lender of any other provision hereof or thereof, whether the same is prior or subsequent and whether of the same or a different type.

15. Assignment. Subject to the provisions of Section 9.7.A, B and C of the Loan Agreement, the Lender may assign or otherwise transfer this Agreement and any other Loan Documents and may deliver or assign to the assignee or transferee any or all of the property which may then be held by the Lender as security hereunder or thereunder, in which event such assignee or transferee shall thereupon become vested with all the powers and rights herein given to the Lender with respect thereto, and the Lender shall thereafter be forever

5

relieved and fully discharged from any liability or responsibility with respect thereto, all without prejudice to the retention by the Lender of all rights and powers hereby given with respect to any property not so transferred. No Grantor's rights and obligations under this Agreement and the other Loan Documents may be assigned or delegated.

16. <u>Interpretation; Modification</u>. The invalidity or unenforceability of any one or more provisions of this Agreement shall not affect any other provision. Whenever the context requires, all words used in the plural shall be construed in the singular and vice versa, and each gender shall include each other gender. Subject to the limitation set forth in <u>Section 15</u> hereof, the word "Firm" shall mean both the named the Firm and any other person or entity at any time assuming or otherwise becoming primarily liable on the Firm's indebtedness to the Lender. Any modifications of or amendments to this Agreement shall not be effective unless set forth in writing and approved in writing by the Lender.

17. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws, rules and regulations of the United States of America, including, without limitation, the laws, rules and regulations applicable to federally chartered savings banks; *provided, however*, that to the extent this Agreement is deemed to be governed by and construed under state law, it shall be governed by and construed under the laws of the District of Columbia.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have executed this Security Agreement effective as of the date first set forth above.

**FIRM:**

HOWREY LLP, a District of Columbia limited liability partnership

By: _____
Title: Managing Partner/CEO
Name: Robert F. Ruyak

By: _____
Title: Member, Executive Committee
Name: John Taladay

**LENDER:**

CITIBANK, N.A.

By: _____
Title:
Name: MICHAEL J. McKENNEY, Dir.
CPB/LFG/Southeast Region
(202) 220-3684

**COLLATERAL GRANTORS:**

THE CAPANALYSIS GROUP, LLC, a District of Columbia limited liability company

By: _____
Title: Managing Partner/CEO
Name: Robert F. Ruyak

MAXIAM, LLC, a District of Columbia limited liability company

By: _____
Title: Managing Partner/CEO
Name: Robert F. Ruyak

#554560 v1

7