Alan D. Smith – CSBA #89112
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
ADSmith@perkinscoie.com

Attorneys for Attorneys' Liability Assurance
Society, Inc., A Risk Retention Group

1     **UNITED STATES BANKRUPTCY COURT**

2     **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>HOWREY LLP,<br><br>         Debtor. | CASE NO. 11-31376 (DM)<br><br>(Involuntary Chapter 7)<br><br>**STATEMENT OF ATTORNEYS'**<br>**LIABILITY ASSURANCE SOCIETY,**<br>**INC., A RISK RETENTION GROUP,**<br>**RE CASH COLLATERAL BUDGET**<br><br>Date: August 31, 2011<br>Time: 11:30 a.m. PDT<br>Place: Courtroom 22, 235 Pine Street, 19th<br>Floor, San Francisco, CA, 94101<br>Judge: The Honorable Dennis Montali |

3

4          Attorneys' Liability Assurance Society, Inc., a Risk Retention Group ("*ALAS*") hereby

5     submits this statement regarding the Debtor's proposed budget for use of cash collateral during

6     this case ("*Statement*"). This Statement is accompanied by the Declaration of Mark E. Gralen

7     filed concurrently herewith (the "*Gralen Declaration*").

8          ALAS has no objection to the Debtor's use of cash collateral as requested in the Debtor's

9     Motion of Debtor for Order: (A) Authorizing Use of Cash Collateral on an Interim and Final

10    Basis; (B) Granting Adequate Protection and Related Relief; and (C) Scheduling Final Hearing on

1    Use of Cash Collateral [Dkt. No. 64] (the "***Cash Collateral Motion***").  However, ALAS has

2    significant concerns over the budget attached to the Cash Collateral Motion (the "***Budget***").[1]

3    **Background**

4        For over thirty years prior to the Petition Date, ALAS provided Lawyers' Professional

5    Liability Coverage to the Debtor pursuant to one or more policies, including that certain

6    Professional Indemnity Policy (As Amended Through September 26, 2010) (the "***Malpractice***

7    ***Policy***").  A true and correct copy of the Malpractice Policy is attached to the Gralen Declaration

8    as **Exhibit A**.  The current term of the Malpractice Policy runs from 12:01 a.m. on January 1,

9    2011 through 12:01 a.m. on January 1, 2012.  Generally, the Malpractice Policy provides

10    insurance coverage of up to $50,000,000 per claim and $100,000,000 in the aggregate subject to a

11    self insured retention ("***SIR***") of $1,500,000 per claim and $3,000,000 in the aggregate.[2]

12        In consideration for the Malpractice Policy, the Debtor agreed to pay an annual premium

13    in the amount of $2,745,204.80, subject to certain adjustments as provided under the Malpractice

14    Policy.  Pursuant to a "Premium Payment Election" form executed by Debtor's representatives,

15    the Debtor chose to pay the premium in three installments, including interest.  All of the

16    installments have been made, although the Debtor did not pay the interest component, leaving

17    $19,138.08 still due and owing.[3]

---

[1] As of the time of drafting this Statement, the Debtor, the Creditors' Committee, and the Debtor's principal secured creditors are apparently in the process of attempting to negotiate amendments to the Budget, including an extension that would make the Budget run for a number of months through confirmation of a plan.  Not having seen those amendments, ALAS reserves all rights if the Budget changes from what was filed with the Cash Collateral Motion.

[2] This is a general discussion of the coverage limits and retention amounts which is subject, in all respects, to the terms of the Malpractice Policy.  For example, there are other provisions under which there is a minimum SIR of $100,000 for every claim, no matter how many, notwithstanding payment of the $3,000,000 overall SIR.

[3] ALAS reserves all rights with respect to the underpayment of the premium installment due August 1.  ALAS assumes failure to pay the outstanding interest was an oversight and that that amount will be paid shortly.

Case: 11-31376   Doc# 276   Filed: 08/26/11   Entered: 08/26/11 16:09:32   Page 2 of 6
77384-0001/LEGAL21404186.2

**Pending Claims**

2      ALAS is aware of at least two claims made against the Debtor and its European affiliates,

3      one from the Debtor's United Kingdom operations (the "***U.K. Claim***") and one from its Belgian

4      operations (the "***Belgian Claim***").

5      Defense counsel in the Belgian Claim, previously retained by Howrey with ALAS's

6      approval, is Jones Day. It appears there is a receiver or administrator in place in Belgium

7      overseeing the liquidation of the Belgian office and assets; although the process has not been

8      explained there may be other insurance through the Belgium bar that would be primary to the

9      ALAS coverage. ALAS understands that the involved lawyer from Howrey's former office in

10      Belgium is seeking to obtain approval from that primary carrier for Jones Day to act as defense

11      counsel, and to obtain payment of recent defense costs. To ALAS's knowledge, however, at this

12      point the carrier on that policy has not approved Jones Day or paid those costs, and ALAS is not

13      aware of any arrangements to assure payment of such costs going forward, either from that carrier

14      or from Howrey.

15      There does not appear to be any stay or other bar to the claimant proceeding with the U.K.

16      Claim, and there does not appear to be any other source of payment for defense of the U.K.

17      Claim. As set forth in more detail in the Gralen Declaration, there are impending deadlines for

18      responses to a "pre-litigation letter" respecting the U.K. Claim, the Debtor has not funded the

19      retainer necessary to get its chosen counsel (or any other counsel) active in the preparation of the

20      pre-litigation letter, or otherwise done anything significant necessary to prepare properly for the

21      defense of the U.K. Claim. Failure to conduct such a defense could well lead to sanctions or a

22      default judgment even though the claim may well be quite defensible.

23      There are also several pending claims arising out of the Debtor's U.S. operations.

24      Although those claims are stayed by the § 362 automatic stay, given the nature of the Debtor's

Case: 11-31376   Doc# 276   Filed: 08/26/11   Entered: 08/26/11 16:09:32   Page 3 of 6
77384-0001/LEGAL21404186.2

1     business, it is almost certain that any prospective plaintiff in a malpractice claim against the

2     Debtor could assert claims against various of Debtor's former partners, of counsel, associates, and

3     other attorneys ("**Howrey Attorneys**") seeking essentially the same relief.  Depending on the

4     nature of the conduct or misconduct alleged, Howrey Attorneys acting as such may be additional

5     assureds under the Malpractice Policy.  The automatic stay will not prevent any such prospective

6     plaintiff from commencing an action against the nondebtor Howrey Attorneys involved in the

7     matter.

8           In addition, given the nature of the Debtor's business and the adversarial nature of former

9     client relationships with law firms in dissolution, it is likely there will be other claims filed

10    against the Debtor and its affiliates, or against various Howrey Attorneys, that may be subject to

11    coverage under the Malpractice Policy.

12                                    **Consequences of Nonpayment**

13          Under the Malpractice Policy and prior policies issued by ALAS to the Debtor,[4] the

14    Debtor has obligations with respect to each claim asserted against it, its affiliates, or any Howrey

15    Attorneys:  to satisfy the SIR, exercise its best efforts to defend the claim, cooperate with ALAS

16    and keep it fully informed in connection with such defense, and otherwise act in accordance with

17    the terms of the applicable malpractice policy.  If the Debtor fails to fulfill those obligations with

18    respect to any claim, the result is that ALAS has no further obligation to Debtor or its other

19    assureds (affiliates and Howrey Attorneys) relating to that claim.

20          Other than with respect to the U.K. Claim as described above and in the Gralen

21    Declaration, to date the Debtor has apparently not incurred significant obligations for defense

22    costs on account of any claim.  Thus, the Debtor may not yet be in breach of the relevant

23    malpractice policy on account of any of the claims other than the U.K. Claim.  But there are

---

[4] Some of the pending claims are covered by earlier policies issued by ALAS with substantially similar terms.

77384-0001/LEGAL21404186.2

1    current defense obligations in the U.K., and as far as ALAS is aware there is no provision

2    anywhere in the Budget for payment of any defense costs or other amounts up to the SIR for any

3    claim, including the U.K. Claim.  Further, it is unrealistic to think there will be no expenses

4    attributable to any of the other pending claims during the multi-month period covered by the

5    Budget.

6           Whether or not to satisfy SIR obligations with respect to a particular claim is, of course, a

7    decision the Debtor (or perhaps the Court) has to make.  ALAS files this Statement to make it

8    clear that if the Debtor fails to honor those obligations, <u>ALAS</u> has no further obligation with

9    respect to that claim and the claim is effectively a wholly uninsured claim.  ALAS is in the

10   process of preparing a motion requesting relief from the automatic stay so that ALAS can

11   commence an arbitration proceeding in accordance with Clause 11 of the Malpractice Policy.

12   The contemplated arbitration proceeding will request clarification of the parties' remaining

13   obligations under the Malpractice Policy, if any, after the Debtor fails to satisfy its duty to defend

14   the U.K. claim and perhaps other claims.

15                                              **<u>Conclusion</u>**

16          ALAS does not object generally to the Cash Collateral Motion, but submits that the

17   Budget must include provision for payment of reasonably anticipated defense and other costs

18   attributable to the U.K. Claim and to other pending and future claims which are subject to an SIR.

19   Failure to include those provisions in the Budget will leave Debtor, its affiliates, and the Howrey

20   Attorneys exposed to uninsured malpractice claims.

77384-0001/LEGAL21404186.2

DATED:  August 26, 2011                    **PERKINS COIE** LLP


By: _____/s/ Alan D. Smith_____
    Alan D. Smith, – CSBA #89112
    ADSmith@perkinscoie.com

Attorneys for Attorneys' Liability Assurance
Society, Inc., A Risk Retention Group

Case: 11-31376   Doc# 276   Filed: 08/26/11   Entered: 08/26/11 16:09:32   Page 6 of 6
77384-0001/LEGAL21404186.2