PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Kelley A. Cornish (Admitted Pro Hac Vice)
*kcornish@paulweiss.com*
Diane Meyers (Admitted Pro Hac Vice)
*dmeyers@paulweiss.com*
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

PEITZMAN, WEG & KEMPINSKY LLP
Lawrence Peitzman (State Bar No. 62379)
*lpeitzman@pwkllp.com*
2029 Century Park East, Suite 3100
Los Angeles, California 90067
Telephone: (310) 552-3100
Facsimile: (310) 552-3101

Attorneys for Citibank, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>Howrey LLP,<br><br>          Debtor | CASE NO. 11-31376-DM<br><br>Chapter 11<br><br>**DECLARATION OF G. MICHAEL VERDISCO IN SUPPORT OF THE MOTION OF CITIBANK, N.A. FOR ENTRY OF AN ORDER CONVERTING THE DEBTOR'S CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, OR, IN THE ALTERNATIVE, APPOINTING A CHAPTER 11 TRUSTEE**<br><br>Hearing Date: September 21, 2011<br>[Requested]<br>Time: 9:30 a.m.<br>Place: Courtroom 22<br>       235 Pine Street, 19th Floor<br>       San Francisco, CA 94101<br>Judge: Honorable Dennis Montali |

Doc#: US1:7349574v3

I, G. Michael Verdisco, declare as follows:

1. I am a Director at Gulf Atlantic Capital Corporation ("Gulf Atlantic"). On March 21, 2011, Gulf Atlantic was retained by the law firm of Blank Rome LLP to serve as its financial advisor in connection with Blank Rome's representation of Citibank, N.A. ("Citibank") in Citibank's capacity as a secured lender to Howrey LLP ("Howrey" or the "Debtor"). Subsequently, Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") replaced Blank Rome as counsel to Citibank, and Gulf Atlantic thereafter executed an engagement agreement with Paul Weiss on May 3, 2011 to serve as its financial advisor. I have been actively involved in all aspects of Gulf Atlantic's engagement since March 21, 2011 and have been involved in many of the discussions among Citibank, Paul Weiss, the Debtor and the Creditors' Committee[1] since that time. As a result, I am familiar with the wind-down of the Debtor's business, the Debtor's current financial condition and the negotiations that have occurred between Citibank, the Creditors' Committee and the Debtor since Gulf Atlantic's initial engagement.

2. Since its retention, Gulf Atlantic has, among other things, (i) reviewed, and provided input with respect to, the Debtor's wind-down budgets, including staffing and payroll, (ii) reviewed, and provided input with respect to, the Debtor's weekly cash flow projections, including receivable collections and disbursements, (iii) prepared estimates of Citibank's recovery, and (iv) monitored the Debtor's actual cash disbursements and receipts.

3. I believe the Debtor has incurred substantial diminution in the value of its estate since the Petition Date. Specifically, the Debtor has incurred approximately $5.8 million in administrative costs since the commencement of the case. However, this is a liquidating case

---

[1] Capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the memorandum of points and authorities, filed concurrently herewith.

Doc#: US1:7349574v3

and the Debtor is essentially no longer operating or generating any new accounts receivable to fund these substantial costs. Accordingly, all of the Debtor's administrative costs are being funded from Citibank's cash collateral – cash and ongoing collections of accounts receivable – which means there has <u>necessarily</u> been a substantial and continuing diminution in the value of the Debtor's estate.

4. Similarly, I believe that Citibank's interest in its collateral is not adequately protected. The Debtor's records indicate that the aggregate amount of its uncollected accounts receivable from the Hourly Cases, together with its cash and cash equivalents (excluding certain restricted cash, as well as foreign cash and receivables that it may not be able to repatriate back to the U.S.), aggregate approximately $37.9 million as of September 14, 2011, which is <u>less</u> than the remaining principal amount of Citibank's secured debt even before discounting such accounts receivable for the Debtor's likelihood of collection. In fact, I believe the Debtor is unlikely to collect a substantial portion of its remaining accounts receivable, especially in light of the overwhelming percentage of such receivables that are more than 91 days old.. I believe this is most likely because the Debtor was able to successfully monetize its higher-quality accounts receivable early in the case, which has now left it with receivables that will likely be more difficult to monetize. Indeed, $32.7 million of the Debtor's $33.3 million in total outstanding U.S. accounts receivable, or approximately 98.2%, are more than 91 days old.

5. In addition, the Debtor has consistently failed to meet its projected estimates of future collections of accounts receivable in Hourly Cases, and the rate of such collections has precipitously declined since commencement of the Chapter 11 Case. Indeed, since the Petition Date, the Debtor has only actually collected approximately 50% of its projected collections over such period.

6. I also believe that any recovery on the Debtor's other assets, including the Contingent Cases, is too speculative to ascribe any significant value to for purposes of assessing adequate protection of Citibank's interest at this juncture. Recent events with respect to one of the Contingent Cases – *In re Southeastern Milk Antitrust Litigation* – Master File No. 2:08-MD-1000 (E.D. Tenn.) ("SE Milk") – demonstrate the unpredictable nature of such cases, and accordingly the uncertainty regarding the amount and timing of the Debtor's ultimate recovery with respect thereto. Upon information and belief, on July 12, 2011, approximately one month before the first scheduled trial date, the class plaintiffs in SE Milk filed a motion for preliminary approval of a proposed settlement with Dean Foods, Inc. ("Dean Foods"), one of the principal defendants in SE Milk (the "Dean Settlement"). Pursuant to the Dean Settlement, Dean Foods agreed to pay the class plaintiffs (i) $60 million upon court-approval of the Dean Settlement and (ii) $20 million per year for the following four years thereafter, for total settlement value of approximately $140 million.

7. Unfortunately, upon information and belief the District Court in SE Milk thereafter issued an order decertifying a portion of the plaintiff class, leading Dean Foods to move to vacate the Dean Settlement on August 5, 2011. Upon information and belief, the District Court entered an order vacating the Dean Settlement on August 19, 2011. As a result of these and other case developments, the District Court has delayed commencement of the SE Milk trial indefinitely. These recent events demonstrate the speculative and uncertain nature of Howrey's possible future recovery from such Contingent Cases, and why it is impossible to ascribe any value to such cases at this juncture.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this ___ day of September, 2011.

_____
G. Michael Verdisco

Doc#: US1:7349574v3

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15 day of September, 2011.

_____
G. Michael Verdisco

Doc#: US1:7349574v1

- 6 -