PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Kelley A. Cornish (Admitted Pro Hac Vice)
*kcornish@paulweiss.com*
Diane Meyers (Admitted Pro Hac Vice)
*dmeyers@paulweiss.com*
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

PEITZMAN, WEG & KEMPINSKY LLP
Lawrence Peitzman (State Bar No. 62379)
*lpeitzman@pwkllp.com*
2029 Century Park East, Suite 3100
Los Angeles, California 90067
Telephone: (310) 552-3100
Facsimile: (310) 552-3101

Attorneys for Citibank, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>Howrey LLP,<br><br>        Debtor | CASE NO. 11-31376-DM<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT OF THE MOTION OF CITIBANK, N.A. FOR ENTRY OF AN ORDER CONVERTING THE DEBTOR'S CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, OR, IN THE ALTERNATIVE, APPOINTING A CHAPTER 11 TRUSTEE**<br><br>Hearing Date: September 21, 2011 [Requested]<br>Time: 9:30 a.m.<br>Place: Courtroom 22<br>       235 Pine Street, 19th Floor<br>       San Francisco, CA 94101<br>Judge: Honorable Dennis Montali |

Doc#: US1:7341024v7

## TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| JURISDICTION | 2 |
| RELIEF REQUESTED | 3 |
| BACKGROUND | 3 |
| BASIS FOR RELIEF REQUESTED | 5 |
| I. CAUSE EXISTS TO CONVERT THE CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE | 5 |
| II. THE CHAPTER 11 CASE SHOULD BE CONVERTED TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE BECAUSE CITIBANK DOES NOT CONSENT TO THE DEBTOR'S CONTINUED USE OF ITS CASH COLLATERAL IN CHAPTER 11 AND THE DEBTOR CANNOT PROVIDE ADEQUATE PROTECTION | 9 |
| NOTICE | 12 |
| CONCLUSION | 13 |

Doc#: US1:7341024v7

- i -

Memorandum of Points and Authorities in Support of the Motion To Convert
Case: 11-31376   Doc# 316   Filed: 09/15/11   Entered: 09/15/11 17:49:20   Page 2 of 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re 495 Cent. Park Ave. Corp.*,
  136 B.R. 626 (Bankr. S.D.N.Y. 1992) ................................................................................10

*In re AdBrite Corp.*,
  290 B.R. 209 (Bankr. S.D.N.Y. 2003) ..................................................................................6

*In re BH S & B Holdings, LLC*,
  439 B.R. 342 (Bankr. S.D.N.Y. 2010) ...............................................................................6, 7

*In re C-TC 9th Ave. P'ship*,
  113 F.3d 1304 (2d Cir. 1997) ................................................................................................6

*Carolin Corp.* v. *Miller*,
  886 F.2d 693 (4th Cir. 1989) .................................................................................................6

*In re Ctr. Wholesale, Inc.*,
  788 F.2d 541 (9th Cir. 1986) ...............................................................................................10

*In re Ho*,
  274 B.R. 867 (9th Cir. B.A.P. 2002) .....................................................................................8

*In re Hubbard Power & Light*,
  202 B.R. 680 (Bankr. E.D.N.Y. 1996) ................................................................................10

*Loop Corp.* v. *U.S. Trustee*,
  379 F.3d 511 (8th Cir. 2004) *cert. denied*, 543 U.S. 1055 (2005) ........................................7

*In re Martin*,
  761 F.2d 472 (8th Cir. 1985) ...............................................................................................10

*In re O'Connor*,
  808 F.2d 1393 (10th Cir. 1987) .............................................................................................9

*In re Prisco Props., LLC*,
  No. 10-21719, 2010 WL 4412095 (Bankr. D.N.J. Nov. 1, 2010) ..........................................5

*In re Sharon Steel Corp.*,
  159 B.R. 165 (Bankr. W.D. Pa. 1993) .................................................................................10

*In re Staff Inv. Co.*,
  146 B.R. 256 (Bankr. E.D. Cal. 1992) ..................................................................................8

*StellasOne Bank* v. *Lakewatch LLC (In re Park)*,
 436 B.R. 811 (Bankr. W.D. Va. 2010) ...........................................................................6

*In re Swedeland Dev. Grp., Inc.*,
 16 F.3d 552 (3d Cir. 1994) ...........................................................................................9, 10

*In re Worldcom, Inc.*,
 304 B.R. 611 (Bankr. S.D.N.Y. 2004) ..........................................................................9

**STATUTES**

11 U.S.C. § 105(a) ................................................................................................................3

11 U.S.C. § 363 ................................................................................................................9, 10

11 U.S.C. § 502 ....................................................................................................................9

11 U.S.C. § 721 ....................................................................................................................9

11 U.S.C. § 1104 ..................................................................................................................2

11 U.S.C. § 1112 ..........................................................................................................passim

28 U.S.C. §§ 157 and 1334(b) .............................................................................................3

28 U.S.C. § 157(b) ...............................................................................................................3

**OTHER AUTHORITIES**

7 COLLIER ON BANKRUPTCY § 1112.04[7] .........................................................................8

Fed. R. Bank. P. 1017(f) ...................................................................................................1, 3

Citibank, N.A. ("Citibank"), a secured creditor in the case of the above-captioned debtor (the "Debtor"), by and through its undersigned counsel, hereby submits this memorandum of points and authorities in support of its motion, pursuant to sections 105(a), 1104(a) and 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 1017(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Order"), substantially in the form attached hereto as Exhibit A, converting the above-captioned case (the "Chapter 11 Case") to one under chapter 7 of the Bankruptcy Code, or alternatively, appointing a chapter 11 trustee.[1] In support of the motion (the "Motion"), Citibank relies upon the declaration of G. Michael Verdisco (the "Verdisco Declaration") filed concurrently herewith, and respectfully represents as follows:

## PRELIMINARY STATEMENT

Over the past several months since the commencement of the Chapter 11 Case, the Debtor, Citibank and the Official Committee of Unsecured Creditors (the "Creditors' Committee") have engaged in extensive, good faith negotiations regarding the terms of a consensual plan to wind-down the Debtor's estate in chapter 11. Throughout these negotiations, Citibank has endeavored to work cooperatively with the Debtor to maximize the value of its estate, and, to that end, approximately $5.8 million of Citibank's cash collateral has to date been used by the Debtor to fund administration of the Chapter 11 Case. Unfortunately, despite the parties' good faith efforts, they have been unable to agree on the terms of a long-term budget that would govern the Debtor's use of Citibank's cash collateral for such wind-down efforts. With the parties at an impasse, Citibank is compelled to seek conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or alternatively, the appointment of a chapter 11 trustee, in order to minimize ongoing administrative costs (funded from Citibank's cash collateral) and to facilitate the maximization of recoveries for the benefit of the Debtor's estate.

---

[1] The proposed Order attached hereto as Exhibit A only addresses conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. If, alternatively, the Court determines to appoint a chapter 11 trustee, Citibank will submit a revised form of order reflecting such relief.

Doc#: US1:7341024v7

- 1 -

As the Court is well aware, this is a liquidating case; Howrey LLP went into dissolution on March 15, 2011, almost all of its attorneys have joined new law firms, and the Debtor has not generated any material new revenue since the Petition Date. Nevertheless, the Debtor has incurred substantial administrative expenses since the Petition Date. The Debtor has also consistently failed to meet its projected collections of account receivables since the Petition Date, and has experienced a precipitous decline in such collections over the past several weeks. Finally, the vast bulk of the Debtor's remaining assets, which are principally uncollected accounts receivable from cases that the Debtor billed on an hourly basis (the "Hourly Cases") or on a contingent fee basis (the "Contingent Cases"), can be effectively liquidated by a trustee.

In light of the substantial diminution in the value of the Debtor's estate that has occurred to date without any reasonable commensurate benefit, Citibank does not consent to the use of its cash collateral beyond September 23, 2011, when the Supplemental Cash Collateral Order (as defined below) expires by its own terms. Accordingly, Citibank submits that cause exists to convert the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or alternatively, that it would be in the best interests of the Debtor's creditors and estate to appoint a chapter 11 trustee.[2]

**JURISDICTION**

This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory bases for the relief requested herein are sections 105(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017(f).

---

[2] Section 1104(a) of the Bankruptcy Code provides, in relevant part, that the Court "shall order the appointment of a trustee – . . . (3) if grounds exist to convert . . . the case under section 1112, but the court determines that the appointment of a [chapter 11] trustee . . . is in the best interests of creditors and the estate." 11 U.S.C. § 1104(a)(3). As set forth herein, "cause" exists under section 1112 to convert the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. If, however, the Court finds that the appointment of a chapter 11 trustee would instead be in the best interests of creditors and the estate, Citibank hereby alternatively requests such relief.

Doc#: US1:7341024v7

- 2 -

## RELIEF REQUESTED

Citibank requests entry of an Order, substantially in the form attached hereto as Exhibit A, converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or alternatively, appointing a chapter 11 trustee.

## BACKGROUND

The Debtor is a limited liability partnership organized under the laws of the District of Columbia. On April 11, 2011 (the "Filing Date"), certain putative creditors of the Debtor filed an involuntary petition against the Debtor under chapter 7 of the Bankruptcy Code (the "Involuntary Case") in the Bankruptcy Court for the Northern District of California (the "Court"). On June 6, 2011, an order was entered converting the Involuntary Case to a voluntary case under chapter 11 of the Bankruptcy Code (the "Petition Date").

The Debtor is a party to: (a) the Fourth Amended and Restated Secured Loan Agreement dated as of October 19, 2010 by and between Howrey and Citibank, as Lender, as amended by a First Amendment thereto dated as of December 3, 2010, and as further amended by a Second Amendment thereto dated as of December 20, 2010 (as so amended, the "Pre-Petition Financing Agreement"); (b) the Fourth Amended and Restated Security Agreement dated as of October 19, 2010 made by and among Howrey, The CapAnalysis Group, LLC ("CAG"), and Maxiam, LLC ("Maxiam"), as Grantors, in favor of Citibank (the "Pre-Petition Security Agreement"); (c) the Continuing Guaranty of Firm Affiliate (General Indebtedness) dated as of October 19, 2010 made by CAG in favor of Citibank (the "CAG Continuing Guaranty"); (d) the Continuing Guaranty of Firm Affiliate (General Indebtedness) dated as of October 19, 2010 made by Maxiam in favor of Citibank (the "Maxiam Continuing Guaranty", and together with the CAG Continuing Guaranty, collectively, the "Guaranties"); (e) the New $20,000,000 Note dated as of December 20, 2010 for $20,000,000 executed by Howrey in favor of Citibank; (f) the 364-Day Note dated as of December 20, 2010 for $60,000,000 executed by Howrey in favor of Citibank; (g) each other "Note" (as defined in the Pre-Petition Financing Agreement) from time to time issued by Howrey in favor of Citibank; and (h) each other "Loan

Doc#: US1:7341024v7

- 3 -
Memorandum of Points and Authorities in Support of the Motion To Convert
Case: 11-31376   Doc# 316   Filed: 09/15/11   Entered: 09/15/11 17:49:20   Page 7 of 17

Document" as defined in the Pre-Petition Financing Agreement (collectively, the "Pre-Petition Financing Documents").

Under the Pre-Petition Financing Documents, certain loans, advances and other extensions of credit were made by Citibank to Howrey (including the issuance of Letters of Credit for the account of Howrey). As of the Petition Date, the principal amount of loans outstanding under the Pre-Petition Financing Documents was approximately $49.1 million, together with all interest, fees, undrawn Letters of Credit, reimbursement obligations in respect of drawn Letters of Credit, swap obligations and other amounts owing under the Pre-Petition Financing Documents (the "Pre-Petition Debt").

Pursuant to the terms of the Pre-Petition Financing Documents, the Pre-Petition Debt is secured by, among other things, liens and security interests (the "Pre-Petition Liens") granted by the Debtor and the other obligors on substantially all of their personal property assets, including, without limitation, billed and unbilled accounts receivable, including the Hourly Cases and Contingent Cases, and disbursements and all proceeds, products and/or property received on account of or in satisfaction thereof, all furniture, furnishings, fixtures, equipment and other tangible personal property, the Citibank Accounts maintained with Citibank and all funds held therein and all certificates and instruments, if any, representing or evidencing same (collectively, the "Pre-Petition Collateral").

On June 15, 2011, the Court entered an interim order authorizing the Debtor's use of Citibank's cash collateral, pursuant to the agreement between Citibank and the Debtor on the terms and conditions set forth therein (the "Interim Cash Collateral Order"). The Interim Cash Collateral Order included, among other things, an agreed-upon budget that set forth the amount and type of the Debtor's permitted expenditures, as well as the Debtor's estimate of revenues expected to be collected during the period from the Petition Date through August 26, 2011 (as amended, the "Budget"). During this initial twelve-week period following commencement of the Chapter 11 Case, Citibank, the Debtor and the Creditors' Committee engaged in extensive and constructive negotiations regarding a long-term budget that could be approved as part of a

Doc#: US1:7341024v7

- 4 -

final cash collateral order.  However, the parties were not able to agree on the terms of an extended budget prior to August 26th, the date when the Interim Cash Collateral Order expired by its own terms.  To permit the negotiations regarding a longer-term budget and chapter 11 wind-down strategy to continue, the parties quickly agreed to a three-week extension of the Budget and the Debtor's use of cash collateral.  On September 1, 2011, the Court entered an order approving this extended interim Budget (the "<u>Supplemental Interim Cash Collateral Order</u>").  The Debtor's use of cash collateral pursuant to the Supplemental Interim Cash Collateral Order expires by its terms on September 23, 2011.

## **BASIS FOR RELIEF REQUESTED**

I. <u>Cause Exists to Convert the Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code</u>

Section 1112(b)(1) of the Bankruptcy Code provides that the Court shall, upon request of a party in interest and after notice and a hearing, and if there are no unusual circumstances establishing that conversion is not in the best interests of creditors and the estate, convert a case under chapter 11 of the Bankruptcy Code to a case under chapter 7 of the Bankruptcy Court for cause.  *See* 11 U.S.C. § 1112(b)(1); *see generally In re Prisco Props., LLC*, No. 10-21719, 2010 WL 4412095, at *3 (Bankr. D.N.J. Nov. 1, 2010) (citation omitted) (noting that the 2005 amendments to the Bankruptcy Court were "intended to make it more difficult to defeat a request for conversion or dismissal").[3]

Once "cause" is shown, the burden of proof shifts to the party objecting to the requested relief "to either:  (a) demonstrate that unusual circumstances exist that would make dismissal or conversion unfavorable to the creditors or estate; or (b) establish that a plan will be confirmed and that the act or omission that forms the basis for the aforementioned cause to dismiss or convert will be cured within a reasonable time."  *StellasOne Bank* v. *Lakewatch LLC*

---

[3] For the Court's convenience, a copy of the unreported decision in *In re Prisco Properties, LLC* is attached hereto as <u>Exhibit B</u>.

Doc#: US1:7341024v7

- 5 -

*(In re Park)*, 436 B.R. 811, 815 (Bankr. W.D. Va. 2010) (citation omitted); *see also* 11 U.S.C. § 1112(b)(2).

The list of what constitutes "cause" includes, but is not limited to, the sixteen factors set forth in section 1112(b)(4) of the Bankruptcy Code. *See* 11 U.S.C. § 1112(b)(4)(A) to (P). In considering a motion filed pursuant to section 1112(b), the Court need not limit its review to the grounds set forth in the statute and may, using its equitable powers, look to other factors that justify granting conversion or dismissal of a case. *See*, *e.g.*, *Carolin Corp.* v. *Miller*, 886 F.2d 693, 699 (4th Cir. 1989) ("The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.") (citation and internal quotation omitted); *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010). In addition, the Court has "wide discretion" in determining whether cause exists under section 1112(b). *In re BH S & B*, 439 B.R. at 346 (citations omitted).

The first statutory example of what can constitute cause is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). Citibank submits that cause overwhelmingly exists under this subsection, and that conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is therefore warranted.

In determining whether the first prong of this element is present, the Court "must make a full evaluation of the present condition of the estate, [and] not merely look at the debtor's financial statements." *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) (citation omitted). A continuing loss or diminution of the estate "may be tolerated where reorganization is feasible and the pattern of unprofitable operations can be reversed as a result of a successful reorganization. The debtor, however, should not continue in control of the business beyond a point at which reorganization no longer remains realistic." *Id.*

In the instant case, it is beyond dispute that the first prong of this test is satisfied. The Debtor has incurred approximately $5.8 million in administrative costs since the

Doc#: US1:7341024v7

- 6 -
Memorandum of Points and Authorities in Support of the Motion To Convert

commencement of the case. However, this is a liquidating case and the Debtor is essentially no longer operating or generating any new accounts receivable to fund these substantial costs. Accordingly, all of the Debtor's administrative costs are being funded from Citibank's cash collateral – cash and ongoing collections of accounts receivable – which means there has <u>necessarily</u> been a substantial and continuing diminution in the value of the Debtor's estate.

In addition, the Debtor has consistently failed to meet its projected estimates of future collections of accounts receivable in Hourly Cases, and the rate of such collections has precipitously declined since commencement of the Chapter 11 Case. This is most likely because the Debtor was able to successfully monetize its higher-quality accounts receivable early in the case, which has now left it with receivables that will likely be more difficult to monetize. Indeed, $32.7 million of the Debtor's $33.3 million in total outstanding U.S. accounts receivable, or approximately 98.2%, are more than 91 days old.

Finally, and as discussed in greater detail below, the timing and amount of the Debtor's recovery on the Contingent Cases remains speculative at this juncture. Moreover, since the Petition Date, the prospect of any substantial and immediate recovery from the Contingent Cases has diminished due to certain recent adverse rulings and procedural delays that could potentially impair the Debtor's ultimate recoveries in such cases.

The second prong of section 1112(b)(4)(A) – absence of a reasonable likelihood of rehabilitation – is unquestionably satisfied here. *See*, *e.g.*, *Loop Corp.* v. *U.S. Trustee*, 379 F.3d 511, 515-16 (8th Cir. 2004) *cert. denied*, 543 U.S. 1055 (2005); *In re BH S & B*, 439 B.R. at 347-48 (citing cases and noting those following *Loop*). Howrey went into dissolution on March 15, 2011, and the Debtor converted the Involuntary Case to this Chapter 11 Case for the sole purpose of liquidating its remaining assets, most notably the Hourly Cases and the Contingent Cases, and thereafter distributing those assets in an orderly and efficient manner under chapter 11 of the Bankruptcy Code. The Debtor has essentially ceased operating and all but a few of its attorneys have joined new law firms. Accordingly, there is no question that the

Doc#: US1:7341024v7

- 7 -

Debtor will not be able to rehabilitate its business, and therefore the second prong of section 1112(b)(4)(A) is satisfied.

Once the Court determines that cause exists, it must determine whether conversion or dismissal is in the best interest of creditors and the Debtor's estate. *See In re Ho*, 274 B.R. 867, 877 (9th Cir. B.A.P. 2002) ("A court is obligated to choose between [conversion and dismissal] based on the best interests of the creditors and the estate."). Courts have considered the following factors in connection with such a determination:

1. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.

3. Whether the debtor would simply file a further case upon dismissal.

4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

5. In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

6. Whether any remaining issues would be better resolved outside the bankruptcy forum.

7. Whether the estate consists of a "single asset."

8. Whether the debtor has engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

9. Whether a plan has been confirmed and whether any property remains in the estate to be administered.

10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

7 COLLIER ON BANKRUPTCY § 1112.04[7]; *see also In re Staff Inv. Co.*, 146 B.R. 256, 260 (Bankr. E.D. Cal. 1992) ("The standard for choosing conversion or dismissal based on the best interest of creditors and the estate implies a balancing test to be applied through case-by-case analysis. In the end, the determination is a matter for sound judicial discretion.") (citation and quotation omitted).

Doc#: US1:7341024v7

- 8 -

For many reasons, conversion, and not dismissal, is unquestionably in the best interests of the Debtor's estate. For example, certain of the Debtor's largest unsecured creditors are its previous landlords for its now closed offices. If the Chapter 11 Case were dismissed, the Debtor would lose the benefit of the statutory cap in section 502(b)(6) of the Bankruptcy Code to limit such landlords' lease rejection claims, which would have a substantial and deleterious impact on recoveries for all other unsecured creditors. In addition, the Debtor's estate may have potential claims and causes of action against a variety of parties. A trustee would be in the best position to review and investigate such claims and, if appropriate, prosecute them for the benefit of all creditors. Accordingly, conversion, and not dismissal, is in the best interest of the Debtor's creditors and its estate.

Based on the foregoing, and given the certainty of continuing and substantial diminution in the value of the Debtor's estate, cause exists under section 1112(b)(1) of the Bankruptcy Code to convert the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Citibank also requests that any chapter 7 trustee appointed in this case be authorized to continue to operate the Debtor pursuant to section 721 of the Bankruptcy Code, at least for a short transition period, to ensure an orderly wind-down of the Debtor's affairs.

II. <u>The Chapter 11 Case Should be Converted to a Case Under Chapter 7 of the Bankruptcy Code Because Citibank Does Not Consent to the Debtor's Continued Use of its Cash Collateral in Chapter 11 and the Debtor Cannot Provide Adequate Protection</u>

Section 363(c)(4) of the Bankruptcy Code provides that the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control." 11 U.S.C. § 363(c)(4). Additionally, section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . to be used . . . by the trustee, the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The purpose of adequate protection is to preserve the creditor's position and to protect the secured creditor from diminution of the value of its interest in collateral during the bankruptcy process. *In re Worldcom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004); *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994).

Doc#: US1:7341024v7

- 9 -

Memorandum of Points and Authorities in Support of the Motion To Convert
Case: 11-31376  Doc# 316  Filed: 09/15/11  Entered: 09/15/11 17:49:20  Page 13 of 17

Courts determine adequate protection for purposes of the Bankruptcy Code on a flexible "case-by-case" basis. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552 at 564; *see also In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987) (stating that "courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis"); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) ("[T]o encourage reorganization, the courts must be flexible in applying the adequate protection standard.").

Adequate protection is necessary "to ensure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564; *see also In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interests.") (quoting *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992)); *In re Sharon Steel Corp.*, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993) ("The purpose of providing 'adequate protection' is to [e]nsure that a secured creditor receives in value essentially what he bargained for."). The Debtor bears the burden of proof on the issue of whether a secured creditor is adequately protected. *See* 11 U.S.C. § 363(p)(1); *In re Ctr. Wholesale, Inc.*, 788 F.2d 541, 544 (9th Cir. 1986) ("[T]he trustee (debtor in possession) has the burden of proof on the issue of adequate protection.").

As noted above, pursuant to the Supplemental Cash Collateral Order, the Debtor's consensual use of cash collateral expires by its terms on September 23, 2011. While the Debtor, Citibank and the Creditors' Committee have engaged in extensive and good faith negotiations regarding the Debtor's continued use of Citibank's cash collateral pursuant to a long-term wind-down budget, the parties were unfortunately unable to reach an agreement. As a result, upon expiration of the Supplemental Cash Collateral Order, Citibank will no longer consent to the Debtor's use of its cash collateral, and therefore the Debtor will not be permitted to use Citibank's cash collateral, and therefore will not be able to administer its estate, unless it can provide adequate protection.

Doc#: US1:7341024v7

- 10 -

Memorandum of Points and Authorities in Support of the Motion To Convert
Case: 11-31376    Doc# 316    Filed: 09/15/11    Entered: 09/15/11 17:49:20    Page 14 of 17

As explained in the accompanying Verdisco Declaration, Citibank's interest in the collateral is not adequately protected. *First*, the Debtor estimates that the aggregate amount of its uncollected accounts receivable from the Hourly Cases, together with its cash and cash equivalents (excluding certain restricted cash, as well as foreign cash and receivables that it may not be able to repatriate back to the U.S.), aggregate approximately $37.9 million, which is <u>less</u> than the remaining principal amount of Citibank's secured debt even before discounting such accounts receivable for the Debtor's likelihood of collection. In fact, the Debtor is unlikely to collect a substantial portion of its remaining accounts receivable, especially in light of the overwhelming percentage of such receivables that are more than 91 days old. Indeed, since the Petition Date, the Debtor has only actually collected approximately 50% of its <u>projected</u> collections over such period.

*Second*, Citibank believes any recovery on the Debtor's other assets, including the Contingent Cases, is too speculative to ascribe any significant value to for purposes of assessing adequate protection of Citibank's interest at this juncture. By way of background, the Contingent Cases are pending lawsuits that the Debtor, prior to its dissolution, prosecuted on a contingent fee basis, and which have now largely been transferred to the new law firms of Howrey's former partners. Recent events with respect to one of the Contingent Cases – *In re Southeastern Milk Antitrust Litigation* – Master File No. 2:08-MD-1000 (E.D. Tenn.) ("<u>SE Milk</u>") – demonstrate the unpredictable nature of such cases, and accordingly the uncertainty regarding the amount and timing of the Debtor's ultimate recovery with respect thereto. On July 12, 2011, approximately one month before the first scheduled trial date, the class plaintiffs in SE Milk filed a motion for preliminary approval of a proposed settlement with Dean Foods, Inc. ("<u>Dean Foods</u>"), one of the principal defendants in SE Milk (the "<u>Dean Settlement</u>"). Pursuant to the Dean Settlement, Dean Foods agreed to pay the class plaintiffs (i) $60 million upon court-approval of the Dean Settlement and (ii) $20 million per year for the following four years thereafter, for total settlement value of approximately $140 million.

Doc#: US1:7341024v7

- 11 -

1  Unfortunately, the District Court in SE Milk thereafter issued an order decertifying a portion of the plaintiff class, leading Dean Foods to move to vacate the Dean Settlement on August 5, 2011. The District Court entered an order vacating the Dean Settlement on August 19, 2011. As a result of these and other case developments, the District Court has delayed commencement of the SE Milk trial indefinitely. These recent events demonstrate the speculative and uncertain nature of Howrey's possible future recovery from such Contingent Cases, and why it is impossible to ascribe any value to such cases at this juncture.

Based on the foregoing, the Debtor cannot carry its burden to prove that Citibank is adequately protected, and therefore the Debtor should not be permitted to use Citibank's cash collateral after the Supplemental Cash Collateral Order expires by its own terms on September 23, 2011. Accordingly, conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is in the best interest of the Debtor's estate because, in the absence of such relief, the Debtor will be unable to administer its estate. If the Court approves the Motion and authorizes the appointment of a chapter 7 (or chapter 11) trustee, Citibank intends to immediately negotiate with such trustee in good faith to reach a consensual agreement and budget regarding the trustee's use of Citibank's cash collateral.

## **NOTICE**

No trustee or examiner has been appointed in the Chapter 11 Case. Notice of the Motion has been provided to the following parties, or, in lieu thereof, their counsel: (a) the Debtor; (b) counsel for the Creditors' Committee; (c) the Office of the United States Trustee for the Northern District of California; and (d) all parties that have filed a notice of appearance in this Chapter 11 Case. Citibank submits that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

Doc#: US1:7341024v7

- 12 -

Memorandum of Points and Authorities in Support of the Motion To Convert

# CONCLUSION

WHEREFORE, Citibank respectfully request that this Court enter an Order granting the relief requested herein, and granting to Citibank such other and further relief as it deems just and proper.

Respectfully submitted,

Dated: September 15, 2011

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Kelley A. Cornish
Diane Meyers

and

PEITZMAN, WEG & KEMPINSKY LLP
Lawrence Peitzman

By: /s/ Lawrence Peitzman
Counsel to Citibank, N.A.

Doc#: US1:7341024v7

- 13 -
Memorandum of Points and Authorities in Support of the Motion To Convert
Case: 11-31376    Doc# 316    Filed: 09/15/11    Entered: 09/15/11 17:49:20    Page 17 of 17