**DIAMOND MCCARTHY LLP**
Howard D. Ressler, Esq.
Stephen T. Loden, Esq.
Jason M. Rudd, Esq.
909 Fannin, 15th Floor
Houston, TX 77010
Telephone: 713-333-5100
Facsimile: 713-333-5199

**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
Eric A. Nyberg, Esq. (Bar No. 131105)
Chris D. Kuhner, Esq. (Bar No. 173291)
1970 Broadway, Suite 225
Oakland, CA 94612
Telephone: 510-763-1000
Facsimile: 510-273-8669

*PROPOSED COUNSEL AND LOCAL COUNSEL FOR ALLAN B. DIAMOND, CHAPTER 11 TRUSTEE*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>HOWREY LLP,<br><br>                               Debtor. | Case No. 11-31376 DM<br><br>Chapter 11<br><br>**DECLARATION OF ALLAN B. DIAMOND IN SUPPORT OF CHAPTER 11 TRUSTEE'S APPLICATION PURSUANT TO SECTION 327 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY DIAMOND MCCARTHY LLP AS COUNSEL,** *NUNC PRO TUNC***, TO OCTOBER 12, 2011** |

Allan B. Diamond makes this declaration under 28 U.S.C. § 1746, and states:

1. I am the chapter 11 trustee ("Trustee") in the above captioned bankruptcy case of Howrey LLP ("Debtor"). The Court approved my appointment on October 12, 2011.

2. I am a member of Diamond McCarthy LLP ("Diamond McCarthy" or the "Firm"), a law firm with offices at 909 Fannin Street, Suite 1500, Houston, Texas 77010 and in Dallas, Austin, and New York. I am an attorney licensed by and in good standing with the State of Texas.

3. I make this declaration in support of my *Chapter 11 Trustee's Application Pursuant to Section 327 of the Bankruptcy Code to Employ Diamond McCarthy LLP as Counsel, nunc pro tunc to October 12, 2011* (the "Application").

4. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

## I. QUALIFICATIONS OF DIAMOND MCCARTHY

5. Diamond McCarthy is a national trial and insolvency law firm that investigates, litigates and cost-effectively resolves complex business disputes on a national and international stage. The Firm's core practice area is the representation of trustees and other parties in bankruptcy cases, including debtors, CROs, creditor committees and others. The Firm has a global reputation and track record in litigating some of the highest profile and largest cases in the country arising out of corporate bankruptcies.

6. The Firm currently serves as bankruptcy and litigation counsel to Sheila Gowan, a Diamond McCarthy partner and the court-appointed chapter 11 trustee in the Dreier LLP law firm bankruptcy case currently pending in the United States Bankruptcy Court for the Southern District of New York. That case involves many of the same issues that face the Debtor here.

Dreier LLP was a several-hundred-lawyer firm with its principal home office in New York City and affiliate offices in other cities across the country, including Los Angeles and Santa Monica, California. The firm collapsed upon the discovery that Marc Dreier used the firm as part of a Ponzi scheme. In representing the trustee, Diamond McCarthy has built substantial expertise in handling critical issues involving a national bankrupt law firm such as:

(a) Evaluating and pursuing claims held by the estate, including *Jewel v. Boxer* claims relating to the value of unfinished business transferred to successor law firms, as well as other avoidance actions for preferences and fraudulent transfers;

(b) Analyzing legal issues related to the dissolution of a firm with offices in multiple jurisdictions including California;

(c) Negotiations with the primary secured creditor regarding use of cash collateral and liquidation of assets in which that creditor held security interests;

(d) Maximizing value of the estate in negotiation with landlords and insurance carriers, billing and collection of accounts receivable, termination of remaining law firm staff, and liquidation of furniture, fixtures and valuable art work;

(e) Managing and returning client files and, where appropriate, securely disposing of them.

Diamond McCarthy's particularized expertise from the Dreier case is immediately relevant to the efficient and cost-effective administration of the Debtor's estate in this case.

7. Diamond McCarthy has extensive experience pursuing recoveries for estates in the role of special litigation counsel. In many of these cases, the only substantial assets of the estates are causes of action. The Firm has developed a national reputation for maximizing value to the estate by pursing these claims. Some of the Firm's most recent cases include:

(a) *USA Capital*. Diamond McCarthy represents both the post-confirmation liquidating trust of USA Commercial Mortgage Company, a subprime commercial loan originator and servicer with a loan portfolio of just under $1 billion on the petition date, and a creditor holding more than $200

million in loans originated by the USA Commercial Mortgage Company. To date, the Firm has recovered tens of millions of dollars for its clients.

(b) *Appalachian Fuels*. Diamond McCarthy acts as special litigation counsel to the creditors' committee and the estate of Appalachian Fuels, Inc. and its affiliates, a Kentucky coal mining concern in bankruptcy proceedings in the Eastern District of Kentucky. The Firm is pursuing claims against law firms, former directors and officers, insurance companies, and others on claims of breach of fiduciary duty, fraud, and other claims seeking more than $100 million in damages.

(c) *Syntax-Brillian*. Diamond McCarthy represents the post-confirmation liquidating and lender trusts of a global manufacturer and distributor of HDTVs and other products. The Firm is pursuing claims against law firms, accounting firms, former directors and officers, and others seeking more than $160 million.

The Firm's expertise in obtaining substantial recoveries on behalf of the estate is particularly relevant in this case because the main assets of the Debtor's estate are likely to be causes of action, such as those against law firms that took over unfinished business cases from the Debtor.

8. I personally have more than three decades of extensive experience as a bankruptcy trial lawyer in litigating complex claims arising out of some of the largest global bankruptcies including, lead counsel to the chapter 11 trustee and post-confirmation trustee of LJM2, the off-book Enron entity at the center of the Enron collapse and related bankruptcy proceedings; lead counsel to the bankruptcy trustee of Southeast Bancshares of Miami, Florida (in what many have called the most successful chapter 7 bankruptcy in U.S. history in terms of estate recoveries); lead counsel to the off-shore joint official liquidators in the Parmalat multi-district litigation proceedings in New York; lead counsel to the post-confirmation trust of consolidated debtor Agribiotech, Inc. of Las Vegas, Nevada, the largest forage and seed manufacturer in North America; lead counsel to the post-confirmation litigation trust arising from the Zales Jewelers bankruptcy in Dallas, Texas; lead counsel to the post-confirmation trustees in the consolidated USA Capital bankruptcies in Las Vegas, Nevada and many other

bankruptcy litigation cases venued in bankruptcy, district and foreign courts around the United States, the United Kingdom, Cayman Islands, Italy and elsewhere. I have pursued and obtained litigation recoveries from these cases in the hundreds of millions of dollars. Most, if not all, of these cases involved complex claims – often of first impression legal issues – against former management and directors, professional accounting/audit and law firms, investment banks and other financial institutions, and also involved complex insurance issues. My experience includes the litigation of all types of fraudulent transfers, both Chapter 5 and state law, as well as fiduciary duty, contract and a panoply of tort claims.

9. My bankruptcy team at Diamond McCarthy will include Howard D. Ressler and Jason M. Rudd. Mr. Ressler currently serves as lead bankruptcy counsel to the chapter 11 trustee in the Dreier LLP law firm dissolution case in the United States Bankruptcy Court for the Southern District of New York. Mr. Ressler has extensive experience over the past three plus decades in all aspects of corporate restructuring and bankruptcy litigation. He is a recognized speaker and frequent author on bankruptcy law. Jason M. Rudd has over ten years of experience in complex bankruptcy matters, including debtor, committee, and creditor representations. Mr. Rudd has represented numerous chapter 11 trustees in the wind-down of business operations and administration of estate assets through the efficient use of the chapter 11 process. He has successfully confirmed chapter 11 plans, conducted millions of dollars in asset sales under section 363 of the Bankruptcy Code and resolved cash collateral, lien priority and the various other disputes that commonly arise in chapter 11 proceedings.

10. My bankruptcy litigation team also will include Stephen T. Loden and others. Mr. Loden has over thirteen years of experience litigating complex bankruptcy issues in bankruptcy courts across the country, including handling scores of litigations and adversary proceedings

arising out of the Enron and Worldcom bankruptcies in New York, and pursuit of claims in the Newpower and Mirant bankruptcies in Atlanta and Fort Worth, respectively. Most recently, Mr. Loden has litigated cash collateral, administrative expense, and chapter 5 avoidance actions in the Dreier LLP bankruptcy, and represented the liquidating trustee of the USACM Liquidating Trust in the pursuit of millions of dollars of avoidable transfers in the United States Bankruptcy Court for the District of Nevada.

11. I have worked personally with Messrs. Ressler, Rudd and Loden for several years. I have complete confidence in their talent and expertise in bankruptcy and bankruptcy related litigation. Because of my close working relationship with these and others at Diamond McCarthy, I am able to communicate more quickly and effectively than I would with an outside law firm. As a result, I am able to save considerable resources that would otherwise be spent bringing another firm up to speed on my approach to the role of Trustee, my tactics to litigating estate claims, and my strategy and style generally.

12. Diamond McCarthy began providing legal services to me on an emergency basis upon the Court's approval of my appointment as Trustee on October 12, 2011. From the date of my appointment, I faced a range of critical issues, including the imminent (within hours) expiration of the Debtor's authority to use cash collateral. This would have deprived the Debtor of any means to pay critical expenses such as payroll. Further, the Debtor, creditors and other parties in interest approached me with an extensive list of exigent issues for my immediate consideration. At my request, the Firm immediately made legal resources available to me to handle these emergency issues and to ensure the successful transition of the estate from debtor in possession to my management. This transition would have been significantly more cumbersome

and costly and, indeed, may not have been possible without considerable loss to the estate, if I were not able to call immediately upon Diamond McCarthy.

13. Since my appointment, Diamond McCarthy has already provided legal advice to me on a number of critical issues, including but not limited to:

(a) The continued negotiation of cash collateral authority with the Debtor's largest secured creditor, Citibank, N.A.;

(b) Negotiating and engaging outside professionals to handle collection of accounts receivable;

(c) Coordinating an orderly reduction in staff and administrative costs and the wind-down of foreign operations;

(d) Identifying issues related to disposition of client files;

(e) Addressing electronic data storage issues and a plan to reduce costs associated with U.S. and European data centers;

(f) Analyzing the Debtor's contingency fee cases that have not been transitioned to other law firms;

(g) Analyzing issues related to the termination of Debtor's professional liability insurance; and

(h) Coordinating and meeting with parties in interest, including the creditors' committee, the Debtor's dissolution committee, the bank, and all of their respective financial advisors, as well as others.

Given the urgency of these and other matters, as well as the complexity of this case, it was simply not practicable, efficient, or prudent to conduct a search and interview for engagement of an outside law firm. Indeed, Diamond McCarthy's experience and relevant expertise made a wider search unwarranted.

14. Finally, as stated in the Declaration of Jason M. Rudd, filed contemporaneously herewith, Diamond McCarthy does not hold or represent interests adverse to the estate and is a "disinterested person" as that term is defined in Section 327(a) of the Bankruptcy Code. In light

of the nationwide scope of the Debtor's extensive law practice, it is likely other candidate law firms face significant risk of disqualifying conflicts.

## II. BEST INTERESTS OF THE ESTATE

15. The Bankruptcy Code authorizes me, as Trustee, to employ qualified professionals, including legal counsel. 11 U.S.C. § 327(a). The Bankruptcy Code expressly authorizes me to employ myself and, by extension, a law firm of which I am a member, if it "is in the best interests of the estate." 11 U.S.C. § 327(d).

16. This Court recently applied the "best interest of the estate" test in approving a trustee's application to retain his own firm as counsel. In the *SONICblue* case, Bankruptcy Judge Marilyn Morgan of the Northern District of California, approved the trustee's application, citing the Second Circuit for the proposition that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel." Tr. of June 14, 2007 Hearing at 20:23 – 21:4 (citing *In re Mandell*, 69 F.2d 830, 831 (2d Cir. 1934), *In re: SONICblue, Inc.*, Nos. 03-51775 through 03-51778 (Bankr. N.D. Cal. June 14, 2007).

17. In affirming Judge Morgan's decision, the United States District Court for the Northern District of California looked to two cases that applied the "best interest of the estate standard" to a trustee's decision to hire his or her own firm as counsel. *In re: SONICblue, Inc.*, No. 7-cv-03483, 2007 WL 3342662, at *4-7, (N.D. Cal. Nov. 9, 2007).

18. The first case was *In re Butler Industries, Inc.*, 101 B.R. 194 (Bankr. C.D. Cal. 1989), which identified four different situations where such employment might be appropriate:

    (a) Where the estate consists mainly of causes of action and counsel would have to be paid out of any recoveries;

    (b) Where there is not enough legal work to justify the cost of outside counsel;

(c) Where legal action is needed immediately and the trustee cannot wait for the completion of the appointment process for outside counsel; and

(d) Where self-appointment will lead to a substantial reduction in costs.

101 B.R. at 197.

19. The second case was *In re Interamericas, Ltd.*, 321 B.R. 830 (Bankr. S.D. Tex. 2005), where the court set out a more comprehensive list of non-exclusive factors to determine whether appointment of a trustee's own firm was in the best interest of the estate, including:

1. The qualifications of the members of the firm compared to the complexity of the case;

2. Whether the firm is regularly hired by others to handle similar litigation;

3. Whether the anticipated litigation predominantly involves issues of bankruptcy law with which the law firm has particularized expertise;

4. Whether the time commitment required to handle the case is consistent with the size of the firm and the balance of the firm's time commitments;

5. Whether only a nominal amount of work must be performed;

6. The availability of other qualified firms to handle the case;

7. The rates charged by the firm compared to the rates charged by other qualified firms;

8. Whether there will be material cost savings to the estate; and

9. Other case-specific factors.

321 B.R. at 834.

20. Under both tests, it is in the Debtor's estate's best interest that I be authorized to employ and to continue to work with Diamond McCarthy.

21. Under *Butler*, my Application squarely fits three of the four scenarios where retention of a trustee's own firm is in the best interests of the estate. First, the Debtor's estate will likely consist mostly of causes of action, such as claims under *Jewel v. Boxer* for the

DECLARATION IN SUPPORT OF APPLICATION
TO EMPLOY DIAMOND MCCARTHY LLP                                              PAGE 9

Debtor's interest in unfinished business cases that were transferred to other firms. Diamond McCarthy's compensation for prosecuting these cases will likely derive in large part from any recoveries. The second *Butler* scenario does not apply here because this is a large case. The third scenario applies because I have faced urgent and time-sensitive matters requiring legal advice from the first day of my appointment. Any delay in bringing outside counsel on board would have prejudiced the Debtor's estate significantly. Finally, because of my close working relationship with the Firm, the Debtor's estate will benefit from significant efficiencies and savings of time and cost.

22. Similarly, the *Interamericas* factors strongly support the conclusion that my Application is in the best interest of the Debtor's estate. (1) The Firm is exceptionally well qualified to advise me in this case, given its broad experience in bankruptcy, bankruptcy-related litigation and, most recently, its experience as counsel to the chapter 11 trustee in the Dreier LLP case, another law firm dissolution case. (2) Diamond McCarthy is regularly hired by others to perform this type of work. The Firm frequently represents trustees in chapter 7 and chapter 11 cases and frequently acts as special litigation counsel to liquidating trusts. (3) The types of litigation that I anticipate will arise in this case, including claims to recover on fraudulent transfers, is precisely the type of case where Diamond McCarthy has particularized expertise. (4) The size and time commitment of this case is well within the range of cases the Firm handles on a regular basis. (5) Because this case requires a substantial amount of work, the fifth factor is not applicable. (6) While there are potentially other qualified firms, none would have been able to provide immediate representation given the number of required exigencies, and none can provide the efficiencies and cost savings associated with having a close working relationship with me. (7) Diamond McCarthy's rates are extremely competitive and compare favorably to

those of other firms nationally.  By way of example, the Firm's rate structure is significantly lower than that of Wiley Rein LLP, Debtor's counsel in this case.  For example, the senior-most member of Wiley Rein LLP's team has a billable rate of $875 per hour.  Diamond McCarthy's senior-most lawyer on the case has a billable rate of $675 per hour – nearly 25% lower.  (8) In addition to the cost savings that come directly from competitive hourly rates, the Debtor's estate will benefit from the substantial savings in time that come from Diamond McCarthy's close working relationship with me.  The Firm already knows my litigation tactics and approach to cases like this.  The significant time and expense that would otherwise be spent bringing another firm up to speed will be saved.  (9) Finally, as another case-specific factor, Diamond McCarthy has gained extensive familiarity with the issues and facts of this case through its involvement to date.  That knowledge and experience would be lost – at considerable expense to the Debtor's estate – if I were unable to continue to employ and work with the Firm.

### III. SEPARATE ACCOUNTING OF NON-LEGAL WORK

23.  As Trustee, I must ensure that my legal advisors do not seek compensation from the Debtor's estate for non-legal services on matters that are my responsibility.  This issue arose in the critical first weeks of my tenure as Trustee, where Diamond McCarthy assisted me in responding immediately to the full range of pressing issues, both legal and non-legal.

24.  To ensure that the estate does not compensate my legal advisors for trustee responsibilities, I have instructed Diamond McCarthy personnel working on this case to separately account for their time related to legal work and their time related to non-legal tasks.

25.  As a billing partner of Diamond McCarthy, I am familiar with the Firm's time accounting and reporting systems.  As managing partner of the Firm, I am able to ensure proper

billing and time management in this case. This level of supervision would be extremely difficult over an outside firm.

26. Finally, in addition to my own careful review of the billing records, there are several other parties in this case who will have an opportunity to scrutinize, and object to, Diamond McCarthy's bills for legal services.

## IV. TIMING OF THE APPLICATION

27. As noted, since the Court approved my appointment as Trustee, I have worked closely with Diamond McCarthy personnel to address urgent, time-sensitive matters affecting the Debtor's estate. Discharging my responsibilities would have been impossible without the immediate assistance that the Firm provided. Despite the risk that the Court might not ultimately approve my application to employ Diamond McCarthy, both I and the Firm concluded that it was in the best interest of the Debtor's estate to focus our attention first on the exigencies of the case, and second on retention applications.

## V. CONCLUSION

28. In view of the foregoing, I believe that it is in the best interest of the estate that I be authorized to employ Diamond McCarthy as my legal counsel. Given the complexity of this case, the estate will continue to realize significant cost savings and efficiencies from my authorization to employ and to continue to work with the Firm.

Dated: November 15, 2011

By:/s/ Allan B. Diamond
    Chapter 11 Trustee of the Bankruptcy Estate of Howrey LLP