WILLIAM MCGRANE [57761]
MCGRANE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-3590
william.mcgrane@mcgranellp.com

Attorney for Interested Party William McGrane

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HOWREY LLP,<br><br>Debtor. | Case No. 11-31376<br><br>Chapter 11<br><br>**OPPOSITION TO STAY MOTION**<br><br>Date: Friday, December 21, 2012<br>Time: 9:30 AM<br>Place: 230 Pine Street<br>         San Francisco, CA<br><br>Judge: Hon. Dennis J. Montali |

# Contents

Quick Review ..................................................................................................................................... 1

Argument ......................................................................................................................................... 3

I.  The Automatic Stay Is Inapplicable. ........................................................................................ 3

II. *In Pari Delicto* Bars the Trustee from Asserting any *Alter Ego* Claim for Relief on Behalf of the Howrey LLP Estate under 11 U.S.C § 541(a). .................................................................. 3

III. Even if *In Pari Delicto* Were not a Complete and Independent bar Against the Trustee's Assertion of *Alter Ego*, the Trustee Does Still not Own *Alter Ego* Since Self Piercing is Forbidden by Relevant Nonbankruptcy Alter Ego Law. ........................................................... 5

Conclusion ....................................................................................................................................... 8

**Cases**

Ahcom, Ltd. v. Hendrik Smeding, 623 F.3d 1248 (9th Cir. 2010)........................................6, 7, 8

Armco Fin. Servs. Corp. v. North Atl. Ins. Co. (In re Bird), 229 B.R. 90, 95
    (Bankr. S.D.N.Y. 1999)..................................................................................................1

Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972) ................................................5

Civic Center Square, Inc. v Ford (In re Roxford Foods, Inc.), 12 F.3d 875, 878 (9th Cir. 1993) .1

Drabkin v. L&L Construction Associates, Inc. (In re Latin Investment Corporation), 168 B.R. 1,
    21-22 (Bankr. D.C. 1993).............................................................................................6

Estate of Raleigh v. Mitchell, 947 A.2d 464, 471 (D.C. 2008) ......................................................6

Gemini Computers, Inc. v. Babekov (In re Babekov), 2009 Bankr. LEXIS 5514
    (Bankr. E.D.N.Y. 2009)................................................................................................1

Hoskins v. Citigroup, Inc. (In re Viola), 469 B.R. 1 (9th Cir. B.A.P. 2012) .................................4

In re Briarwood Hills Assocs., L.P., 237 B.R. 479, 480 (Bankr. W.D. Mo. 1999) .......................1

In re FRG, Inc., 121 B.R. 710, 714 (Bankr. E.D. Pa. 1990) .........................................................1

In re Lowenschuss, 67 F.3d 1394, 1401 (9th Cir. 1995) ...............................................................8

In re Redburn, 193 B.R. 249 (Bankr. W.D. Mich. 1996) .............................................................1

In re Sammon, 253 B.R. 672, 680 (Bankr. D. S.C. 2000) .............................................................1

JNA-1 Corp. v. Uni-Marts, LLC (In re Uni-Marts, LLC), 404 B.R. 767, 783
    (Bankr. D. Del. 2009) ....................................................................................................1

Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC), 405 B.R. 113, 129
    (Bankr. D. Del. 2009) ....................................................................................................1

Lehman Commer. Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC),
    423 B.R. 655 (B.A.P. 9th Cir. 2009) ............................................................................1

Lighthouse Bluffs Corp. v Atreus Enterprises, Ltd (In re Atreus Enterprises, Ltd.), 120 B.R.

| | |
|---|---|
| 1 | 341, 346 (Bankr. S.D.N.Y. 1990)..................................................................................1 |
| 2 | Mixon v. Anderson (In re Ozark Rest. Equip. Co., Inc.), 816 F.2d 1222, 1228 (8th Cir. 1987), |
| 3 | *cert denied sub nom* Jacoway v. Anderson, 484 U.S. 848 ......................................6 |
| 4 | Palmdale Hills Prop., LLC v. Lehman Commer. Paper, Inc. (In re Palmdale Hills Prop., LLC), |
| 5 | 654 F.3d 868, 876 (9th Cir. 2011) ...............................................................................2 |
| 6 | Pergament v. Yerushalmi (In re Yerushalmi), AP No. 809-8003 (Bankr. E.D.N.Y. November |
| 7 | 19, 2012)......................................................................................................................6 |
| 8 | Peterson v. McGladrey & Pullen, LLP (In re Lancelot Investors Fund, L.P.), 676 F.3d 594, 598 |
| 9 | (7th Cir. 2012) ............................................................................................................4 |
| 10 | Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995)..................................................................4 |
| 11 | Sims v. Breckinridge (In re Hermitage Health Care), A.P. No. 01-1126 (Bankr. N.D. CA 2002)7 |
| 12 | Snavely v. Miller (In re Miller), 397 F.3d 726, 730 (9th Cir. 2005) .............................................1 |
| 13 | Tac-Critical Systems, Inc. v. Integrated Facility Systems, Inc., 808 F. Supp. 2d 60, 66 |
| 14 | (D.D.C. 2011) ....................................................................................................5, 7, 8 |
| 15 | Teerlink v Lambert (In re Teerlink Ranch Ltd.), 886 F.2d 1233 (9th Cir. 1989).........................1 |
| 16 | Titan Real Estate Ventures, LLC v. M.J.C.C. Realty L.P. (In re Flanagan), 373 B.R. 216 (Bankr. |
| 17 | D. Conn. 2007) ............................................................................................................4 |
| 18 | United States v. Emor, 850 F. Supp. 2d 176, 205 (D. D.C. 2012).................................................5 |
| 19 | USACM Liquidating Trust v. Deloitte & Touche LLP, 764 F. Supp. 2d 1210 (D. Nev. 2011) ...4 |
| 20 | Williams v. California 1st Bank, 859 F.2d 664 (9th Cir. 1988) ....................................................5 |

**Statutes**

| | |
|---|---|
| 22 | 11 U.S.C. § 101(9)(a)(ii).................................................................................................8 |
| 23 | 11 U.S.C. § 105(a) ........................................................................................................9 |

11 U.S.C. § 502(b)(6) ..................................................................................................................9

11 U.S.C. §541(a) ...................................................................................................................3, 4

**Other Authorities**

Dean Ziehl, <u>Brief of Amicus Curiae National Association of Bankruptcy Trustees in Support of Appellant USACM Liquidating Trust and Reversal</u> (2012).......................................................4

William McGrane, <u>The Erroneous Application of the Defense of *In Pari Delicto* to Bankruptcy Trustees</u>, 29 California Bankruptcy Journal 275 (2007) ............................................................4

**Rules**

B.L.R. 9013-1(c) ............................................................................................................................2

**Quick Review**

There are two issues presented by the Trustee's November 15, 2012 motion to enforce stay. The first is whether, since this is the Trustee's home bankruptcy court, the automatic stay can possibly be held applicable to the situation at hand. The second issue is who, as between the creditors and the Howrey bankruptcy estate, really owns *alter ego* to begin with.

The answer to the first question is obvious. Over and over again for the past 20+ years, the Ninth Circuit has, consistent with the majority of other federal courts, held that the automatic stay is inapplicable so long as whatever behavior that might otherwise implicate the stay is initiated solely in the home bankruptcy court.[1]

---

[1] Snavely v. Miller (In re Miller), 397 F.3d 726, 730 (9th Cir. 2005) ("The automatic stay does not apply to proceedings initiated against the debtor if the proceedings are initiated in the same bankruptcy court where the debtor's bankruptcy proceedings are pending"); Teerlink v Lambert (In re Teerlink Ranch Ltd.), 886 F.2d 1233, 1237 (9th Cir. 1989); Civic Center Square, Inc. v Ford (In re Roxford Foods, Inc.), 12 F.3d 875, 878 (9th Cir. 1993); Lehman Commer. Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC), 423 B.R. 655 (B.A.P. 9th Cir. 2009); Lighthouse Bluffs Corp. v Atreus Enterprises, Ltd (In re Atreus Enterprises, Ltd.), 120 B.R. 341, 346 (Bankr. S.D.N.Y. 1990); Gemini Computers, Inc. v. Babekov (In re Babekov), 2009 Bankr. LEXIS 5514 (Bankr. E.D.N.Y. 2009); Armco Fin. Servs. Corp. v. North Atl. Ins. Co. (In re Bird), 229 B.R. 90, 95 (Bankr. S.D.N.Y. 1999) ("Even where the debtor is the defendant, however, the automatic stay does not apply to actions brought in the bankruptcy court where the debtor's case is pending. . . . [¶]counterclaims asserted against the debtor in the same bankruptcy proceeding in which the debtor initiated the action against the counterclaimants are not violative of the automatic stay, although they would be if asserted in another proceeding."); JNA-1 Corp. v. Uni-Marts, LLC (In re Uni-Marts, LLC), 404 B.R. 767, 783 (Bankr. D. Del. 2009); Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC), 405 B.R. 113, 129 (Bankr. D. Del. 2009) ("The Court agrees with the reasoning of the majority of courts . . ."); In re Sammon, 253 B.R. 672, 680 (Bankr. D. S.C. 2000) ("The automatic stay does not apply to proceedings initiated against the debtor if the proceedings are initiated in the same bankruptcy court where the debtor's bankruptcy proceedings are pending."); In re Briarwood Hills Assocs., L.P., 237 B.R. 479, 480 (Bankr. W.D. Mo. 1999) ("the automatic stay does not apply to proceedings in the bankruptcy court having jurisdiction over the debtor. Numerous courts have held that the automatic stay implicitly does not bar a party from commencing a proceeding against the debtor in the court where the bankruptcy petition is pending."); In re FRG, Inc., 121 B.R. 710, 714 (Bankr. E.D. Pa. 1990) ("There is clearly authority to the contrary, holding that 'the stay does not operate against the court with jurisdiction over the bankrupt.'" ); In re Redburn, 193 B.R. 249 (Bankr. W.D. Mich. 1996); Palmdale Hills Prop.,

Who really 'owns' *alter ego* as between the estate on the one hand and the creditors of the estate on the other hand is a matter of applicable nonbankruptcy law. Here Mr. McGrane and the Trustee both agree that the appropriate choice of law is the common law of the District of Columbia (DC law), which has been found to be identical to the federal common law on the subject of *alter ego* (Relevant Nonbankruptcy Alter Ego Law).

Thus, under Relevant Nonbankruptcy Alter Ego Law there are three possible types of *alter ego*-based veil piercing: (i) piercing by third parties, typically creditors (Third Party Piercing); (ii) piercing by second parties, i.e., by equity security holders (Reverse Piercing); and (iii) piercing by a first party, i.e., by a successor-in-interest such as a Receiver or a Trustee (Self Piercing). Some states, such as New York and Texas, are held by the federal courts to allow Self Piercing. Other states, like Arkansas and California, are said by the federal courts **_not_** to allow Self Piercing. As will be demonstrated, *infra*, and in accord with Arkansas and California law, Relevant Nonbankruptcy Alter Ego Law does **_not_** permit Self Piercing.

Nothing in the Trustee's disorganized 'summary' of *alter ego* law is at all contrary to Mr. McGrane's position that Relevant Nonbankruptcy Alter Ego Law forbids Self Piercing.[2] Rather, and as is demonstrated, *infra*, the cases which the Trustee presents as controlling law only serve to buttress Mr. McGrane's position that Self Piercing is not allowed under Relevant Nonbankruptcy Alter Ego Law.

---

LLC v. Lehman Commer. Paper, Inc. (In re Palmdale Hills Prop., LLC), 654 F.3d 868, 876 (9th Cir. 2011).

[2] The Chapter 11 Trustee's Memorandum etc. (Docket No. 863 [Trustee's Stay Motion or TSM]) filed November 15, 2012, is more than twenty pages in length and cites numerous cases, statutes and other legal authorities. However, and in violation of B.L.R. 9013-1(c), the TSM contains no separate table of authorities, thus making a case by case rebuttal unnecessarily burdensome.

# Argument

## I. The Automatic Stay Is Inapplicable.

While the Trustee is entirely correct in his assertion (at TSM ¶¶22-24) that, to the extent a person's conduct infringes (or to use the Trustee's inflammatory word for it [at TSM ¶¶3-4, 48] "hijacks") property rights of the estate, that untoward conduct—here Mr. McGrane's filing as counsel to Howrey Claims, LLC of Howrey Claims, LLC v. Alexander (the Alter Ego Case)—would ordinarily violate the automatic stay and thus qualify Mr. McGrane personally for the whole array of punishments reserved for such contumacious behavior, up to and including exposing Mr. McGrane to a proper charge of personal contempt of this Bankruptcy Court on and after November 1, 2012. Except, however, when, as here, any supposedly contumacious behavior was first initiated solely in the home bankruptcy court. See FN. 1, *supra*, and cases cited therein.[3]

## II. *In Pari Delicto* Bars the Trustee from Asserting any *Alter Ego* Claim for Relief on Behalf of the Howrey LLP Estate under 11 U.S.C § 541(a).

The Trustee in Howrey LLP, Allan Diamond (Mr. Diamond or the Trustee)—himself a well-known Member of the New York and Texas bankruptcy bars—is lead counsel for Development Specialists Inc.'s Geoffrey Berman in the latter's capacity as Plan Administrator of the USACM Liquidating Trust. That engagement has thrown off a lawsuit in which the

---

[3] Interested party William McGrane (Mr. McGrane) in no way suggests the gap in automatic stay coverage at work here leaves the Trustee helpless. The Trustee may, for example, still seek to intervene in the Alter Ego Case and, once permitted to intervene, he may then attempt to shield the former Howrey partners from any ill effects of the Alter Ego Case by asserting Howrey Claims, LLC's alleged lack of standing. See Fed. R. Bankr. Proc., Rule 7024. Or, assuming, *arguendo*, the Class has standing to bring *alter ego* claims (it does), the Trustee may nonetheless still seek a temporary 11 U.S.C. § 105(a) injunction to hold such Class claims in reasonable check while he tries to formulate a Plan of Reorganization that takes such Class claims into account by way of a voluntary channeling injunction. See In re Redco Development Co., LLC 2011 Bankr. LEXIS4963 at *4 (Bankr. D. Ore. 2011).

United States District Court for the District of Nevada recently found—as have nearly all the federal courts which have confronted this issue—that bankruptcy trustees such as Mr. Diamond are bound as a matter of federal common law by the doctrine of *in pari delicto* when they attempt to assert their rights to sue wrongdoers under 11 U.S.C. § 541(a). See <u>USACM Liquidating Trust v. Deloitte & Touche LLP</u>, 764 F. Supp. 2d 1210 (D. Nev. 2011); <u>see also</u> <u>Titan Real Estate Ventures, LLC v. M.J.C.C. Realty L.P. (In re Flanagan)</u>, 373 B.R. 216 (Bankr. D. Conn. 2007) (denying bankruptcy trustee *alter ego* standing based on *in pari delicto*); <u>Peterson v. McGladrey & Pullen, LLP (In re Lancelot Investors Fund, L.P.)</u>, 676 F.3d 594, 598 (7th Cir. 2012) (applying *in pari delicto* to bankruptcy trustee and limiting <u>Scholes v. Lehmann</u>, 56 F.3d 750 (7th Cir. 1995) to its facts). <u>See</u> generally William McGrane, <u>The Erroneous Application of the Defense of *In Pari Delicto* to Bankruptcy Trustees</u>, 29 California Bankruptcy Journal 275 (2007) (describing the unfortunate but nearly universal application of federal common law *in pari delicto* doctrine to bankruptcy trustees throughout the United States); Dean Ziehl, <u>Brief of Amicus Curiae National Association of Bankruptcy Trustees in Support of Appellant USACM Liquidating Trust and Reversal</u> (2012) (reaching same reluctant conclusion as Mr. McGrane's article on *in pari delicto*) (Mr. McGrane and Mr. Ziehl's materials are Exhibits 1and 2 to the Request for Judicial Notice filed herewith).

It is more than passing strange, therefore, that nowhere in the Trustee's Stay Motion is there any discussion of the fact the Trustee now seeks to permanently strip the Howrey LLP estate's creditors (Class) of their individual rights to sue the former Howrey partners for *alter ego* despite the fact the Trustee is very likely entirely debarred from ever pursuing any *alter ego* claims himself.[4]

---

[4] The TSM does not itself appear to claim the Trustee has any rights to assert an *alter ego* claim under either 11 U.S.C. §§544 or 548. In any case, Ninth Circuit law is clear any such claim would be futile. See <u>Hoskins v. Citigroup, Inc. (In re Viola)</u>, 469 B.R. 1 (9th Cir. B.A.P. 2012),

### III. Even if *In Pari Delicto* Were not a Complete and Independent bar Against the Trustee's Assertion of *Alter Ego*, the Trustee Does Still not Own *Alter Ego* Since Self Piercing is Forbidden by Relevant Nonbankruptcy Alter Ego Law.

The Bankruptcy Court should be mindful that the District Court for the District of Columbia recently equated the federal common law of *alter ego* with the District of Columbia common law of *alter ego*. See Tac-Critical Systems, Inc. v. Integrated Facility Systems, Inc., 808 F. Supp. 2d 60, 66 (D.D.C. 2011); see also United States v. Emor, 850 F. Supp. 2d 176, 205 (D. D.C. 2012) (holding federal common law of *alter ego* and not law of state of incorporation applies where some federal interest is at stake).

The above holdings appear to put Mr. Diamond in the entirely untenable position of asserting that (i) when the United States itself wants to sue persons and/or entities (say, the control persons for military contractors delivering weapons not properly manufactured to military specifications); and (ii) those control persons respond by way of bankrupting one or more such military contractors; then (iii) the United States Attorney must be deemed to have automatically turned turn over his or her civil prosecutorial discretion in favor of some debtor in possession or private bankruptcy trustee; and (iv) that the United States is thereafter left at the mercy of that debtor in possession or private trustee in terms of what happens to the United States' *alter ego* case. Merely to state such a proposition is to refute it.

---

where, relying on both Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972) and Williams v. California 1st Bank, 859 F.2d 664 (9th Cir. 1988), the Bankruptcy Appellate Panel for the Ninth Circuit affirmed Bankruptcy Judge Montali and refused to interpret 11 U.S.C. § 544 as allowing a bankruptcy trustee to act as a creditor representative for purposes of bringing "general causes of action."

In any event, there is no great mystery as to what the Relevant Nonbankruptcy Alter Ego Law is. Like Arkansas[5] and California[6], the District of Columbia, is simply **_not_** a Self Piercing jurisdiction. See Estate of Raleigh v. Mitchell, 947 A.2d 464, 471 (D.C. 2008) (a case decided by the highest court of the District of Columbia[7] and holding **_only_** innocent third persons may pierce corporate veil under DC law); see also Drabkin v. L&L Construction Associates, Inc. (In re Latin Investment Corporation), 168 B.R. 1, 21-22 (Bankr. D.C. 1993) (holding bankruptcy trustee may **_not_** pierce corporate veil on behalf of estate creditors under DC law).[8]

Perhaps the best way to understand why California and the District of Columbia, for example, must be seen to be in accord with respect to forbidding Self Piercing is **_not_** by

---

[5] See Mixon v. Anderson (In re Ozark Rest. Equip. Co., Inc.), 816 F.2d 1222, 1228 (8th Cir. 1987), *cert denied sub nom* Jacoway v. Anderson, 484 U.S. 848.

[6] See Ahcom, Ltd. v. Hendrik Smeding, 623 F.3d 1248 (9th Cir. 2010).

[7] http://en.wikipedia.org/wiki/District_of_Columbia_Court_of_Appeals

[8] The myriad cases from various and sundry jurisdictions (New York and Texas included) which the Trustee cites at TSM ¶¶7, 23, 40-47, as all contemplating Self Piercing each share this in common: There is never an underlying nonbankruptcy case cited by any of the referenced federal cases holding Self-Piercing is allowed by a particular state's *alter ego* law. Rather, there is just a surmise by the federal court in question regarding what a particular state court might do if such a unicorn ever presented itself, with the *rationes decidendi* reflecting the federal court's judgment as to just how amorphous the *alter ego* doctrine might be perceived to be by a given state supreme court under the laws of that given state jurisdiction. See, generally, Pergament v. Yerushalmi (In re Yerushalmi), AP No. 809-8003 (Bankr. E.D.N.Y. November 19, 2012) (summarizing Self Piercing *alter ego* cases from Arkansas, California, Illinois, New York, and Texas). A copy of the Pergament case is attached to the Request for Judicial Notice filed herewith as Exhibit 3. In contrast, the DC law is specifically reflected by Estate of Raleigh v. Mitchell, *supra*, 947 A.2d at p. 471, where it is said:

> Since it is equitable in nature, "the [alter ego] doctrine can be invoked 'only where equity requires the action to assist a third party.'" … The estate's decedent is not in the position of an innocent third party requiring invocation of the *alter ego* doctrine to avoid an injustice resulting from someone else using the corporate form. Where the person seeking to pierce the corporate veil "is himself the one who is claimed to have obscured the line, he cannot be permitted to use the alter ego designation to his own behoof." [All bracketed material in original; all internal citations omitted].

Case: 11-31376   Doc# 875   Filed: 11/26/12   Entered: 11/26/12 13:50:56   Page 11 of 14

invoking the piercing paradigm at all (though that analysis obviously also works just fine, as demonstrated in FN. 8, *supra*).

Here, both Ahcom, Ltd. v. Hendrik Smeding, 623 F.3d 1248, 1251-1252 (9th Cir. 2010) (refusing to interpret 11 U.S.C. § 541(a) as allowing a bankruptcy trustee to bring *alter ego* claim on grounds that *alter ego* 'claim' not property of the estate because alter ego 'claim' is not a cause of action but only a procedural remedy for an underlying substantive wrong under California law) and Tac-Critical Systems, Inc. v. Integrated Facility Systems, Inc. *supra*, 808 F. Supp. 2d at p. 66 (also holding, in a non-bankruptcy context, that *alter ego* 'claim' is not a cause of action, but only a procedural remedy for an underlying substantive wrong under both the federal common law of *alter ego* and the D.C. common law of *alter ego*, which are described as being identical to each other in all material respects) recognize that *alter ego* is **_not_** a separate cause of action but rather merely a procedural remedy which only 'exists' in the sense it appends itself to a substantive cause of action, here a cause of action for money had and received.[9]

---

[9] The Trustee misconstrues what he calls (at TSM ¶19) the "bare bones" complaint in the Alter Ego Case, asserting (at TSM ¶¶5, 29-30) that only he could possibly own any money had and received claims against the former Howrey partners. The fact the Class in the Alter Ego Case has claims for money had and received against the Howrey LLP estate, however, does not mean the Class may not **_also_** make the same claims for money had and received directly against the former Howrey partners. This was pithily explained by Chief Bankruptcy Judge Jaroslovsky in a 2002 decision which anticipated the 2010 outcome in Ahcom, *supra*. Thus, in Sims v. Breckinridge (In re Hermitage Health Care), A.P. No. 01-1126 (Bankr. N.D. CA 2002) it is said:

> The complaint alleges that the defendants "looted" the debtor corporation for their benefit; if that is the case, they are liable under bankruptcy law for at least the value of the assets removed from the corporation without valid consideration flowing to the corporation. The only difference the *alter ego* theory makes is that if the trustee has the right to bring such a claim then he may obtain, as an additional item of damages, a judgment against the principals of the corporation for the amount of its debt. ***This is damage to the creditors, not the corporation.***

A copy of Sims is attached as Exhibit 4 to the Request for Judicial Notice filed herewith.

It is just because a mere procedural remedy does **_not_** a cause of action—i.e., property of the estate under 11 U.S.C. § 541(a)—make that the Ninth Circuit in Ahcom, *supra*, 623 F.3d at p. 1252, pejoratively described the kind of *alter ego* rights the Trustee now attempts to assert here as "a claim for a made-up cause of action" and refused to allow such non-existent property rights to halt a creditor in the same position as Howrey Claims, LLC, from suing a debtor corporation's equity security holders on an *alter ego* basis.

The District Court for the District of Columbia is on all fours with the Ninth Circuit in describing *alter ego* as a procedural remedy which merely 'exists' in the sense it appends itself to a substantive cause of action. See Tac-Critical Systems, Inc., *supra*, 808 F. Supp. 2d at p. 66. Thus Relevant Nonbankruptcy Alter Ego Law clearly follows California law in denying the Trustee any *alter ego* standing whatsoever.

## Conclusion

The unquestioned-by-the-Trustee-fact is that, by way of 11 U.S.C. §101(9)(a)(ii), Congress has decreed all true LLPs to be corporations. Howrey LLP is most certainly just such a true LLP, i.e., it is an LLP whose partners received the maximum protection allowed by law from the Model Act enacted as DC law. This being the case, the former Howrey partners are obviously subject to *alter ego* liability.

DC law/federal common law makes such *alter ego* liability the property of the creditors and **_not_** the property of the Howrey LLP estate, thus lessening Mr. Diamond's role when it comes to vindicating creditor rights against the former Howrey partners. Particularly since permanent involuntary third party releases are strictly verboten under In re Lowenschuss, 67 F.3d 1394, 1401 (9th Cir. 1995).

The answer to all the resulting dilemmas should be obvious. That answer is **_not_** holding Mr. McGrane in contempt. Rather, the answer is the Bankruptcy Court's issuance of a

1  temporary 11 U.S.C. § 105(a) injunction, followed by confirmation of a Plan which settles all

2  claims by both the Class and the estate against the former Howrey partners in a fair way.  Given

3  that the former Howrey partners now cannot count on the protection of 11 U.S.C. § 502(b)(6) if

4  *alter ego* must be litigated against them, it is quite possible that those partners will see the light

5  and accept a fair Plan.

6  Dated:  November 26, 2012                    McGrane LLP

7                                                                  By: /s/ William McGrane
                                                                         William McGrane
8
                                                                  Attorneys for Interested Party William McGrane
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24