**DIAMOND MCCARTHY LLP**
Stephen T. Loden, Esq. *(pro hac vice)*
J. Benjamin King, Esq. (*pro hac vice*)
909 Fannin, 15th Floor
Houston, TX 77010
Telephone: 713-333-5100
Facsimile: 713-333-5199
hressler@diamondmccarthy.com
sloden@diamondmccarthy.com
bking@diamondmccarthy.com
*Counsel for Allan B. Diamond,*
*Chapter 11 Trustee for Howrey LLP*

**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
Eric A. Nyberg, Esq. (Bar No. 131105)
Chris D. Kuhner, Esq. (Bar No. 173291)
1970 Broadway, Suite 225
Oakland, CA 94612
Telephone: 510-763-1000
Facsimile: 510-273-8669
e.nyberg@kornfieldlaw.com
c.kuhner@dornfieldlaw.com
*Local Counsel for Allan B. Diamond,*
*Chapter 11 Trustee for Howrey LLP*

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 11-31376 DM |
| HOWREY LLP, | Chapter 11 |
| | Date: December 21, 2012<br>Time: 9:30 a.m.<br>Ctrm: U.S. Bankruptcy Court<br>230 Pine Street<br>San Francisco, CA |
| | Judge: Dennis J. Montali |
| Debtor. | |

**CHAPTER 11 TRUSTEE'S AMENDED MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR AN
<u>ORDER ENFORCING THE AUTOMATIC STAY</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ........................................................................................... 4

ARGUMENT .............................................................................................. 7

    A.   The Automatic Stay Precludes Creditors From Asserting Claims That
        Are Property of the Estate ........................................................ 7

    B.   The Claims Alleged in The Complaint Are Property Of The Estate ...................... 8

        1.   The "Money Had And Received" Claim Alleged In
             The Complaint Is Property Of The Howrey Estate ................................. 9

        2.   HC's "Alter Ego" Allegation Does Not Allow HC
             To Assert Howrey's Claims .................................................... 12

        3.   The Alter Ego Remedy In The Complaint Is Property
             Of The Howrey Estate .......................................................... 13

CONCLUSION ........................................................................................... 19

399512

1

# TABLE OF AUTHORITIES

*Ahcom, Ltd. v. Smeding*, 623 F.3d 1248 (9th Cir. 2010) ...................................12, 13, 15, 19

*Alvarez v. Ward*, 2011 WL 7025906, at *3 (W.D.N.C. Oct. 17, 2011)............................14

*ANR Ltd., Inc. v. Chattin*, 89 B.R. 898 (D. Utah 1988) ...............................................15, 18

*Baillie Lubmer Co. v. Thompson*, 612 S.E. 2d 296 (Ga. 2005) .....................................15, 18

*Bank of Am., N.A. v. Knight*, --- F.Supp. 2d ---, 2012 WL 2368458, at *15
(N.D. Ill. June 20, 2012) ..........................................................................................12

*Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81 (D.C. 1994) ...............16

*Board of Directors of the Chestnut Condominium Unit Owners' Assoc.
v. Resolution Trust Co.*, 161 B.R. 860 (D.D.C. 1993) ......................................................14

*CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378 (9th Cir. B.A.P. 1997) ............................15

*Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman LLP)*
Adv. No. 10-3202-DM, 2011 WL 1539796 (Bankr. N.D. Cal. Apr. 22, 2011) .................5

*IMark Marketing Services, LLC v. Geoplast S.p.A.*,
733 F.Supp.2d 141 (D.D.C. 2010) ...................................................................................17

*In re 10th Ave. Record Distributors, Inc.*, 97 B.R. 163 (S.D.N.Y. 1989).........................14

*In re Advanced Packaging and Products Co.*, 426 B.R. 806 (C.D. Cal. 2010)................13

*In re AP Indus., Inc.*, 117 B.R. 789 (Bankr. S.D.N.Y. 1990) .............................................8

*In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318 (Bankr. N.D. Cal. 2009) .............5

*In re C.W. Mining Co.*, 625 F.3d 1240 (10th Cir. 2010)...................................................1

*In re Eagle Enterprises, Inc.*, 265 B.R. 671 (E.D. Penn. 2001)........................................15

*In re Gene. Associated Inv. Ltd. P'ship*, 159 B.R. 551 (Bankr. D. Ariz. 1993) .................7

*In re Keene Corp.*, 164 B.R. 844 (Bankr. S.D.N.Y. 1994)...............................................14

*In re Kimmel*, 367 B.R. 174 (Bankr. N.D. Cal. 2007) .................................................8, 11

*In re LendVest Mortg., Inc.*, 1990 WL 157806 at *2 (N.D. Cal. July 27, 1990) ...............8

399512

2

*In re Nat'l Century Finan. Enterprises, Inc.*, 423 F.3d 567 (6th Cir. 2005)........................1

*In re Oh*, 362 Fed. Appx. 576, 2009 WL 3437818, at *1 (9th Cir. 2009) ..........................7

*In re Rocky Mountain Recreational Communities, LLC*,
2012 WL 5248480, at *7 (Bankr. D. Mont. Oct. 23, 2012)...............................................19

*In re Schwartz*, 954 F.2d 569 (9th Cir. 1992) ......................................................................7

*In re Wardrobe*, 559 F.3d 932 (9th Cir. 2009)....................................................................7

*Jackson v. CorporateGear, LLC*, 2005 WL 3527148, at *3
(S.D.N.Y. Dec. 21, 2005)...................................................................................................14

*Jackson v. Loews Washington Cinemas, Inc.*, 944 A.2d 1088 (D.C. 2008) .....................16

*Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130 (2d Cir. 1993) ........................14

*Koch Refining v. Farmers Union Central Exch., Inc.*, 831 F.2d 1339 (7th Cir. 1987)......14

*Miller v. Security Life of Denver Ins. Co.*, 2012 WL 1029279, at *4
(N.D. Cal. March 26, 2012) .................................................................................................9

*Morgan Guaranty Trust Co. of New York v. American Sav. & Loan Ass'n*,
804 F.2d 1487 (9th Cir. 1986) .............................................................................................7

*Prince v. Icken Films, Inc.*, 2010 W.L. 2978644, at *5
(Cal. App. July 30, 2010)...............................................................................................8, 11

*Raytheon Co. v. Boccard USA Corp.*, 369 S.W.3d 626
(Tex. App. 2012).................................................................................................15, 16, 18

*Schlumberger Logelco Inc. v. Morgan Equipment Co.*,
1996 WL 251951, at *3 (N.D. Cal. May 3, 1996) .....................................................13, 14

*Shaoxing County Huayue Imprt & Export v. Bhaumik*,
191 Cal. App. 4th 1189 (Cal. App. 2011)....................................................................12, 19

*S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I.
Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir. 1987)...................................3, 7, 14, 15, 16, 18

*Sierra Switchboard Co. v. Westinghouse Elec. Corp.*,
789 F.2d 705 (9th Cir. 1986)..........................................................................................7, 8

*St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688
(2d Cir. 1989)...............................................................................................................14, 16

*Steyr-Daimler-Puch of America Corp. v. Pappas*,
852 F.2d 132 (4th Cir. 1988) .............................................................................................17

\

*Sunnyside Dev.Co., LLC v. Opsys Ltd.*, 2005 WL 1876106, at *3
(N.D. Cal. Aug. 8, 2005)........................................................................................14

*TAC-Critical Systems, Inc. v. Integrated Facility Systems, Inc.*,
808 F.Supp. 2d 60 (D.D.C. 2011)............................................................2, 16, 17

*Trustees of the Const. Industry and Laborers Health and Welfare Trust v.
Vasquez*, 1022 WL 4549228, at *2 (D. Nev. Sept. 29, 2011)......................14, 15

*U.S. v. Andrews*, 146 F.3d 933 (D.C. Cir. 1998) ................................................17

*Wehlage v. Emires Healthcare, Inc.*, 821 F.Supp.2d 1122 (N.D. Cal. 2011)...................13

*Weiss v. Marcus* 51 Cal. App. 3d 590 (Cal. App. 1975)........................................9

*Xenerga, Inc.*, 449 B.R. 594 (M.D. Fla. 2011) ................................................18

Allan B. Diamond (the "Trustee"), chapter 11 trustee for Howrey LLP (the "Debtor" or "Howrey"), hereby submits this Amended[1] Memorandum of Points and Authorities in Support of Motion for an Order Enforcing the Automatic Stay (the "Motion"). By the Motion, the Trustee moves this Court, pursuant to Bankruptcy Code section 362(a) and Bankruptcy Rules 9020 and 9014,[2] for an order enforcing the automatic stay, and, in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT

1. On November 1, 2012, Howrey Claims, LLC ("HC") filed a class action complaint (the "Complaint") in this Court against 302 former partners (the "Former Partners") of the Debtor. *See* Ex. A.[3] The Complaint seeks to hold the Former Partners liable as alter egos of the Debtor, based on the Former Partners' alleged diversion of funds from the Debtor. HC is the assignee of an unsecured claim in the amount of $994.25 filed against Howrey by Jan Brown & Associates ("Jan Brown"), and HC seeks to represent all persons to whom the Former Partners have incurred liability as alter egos of Howrey. The bulk of the class members would be Howrey's unsecured creditors, such as Jan Brown.

2. The claims set forth in the Complaint are property of the Howrey estate, and HC's litigation of those claims directly violates the automatic stay. The Trustee requests that this Court issue an order (a) declaring that HC's litigation of alter ego claims against the Former Partners violates the automatic stay, and (b) declaring that HC and its counsel will be held in

---

[1] This Memorandum has been amended to add a table of contents and table of authorities and is otherwise substantively identical to the original memorandum submitted on November 15, 2012.

[2] *In re Nat'l Century Finan. Enterprises, Inc.,* 423 F.3d 567, 579 (6th Cir. 2005) ("A debtor is not required to initiate an adversary proceeding to move the court to enforce the automatic stay."); *In re C.W. Mining Co.,* 625 F.3d 1240, 1246-47 (10th Cir. 2010).

[3] All exhibits are attached to the Affidavit of Allan B. Diamond ("Diamond Aff."), submitted on November 15, 2012.

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 6 of 32

contempt of Court if they do not withdraw the Complaint and refrain from taking any further action to pursue recoveries from the Former Partners as Howrey's alleged alter egos.

3. By the Complaint, HC seeks to hijack these bankruptcy proceedings and subsume the most significant parts of the bankruptcy within its class action. The proposed class action impacts this bankruptcy in at least the following ways:

- HC's class claims seek recoveries from the Former Partners for overpayments and improper payments made to them by Howrey, yet those same overpayment claims against the Former Partners are a critical source of litigation recoveries for the estate. HC's class action will directly interfere with the Trustee's ability to pursue these essential litigation recoveries for the benefit of all creditors.

- HC's claims depend upon establishing each class member's entitlement to recover against Howrey (for a creditor's alter ego claim cannot exist against the Former Partners without first establishing a right to payment from Howrey), yet the claims allowance process is designed to orderly and efficiently adjudicate claims against Howrey. HC's class action will directly interfere with the claims adjudication process.

- HC expressly intends to subvert the Bankruptcy Code's claims priority schedule. HC's class action would allow class members to recover from the Former Partners through the class action mechanism, rather than through a plan approved under the Bankruptcy Code.

4. Although HC seeks to hijack this bankruptcy via a class action, it cannot. The claims HC asserts are property of the Howrey estate, and the automatic stay precludes HC from bringing its claims. An alter ego claim has two essential components: first, establishing that the controlled entity (allegedly, Howrey) is indebted to the plaintiff (the "Substantive Claim"), and second, establishing that the controlled entity's principals (allegedly, the Former Partners) are its alter ego and therefore liable for the entity's debt (the "Alter Ego Remedy"). *See, e.g., TAC-Critical Systems, Inc. v. Integrated Facility Systems, Inc.,* 808 F. Supp. 2d 60, 66-67 (D.D.C. 2011). Here, both HC's Substantive Claim and Alter Ego Remedy belong to Howrey.

5.     **First**, HC's Substantive Claim belongs to Howrey because HC's "SOLE" Substantive Claim is money had and received, but HC does not allege that Jan Brown had any money that was received by anyone.  (After all, Jan Brown provided court reporting services; it did not transfer any money to Howrey.)  Instead, HC alleges that Howrey's money was had and received by the Former Partners.  *See* Complaint ¶¶ 309, 316.  Any claim against the Former Partners for recovery of Howrey's money belongs to the Howrey Estate – not HC or any other individual creditor.  Even if HC could bring an Alter Ego Remedy against the Former Partners based on a Substantive Claim HC did own (it cannot, as discussed below), an Alter Ego Remedy cannot convert a Howrey claim into a HC claim.

6.     **Second**, HC's Alter Ego Remedy belongs to Howrey because, under applicable law, only the Debtor has standing to pursue an Alter Ego Remedy against the Former Partners. D.C. law will govern whether Howrey or its creditors own any Alter Ego Remedy against the Former Partners, and D.C. law is consistent with the multitude of courts holding that only the debtor has standing to pursue an Alter Ego Remedy against the debtor's former principals.  Thus, even if HC had properly alleged a Substantive Claim against Howrey, it cannot bring an Alter Ego Remedy against the Former Partners.

7.     Many courts have held that the automatic stay precludes claims by creditors asserting Alter Ego Remedies against a debtor's principal.  *See, e.g., S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir. 1987); *see also infra* ¶¶ 40-42.  The Trustee requests that this Court hold the same here.  If HC is allowed to press its class action claims against the Former Partners, the ability of the Trustee to efficiently and effectively perform his responsibilities, for the best interests of all creditors, will be severely undermined.

# **BACKGROUND**

8.      Howrey was an international law firm, headquartered in Washington, DC, whose partners provided legal services to thousands of clients worldwide.  Howrey was formed as a limited liability partnership under D.C. law.  *See* Diamond Aff. ¶ 2.

9.      On April 11, 2011 ("Petition Date"), certain creditors of Howrey filed a chapter 7 involuntary petition against Howrey.  On June 6, 2011, the Court entered an order converting the above-captioned case to a case under chapter 11 of the Bankruptcy Code.  *See id.* ¶ 3.

10.     On September 22, 2011, the Court entered an order granting a motion to appoint a chapter 11 trustee.  On October 7, 2011, the U.S. Trustee for the Northern District of California appointed the Trustee as chapter 11 trustee for the estate of Howrey.  On October 12, 2011, the Court entered an order approving the appointment of the Trustee.  *See id.* ¶ 4.

11.     Thousands of persons and entities have filed creditor claims seeking over a hundred million dollars in recoveries from the Howrey estate.  The asserted bases for these claims are various, including claims for unpaid invoices, unpaid rent, unpaid salary, unreimbursed expenses, and many others.  *See id.* ¶ 5.

12.     Both before and after the Petition Date, substantially all the Debtor's partners—including the Former Partners listed in the Complaint—left the Howrey partnership and joined as partners or became employees of other law firms ("Successor Firms").  Many of the Former Partners were the originating or relationship partners with respect to certain Howrey clients. Some of the Former Partners were working on active client matters on behalf of Howrey clients at the time they left Howrey and became affiliated with the Successor Firms, and many of these matters were completed (or are in the processing of being completed) by the Successor Firms. *See id.* ¶ 6.

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 9 of
32

13.     The Trustee has unfinished business claims against the Former Partners and the Successor Firms.  *See In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318, 337 (Bankr. N.D. Cal. 2009); *Heller Ehrman LLP v. Arnold & Porter LLP* (*In re Heller Ehrman LLP*), Adv. No. 10-3202-DM, 2011 WL 1539796 (Bankr. N.D. Cal. Apr. 22, 2011).  *See id.* ¶ 7.

14.     The Trustee also has clawback claims against certain of the Former Partners who, prior to their departure from Howrey and in spite of Howrey's insolvency, continued to take distributions of cash out from the Howrey partnership.  The clawback claims may include causes of action for fraudulent transfers, avoidance actions, and other common law contract and tort claims under state and federal law.  *See, e.g.,* 11 U.S.C. §§ 544, 548; Cal. Civ. Code § 3439, *et seq.  See also* Diamond Aff. ¶ 8.

15.     The Trustee is actively pursuing both the unfinished business claims and the clawback claims against the Former Partners and the Successor Firms.  The Trustee has obtained authority from this Court to obtain Rule 2004 discovery from the Successor Firms.  The Trustee is currently negotiating settlements with some of the Former Partners and Successor Firms, and he hopes to begin to announce early settlement agreements with various Successor Firms and Former Partners in the next few months, if not weeks.  The Trustee is also preparing to file adversary proceedings against those Former Partners and Successor Firms with which he cannot negotiate a resolution.  *See id.* ¶ 9.

16.     On April 22, 2011, Jan Brown filed a $994.25 proof of claim against the Debtor. Jan Brown's proof of claim was based on Howrey's alleged pre-petition failure to pay for court reporter services rendered.  (Ex. B).

17.     On October 31, 2012, more than a year and a half after this bankruptcy case commenced, Jan Brown assigned its claim to HC.  (Ex. C).

Case: 11-31376   Doc# 885   Filed: 11/30/12   Entered: 11/30/12 14:26:56   Page 10 of 32

18. The next day, on November 1, 2012, HC filed the Complaint. HC's sole basis as a creditor is as the assignee of Jan Brown's $994.25 proof of claim. However, the Complaint nowhere mentions Jan Brown, the basis for Jan Brown's claim, or even the tiny amount of its claim. *See* Diamond Aff. ¶ 12.

19. The bare-bones Complaint alleges that the Former Partners are alter egos of the Debtor for the following reasons:

> During the Relevant Period, the HESHs[4] controlled, dominated and operated Debtor as their individual business and alter ego; the HESHs diverted funds and other assets of Debtor for other than corporate uses; the HESHs treated the assets of Debtor as their own; and the HESHs diverted assets from Debtor to themselves to the detriment of HC and the Class, as that term is defined, *infra*.

Complaint ¶ 307.

20. The Complaint states, as its "SOLE CLAIM FOR RELIEF", money had and received. The Complaint describes its sole Substantive Claim as follows:

> HC has been damaged to the extent it has been paid zero by anyone on account of its present status of being an unsecured creditor by assignment in the Debtor's Bankruptcy Case, and, given (i) the absolute priority rule, (ii) the hopeless insolvency of the estate, and (iii) the continuing very high costs of administering the estate versus the continuing very low return on the assets of the estate, HC will almost certainly never be paid anything in the future by anyone on account of its present status of being an unsecured creditor by assignment in the Debtor's Bankruptcy Case except, possibly, the HESHs, and then only by way of a successful outcome in this class action.

Complaint ¶ 316.

21. The Complaint also raises class action allegations. HC seeks to represent "[a]ll persons or entities or their then present assignees to whom the HESHs have incurred liability as alter egos of Debtor during the Relevant Period." Complaint ¶ 309. The common question of

---

[4] The Complaint refers to the Former Partners as "Howrey Equity Security Holders," or "HSEHs." The Complaint contends that Howrey was a corporation, as that term is defined at 11 U.S.C. § 101(9)(A)(ii), and that the Former Partners are not actually "partners," but rather security holders in the Howrey corporation. *See* Complaint ¶ 306. The Trustee takes no position on this allegation in the instant motion. Nor does the Trustee now take any position as to whether an alter ego recovery may be had where the controlled entity is a limited liability partnership.

Case: 11-31376   Doc# 885   Filed: 11/30/12   Entered: 11/30/12 14:26:56   Page 11 of 32

law or fact HC claims will predominate over individual questions is "[w]hether the HESHs or any of them should be deemed to be the alter ego of Debtor *vis a vis* the Class."

## ARGUMENT

**A.    The Automatic Stay Precludes Creditors From Asserting Claims That Are Property Of The Estate**

22.    Section 362(a)(3) of the Bankruptcy Code stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."   The stay is self-executing so the injunction arises by operation of law without regard to the existence of a related adversary proceeding.  *In re Wardrobe,* 559 F.3d 932, 934 (9th Cir. 2009).   While the stay is in effect, an act in violation of the stay is void and without effect. *Morgan Guaranty Trust Co. of New York v. American Sav. & Loan Ass'n,* 804 F.2d 1487, 1490 (9th Cir. 1986); *In re Schwartz,* 954 F.2d 569, 571 (9th Cir. 1992).   A violation of the stay is punishable as contempt of court.  *In re Oh,* 362 Fed. Appx. 576, 2009 WL 3437818, at *1 (9th Cir. 2009).

23.    Property of the estate includes causes of action.  *See Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 707 (9th Cir. 1986) ("The scope of section 541 is broad, and includes causes of action."); 11 U.S.C. § 541(a)(1).  Because the property of the estate includes causes of action, the automatic stay under section 362(a)(3) precludes any attempts by creditors or others from bringing suit based on causes of action owned by the debtor's estate.  *S.I. Acquisition, Inc. v. Eastway Delivery Services, Inc. (In re S.I. Acquisition, Inc.),* 817 F.2d 1142, 1150, 1151-52 (5th Cir. 1987); *In re Gene. Associated Inv. Ltd. P'ship,* 159 B.R. 551, 554 (Bankr. D. Ariz. 1993) (finding a violation of the automatic stay based on attempt to control a cause of action owned by the estate) *citing Sierra Switchboard Co. v. Westinghouse Elec. Corp*.,

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 12 of 32

789 F.2d 705, 707 (9th Cir.1986) (finding that under 11 U.S.C. § 541, a debtor's cause of action is considered property of the estate.); *see also In re Gen. In re AP Indus., Inc.*, 117 B.R. 789, 799 (Bankr. S.D.N.Y. 1990) ("The Defendants cavalierly state that § 362(a) of the Code is not implicated by the New York Actions because the suit seeks money damages from various non-debtor third parties and does not seek possession or control of any property of the Debtor's estate. The Defendants are gravely mistaken. This is precisely the type of activity and burden to the estate which § 362 of the Code was intended to alleviate. The New York Actions are a transparent attempt by the Defendants to "end run" the automatic stay. The actions constitute acts to exercise control over property of the estate in violation of § 362 of the Code.").[5]

24. Where a creditor asserts claims that are derivative of a debtor's claims, the creditor's claims are property of the estate. *In re LendVest Mortg., Inc.,* 1990 WL 157806, at *2 (N.D. Cal. July 27, 1990). Thus, for example, once a bankruptcy case has commenced and a trustee is appointed, the authority to bring fraudulent transfer claims vests in the bankruptcy trustee, and the automatic stay prevents creditors from interfering with the right that has passed to the trustee. *In re Kimmel,* 367 B.R. 174, 178 n.5 (Bankr. N.D. Cal. 2007); *Prince v. Icken Films, Inc.,* 2010 WL 2978644, at *5 (Cal. App. July 30, 2010).

**B.     The Claims Alleged In The Complaint Are Property Of The Estate**

25. The Complaint is vague in its description of HC's claims, but there are only two reasonable interpretations of the cause of action set forth in the Complaint. Under either interpretation, HC's claims are property of the Estate and are barred by the automatic stay.

26. The Complaint states that HC's sole claim is for "money had and received," but the only possible claim for money had and received, based on the facts alleged in the Complaint,

---

[5]  Enforcement of the automatic stay is a core bankruptcy proceeding.  28 U.S.C. § 1334(b); 11 U.S.C. § 157(b).

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 13 of
32

is Howrey's claim for money had and received against the Former Partners. HC has no claim for money had and received. HC instead attempts to co-opt Howrey's money had and received claim. *See infra* § B.1. Adding an Alter Ego Remedy to its Complaint does not allow HC to take over Howrey's claim. *See infra* § B.2.

27. Even if HC had alleged a proper Substantive Claim that could serve as the basis for an Alter Ego Remedy, HC's Complaint would be precluded by the automatic stay. Under D.C. law, the Howrey estate may bring an Alter Ego Remedy against the Former Partners, and HC's attempt to do the same is precluded by the automatic stay. *See infra* § B.3.

### 1. The "Money Had And Received" Claim Alleged In The Complaint Is Property Of The Howrey Estate

28. HC's "SOLE CLAIM FOR RELIEF" is for "money had and received." *See* Complaint ¶ 316. "An action for money had and received lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." *Miller v. Security Life of Denver Ins. Co.,* 2012 WL 1029279, at *4 (N.D. Cal. March 26, 2012) (quoting *Weiss v. Marcus,* 51 Cal. App. 3d 590, 599 (Cal. App. 1975)). The money had and received claim alleged in the Complaint belongs to Howrey, not HC.

29. **First,** the Complaint does not allege that Jan Brown's (or HC's) money was transferred to Howrey. Rather, the gist of the Complaint is that Howrey's money was improperly transferred to the Former Partners. *See* Complaint ¶¶ 307, 316. Thus, HC is not asserting Jan Brown's money had and received claim against Howrey. Instead, it is asserting Howrey's money had and received claim against the Former Partners. This is Howrey's claim, not HC's.

30.     **Second**, the claim Jan Brown filed in the Howrey bankruptcy (and subsequently assigned to HC) confirms the analysis above.  Jan Brown is a court reporting service.  It filed a claim in the Howrey bankruptcy for failure to pay for court reporting services.  *See* Ex. B.  No money left Jan Brown's hands to be received by Howrey.  Jan Brown's claim provides no basis for a money had and received claim against Howrey.

31.     **Third,** on or about November 10, 2012, HC's counsel (William McGrane) publicly posted a "Memorandum" (the "Memorandum", Ex. D)[6] on his website directed to the members of the class HC hopes to represent.  Therein, Mr. McGrane described the basis for the Complaint and made clear that the substantive allegations in the Complaint are based on fraudulent transfers between Howrey and the Former Partners, not transfers between HC (and other creditors) and Howrey.  Mr. McGrane also makes clear in his Memorandum that the Complaint seeks recovery for the very same transfers the Trustee has indicated he will seek to recover:

> . . . Allan Diamond, the Chapter 11 Trustee for Howrey LLP has repeatedly announced his intention to pursue all remuneration-for-services-transfers to the [Former Partners] that were made while Howrey LLP was insolvent by asserting same were fraudulent transfers under both state and federal law.
>
> [The Complaint] alleges that, within the 2 year period of time otherwise encompassed by 11 U.S.C. § 548, i.e., during the Relevant Period, the [Former Partners] all "diverted funds and other assets of Debtor for other than corporate purposes".
>
> Implicit in the allegation of "diversion" is the fact of insolvency during the Relevant Period, else there would likely have been nothing actually fraudulent (and certainly nothing constructively fraudulent) about the [Former Partners] accepting transfers from Howrey LLP.  Thus, [the Complaint's] use of the term "diversion" is intended to encompass a deliberate accusation by [HC], and against the [Former Partners], to the effect that Howrey LLP was insolvent during the Relevant Period and that the [Former Partners] are therefore guilty of wrongful conduct for accepting remuneration-for-services-transfers in that time frame.  Accepting such fraudulent transfers may, of course, also and very easily be argued

---

[6] Mr. McGrane posted the Memorandum at the following website:  http://www.mcgranellp.com/news.html.

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 15 of
32

as highly relevant from an *alter ego* standpoint under applicable nonbankruptcy law.

Memorandum at 2-3. This passage's focus on the transfers from Howrey to the Former Partners confirms that HC seeks to recover for the same fraudulent transfers for which the Trustee will seek to recover. In fact, HC defines the scope of its claims by the two-year statute of limitations applicable to the Trustee's claims under the Bankruptcy Code.

32. The Memorandum thus clarifies that the money had and received claims in the Complaint are nothing more than the Howrey estate's fraudulent transfer claims against the Former Partners with a different label affixed. These fraudulent transfer claims (or money had and received claims) allege merely damage to Howrey. Any damage to HC and the creditors is purely derivative of the damage allegedly inflicted upon Howrey by the Former Partners. As noted above, fraudulent transfer claims based on transfers from the debtor are property of the estate, and the authority to bring fraudulent transfer claims vests solely in the bankruptcy trustee. *In re Kimmel,* 367 B.R. 174, 178 n.5 (Bankr. N.D. Cal. 2007); *Prince v. Icken Films, Inc.,* 2010 WL 2978644, at *5 (Cal. App. July 30, 2010).

33. **Finally**, the fact that HC seeks to represent a class confirms that HC seeks to assert Howrey's claims. If HC sought to assert each class member's claim, class certification would be impossible. As discussed above, to seek an Alter Ego Remedy, a plaintiff must first establish a Substantive Claim against the entity controlled by the alter ego. *See supra* ¶ 4. Establishing each unsecured creditor's Substantive Claim against Howrey (for which the Former Partners allegedly would be liable as alter egos) would be impossible on a classwide basis. Thousands of persons and entities have filed claims in the Howrey bankruptcy. The basis for their claims range from failure to pay court reporter expenses, to failure to pay rent, to

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 16 of 32

malpractice, and to a multitude of additional bases, each claim with its different factual and legal basis. Such a class could never be certified. *See* FED. R. CIV. P. 23(b)(3) (providing, among other requirements, that common issues predominate over common issues where a class seeks the payment of money damages). The Complaint seeks to by-pass this problem by bringing claims based on Howrey's injuries—claims based on the transfers Howrey made to the Former Partners. Asserting Howrey's claims for Howrey's injuries might help solve HC's class certification problem, but doing so is directly contrary to the automatic stay.

### 2. HC's "Alter Ego" Allegation Does Not Allow HC To Assert Howrey's Claims

34. Under the laws of some states, in some circumstances, a creditor may seek an Alter Ego Remedy against the owners of the debtor. *See Ahcom, Ltd. v. Smeding,* 623 F.3d 1248 (9th Cir. 2010). However, where the creditor has no Substantive Claim against the debtor, it has no Alter Ego Remedy. *See Shaoxing County Huayue Import & Export v. Bhaumik,* 191 Cal. App. 4th 1189, 1198 (Cal. App. 2011) ("An alter ego defendant has no separate primary liability to the plaintiff. Rather, plaintiff's claim against the alter ego defendant is identical with that claimed by plaintiff against the already-named defendant."); *Bank of Am., N.A. v. Knight,* --- F. Supp. 2d ---, 2012 WL 2368458, at *15 (N.D. Ill. June 20, 2012) (dismissing alter ego claims where underlying claims had been dismissed).

35. As discussed above, the Complaint lacks a Substantive Claim against Howrey. The Complaint is based on claims that the Former Partners owe Howrey money, not that Howrey is indebted to HC. (Indeed, HC sets forth no basis for establishing Howrey's indebtedness to HC. HC alleges that it is an assignee of a claim of an unnamed unsecured creditor, but it fails to state the basis for the claim or even the amount of the claim.) Alter ego sometimes, under the laws of some states, allows a creditor to recover from the alter ego for debts owed to the creditor

Case: 11-31376   Doc# 885   Filed: 11/30/12   Entered: 11/30/12 14:26:56   Page 17 of 32

by the debtor, **but** a creditor may not recover from the alter ego for damages the alter ego owes the debtor. In short, an alter ego allegation cannot convert a debtor's claim into a creditor's claim. Instead, it simply gives the creditor another potential source from which it can recover for its own claim against the debtor.

36. HC's alter ego allegations cannot change the fact that the Complaint seeks to recover for Howrey's injuries, and to assert Howrey's claims, and thus the Complaint violates the automatic stay.

### 3. The Alter Ego Remedy Asserted In The Complaint Is Property Of The Howrey Estate

37. As discussed in section B.1, above, the Substantive Claims in the Complaint are property of the Howrey estate, and as discussed in section B.2, adding an Alter Ego Remedy to the Complaint does not give HC the right to pursue Howrey's claim.

38. But even if HC could interpret its Complaint to allege a Substantive Claim that was its property (*i.e.*, a claim against Howrey), HC's Alter Ego Remedy would be property of the Howrey estate. What claims are property of the Howrey estate raises a question of state law. *Ahcom, Ltd. v. Smeding,* 623 F.3d 1248, 1250 (9th Cir. 2010). *In re Advanced Packaging and Products Co.,* 426 B.R. 806, 819 (C.D. Cal. 2010) ("Whether an alter ego claim belongs to the bankruptcy estate or to an individual creditor is decided under state law.").

39. Where an alter ego issue arises, federal courts in California look to California choice-of-law rules to determine which state's law applies in evaluating the alter ego issue. Federal courts applying California choice-of-law analysis have ruled that the law of the state of incorporation of the entity at issue controls questions of alter ego. *See Wehlage v. Emires Healthcare, Inc.,* 821 F. Supp. 2d 1122, 1129 (N.D. Cal. 2011); *Schlumberger Logelco Inc. v*

Case: 11-31376   Doc# 885   Filed: 11/30/12   Entered: 11/30/12 14:26:56   Page 18 of 32

*Morgan Equipment Co.,* 1996 WL 251951, at *3 (N.D. Cal. May 3, 1996); *Sunnyside Development Co., LLC v. Opsys Ltd.,* 2005 WL 1876106, at *3 (N.D. Cal. Aug. 8, 2005). Here, Howrey was formed under D.C. law, and D.C. law governs whether the Howrey estate or HC owns the alter ego claims alleged in HC's Complaint.[7]

40. The United States District Court for the District of Columbia has held, under Virginia law, that alter ego claims are property of the estate, and that creditors may not assert alter ego claims. *Board of Directors of the Chestnut Grove Condominium Unit Owners' Assoc. v. Resolution Trust Co.,* 161 B.R. 860, 862-63 (D.D.C. 1993) (applying Virginia law and dismissing creditor's complaint against debtor's alleged alter ego on the grounds that the claim was property of the debtor's estate).

41. Like the court in *Chestnut Grove,* courts applying the law of many states have held that alter ego claims against controllers of the debtor are property of the debtor. *See, e.g., St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688 (2d Cir. 1989) (Ohio law); *S.I. Acquisition, Inc.,* 817 F.2d at 1152-53 (Texas law); *Kalb, Voorhis & Co. v. American Fin. Corp.,* 8 F.3d 130, 133 (2d Cir. 1993) (Texas law); *Koch Refining v. Farmers Union Central Exch., Inc.,* 831 F.2d 1339 (7th Cir. 1987) (Illinois and Indiana law); *Alvarez v. Ward,* 2011 WL 7025906, at *3 (W.D.N.C. Oct. 17, 2011) (North Carolina law); *Trustees of the Const. Industry and Laborers Health and Welfare Trust v. Vasquez,* 2011 WL 4549228, at *2 (D. Nev. Sept. 29, 2011) (Nevada law); *In re 10th Ave. Record Distributors, Inc.,* 97 B.R. 163 (S.D.N.Y. 1989) (New York

---

[7] Alternatively, New York law could apply because Howrey's Second Amendment to its partnership agreement stated that New York law would apply to disputes regarding the partnership agreement. New York law, consistent with the law of many other states, makes clear that bankruptcy trustees, and not creditors, have standing to bring claims to recover from the debtor's alter egos. *See Jackson v. CorporateGear, LLC,* 2005 WL 3527148, at *3 (S.D.N.Y. Dec. 21, 2005) ("Consequently, when New York law applies, a bankruptcy trustee has 'standing to assert claims based upon piercing the corporate veil or alter ego liability, and creditors are precluded from pursuing those claims until they have been abandoned.'") (quoting *In re Keene Corp.,* 164 B.R. 844, 852 (Bankr. S.D.N.Y. 1994)).

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 19 of 32

law); *ANR Ltd., Inc. v. Chattin,* 89 B.R. 898 (D. Utah 1988) (Utah law); *Baillie Lubmer Co. v. Thompson,* 612 S.E.2d 296, 299-301 (Ga. 2005) (Georgia law); *Raytheon Co. v. Boccard USA Corp.,* 369 S.W.3d 626, 638 (Tex. App. 2012) (Pennsylvania and Delaware law).

42.     Moreover, courts have held that the automatic stay precludes creditors from pursuing recoveries from the debtor's alter egos. *See Trustees of the Const. Industry,* 2011 WL 4549228, at *3 (dismissing creditor's alter ego claim for lack of standing and as barred by the automatic stay); *S.I. Acquisition, Inc.,* 817 F.2d at 1152-54 (holding that creditor's alter ego claims was barred by the automatic stay); *In re Eagle Enterprises, Inc.,* 265 B.R. 671, 678-79 (E.D. Penn. 2001) (affirming bankruptcy court's ruling that creditor's alter ego claims were barred by the automatic stay).[8]

43.     D.C. law is consistent with the law of these other jurisdictions that determined that only the trustee could bring alter ego claims against the debtor's controllers.  The same reasoning that led courts in other states to reach this conclusion applies equally under D.C. law.  **First,** courts addressing this issue have considered whether, under state law, a plaintiff can invoke alter ego based only on the conduct and relationship between the principal and the controlled entity, or if state law requires proof regarding the particular plaintiffs' dealings with the controlled entity.  For example, the Fifth Circuit in *S.I. Acquisition, Inc.,* considered whether, under Texas law, a debtor's estate had the authority to bring alter ego actions, such that a creditor did not have standing to bring its own alter ego actions.  817 F.2d at 1152-53.  The Fifth Circuit

---

[8]  For many years, federal courts in California interpreted California law to hold that generalized alter ego claims were property of the debtor's estate.  *See, e.g., CBS, Inc. v. Folks (In re Folks),* 211 B.R. 378, 187 (9th Cir. B.A.P. 1997).  The Ninth Circuit, in *Ahcom, Ltd. v. Smeding,* 623 F.3d 1248 (9th Cir. 2010), reversed course and determined that California law did not recognize generalized alter ego claims.  *Id.* at 1252.  However, as discussed below (*see infra* note 10), bankruptcy trustees can still bring alter ego claims against a debtor's principals where the alter ego injured the debtor.

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 20 of
32

first observed that, under Texas law, the doctrine of alter ego is not specific to the particular plaintiff seeking to invoke it:

> The remedy of alter ego under Texas law appears to be available to all creditors of the corporation so long as the requisite melding of the corporation and its control entity are established. The doctrine of alter ego does not rest upon a particular creditor's dealings with or reliance on the control entity, nor does the doctrine require a showing of fraud on a particular creditor.

817 F.2d at 1152. *See also Raytheon,* 369 S.W.3d at 637-38.

44. Here, D.C. law does not require proof regarding the particular plaintiffs' dealings with the controlled entity. *See TAC-Critical Systems, Inc. v. Integrated Facility Systems, Inc.,* 808 F. Supp. 2d 60, 66-67 (D.D.C. 2011) (holding that proof of fraud on the party invoking alter ego is not required under D.C. law; listing factors to be considered in assessing an alter ego claim, none of which regard factors specific to the claimant); *Bingham v. Goldberg. Marchesano. Kohlman. Inc.,* 637 A.2d 81, 93 (D.C. 1994) (same); *Jackson v. Loews Washington Cinemas, Inc.,* 944 A.2d 1088, 1095-96 (D.C. 2008) (same). Because proof of the individual creditor's circumstances is not required under D.C. law to establish an alter ego claim, a debtor's trustee can establish the debtor's entitlement to reach the alter ego's assets.

45. **Second,** courts have looked to the policies that undergird the alter ego doctrine in a particular state to assess whether those policies support allowing the debtor to bring alter ego claims against the alleged alter ego. The Fifth Circuit in *S.I. Acquisition* noted that "the predominate policy of Texas alter ego law is that the control entity that has misused the corporation form will be held accountable for the corporation's obligations." 817 F.2d at 1152. *See also St. Paul Fire,* 884 F.2d at 703 (noting that under Ohio law the basis for the action "is the avoidance of some wrong or injustice that would result if the separateness of a corporation and its alter ego were maintained").

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 21 of 32

46.     Here, the driving policy behind D.C. alter ego law is preventing misuse of the corporate form to cause injustice.  *See TAC-Critical,* 808 F. Supp. 2d at 67 (D.D.C. 2011) (holding that "'[t]he ultimate principle [of veil piercing] is one permitting its use to avoid injustice'") (quoting *U.S. v. Andrews,* 146 F.3d 933, 940 (D.C. Cir. 1998)).   Recognizing the right to bring an alter ego action in the debtor, and controlled by its trustee, will help ensure that the resources of alter egos are used to avoid injustice and pay the creditors of the debtor.[9]

47.     **Third,** courts have noted that recognizing generalized alter ego claims vested in the debtor  is consistent with fundamental purposes of the Bankruptcy Code—collecting assets of the estate and providing a fair distribution to creditors.  For example, in determining that Utah law vested the debtor with the right to bring alter ego actions against its principals, the federal district court in Utah wrote:

> The Bankruptcy Code's ultimate goal is to balance the equities and interest of all affected parties involved in a bankruptcy case. . . . Bankruptcy law permits the trustee to recover property on behalf of all creditors for equitable distribution and to avoid multiple liability of the debtor to separate creditors.  Thus, section 541 should be construed broadly in an effort to further the fundamental bankruptcy policy of equitable distribution to creditors.

> . . . Because a successful alter ego action results in a finding that the defendants are personally liable for all corporate debts, the bankruptcy trustee is logically the proper party to bring an alter ego right of action in the first instance.  It would be contrary to fundamental bankruptcy policies to prohibit a bankruptcy trustee from asserting an alter ego remedy for the benefit of all creditors.

> Therefore, in view of fundamental bankruptcy policies, it is appropriate to categorize an action based on the alter ego doctrine as property of the estate.

---

[9]  Similarly, the Fourth Circuit in *Steyr-Daimler-Puch of America Corp. v. Pappas,* 852 F.2d 132, 136 (4th Cir. 1988), held that "a corporation has an equitable interest in the assets of an alter ego because the corporation and the alter ego are 'one and the same.'"  Section 541(a) then brought into the bankruptcy estate the right of the debtor "to proceed against its alter ego and claim its equitable interest in assets of the alter ego."  *Id.*  Under D.C. law, alter egos and the controlled entities "are one and the same."  *IMark Marketing Services, LLC v. Geoplast S.p.A.,* 753 F. Supp. 2d 141, 162 (D.D.C. 2010).  Here, Howrey has an equitable interest in the assets of its alter egos, and it has the right to pursue its alter egos to recover those assets.

Case: 11-31376   Doc# 885   Filed: 11/30/12   Entered: 11/30/12 14:26:56   Page 22 of 32

*ANR Ltd.,* 89 B.R. at 903-04 (citations omitted) (dismissing creditor's alter ego claim). *See also Raytheon,* 369 S.W.3d at 636; *In re Xenerga, Inc.,* 449 B.R. 594, 599 (M.D. Fla. 2011) ("Trustees who represent the interest of all unsecured creditors of a debtor corporation are in the best position to assert claims against abusive insiders who have harmed the general creditor body as a whole."); *Baillee,* 612 S.E.2d at 300 (reasoning that if alter ego claims were not property of the bankruptcy estate, then creditors could "circumvent the bankruptcy process and [c]ould 'undercut the general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly.'" (quoting *S.I. Acquisition,* 817 F.2d at 1153)).

48.     Here, HC has made it clear that it has brought its class action for the very purpose of circumventing the bankruptcy process. HC hopes to evade the "absolute priority rule" in the Bankruptcy Code by bringing this action to recover directly from the Former Partners. *See* Complaint ¶ 316. Moreover, allowing HC to bring its class action will subvert the Trustee's ability to litigate against and settle with the Former Partners. The Former Partners will be disinclined to settle with the Trustee, if he cannot provide them with a complete release. *See* Diamond Aff. ¶ 14. Moreover, should the Trustee bring alter ego claims against the Former Partners, his action could be adversely affected by a ruling in the HC matter regarding whether the Former Partners were alter egos. And HC and the putative class members' claims depend upon establishing, first, that Howrey owed them a debt. Thus, HC's proposed class action would necessarily involve the determination of whether the thousands of unsecured claims against the Howrey estate should be allowed or disallowed. In other words, not only does HC seek to co-opt Howrey's claims against the Former Partners, but it also seeks to hijack the whole claims allowance process in the bankruptcy. *See id.* ¶ 15.

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 23 of 32

49.     For these reasons, under D.C. law, only the Trustee can seek to recover from the Former Partners under an Alter Ego Remedy.  HC's pursuit of the Former Partners as alter egos of the Debtor violates the automatic stay.[10]

## **CONCLUSION**

50.     For all the reasons stated above, HC's Complaint brings claims that are the property of the Howrey estate.  Only the Trustee has the ability to bring those claims.  HC's continued pursuit of those claims threatens to derail this bankruptcy proceeding, and HC's actions violate the automatic stay.  The Trustee requests that this Court issue an order (a) declaring that HC's litigation of alter ego claims against the Former Partners violates the automatic stay, and (b) declaring that HC and its counsel will be held in contempt of Court if

---

[10]  Even under California law, the Trustee controls the alter ego claims asserted by HC.  *Ahcom* held that under California law (contrary to the law of many states, as discussed above) the bankruptcy trustee may not bring a "generalized" alter ego claim.  But California courts, even after *Ahcom,* have made clear that bankruptcy trustees can still seek to recover from alter egos where the debtor has an independent right of action against the alter ego:

> The trustee of a bankrupt corporation can maintain an action against a defendant based on an alter ego theory *if there is some allegation of injury to the corporation that gives the corporation a right of action against the defendant.*  For example, the trustee of a bankrupt corporation can maintain an action against corporate shareholders on an alter ego theory in order to recover property or pursue a right of action belonging to the bankrupt corporation, *including an action to set aside fraudulent transfers* or an action for conversion *to recover assets of the bankrupt corporation*.

*Shaoxing County Huayue Import & Export v. Bhaumik,* 191 Cal. App. 4th 1189, 1198-99 (Cal. App. 2011) (citations omitted) (emphasis added).  *See also In re Rocky Mountain Recreational Communities, LLC,* 2012 WL 5248480, at *7 (Bankr. D. Mont. Oct. 23, 2012) (distinguishing *Ahcom*; holding that the bankruptcy trustee had standing to seek alter ego recoveries where the trustee also had valid fraudulent transfer claims against the alter egos).

Here, of course, the Trustee has claims "of injury to [Howrey] that gives [Howrey] a right of action against the" Former Partners.  The Trustee has fraudulent transfer claims, unfinished business claims, and other claims against the Former Partners to recover for damage to Howrey.  In fact, these claims are the very focus of HC's Complaint.  And, unlike the trustee in *Ahcom*, the Trustee here is actively pursuing these claims against the Former Partners.  Thus, under California law, the Trustee could potentially use an Alter Ego Remedy to recover for Howrey's injuries.

Therefore, even under California law, Howrey owns the right to seek recovery from its alter egos, and the automatic stay precludes HC from bringing its claims against the Former Partners.

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 24 of 32

they do not withdraw the Complaint and refrain from taking any further action to pursue recoveries from the Former Partners as Howrey's alleged alter egos.[11]

Dated: November 30, 2012

Respectfully submitted,

_____/s/ Stephen T. Loden_____
Stephen T. Loden (*pro hac vice*)
Jason M. Rudd (*pro hac vice*)
J. Benjamin King (*pro hac vice*)
**DIAMOND MCCARTHY LLP**
909 Fannin, 15th Floor
Houston, TX 77010
Telephone: 713-333-5100
Facsimile: 713-333-5199

Eric A. Nyberg, Esq. (Bar No. 131105)
Chris D. Kuhner, Esq. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
1970 Broadway, Suite 225
Oakland, CA 94612
Telephone: 510-763-1000
Facsimile: 510-273-8669

*Counsel for Allan B. Diamond, Chapter 11 Trustee for Howrey LLP*

---

[11] The Trustee's instant Motion seeks only to enforce the automatic stay. The Trustee does not waive his right to seek relief under 11 U.S.C. § 105(a).

399512

Case: 11-31376   Doc# 885   Filed: 11/30/12   Entered: 11/30/12 14:26:56   Page 25 of 32

## **CERTIFICATE OF SERVICE**

__X__ (CM/ECF) The document was electronically served on the parties to this action via the mandatory United States Bankruptcy Court of California CM/ECF system upon filing of above described document.:

### **SEE ATTACHED SERVICE LIST**

__X__ (ELECTRONIC MAIL SERVICE) By electronic mail (e-mail) the above listed document(s) without error to the email address(es) set forth below on this date.

### **SEE ATTACHED SERVICE LIST**

__X__ (UNITED STATES MAIL) By depositing a copy of the above-referenced documents for mailing in the United States Mail, first class postage prepaid, at Houston, Texas, to the parties listed on the Service List attached hereto, at their last known mailing addresses, on this date.

### **SEE ATTACHED SERVICE LIST**

_____ (OVERNIGHT COURIER) By depositing a true and correct copy of the above referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

_____ (COURIER SERVICE) By providing true and correct copies of the above referenced documents [with copies of the supporting detailed invoices/attorney time records for the Final Fee Application] via courier delivery, to the following on or about _____:

_____(FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those people listed on the attached service list, on the date above written.

*/s/ Stephen T. Loden* _____

399512

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 26 of 32

**VIA CM/ECF:**

| | |
|---|---|
| **United States Trustee** | Minnie Loo, Esq. |
| | Donna S. Tamanaha, Esq. |
| | **Office of the U.S. Trustee** |
| | 235 Pine Street. 7th Floor |
| | San Francisco, CA 94104-3484 |
| | *Email:* *Minnie.Loo@usdoj.gov* |
| | *Email:* *Donna.S.Tamanaha@usdoj.gov* |
| | |
| **Chapter 11 Trustee** | Allan B. Diamond |
| | **Diamond McCarthy, LLP** |
| | Two Houston Center |
| | 909 Fannin Street, Suite 1500 |
| | Houston, Texas 77010 |
| | *Email:* *adiamond@diamondmccarthy.com* |
| | |
| **Counsel for the Chapter 11 Trustee** | **Diamond McCarthy, LLP** |
| | Howard D. Ressler, Esq. |
| | *Email:* *hressler@diamondmccarthy.com* |
| | Stephen T. Loden, Esq. |
| | *Email:* *sloden@diamondmccarthy.com* |
| | Jason M. Rudd, Esq. |
| | *Email:* *jrudd@diamondmccarthy.com* |
| | |
| | **Kornfield Nyberg Bender & Kuhner P.C.** |
| | Eric Nyberg |
| | *Email:* *e.nyberg@kornfieldlaw.com* |
| | Chris D. Kuhner |
| | *Email:* *c.kuhner@kornfieldlaw.com* |
| | |
| **Debtor's Counsel** | **Wiley Rein LLP** |
| | H. Jason Gold |
| | Valerie P. Morison |
| | Dylan G. Trache |
| | *Email:* *jgold@wileyrein.com* |
| | *Email:* *vmorrison@wileyrein.com* |
| | *Email:* *dtrache@wileyrein.com* |
| | |
| | **Murray & Murray** |
| | Robert A. Franklin |
| | Craig M. Prim |
| | Jenny Lynn Fountain |
| | *Email:* *rfranklin@murraylaw.com* |
| | *Email:* *cprim@murraylaw.com* |
| | *Email:* *jfountain@murraylaw.com* |

399512

26

| | | |
|---|---|---|
| 1 | **Duane Morris LLP** | Geoffrey A. Heaton, Esq. |
| | | *Email: gheaton@duanemorris.com* |
| 2 | | Aron M. Oiner, Esq. |
| | | *Email: roliner@duanemorris.com* |
| 3 | | |
| | **Law Offices of Latham & Watkins** | Kimberly A. Posin, Esq. |
| 4 | | *Email: kim.posin@lw.com* |
| 5 | **Murray & Murray** | Craig M. Prim, Esq. |
| | | *Email: cprim@murraylaw.com* |
| 6 | | Robert A. Franklin, Esq. |
| | | *Email: rfranklin@murraylaw.com* |
| 7 | | Jenny L. Fountain, Esq. |
| | | *Email: jlfountain@murraylaw.com* |
| 8 | | |
| 9 | | |
| | **Official Committee of Unsecured Creditors** | **Whiteford, Taylor & Preston LLP** |
| 10 | | Bradford F. Englander, Esq. |
| | | *Email: benglander@wtplaw.com* |
| 11 | | John F. Carlton, Esq. |
| | | *Email: jcarlton@wtplaw.com* |
| 12 | | Justin P. Fasano, Esq. |
| | | *Email: jfasano@wtplaw.com* |
| 13 | | |
| 14 | **Counsel for The Irvine Company, LLC** | **Allen Matkins, et al.** |
| | | *Email: mgreger@allenmatkins.com* |
| 15 | | |
| | **Counsel for Creditor Ctitbank, N.A.** | **Paul, Weiss, Rifkind, Wharton & Garrison** |
| 16 | | Larry Peitzman, Esq. |
| 17 | | *Email: lpeitzman@pwkllp.com* |
| 18 | **Counsel for Creditor Protiviti, Inc.** | **Pachulski, Stang, Ziehl & Jones** |
| | | John D. Fiero, Esq. |
| 19 | | *Email: jfiero@pszjlaw.com* |
| 20 | **Counsel for Creditor Oracle America, Inc.** | **Buchalter Nemer** |
| | | Shawn M. Christianson, Esq. |
| 21 | | *Email: schristianson@buchalter.com* |
| 22 | **Counsel for Creditor U.S. Bank, N.A., as Trustee** | **Perkins Coie LLP** |
| | | David J. Gold, Esq. |
| 23 | | *Email: dgold@perkinscoie.com* |
| 24 | **Counsel for Attorneys' Liability Assurance Society, Inc.,** *A Risk Retention Group* | **Perkins Coie LLP** |
| | | Alan D. Smith, Esq. |
| 25 | | *Email: adsmith@perkinscoie.com* |
| 26 | | |

399512

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 28 of 32

| | |
|---|---|
| **Counsel for Creditors Advanced Discovery LLc, Give Something Back, Inc., Jan Brown & Associates, Kent Daniels & Associates, Inc., L.A. Best Photocopies, Inc., Western Messenger Service, Inc.** | **Trepel McGrane Greenfield LLP** Maureen A. Harrington, Esq. *Email: mharrington@tmcglaw.com* Christopher D. Sullivan, Esq. *Email: csullivan@tgsdlaw.com* |
| **Counsel for BP/CGCENTER I, LLC** | **Allen, Matkins, Leck, Gamble and Mallory** William W. Huckins *Email:* whuckins@allenmatkins.com |
| **Counsel for Creditor Warner Investment, L.P.** | **Luce, Forward, Hamilton & Scripps** Michael A. Isaacs, Esq. *Email: misaacs@luce.com* *Email: gkleiner@luce.com* |
| **Counsel for Creditor Dewey & LeBoeuf LLP** | **Dewey and LeBoeuf** Paul S. Jasper, Esq. *Email: pjasper@dl.com* |
| **Counsel for Creditor Iron Mountain Information Management Inc.** | **Bartlett, Hackett and Feinberg** Frank F. McGinn, Esq. *Email:* ffm@bostonbusinesslaw.com |
| **Counsel for Creditor Hines REIT 321 North Clark Street, LLC** | **DLA Piper LLP** Frank T. Pepler, Esq. *Email:* frank.pepler@dlapiper.com |
| **Counsel for Creditor Stephanie Langley** | **Outten and Golden LLP** Rene S. Roupinian, Esq. *Email:* rst@outtengolden.com |
| **Counsel for Creditor Stephanie Langley** | **Law Offices of James D. Wood** James D. Wood, Esq. *Email:* jdw@jdwoodlaw.com |
| **Counsel for Creditor Pension Benefit Guaranty Corp.** | **Office of the Chief Counsel** Lawrence F. Landgraff, Esq. *Email:* landgraff.larry@pbgc.gov |
| **Counsel for Interested Party Connecticut General Life Insurance Company** | **Schnader Harrison Segal and Lewis** Melissa Lor, Esq. *Email:* MLor@Schnader.com |

28

| | |
|---|---|
| **Counsel for Interested Party Ad Hoc Committee of Certain Former Howrey Partners** | **MacConaghy and Barnier** <br> John H. MacConaghy, Esq. <br> *Email:* macclaw@macbarlaw.com <br> Monique Jewett-Brewster, Esq. <br> *Email:* mjewettbrewster@macbarlaw.com |
| **Counsel for Creditors Advanced Discovery LLC, Give Something Back, Inc, Jan Brown And Associates, Kent Daniels and Associates Inc., L.A. Best Photocopies, Inc., Western Messenger Service, Inc.** | **McGrane LLP** <br> William McGrane, Esq. <br> *Email:* william.mcgrane@mcgranellp.com |
| **Counsel for Interested Party Connecticut General Life Insurance Co.** | Melissa Lor <br> *Email*: mlor@schnader.com |
| **Counsel for Creditor Knickerbocker Properties, Inc. XXXIII** | **Seyfarth Shaw LLP** <br> Scott Olson, Esq. <br> *Email:* solson@seyfarth.com |
| **Counsel for Creditor Banc of America Leasing & Capital, LLC** | **Law Offices of Serlin and Whiteford** <br> Mark A. Serlin, Esq. <br> *Email:* mserlin@globelaw.com |
| **Counsel for Creditor Texas Comptroller of Public Accounts** | **Bankruptcy & Collections Division** <br> Kimberly Walsh, Esq. <br> *Email:* bk-kwalsh@oag.state.tx.us |
| **Counsel for Creditor 200 S. Main Street Investors, LLC** | **Ballard Spahr Andrews and Ingersoll** <br> Rebecca J. Winthrop, Esq. <br> *Email:* WinthropR@ballardspahr.com <br> Penny M. Costa, Esq. <br> *Email:* costap@ballardpahr.com |
| **Counsel for Creditor Citibank, N.A.** | **Peitzman Weg LLP** <br> Larry Peitzman, Esq. <br> *Email:* lpeitzman@peitzmanweg.com |
| **Counsel for Amy J. Fink** | **Jones Day** <br> Robert A. Trodella <br> *Email*: rtrodella@jonesday.com |
| **Counsel for Harris County** | **Linebarger Goggan Blair & Sampson LLP** <br> John P. Dillman <br> *Email*: houston_bankruptcy@lgbs.com |

Case: 11-31376    Doc# 885    Filed: 11/30/12    Entered: 11/30/12 14:26:56    Page 30 of 32

| | |
|---|---|
| **Counsel for Informal Group of Certain Former Howrey Attorneys** | **Dumas & Clark LLP** |
| | Cecily A. Dumas |
| | *Email*: Cecily.dumas@dumasclark.com |
| | Robert E. Clark |
| | ***Email:*** Robert.clark@dumasclark.com |

***VIA EMAIL:***

| | |
|---|---|
| **Counsel for Creditor Citibank, N.A.** | **Paul, Weiss, Rifkind, Wharton & Garrison** |
| | Kelley A. Cornish, Esq. |
| | ***Email:*** kcornish@paulweiss.com |
| | Diane Meyers, Esq. |
| | ***Email:***dmeyers@paulweiss.com |
| | Jacob J. Adlerstein, Esq. |
| | ***Email***: jadlerstein@paulweiss.com |
| | |
| | **Ballard Spahr LLP** |
| | Matthew Moncur, Esq. |
| | ***Email***: moncurm@ballardspahr.com |
| | |
| | E**MC Corporation** |
| | c/o Receivable Management Services |
| | Steven Sass, Esq. |
| | ***Email***: steven.sass@rmsna.com |
| | Ronald Rowland, Esq. |
| | ***Email***: Ronald.rowland@rmsna.com |
| | |
| | **Olin Corporation** |
| | S. Christian Mullgardt |
| | ***Email***: scmullgardt@olin.com |

***VIA U.S. MAIL:***

Richard Burdge, Esq.
The Burdge Law Firm PC
500 S Grand Ave Ste 1500
Los Angeles, CA 90071

Jeffrey C. Wisler, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19899
*Attorneys for Interested Party Connecticut General Life Insurance Company*

30

IKON Office Solutions
Recovery & Bankruptcy Group
3920 Arkwright Road, Suite 400
Macon, GA 31210

EMC Corporation
c/o RMS Bankruptcy Recovery Services
Attn: President or General/Managing Agent
P.O. Box 5126
Timonium, MD 21094-5126

Salter & Company LLC
4600 East-West Highway, Suite 300
Bethesda, MD 20814

County of Loudoun Virginia
Belkys Escobar
1 Harrison St., S.E. 5th Fl.
Leesburg, VA 20175-3102

Matura Farrington Staffing Services, Inc.
700 So. Flower Street, Suite 2505
Los Angeles, CA 90017

Guy Davis
Protiviti Inc.
1051 East Cary Street, Suite 602
Richmond, VA 23219

George E. Shoup, III
Development Specialists, inc.
6375 Riverside Drive, Suite 200
Dublin, OH 43017-5373

Kyle Everett
Development Specialists, Inc.
235 Pine Street, Suite 1150
San Francisco, CA 94104

31