1  **DIAMOND McCARTHY LLP**
2  Andrew B. Ryan, Esq. *(pro hac vice)*
   909 Fannin, 15th Floor
3  Houston, TX 77010
   Telephone:  713-333-5100
4  Facsimile:  713-333-5199
   aryan@diamondmccarthy.com
5
   *Counsel for Allan B. Diamond*
6  *Chapter 11 Trustee for Howrey LLP*

7  **KORNFIELD, NYBERG, BENDES & KUHNER P.C.**
8  Eric A. Nyberg, Esq. (Bar No. 131105)
   Chris D. Kuhner, Esq. (Bar No. 173291)
9  1970 Broadway, Suite 225
   Oakland, CA 94612
10 Telephone:  510-763-1000
   Facsimile:  510-273-8669
11
12 *Local Counsel for Allan B. Diamond,*
   *Chapter 11 Trustee for Howrey LLP*
13
                    UNITED STATES BANKRUPTCY COURT
14                  NORTHERN DISTRICT OF CALIFORNIA
15                     SAN FRANCISCO DIVISION

16                                  )    Case No. 11-31376 DM
   In re                            )    Chapter 11
17                                  )    Hon. Dennis Montali
   HOWREY LLP,                      )
18                                  )
                    Debtor.         )    **CHAPTER 11 TRUSTEE'S MOTION**
19                                  )    **FOR ENTRY OF ORDER**
                                    )    **APPROVING THE B&H BUNDLED**
20                                  )    **SETTLEMENT**
21                                       .
22 TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE:

23         Allan B. Diamond, the chapter 11 trustee ("Trustee") of the estate of Howrey LLP

24 ("Howrey" or "Debtor"), hereby submits this motion ("Motion") pursuant to Federal Rule of

25 Bankruptcy Procedure 9019(a) for entry of an order approving the B&H Bundled Settlement

26 between the Trustee, on the one hand, and Baker & Hostetler LLP ("B&H"), Robert G. Abrams,

Gregory L. Baker, Robert J. Brookhiser, Jr., John F. Bruce, Gregory J. Commins, Jr., Gilbert S.

Keteltas, Joanne Lichtman, Christopher H. Marraro, Elizabeth B. McCallum, Terry L. Sullivan,

Joanne E. Caruso-Zaccaro (the forgoing individuals being hereinafter collectively referred to as

the "B&H Former Howrey Partners") on the other, and represents as follows:

## JURISDICTION

1.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b). This is a core

proceeding pursuant to 28 U.S.C. § 157(b) (2).

## BACKGROUND

2.  Baker & Hostetler LLP ("B&H") was one of the successor firms who hired former

Howrey partners.  Specifically, B&H hired eleven former Howrey partners (collectively, the

"B&H Former Howrey Partners"):

| Former Howrey Partner | Level | Howrey Office |
|---|---|---|
| Robert G. Abrams | Level II | Washington, D.C. |
| Gregory L. Baker | Fixed | Washington D.C. |
| Robert J. Brookhiser | Level II | Washington, D.C. |
| John F. Bruce | Fixed | Washington, D.C. |
| Gregory J. Commins | Level II | Washington, D.C. |
| Gilbert S. Keteltas | Level II | Washington, D.C. |
| Joanne Lichtman | Level II | Los Angeles, CA |
| Christopher H. Mararro | Level II | Washington, D.C. |
| Elizabeth B. McCallum | Level II | Washington, D.C. |
| Terry L. Sullivan | Level II | Washington, D.C. |
| Joanne E. Caruso-Zaccaro | Level II | Los Angeles, CA |

3. Many of the B&H Former Howrey Partners joined B&H at or near March 28, 2011, the date on which Howrey's Dissolution Committee executed a Case Transfer and Allocation of Hours Agreement (the "Transfer Agreement") with B&H. The Transfer Agreement specified, among other things, the terms on which B&H and Howrey would allocate recoveries in class action contingent fee cases known as the Milk Cases.

4. Upon the Trustee's appointment, he was informed immediately of the significance of the Milk Cases to Howrey's estate (the "Estate"). Both the Trustee and his counsel began investigating all aspects of the Milk Cases, including: (a) the extent of Howrey's financial investment; (b) the circumstances surrounding the Transfer Agreement; (c) the language and potential differing interpretations of the Transfer Agreement itself; (d) the status of the Milk Cases, including an extensive review of publicly-filed documents and press materials; and (e) needed discovery from B&H and relevant third parties.

5. The Trustee and his counsel also investigated claims against B&H unrelated to the Transfer Agreement, including: (a) the appropriate share of Howrey's interest in recoveries of the Online DVD (defined below) antitrust class actions; (b) hourly unfinished business taken from Howrey to B&H by the B&H Former Howrey Partners; (c) claims under Section 549 of the Bankruptcy Code; and (d) partner clawbacks against the B&H Former Howrey Partners related to distributions or return of capital received at a time when Howrey may have been insolvent.

6. Through the Trustee's personal contacts and relationships at B&H, the Trustee and his counsel began a dialogue with the firm's general counsel, John D. Parker, who represents both B&H and the B&H Former Howrey Partners.

7. After working through various procedural issues (such as the establishment of a joint escrow account to hold approximately $2.2 million in attorneys' fees and expenses already recovered on a settlement with Dean Foods in NE Milk, as detailed below) and obtaining

Case: 11-31376    Doc# 1421    Filed: 08/16/13    Entered: 08/16/13 09:42:02    Page 3 of 31

substantial discovery from B&H and various third parties, the Trustee and his counsel then arranged and began face-to-face settlement discussions with B&H and certain of the B&H Former Howrey Partners.

8.   The face-to-face settlement meetings began in October 2012 and continued through June 2013.  There were three such meetings (one in Washington, D.C., and two in New York, New York) during this period.  The Trustee personally attended each meeting along with his counsel.  The Trustee invited Citibank's counsel and counsel for the Creditors' Committee to attend each meeting, which B&H agreed to upon the Trustee's request, and Citibank's counsel and the Creditors' Committee counsel did attend each meeting.  John D. Parker, as counsel for B&H and the B&H Former Howrey Partners, and Robert G. Abrams and Gregory J. Commins, formerly two senior partners at Howrey, attended on behalf of B&H and the B&H Former Howrey Partners.

9.   In addition to the face-to-face meetings, there were dozens upon dozens of telephone calls between the Trustee and/or his counsel, and John D. Parker.

10. After nearly two years of investigation and negotiation, the Trustee reached a bundled settlement with B&H and the B&H Former Howrey Partners (the "B&H Bundled Settlement") in early July 2013.  The B&H Bundled Settlement will result in over $41,000,000 in cash to the Estate immediately, as well as reserve to Howrey fixed future interests in recoveries from ongoing contingent fee matters that could potentially result in millions of additional dollars to the Estate.  Broadly speaking, the B&H Bundled Settlement can be divided into four categories, each of which is analyzed below.

**The Contingent Fee Settlements**

11. The Estate's most significant recoveries from the B&H Settlement come from Howrey's former contingent fee matters that have been and/or will be completed by B&H.  Here,

459910.1                                                4

the recoveries come in two forms – an up-front cash payment and retained future interests in ongoing matters. Each is discussed in turn.

12. **Up-front cash payment.** Howrey will receive a total up-front cash payment (including cash from B&H and a wire transfer from an account jointly owned by B&H and Howrey) of $38,141,526 from existing contingent fee settlements: $36,733,215 from SE Milk and $1,408,311 from NE Milk. These amounts are broken down as follows.

13. <u>SE Milk/Dean Foods</u>. On July 5, 2007, one or more of the B&H Former Howrey Partners, while partners of Howrey, filed two class action antitrust lawsuits, one styled *Sweetwater Valley Farms, Inc., et al. v. Dean Foods Co., et al.,* C.A. No. 1:07-5 in the United States District Court for the Middle District of Tennessee (the "<u>Sweetwater Case</u>") and another styled *James D. Baisley, et al. v. Dean Foods Co., et al.*, No. 1:07-52 in the United States District Court for the Middle District of Tennessee (the "<u>Baisley Case</u>").

14. On January 10, 2008, the Sweetwater Case and the Baisley Case were transferred from the Middle District of Tennessee to the United States District Court for the Eastern District of Tennessee and consolidated with two similar cases, initiating Case No. 2:08-md-01000 in the United States District Court for the Eastern District of Tennessee (hereinafter "<u>SE Milk</u>").

15. In SE Milk, plaintiffs and defendants Southern Marketing Agency, James Baird, and Gary Hanman entered into a settlement on July 27, 2011, and plaintiffs and defendant Dean Foods Company entered into a settlement on July 12, 2011, with both receiving court approval on June 15, 2012 (hereinafter collectively "<u>SE Milk/Dean Foods</u>"). The delay between the signing of the SE Milk/Dean Foods settlement and the entry of the order approving the settlement was due in large part to continued, vociferous opposition to plaintiffs' claims in the litigation, including a strategy by certain defendants to de-certify the class action. During this time, B&H vigorously prosecuted the SE Milk matter. The SE Milk/Dean Foods Settlement

totaled $145 million.  Plaintiffs sought an award of attorneys' fees equal to one-third of the settlement, or approximately $48.33 million.  As part of this request for an award, B&H pursued the recovery of attorneys' fees on behalf of B&H and Howrey.  In SE Milk/Dean Foods, the court awarded attorneys' fees and expenses to plaintiffs' counsel on July 11, 2012, including the requested approximately $48.33 million in attorneys' fees.[1]  The SE Milk/Dean Foods settlement and attorneys' fees award were approved, in part, because of the substantial work done by the B&H Former Howrey Partners.

16. In SE Milk, plaintiffs also entered into a settlement with defendant Dairy Farmers of America, Inc. on January 17, 2013, which settlement was approved on May 17, 2013 (hereinafter "SE Milk/DFA").  The B&H Former Howrey Partners achieved the SE Milk/DFA settlement on the eve of trial, after hard-fought litigation against DFA and its able counsel for nearly six years. The total value of the SE Milk/DFA settlement (including cash and non-cash considerations) was approximately $158 million.  Plaintiffs sought an award of attorneys' fees equal to one-third of the settlement, or approximately $52.66 million in attorneys' fees.  Significantly, the B&H Former Howrey Partners again pursued attorneys' fees for the benefit of both B&H and Howrey. The District Court approved an award of approximately $52.66 million in attorneys' fees to plaintiff's counsel on May 17, 2013.  The District Court cited the extraordinary work done by the B&H Former Howrey Partners as part of the basis to award such a significant amount of attorneys' fees.

17. Because the B&H Former Howrey Partners had, while partners at Howrey, filed and pursued the SE Milk cases, the Howrey Estate has an interest in any recovery of attorneys' fees

---

[1]     The payment of these attorneys' fees was to be made in the same proportion of the structured settlement payments themselves.  That is, 44.83% of the attorneys' fees (equaling $21.67 million) was to be paid following the settlement's June 2012 effective date, with four equal installment payments of 13.79% of the attorneys' fees (approximately $6.65 million per year) to be made in each June of 2013, 2014, 2015, and 2016 (or approximately $6.65 million per year).

459910.1                                              6

and expenses in the matter. Specifically, the Estate's interest relates to the allocation of attorneys' fees awarded to the various counsel, including Howrey and B&H, which represented the plaintiffs.

18. The B&H Bundled Settlement only discusses the allocation between B&H and Howrey of attorneys' fees recovered in SE Milk because Howrey has already recovered every single dollar of expenses that Howrey advanced in the SE Milk litigation. Specifically, pursuant to the court's award in SE Milk/Dean Foods of expenses recoverable by plaintiff's counsel, the Trustee negotiated with B&H to reach an agreement regarding the immediate repayment of Howrey's share of such advanced expenses. This negotiation was significant because B&H did not have any obligation to pay Howrey these expense funds at that time. Indeed, B&H could have waited until the conclusion of SE Milk – in hindsight, almost a year later – to pay attorneys' fees and expenses simultaneously.

19. However, the Trustee and his counsel worked closely with B&H to convince the firm to pay Howrey its share of expenses advanced in SE Milk, which totaled in excess of $5.9 million. As part of SE Milk/Dean, Howrey received on approximately September 7, 2012, a wire transfer from B&H of the full $5.963 million in expenses advanced in SE Milk. Upon receipt of the expense reimbursement, the Trustee then used the funds to pay down Howrey's debt to Citibank. Even though the B&H Bundled Settlement only discusses attorneys' fees, it is still very important to understand that Howrey will have, in *toto*, received over $42.5 million in attorneys' fees and expenses from the SE Milk cases – in addition to the millions of dollars in other monies subject to the B&H Bundled Settlement as detailed below.

20. Returning to the topic of attorneys' fees, the amount of attorneys' fees that the Estate would recover from SE Milk depends on two issues: (a) whether the Transfer Agreement was a fraudulent transfer that the Trustee could seek to set aside (including any defenses to such a

Case: 11-31376   Doc# 1421   Filed: 08/16/13   Entered: 08/16/13 09:42:02   Page 7 of 31

claim) or, if not, what is the proper interpretation of the Transfer Agreement; and (b) whether Howrey is paid over time in accordance with the SE Milk/Dean settlement structure or in a lump sum pursuant to a negotiated buy-out of the structured payment stream.

21. <u>First</u>, under the Transfer Agreement, Howrey's share of attorneys' fees awarded to B&H and Howrey is calculated based upon the amount of time B&H has invested in SE Milk since the signing of the Transfer Agreement.  Under the Transfer Agreement, B&H and Howrey each begin with a 50/50 split of any attorneys' fees recovery, but as B&H invests additional time in SE Milk, its percentage increases and Howrey's decreases.  The Trustee and his counsel refer to this as the "<u>Melting Ice Cube</u>."  Howrey's share of the Melting Ice Cube is calculated as: $[20/(40 + \text{B\&H Investment in Millions of Dollars}^2)]$.

22. <u>Second</u>, in addition to whether the Transfer Agreement's Melting Ice Cube approach constituted a fraudulent transfer of Howrey's property interest in the Milk Cases, the Trustee also has a dispute with B&H over the interpretation of the Transfer Agreement.  B&H contends that the allocation of attorneys' fees on all settlements should not be decided until the end of the case (the "<u>End of Case Method</u>").  Of course, the End of Case Method benefits B&H because B&H will receive a higher percentage of attorneys' fees under the Transfer Agreement as the firm invests more in SE Milk.  Conversely, the Trustee contends the allocation of attorneys' fees should be determined on a settlement-by-settlement basis, based upon the amount B&H had invested in SE Milk as of the date of the settlement (the "<u>Snapshot Method</u>").  The Snapshot Method results in a greater recovery to Howrey because it ties B&H's percentage to the amount invested at the time of settlement and does not permit B&H to dilute Howrey's investment by including fees invested after the date of settlement.

---

[2]    The Transfer Agreement defines B&H Investment as "B&H's actual investment in the Milk Cases, measured on the basis of work product performed at standard rates from the inception of B&H's involvement in such Milk Case."

459910.1

8

23. Of the approximately $100 million in total attorneys' fees awarded in both SE Milk/Dean and SE Milk/DFA, both B&H and the Trustee's counsel estimated that $92 million would be allocated to B&H and Howrey to allocate amongst themselves. The remainder will go to pay co-counsel who also prosecuted the Milk Cases on behalf of their own clients or as local counsel to B&H and Howrey. A significant non-monetary benefit to the B&H Bundled Settlement is that Howrey gets its money now, directly from B&H, and regardless of whether the allocation of attorneys' fees between the various plaintiffs' counsel results in any fee disputes, all of which could take years to resolve. The B&H Bundled Settlement therefore provides the Estate with finality and certainty.

24. Based upon its contention that the Transfer Agreement is not a fraudulent transfer and that the End of the Case Method is the correct interpretation of the Transfer Agreement, B&H contends that Howrey's share of the attorneys' fees recovery in SE Milk is 36.53%. B&H reaches this conclusion by adding the B&H Investment of $14,739,630 to the formula for calculating Howrey's interest under the Transfer Agreement. Howrey's share equals [20/(40 + 14.739630)], or 36.53%. Applying this percentage to the $92 million that B&H and Howrey collectively expect to receive in attorneys' fees from SE Milk, B&H claims Howrey is entitled to receive approximately $33,379,600 over the life of the SE Milk settlements, which would be approximately $26,577,462 up-front and $6,082,138 divided into three equal installment payments during 2014, 2015, and 2016.

25. Under the B&H Bundled Settlement, Howrey receives immediate cash payments under SE Milk equal to $36,733,215, which is approximately $3.35 million higher than the amount B&H would have allocated under the Transfer Agreement because: (a) the Trustee and his counsel convinced B&H that Howrey would more than likely prevail that the Transfer Agreement mandates the Snapshot Method; and (b) B&H paid a premium over the Transfer

459910.1

9

Agreement amount to avoid the risk, delay, and expense related to whether the Transfer Agreement would be found to be a fraudulent transfer.

26. The Trustee allocates Howrey's recovery under the Milk Cases as follows. For SE Milk/Dean Foods, under B&H's End of the Case interpretation of the Transfer Agreement, Howrey would receive a maximum $16,438,500 over the pay-out term of the SE Milk/Dean Foods settlement. As part of the B&H Bundled Settlement, however, the Trustee was able to negotiate a lump-sum payment of $19,792,115.

27. In addition, as previously stated, the SE Milk/Dean Foods settlement would be paid out over time, with $65 million up front and then $20 million in annual payments over the next four years. Attorneys' fees of one-third of the settlement would be paid from each tranche. Under B&H's interpretation of the Transfer Agreement, Howrey would receive 36.53% of the attorneys' fees available to B&H and Howrey in 2013 (approximately $9,636,362), and 36.53% or less of payments in 2014, 2015, and 2016 (approximately $2,267,379 each year, for a total of $6,802,138).

28. As part of the B&H Bundled Settlement, however, the Trustee and his counsel negotiated the Estate's share of the total SE Milk/Dean Foods attorneys' fees pay-out to be $21,373,500, or $4,935,000 more than what it would have received under B&H's interpretation of the Transfer Agreement. Because much of this amount could be paid over a period of years under the structured pay-out terms of the SE Milk/Dean Foods settlement, the Trustee then proceeded to negotiate with B&H to monetize Howrey's entitlement to such future payments under SE Milk/Dean Foods. The Trustee proposed, and B&H accepted, that B&H agree to purchase Howrey's entitlement to future income interests in the structured pay-out of the SE Milk/Dean Foods settlement at a net present value equal to an approximate annual return of 6.5%. Based on this proposal, B&H agreed to purchase Howrey's future interest in SE

Milk/Dean Foods (which, under the B&H Bundled Settlement, totals approximately $8,842,217) for $7,260,832. This results in an up front, lump-sum, cash payment to the Estate of $19,792,115 on SE Milk/Dean Foods (which is equal to the up-front lump sum payment of approximately $12.5 million and the $7.2 million purchase of the structured pay-out).

29. Additionally, with respect to SE Milk/DFA, because the Trustee and his counsel determined that there is little difference between the application of the Snapshot and End of Case Methods to the SE Milk/DFA settlement, the Trustee agreed to accept $17,216,100, which is approximately the same as what B&H contends Howrey would ultimately be entitled to under the Transfer Agreement. Thus, the total up front, lump sum cash payment to the Estate pursuant to the B&H Bundled Settlement is $37,008,215 ($19,792,115 from SE Milk/Dean Foods plus $17,216,100 from SE Milk/DFA).

30. NE Milk/Dean. On January 21, 2010, one or more of the B&H Former Howrey Partners, while partners at Howrey, joined a class action antitrust lawsuit styled *Alice H. Allen, et al. v. Dairy Farmers of America, Inc.*, et al. in the United States District Court for the District of Vermont (hereinafter "NE Milk"). The two primary defendants in NE Milk are Dean Foods Company ("Dean Foods") and Dairy Farmers of America, Inc. ("DFA").

31. In NE Milk, plaintiffs and Dean Foods entered into a settlement on December 7, 2010, that was approved by the District Court on August 3, 2011 (hereinafter "NE Milk/Dean Foods"). In NE Milk/Dean Foods, the District Court approved an award of attorneys' fees and expenses to plaintiffs' counsel on August 3, 2011. The NE Milk case against DFA is ongoing (hereinafter "NE Milk/DFA").

32. In NE Milk/Dean Foods, Howrey and B&H were jointly awarded $1,435,986 in fees and approximately $810,000 in expenses. The $810,000 in expenses was approximately 74.4% of what Howrey and B&H sought. As is seen throughout, B&H's position is that the NE

459910.1

11

Milk/Dean Foods payment must be allocated according to the Transfer Agreement, which B&H strongly contends is not a fraudulent transfer. If the Transfer Agreement were enforced, Howrey would receive $1,266,621, which is equal to 60% of the attorneys' fees awarded plus Howrey's pro rata share of expenses awarded.

33. Here, the Trustee settled NE Milk/Dean Foods for $1,408,311, which reflects a payment of $141,960 over the Transfer Agreement. Of the NE Milk/Dean Foods attorneys' fees and expenses award, B&H will receive approximately $837,675, over two-thirds of which is attributable to expenses that B&H advanced after Howrey's dissolution. In sum, because of this settlement, Howrey will receive over 70% of the attorneys' fees awarded to Howrey and B&H in NE Milk/Dean Foods.

34. As discussed below, Howrey also retains a significant future contingent fee interest in NE Milk/DFA.

35. **Retained Future Interests**. In addition to the cash payments discussed above, the Trustee has also negotiated a fixed interest in various potential recoveries for the Estate in Howrey's former contingency matters that are ongoing at B&H and discussed below. In NE Milk/DFA, for example, because ongoing litigation requires B&H to make substantial investment in time and out-of-pocket expenses and take all additional risk (and because Howrey had invested far less in NE Milk than SE Milk), Howrey and B&H have agreed that any future attorneys' fees recovered in that matter will be split 75% to Baker and 25% to Howrey, with any expenses recovered split according to what each firm has incurred.

36. Outside of the Milk Cases, B&H is also continuing to prosecute a class action antitrust case known as Online DVD. On January 2, 2009, one or more of the B&H Former Howrey Partners, while partners at Howrey, filed a class action antitrust lawsuit styled *Andrea*

Case: 11-31376   Doc# 1421   Filed: 08/16/13   Entered: 08/16/13 09:42:02   Page 12 of 31

*Resnick, et al. v. Walmart.com USA LLC*, et al., C.A. No. 4:09-cv-00002, in the United States District Court for the Northern District of California (the "<u>Walmart Case</u>").

37. On April 13, 2009, the Walmart Case was consolidated with eleven similar cases by the United States Panel on Multidistrict Litigation, initiating Case No. 4:09-md-02029 in the United States District Court for the Northern District of California (hereinafter "Online DVD").

38. Two of the defendants in Online DVD are Walmart.com USA LLC ("<u>Walmart</u>") and Netflix, Inc. ("<u>Netflix</u>"). In Online DVD, plaintiffs and Walmart entered into a settlement on July 15, 2011, that was approved by the court on March 29, 2012 (hereinafter "<u>Online DVD/Walmart</u>"). Certain parties have now appealed the order approving the Online DVD/Walmart settlement to the United States Court of Appeals for the Ninth Circuit (the "<u>Ninth Circuit</u>"), and the appeals are styled: *Theodore H. Frank, et al. v. Netflix, Inc., et al.*, No. 12-15705; *Jon Zimmerman, et al. v. Netflix, Inc.*, et al., No. 12-15889, *Andrea Resnick, et al. v. Edmund Bandas, et al.*, No. 12-15957; *Andrea Resnick, et al. v. Maria Cope, et al.*, No. 12-15996; *Andrea Resnick, et al. v. John Sullivan, et al.*, No. 12-16010; and *Andrea Resnick, et al. v. Tracey Cox, et al.*, No. 12-16038. The Ninth Circuit consolidated the Online DVD/Walmart appeals under Case No. 12-15705 pursuant to an order entered on May 8, 2012.

39. In Online DVD, defendant Netflix was granted final summary judgment at the trial court, and plaintiffs have appealed to the Ninth Circuit, in a pending appeal styled *Andrea Resnick, et al. v. Netflix, Inc.*, Case No. 11-18034 (hereinafter "<u>Online DVD/Netflix</u>").

40. Because the outcome of both Online DVD/Walmart and Online DVD/Netflix is uncertain, the B&H Bundled Settlement contains a fixed formula for calculating what Howrey would receive in the event the Online DVD/Walmart settlement is upheld or the Online DVD/Netflix summary judgment in favor of the defendant is overturned.

Case: 11-31376    Doc# 1421    Filed: 08/16/13    Entered: 08/16/13 09:42:02    Page 13 of 31

41. If the Online DVD/Walmart matter results in any payment of attorneys' fees, reimbursable expenses, or costs, B&H will pursue – on behalf of B&H and Howrey – the amounts owed to the firms. If B&H and Howrey recover fees, the fees will be allocated on a *quantum meruit* basis as of the time B&H receives the Online DVD/Walmart payment, with the *quantum meruit* calculation based upon the time value of hours each firm has billed in the Online DVD matters at each firm's standard rates. If B&H and Howrey recover expenses as part of the Online DVD/Walmart matter, Howrey and B&H shall allocate any expense award based on the actual dollars that each has spent on expenses in the Online DVD matters. In exchange for B&H's pursuit of fees and expenses in Online DVD/Walmart, Howrey has agreed to pay B&H the first $25,000 of any amounts Howrey recovers on Online DVD/Walmart as compensation for the firm's fees and expenses in pursuing the award.

42. In Online DVD/Netflix, the allocation between B&H and Howrey is connected with the completion of any Online DVD/Netflix appeal. If the appeal overturns the summary judgment, and some amount of attorneys' fees or expenses is awarded within three (3) months of the date the appeal is decided, then B&H and Howrey shall allocate any such attorneys' fees and expenses award on the *quantum meruit* basis summarized above. If the Online DVD/Netflix matter resumes, however, and takes more than three months to result in the recovery of attorneys' fees and expenses to Howrey or B&H, then Howrey shall receive 30% of any future attorneys' fees award in the Online DVD/Netflix matter, with reimbursable expenses allocated based upon the actual dollars that each firm has spent.

43. The Trustee believes both future interest allocations are reasonable. In Online DVD/Walmart, the Trustee has secured the *quantum meruit* allocation that is tied to each firm's actual investment in the case. In Online DVD/Netflix, the Trustee has fixed Howrey's percentage at a level that puts the vast majority of the risk on B&H – if the Online DVD/Netflix

Case: 11-31376    Doc# 1421    Filed: 08/16/13    Entered: 08/16/13 09:42:02    Page 14 of 31

litigation resumes and take years to complete, B&H could very well be entitled to more than 70% of the recovery in that matter.

**The Unfinished Business Settlement**

44. Pursuant to informal discovery conducted under Fed. R. Evid. 408, the Trustee and his counsel confirmed (via the receipt of information and documents) that B&H has collected $15,124,984 on Howrey's unfinished business. After confidential questioning with B&H, the Trustee and his counsel determined that B&H's profit margin for the attorneys working on this hourly unfinished business was approximately 19% (excluding their contingent fee work), yielding damages – before deductions for reasonable partner compensation – of $2,282,248.

45. The Trustee reached an agreement with B&H to settle Howrey's hourly unfinished business claims against B&H for $2,303,531, which was calculated and determined to be 80.2% of B&H's profit and 15.3% of its gross revenue. The Trustee has stated in other public filings that his goal is to settle hourly unfinished business claims for 50% of profit or 15% of gross revenue, whichever is higher. The settlement the Trustee has reached here with B&H greatly exceeds the recovery goal for percentage of profit, and exceeds the revenue recovery goal as well.

46. B&H does have a few ongoing hourly matters that may constitute Howrey's unfinished business. However, the Trustee has released claims related to those matters because: (a) there was a fact dispute regarding whether the ongoing matters were Howrey's unfinished business; (b) collecting the high percentage of profit on the current revenue and the significant contingent fee recoveries subsumed any benefit of continued litigation over future revenue on minor unfinished business matters and (c) the amount of projected revenue was less than 10% of the amount collected to date, and given the uncertainty that the revenue would ever be collected, amounted to a very small potential recovery.

Case: 11-31376   Doc# 1421   Filed: 08/16/13   Entered: 08/16/13 09:42:02   Page 15 of 31

## The Partner Clawback Settlement

47. Of the 11 B&H Former Howrey Partners, eight are subject to some form of clawback claim by the estate.  (The two fixed partners and one Level I partner are not being pursued by the estate for any clawback claim.)   These eight partners received a total of $4,065,840 in distributions or return of capital from the second quarter of 2010 through the first quarter of 2011, the time period during which the Trustee contends Howrey was insolvent, unable to pay its debts as they came due, or inadequately capitalized.

48. Of these eight partners, all or nearly all of them were involved in the prosecution of the Milk Cases at both Howrey and B&H.  Because these attorneys made the recovery of millions of dollars in attorneys' fees and expenses in the Milk Cases possible, the B&H Former Howrey Partners argued strenuously that their clawback liability to the Estate should be $0.  This was a major sticking point in the negotiations for months, if not years.  The B&H Former Howrey Partners believe, and were prepared to litigate (with  B&H's support), that the partners provided more than reasonably equivalent value to Howrey for distributions received because it was their work that resulted in such a significant contingent fee recovery to the firm.

49. Notwithstanding these arguments regarding the admittedly tremendous value the B&H Former Howrey Partners provided to the Estate, the Trustee and his counsel were able to negotiate that the B&H Former Howrey Partners will pay $275,000 for release of the estate's clawback claims against them.  This amounts to approximately 7% of the total amount received during the insolvency period, and an average of $34,375 per partner.

50. Moreover, the settlement with the B&H Former Howrey Partners reflects that analyzing whether the partners provided reasonably equivalent value for their distributions is complicated by the fact that many of (and some of the highest paid) partners worked on the contingent fee cases that have brought such a significant recovery to Howrey.  While there is no

Case: 11-31376   Doc# 1421   Filed: 08/16/13   Entered: 08/16/13 09:42:02   Page 16 of 31

comparable situation in any of the other law firm bankruptcies where certain partners were primarily, if not exclusively, responsible for generating tens of millions of dollars in recoveries to the Estate, this settlement nevertheless is within the settlement range accepted in certain of the other global law firm bankruptcies.

**The Section 549 Settlement**

51. B&H or one or more of the B&H Former Howrey Partners also received funds that may be recovered pursuant to Section 549 of the Bankruptcy Code. Specifically, B&H and Mr. Commins received a total of $92,204 in amounts paid to Mr. Commins or to B&H for Mr. Commins' service on Howrey's dissolution committee.

52. Similar to the partner clawback negotiations, Mr. Commins argued that neither he nor B&H should pay the Estate on its Section 549 claims in light of the tremendous value provided to the Estate in connection with the Milk Cases. Notwithstanding his arguments, the Trustee has settled this claim for $20,000. The Trustee believes that this settlement of approximately 21.7% of this comparatively very small Section 549 claim, in light of total amount recovered in the B&H Bundled Settlement, is reasonable.

## TERMS OF PROPOSED B&H BUNDLED SETTLEMENT

53. The material terms of B&H Bundled Settlement are set forth in **Exhibits A** (the Settlement Agreement) and **Exhibit B** (Declaration of Allan B. Diamond), but are summarized here as follows:

a.        Howrey will receive cash payments or transfers totaling over $41,000,000 within days of the Effective Date.

b.        Howrey will retain valuable interests in future contingent fee recoveries on matters that the B&H Former Howrey Partners took to B&H.

Case: 11-31376   Doc# 1421   Filed: 08/16/13   Entered: 08/16/13 09:42:02   Page 17 of 31

c.    The Parties agree to mutual general releases, as described by paragraphs 7, 8, and 9 of the B&H Bundled Settlement.

## BASIS FOR RELIEF

54. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

55. "The bankruptcy court has 'great latitude' in approving compromise agreements." *Woodson v. Fireman's Insurance, Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, the compromise must be "fair and equitable" and "in the best interest of the estate." *Martin v. Kane* (*In re A & C Properties*), 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854 (1986).

56. To evaluate a compromise, a bankruptcy court considers "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re A & C Properties*, 784 F.3d at 1381.

57. Although the Trustee, as the proponent of the settlement, bears the burden of persuasion (*see id.*), "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter," *In re Mickey Thompson, Entertainment Group, Inc.*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003).

58. Here, as supported by the Trustee's accompanying declaration attached hereto as **Exhibit B,** the factors weigh in favor of settlement.

59. **The Probability of Success in the Litigation, its Complexity, and the Expense, Inconvenience, and Delay of Attending to the Litigation.** In the B&H Bundled Settlement, the first two *A&C Properties* factors are closely related, with both supporting the settlement. As

459910.1

18

an initial matter, any litigation against B&H will be complex, expensive, inconvenient, and lengthy.

60. Specifically, any litigation against B&H over the validity of the Transfer Agreement would require an extensive, and expensive, analysis of what reasonably equivalent value Howrey received for transferring some its contingent fee interest in the Milk Cases to B&H. The Trustee and his counsel discussed and researched this issue extensively, and no clear-cut law was found. B&H's primary value arguments would be based upon indirect benefits given to Howrey, and valuing those benefits would be difficult, subject to expert analysis, and expensive. The Trustee would first have to value the contingent interest transferred, then determine which indirect benefits B&H provided to Howrey in exchange for the transferred contingent interests, and then value the indirect benefits to determine if B&H gave reasonably equivalent value.

61. This level of complexity would make any litigation against B&H lengthy, time-consuming, and expensive. Moreover, B&H represented – and the Trustee believes their representation – that the firm would litigate to conclusion the validity of the Transfer Agreement. This would delay Howrey's receipt of any of the contingent fee funds at issue (possibly by years, including appeals), especially at a time when such funds are needed to pay down secured debt and fund the estate's ongoing litigation against other targets.

62. Notwithstanding these risks, the Trustee has consummated a settlement that obtains for Howrey far more than it would have received under the Transfer Agreement. In net dollars, Howrey will receive over $3.53 million more than it would receive under the Transfer Agreement, and it will receive its money immediately. Moreover, no matter how much additional time that B&H invests in NE Milk/DFA, the Trustee has fixed a future interest that may entitle the Estate to a substantial recovery (possibly millions of dollars) if the matter is ever reduced to settlement or judgment.

63. The other portions of the B&H Bundled Settlement, while having a higher probability of success, are nevertheless uncertain because each may involve contentious, protracted litigation whose results may only be resolved after exhaustive appeals. The unfinished business settlement reflects a high probability of success, and the partner clawback and Section 549 settlements reflect a substantial likelihood of success, even in light of the value defenses asserted by B&H and the B&H Former Howrey Partners (but uncertainty always exists involving protracted litigation and appeals.)

64. **The Difficulty of Collection.** Here, the Trustee believes this factor best applies to Howrey's future interest in contingent fee cases. While a money judgment might ultimately be recoverable from B&H, the difficulty in collecting lies in the difficulty of continuing to prosecute NE Milk/DFA and Online DVD. The vigorous prosecution of these claims is in the best interests of the estate.

65. With respect to NE Milk/DFA, for example, B&H will have to litigate this matter against a well-funded defendant, with able counsel challenging every aspect of the litigation. B&H will invest significant time and out-of-pocket expense in pursuing NE Milk/DFA and, if any ultimate recover results in an attorneys' fee award to plaintiffs' counsel, Howrey will be entitled to share in this recovery of attorneys' fees based on the terms fixed by the B&H Bundled Settlement.

66. Fixing the amount Howrey is to be paid in the event of any recovery avoids the expense of haggling over the amounts payable to the firm. It also incentivizes B&H to recover all it can for both B&H and Howrey, which benefits the Estate's creditors.

67. **The Paramount Interest of Creditors and Deference to their Views**. This factor overwhelmingly supports the B&H Bundled Settlement. Given the importance of these contingent matters to Howrey's Estate, the Trustee has included Citibank and the Creditors

Case: 11-31376   Doc# 1421   Filed: 08/16/13   Entered: 08/16/13 09:42:02   Page 20 of 31

Committee in every stage of discovery, proposals, negotiations, and settlement. The Trustee has had the support of Citibank and the Creditors Committee at every stage, and both are unequivocally in favor of the B&H Bundled Settlement. And, as demonstrated with the Citibank Settlement motion filed contemporaneously herewith, the B&H Bundled Settlement will permit me to pay down a significant portion of Howrey's secured debt and fund its ongoing administrative expenses, which brings the constituencies closer to a consensual chapter 11 plan (which the Trustee hopes to file as soon as practicable), with the goal of payments to priority, administrative, and general unsecured creditors.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Motion and enter and order approving the B&H Bundled Settlement with B&H and the B&H Former Howrey Partners as described above.

Dated: August 16, 2013

        */s/ Andrew B. Ryan*
        Andrew B. Ryan, Esq. *(pro hac vice)*
        DIAMOND McCARTHY LLP
        909 Fannin, 15th Floor
        Houston, TX 77010
        Telephone: 713-333-5100
        Facsimile: 713-333-5199
        *Counsel for Allan B. Diamond,*
        *Chapter 11 Trustee for Howrey LLP*

        Eric A. Nyberg, Esq. (Bar No. 131105)
        KORNFIELD, NYBERG, BENDES
        & KUHNER, P.C.
        Chris D. Kuhner, Esq. (Bar No. 173291)
        1970 Broadway, Suite 225
        Oakland, CA 94612
        Telephone: 510-763-1000
        Facsimile: 510-273-8669
        *Local Counsel for Allan B. Diamond, Trustee*

Case: 11-31376   Doc# 1421   Filed: 08/16/13   Entered: 08/16/13 09:42:02   Page 21 of 31

## NOTICE OF SERVICE

  X  (CM/ECF) The document was electronically served on the parties to this action via the mandatory United States Bankruptcy Court of California CM/ECF system upon filing of above described document:

### SEE ATTACHED SERVICE LIST

  X  (ELECTRONIC MAIL SERVICE) By electronic mail (e-mail) the above listed document(s) without error to the email address(es) set forth below on this date:

### SEE ATTACHED SERVICE LIST

  X  (UNITED STATES MAIL) By depositing a copy of the above-referenced documents for mailing in the United States Mail, first class postage prepaid, at Houston, Texas, to the parties listed, at their last known mailing addresses, on this date:

### SEE ATTACHED SERVICE LIST

_____  (OVERNIGHT COURIER) By depositing a true and correct copy of the above referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

_____  (COURIER SERVICE) By providing true and correct copies of the above referenced documents [with copies of the supporting detailed invoices/attorney time records for the Final Fee Application] via courier delivery, to the following on or about _____:

_____(FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those people listed on the attached service list, on the date above written.

*/s/ Andrew B. Ryan*_____
Andrew B. Ryan

Case: 11-31376   Doc# 1421   Filed: 08/16/13   Entered: 08/16/13 09:42:02   Page 22 of 31

*VIA CM/ECF:*

| | |
|---|---|
| **United States Trustee** | Minnie Loo, Esq. |
| | Donna S. Tamanaha, Esq. |
| | Office of the U.S. Trustee |
| | 235 Pine Street. 7th Floor |
| | San Francisco, CA 94104-3484 |
| | *Email: Minnie.Loo@usdoj.gov* |
| | *Email: Donna.S.Tamanaha@usdoj.gov* |
| | *Email: USTPRegion17.SF.ECF@usdoj.gov* |
| | *Email: ltroxas@hotmail.com* |
| | |
| **Chapter 11 Trustee** | Allan B. Diamond |
| | **Diamond McCarthy, LLP** |
| | Two Houston Center |
| | 909 Fannin Street, Suite 1500 |
| | Houston, Texas 77010 |
| | *Email: adiamond@diamondmccarthy.com* |
| | |
| **Counsel for the Chapter 11 Trustee** | **Diamond McCarthy, LLP** |
| | Howard D. Ressler, Esq. |
| | *Email: hressler@diamondmccarthy.com* |
| | Stephen T. Loden, Esq. |
| | *Email: sloden@diamondmccarthy.com* |
| | Jason M. Rudd, Esq. |
| | *Email: jrudd@diamondmccarthy.com* |
| | Andrew B. Ryan, Esq. |
| | *Email: aryan@diamondmccarthy.com* |
| | |
| | **Kornfield Nyberg Bender & Kuhner P.C.** |
| | Eric Nyberg |
| | *Email: e.nyberg@kornfieldlaw.com* |
| | Chris D. Kuhner |
| | *Email: c.kuhner@kornfieldlaw.com* |
| | |
| **Debtor's Counsel** | **Wiley Rein LLP** |
| | H. Jason Gold |
| | Valerie P. Morison |
| | Dylan G. Trache |
| | *Email: jgold@wileyrein.com* |
| | *Email: vmorrison@wileyrein.com* |
| | *Email: dtrache@wileyrein.com* |
| | |
| | **Murray & Murray** |
| | Robert A. Franklin |
| | Craig M. Prim |
| | Jenny Lynn Fountain |
| | *Email: rfranklin@murraylaw.com* |
| | *Email: cprim@murraylaw.com* |
| | *Email: jfountain@murraylaw.com* |

Case: 11-31376   Doc# 1421   Filed: 08/16/13   Entered: 08/16/13 09:42:02   Page 23
of 31

|    |                                              |                                                    |
|----|----------------------------------------------|----------------------------------------------------|
| 1  |                                              | **Joel D. Adler**                                  |
|    |                                              | ***Email:*** *jadler@adlerlaw.net*                 |
| 2  |                                              |                                                    |
|    | **Duane Morris LLP**                         | Geoffrey A. Heaton, Esq.                           |
| 3  |                                              | ***Email:*** *gheaton@duanemorris.com*             |
|    |                                              | Aron M. Oiner, Esq.                                |
| 4  |                                              | ***Email:*** *roliner@duanemorris.com*             |
| 5  | **Law Offices of Latham & Watkins**          | Kimberly A. Posin, Esq.                            |
|    |                                              | ***Email:*** *kim.posin@lw.com*                    |
| 6  |                                              | ***Email:*** *colleen.greenwood@lw.com*            |
| 7  | **Murray & Murray**                          | Craig M. Prim, Esq.                                |
|    |                                              | ***Email:*** *cprim@murraylaw.com*                 |
| 8  |                                              | Robert A. Franklin, Esq.                           |
|    |                                              | ***Email:*** *rfranklin@murraylaw.com*             |
| 9  |                                              | Jenny L. Fountain, Esq.                            |
| 10 |                                              | ***Email:*** *jlfountain@murraylaw.com*            |
| 11 | **Official Committee of Unsecured Creditors** | **Whiteford, Taylor & Preston LLP**               |
|    |                                              | Bradford F. Englander, Esq.                        |
| 12 |                                              | ***Email:*** *benglander@wtplaw.com*               |
|    |                                              | John F. Carlton, Esq.                              |
| 13 |                                              | ***Email:*** *jcarlton@wtplaw.com*                 |
|    |                                              | Justin P. Fasano, Esq.                             |
| 14 |                                              | ***Email:*** *jfasano@wtplaw.com*                  |
| 15 | **Counsel for The Irvine Company, LLC**      | **Allen Matkins, et al.**                          |
|    |                                              | ***Email:*** *mgreger@allenmatkins.com*            |
| 16 |                                              | ***Email:*** *krodriguez@allenmatkins.com*         |
| 17 | **Counsel for Creditor Citibank, N.A.**      | **Paul, Weiss, Rifkind, Wharton & Garrison**       |
|    |                                              | Kelley A. Cornish, Esq.                            |
| 18 |                                              | ***Email:*** *kcornish@paulweiss.com*              |
| 19 |                                              | **McNutt Law Group, LLP**                          |
| 20 |                                              | Scott H. McNutt, Esq.                              |
|    |                                              | *Email: smcnutt@ml-sf.com*                         |
| 21 |                                              |                                                    |
|    | **Counsel for Creditor Protiviti, Inc.**     | **Pachulski, Stang, Ziehl & Jones**                |
| 22 |                                              | John D. Fiero, Esq.                                |
|    |                                              | ***Email:*** *jfiero@pszjlaw.com*                  |
| 23 |                                              | ***Email:*** *ksuk@pszjlaw.com*                    |
|    |                                              | ***Email:*** *ocarpio@pszjlaw.com*                 |
| 24 |                                              |                                                    |
| 25 | **Counsel for Creditor Oracle America, Inc.** | **Buchalter Nemer**                               |
|    |                                              | Shawn M. Christianson, Esq.                        |
| 26 |                                              | ***Email:*** *schristianson@buchalter.com*         |

459910.1

24

| | |
|---|---|
| **Counsel for Creditor U.S. Bank, N.A., as Trustee** | **Perkins Coie LLP** |
| | David J. Gold, Esq. |
| | *Email:* dgold@perkinscoie.com |
| | Gabriel Liao, Esq. |
| | *Email:* gliao@perkinscoie.com |
| | |
| **Counsel for Attorneys' Liability Assurance Society, Inc., *A Risk Retention Group*** | **Perkins Coie LLP** |
| | Alan D. Smith, Esq. |
| | *Email:* adsmith@perkinscoie.com |
| | |
| **Counsel for Creditors Advanced Discovery LLc, Give Something Back, Inc., Jan Brown & Associates, Kent Daniels & Associates, Inc., L.A. Best Photocopies, Inc., Western Messenger Service, Inc.** | **Trepel McGrane Greenfield LLP** |
| | Maureen A. Harrington, Esq. |
| | *Email:* mharrington@tmcglaw.com |
| | Christopher D. Sullivan, Esq. |
| | *Email:* csullivan@tgsdlaw.com |
| | A. Morgan Jones, Esq. |
| | *Email:* amorganjones@msn.com |
| | *Email:* truckeepam@yahoo.com |
| | |
| **Counsel for BP/CGCENTER I, LLC** | **Allen, Matkins, Leck, Gamble and Mallory** |
| | William W. Huckins |
| | *Email:* whuckins@allenmatkins.com |
| | |
| **Counsel for Creditor Warner Investment, L.P.** | **McKenna Long and Aldridge LLP** |
| | Gregg S. Kleiner, Esq. |
| | *Email:* gkleiner@mckennalong.com |
| | Michael A. Isaacs, Esq. |
| | *Email:* misaacs@mckennalong.com |
| | *Email:* aworthing@mckennalong.com |
| | |
| **Counsel for Creditor Dewey & LeBoeuf LLP** | **Dewey and LeBoeuf** |
| | Paul S. Jasper, Esq. |
| | *Email:* pjasper@dl.com |
| | |
| **Counsel for Creditor Iron Mountain Information Management Inc.** | **Bartlett, Hackett and Feinberg** |
| | Frank F. McGinn, Esq. |
| | *Email:* ffm@bostonbusinesslaw |
| | |
| **Counsel for Creditor Hines REIT 321 North Clark Street, LLC** | **DLA Piper LLP** |
| | Frank T. Pepler, Esq. |
| | *Email:* frank.pepler@dlapiper.com |
| | |
| **Counsel for Creditor Stephanie Langley** | **Outten and Golden LLP** |
| | Rene S. Roupinian, Esq. |
| | *Email:* rst@outtengolden.com |
| | *Email:* jxh@outtengolden.com |
| | |
| **Counsel for Creditor Stephanie Langley** | **Law Offices of James D. Wood** |
| | James D. Wood, Esq. |
| | *Email:* jdw@jdwoodlaw.com |

459910.1

25

| | | |
|---|---|---|
| 1 | **Counsel for Creditor Pension Benefit Guaranty Corp.** | **Office of the Chief Counsel** John Holland Ginsberg, Esq. |
| 2 | | *Email:* *ginsberg.john@pbgc.gov* |
| 3 | **Counsel for Interested Party Connecticut General Life Insurance Company** | **Schnader Harrison Segal and Lewis** Melissa Lor, Esq. |
| 4 | | *Email:* *MLor@Schnader.com* |
| 5 | **Counsel for Howrey Claims LLC** | **McGrane LLP** William McGrane, Esq. |
| 6 | | *Email:* *william.mcgrane@mcgranellp.com* |
| 7 | | **Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP** |
| 8 | | Christian D. Jinkerson, Esq. |
| 9 | | *ijinkerson@kleinlaw.com* |
| 10 | **Counsel for Interested Party Connecticut General Life Insurance Co.** | Melissa Lor *Email:* mlor@schnader.com |
| 11 | | |
| 12 | **Counsel for Creditor Knickerbocker Properties, Inc. XXXIII** | **Seyfarth Shaw LLP** Scott Olson, Esq. *Email:* *solson@seyfarth.com* |
| 13 | | |
| 14 | **Counsel for Creditor Texas Comptroller of Public Accounts** | **Bankruptcy & Collections Division** Kimberly Walsh, Esq. |
| 15 | | *Email:* *bk-kwalsh@oag.state.tx.us* |
| 16 | **Counsel for Creditor 200 S. Main Street Investors, LLC** | **Ballard Spahr Andrews and Ingersoll** Rebecca J. Winthrop, Esq. |
| 17 | | *Email:* *WinthropR@ballardspahr.com* Penny M. Costa, Esq. |
| 18 | | *Email*: *costap@ballardspahr.com* |
| 19 | **Counsel for Creditor Citibank, N.A.** | **Peitzman Weg LLP** Larry Peitzman, Esq. |
| 20 | | *Email:* *lpeitzman@peitzmanweg.com* |
| 21 | **Counsel for Amy J. Fink** | **Jones Day** Robert A. Trodella |
| 22 | | *Email*: *rtrodella@jonesday.com* |
| 23 | **Counsel for Harris County** | **Linebarger Goggan Blair & Sampson LLP** John P. Dillman |
| 24 | | *Email*: *houston_bankruptcy@lgbs.com* |
| 25 | **Counsel for Informal Group of Certain Former Howrey Attorneys and Defendant Unum Life Insurance Company of America** | **Dumas & Clark LLP** Cecily A. Dumas |
| 26 | | *Email:* *Cecily.dumas@dumasclark.com* Robert E. Clark *Email:* *Robert.clark@dumasclark.com* |

459910.1

| | | |
|---|---|---|
| 1 | | |
| 2 | **Counsel for SAP America, Inc.** | **Cooper White & Cooper LLP**<br>Peter C. Califano<br>*Email*: *pcalifano@cwclaw.com* |
| 3 | | |
| 4 | **Counsel for SAP America, Inc.** | **Brown & Connery LLP**<br>Donald K. Ludman, Esq.<br>**Email:** *dludman@brownconnery.com* |
| 5 | | |
| 6 | **Counsel for McKenna Long and Aldridge** | Michael A. Isaacs, Esq.<br>*Email*: *misaacs@mckennalong.com*<br>*aworthing@mckennalong.com* |
| 7 | | |
| 8 | **Counsel for Jeffrey M. Judd** | **Judd Law Group**<br>Jeffrey M. Judd, Esq.<br>**Email**: *jeff@juddlawgroup.com* |
| 9 | | *melanie@juddlawgroup.com* |
| 10 | | |
| 11 | **Counsel for McGrane LLP** | William Joseph Walraven, Esq.<br>**Email:** *anna.song@mcgranellp.com* |
| 12 | **Counsel for Cooper US, Inc.** | **Cooper Industries, Inc.**<br>Paula Beck Whitten, Esq. |
| 13 | | **Email:** *paula.whitten@cooperindustries.com* |
| 14 | | |
| 15 | **Counsel for Neal Gerber & Eisenberg LLP** | **Hanson Bridgett LLP**<br>Nancy J. Newman |
| 16 | | *Email:* *nnewman@hansonbridgett.com* |
| 17 | **Counsel for Defendant Kelly Services, Inc.** | Ruth Elin Auerbach, Esq.<br>**Email:** *attorneyruth@sbcglobaln.net* |
| 18 | | |
| 19 | **Counsel for Creditor Rami Dalal** | Teresa A. Blasberg, Esq.<br>**Email:** *tablasberg@earthlink.net* |
| 20 | **Counsel for Defendant Sheppard Mullin**<br>**Richter & Hampton LLP** | Richard W. Brunette, Esq. |
| 21 | | **Email:** *rbrunette@sheppardmullin.com*<br>**Email:** *rryland@sheppardmullin.com* |
| 22 | | |
| 23 | **Counsel for Defendant Barbara G. Werther** | Louis J. Cisz, III, Esq.<br>**Email:** *lcisz@nixonpeabody.com* |
| 24 | **Counsel for Defendant Davidson Law Group,** | Robert E. Clark, Esq. |
| 25 | **Ralls & Niece LLP, Ropes & Gray LLP,**<br>**Ben Davidson, Geert Goeteyn, John W. Ralls,** | **Email:** *robert.clark@dumasclark.com* |
| 26 | **Stephen Mavroghenis, Informal Group of Certain**<br>**Former Howrey Attorneys, and Teresa Corbin** | |

459910.1

27

| | |
|---|---|
| **Counsel for Defendant Recommind, Inc.** | Patrick M. Costello, Esq.<br>***Email:*** *pcostello@vectislawgroup.com*<br>***Email:*** *clee@vectislawgroup.com* |
| **Counsel for Defendant Hogan Lovells US LLP** | Diana D. DiGennaro, Esq.<br>***Email:*** *diana.digennaro@aporter.com*<br>***Email:*** *jhoskins@howardrice.com*<br>Jonathan Hughes, Esq.<br>***Email:*** *jonathan.hughes@aporter.com*<br>***Email:*** *joanne.caruso@aporter.com*<br>Pamela Phillips, Esq.<br>***Email:*** *pamela.phillips@aporter.com*<br>***Email:*** *sfcalendar@aporter.com* |
| **Counsel for Defendant James R Batchelder,**<br>**And Interested Party Certain Former Partners**<br>**Partners of Day Casebeer Madrid & Batchelder LLP** | G. Larry Engel, Esq.<br>***Email:*** *lengel@mofo.com*<br>Vincent J. Novak<br>***Email:*** *vnovak@mofo.com*<br>***Email:*** *jkline@mofo.com* |
| **Counsel for Defendant Baker Hughes Incorporated** | Gregg M. Ficks, Esq.<br>***Email:*** *gficks@coblentzlaw.com* |
| **Counsel for Interested Party Informal Group of**<br>**Former Level II Howrey Partners** | Matthew Heyn, Esq.<br>***Email:*** *mheyn@ktbslaw.com* |
| **Counsel for Defendant Medco Health Solutions, Inc.** | Michael B. Ijams, Esq.<br>***Email:*** *mijams@curtislegalgroup.com*<br>***Email:*** *achristensen@curtislegalgroup.com* |
| **Counsel for Defendant Legal Placements, Inc.**<br>**And Lexolution, LLC** | Bruce H. Jackson, Esq.<br>***Email:*** *bruce.jackson@bakermckenzie.com*<br>***Email:***<br>*christine.vonseeburg@bakermckenzie.com* |
| **Counsel for Defendant Ceridian Benefit**<br>**Services, Inc.** | Ori Katz, Esq<br>***Email:*** *okatz@sheppardmullins.com* |
| **Counsel for Defendant Kilpatrick Townsend**<br>**& Stockton LLP** | Louise E. Ma, Esq.<br>***Email:*** *lma@kilpatricktownsend.com*<br>***Email:*** *sbaker-lehne@kilpatricktownsend.com* |
| **Counsel for Interested Party Ad Hoc Committee**<br>**Of Certain Former Howrey Partners** | John H. MacConaghy, Esq.<br>***Email:*** *macclaw@macbarlaw.com*<br>***Email:*** *smansour@macbarlaw.com*<br>***Email:*** *kmuller@macbarlaw.com* |
| **Counsel for Defendant Hunton & Williams LLP** | Matthew A. Mannering, Esq.<br>***Email:*** *mmannering@hunton.com*<br>***Email:*** *lgodfrey@hunton.com* |

459910.1

28

| | |
|---|---|
| **Counsel for Defendant Bunsow De Mory Smith & Allison LLP** | Randy Michelson, Esq. *Email:* *randy.michelson@michelsonlawgroup.com* |
| **Counsel for Defendant Venable LLP** | Jennifer L. Nassiri, Esq. *Email:* *jnassiri@venable.com* |
| **Counsel for Defendant TSG Reporting, Inc. & Stockton LLP** | Howard S. Nevins, Esq. *Email:* *hnevins@hsmlaw.com* *Email:* *lsamosa@hsmlaw.com* |
| **Counsel for Defendant Intelligent Management Solutions, I** | Valerie Banter Peo, Esq. *Email:* *vpeo@schnader.com* *Email:* *mpadilla@schnader.com* |
| **Counsel for Defendant Cornerstone Research, Inc.** | Steven G. Polard, Esq. *Email:* *stevenpolard@dwt.com* *Email:* *melissawells@dwt.com* |
| **Counsel for Defendants Joseph Albanese & Associates, Inc., Stemcell Technologies, Inc., and Leigh Kirmsse** | Scott A. Schiff, Esq. *Email:* *sas@soukup-schiff.com* |
| **Counsel for Defendant SJ Berwin LLP, and Defendant Michael Knospe,** | Charles M. Tatelbaum, Esq. *Email:* *ctatelbaum@hinshawlaw.com* *Email:* *csmith@hinshawlaw.com* |
| **Counsel for Defendant Haynes and Boone, LLP** | Alan R. Wechsler, Esq. *Email:* *alan.wechsler@haynesboone.com* |
| **Counsel for Defendant Kasowitz Benson Torres & Friedman LLP** | Margaret Ziemianek, Esq. *Email:* *mziemianek@kasowitz.com* *Email:* *courtnotices@kasowitz.com* |
| **Counsel for SJ Berwin LLP** | Charles M. Tatelbaum, Esq. *Email:* *ctatelbaum@hinshawlaw.com* *Email:* *csmith@hinshawlaw.com* |

***VIA EMAIL:***

| | |
|---|---|
| **Counsel for Creditor Citibank, N.A.** | **Paul, Weiss, Rifkind, Wharton & Garrison** Kelley A. Cornish, Esq. *Email:* *kcornish@paulweiss.com* Diane Meyers, Esq. *Email:**dmeyers@paulweiss.com* Jacob J. Adlerstein, Esq. *Email*: *jadlerstein@paulweiss.com* *ayoung@paulweiss.com* |

459910.1

29

| | |
|---|---|
| 1 | **Ballard Spahr LLP** |
| | Matthew Moncur, Esq. |
| 2 | *Email*: moncurm@ballardspahr.com |
| 3 | **E**MC Corporation |
| | c/o Receivable Management Services |
| 4 | Steven Sass, Esq. |
| | *Email*: steven.sass@rmsna.com |
| 5 | Ronald Rowland, Esq. |
| | *Email*: Ronald.rowland@rmsna.com |
| 6 | |
| 7 | **Olin Corporation** |
| | S. Christian Mullgardt |
| 8 | *Email*: scmullgardt@olin.com |
| 9 | |
| 10 | ***VIA U.S. MAIL:*** |
| 11 | Richard Burdge, Esq. |
| | The Burdge Law Firm PC |
| 12 | 500 S Grand Ave Ste 1500 |
| | Los Angeles, CA 90071 |
| 13 | |
| 14 | Jeffrey C. Wisler, Esq. |
| | Connolly Bove Lodge & Hutz LLP |
| 15 | 1007 North Orange Street |
| | Wilmington, DE 19899 |
| 16 | *Attorneys for Interested Party Connecticut General Life Insurance Company* |
| 17 | IKON Office Solutions |
| | Recovery & Bankruptcy Group |
| 18 | 3920 Arkwright Road, Suite 400 |
| | Macon, GA 31210 |
| 19 | |
| 20 | EMC Corporation |
| | c/o RMS Bankruptcy Recovery Services |
| 21 | Attn: President or General/Managing Agent |
| | P.O. Box 5126 |
| 22 | Timonium, MD 21094-5126 |
| 23 | Salter & Company LLC |
| | 4600 East-West Highway, Suite 300 |
| 24 | Bethesda, MD 20814 |
| 25 | County of Loudoun Virginia |
| | Belkys Escobar |
| 26 | 1 Harrison St., S.E. 5th Fl. |
| | Leesburg, VA 20175-3102 |

1  Matura Farrington Staffing Services, Inc.
   700 So. Flower Street, Suite 2505
2  Los Angeles, CA 90017

3  Guy Davis
   Protiviti Inc.
4  1051 East Cary Street, Suite 602
   Richmond, VA 23219
5
   George E. Shoup, III
6  Development Specialists, inc.
   6375 Riverside Drive, Suite 200
7  Dublin, OH 43017-5373

8  Kyle Everett
   Development Specialists, Inc.
9  235 Pine Street, Suite 1150
   San Francisco, CA 94104
10
   James W. Martin
11 DHR International
   5425 Wisconsin Ave., 4th Floor
12 Chevy Chase, MD 20815
13
14
15
16
17
18
19
20
21
22
23
24
25
26

459910.1