**DIAMOND McCARTHY LLP**
Andrew B. Ryan, Esq. *(pro hac vice)*
909 Fannin, 15th Floor
Houston, TX 77010
Telephone: 713-333-5100
Facsimile: 713-333-5199
aryan@diamondmccarthy.com

*Counsel for Allan B. Diamond*
*Chapter 11 Trustee for Howrey LLP*

**KORNFIELD, NYBERG, BENDES & KUHNER P.C.**
Eric A. Nyberg, Esq. (Bar No. 131105)
Chris D. Kuhner, Esq. (Bar No. 173291)
1970 Broadway, Suite 225
Oakland, CA 94612
Telephone: 510-763-1000
Facsimile: 510-273-8669

*Local Counsel for Allan B. Diamond,*
*Chapter 11 Trustee for Howrey LLP*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |  |
|---|---|---|
| In re | ) ) ) | Case No. 11-31376 DM<br>Chapter 11<br>Hon. Dennis Montali |
| HOWREY LLP, | ) ) | |
| Debtor. | ) ) ) ) ) | **CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF ORDER APPROVING THE CITIBANK SETTLEMENT** |

.

TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE:

Allan B. Diamond, the chapter 11 trustee ("Trustee") of the estate of Howrey LLP ("Howrey" or "Debtor"), hereby submits this motion ("Motion") pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for entry of an order approving the Citibank Settlement between the Trustee, on the one hand, and Citibank, N.A., a national banking association ("Citibank") on the other, and represents as follows:

## JURISDICTION

1.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2).

## BACKGROUND

2.  Citibank is Howrey's pre-petition secured lender.  Howrey and Citibank are party to, among other things: (i) that certain Fourth Amended and Restated Secured Loan Agreement dated as of October 19, 2010, by and between Howrey, as Borrower, and Citibank, as Lender, as amended by a First Amendment thereto dated as of December 3, 2010, and as further amended by a Second Amendment thereto dated as of December 20, 2010 (as so amended, the "Pre-Petition Financing Agreement"); (ii) that certain Fourth Amended and Restated Security Agreement dated as of October 19, 2010, made by and among Howrey and certain of Howrey's domestic non-debtor affiliates, as Grantors, and Citibank, as Lender (as so amended, the "Security Agreement"); (iii) those certain guaranties by such non-debtor affiliates in favor of Citibank; (iv) those certain promissory notes issued from time to time by Howrey in favor of Citibank in accordance with the Pre-Petition Financing Agreement; and (v) each other "Loan Document" as defined in the Pre-Petition Financing Agreement (collectively, the "Pre-Petition Financing Documents").

3.  On January 19, 2011, Howrey provided a Compliance Certificate to Citibank acknowledging that Howrey was in default under the Pre-Petition Financing Documents.

4.  On March 3, 2011, Citibank served Howrey with a formal notice of default.

5.  On March 9, 2011, the requisite number of Howrey's partners voted to dissolve the partnership effective March 15, 2011.

6.  On or about March 28, 2011, Howrey and Baker & Hostetler LLP ("B&H") entered into the Case Transfer and Allocation of Hours Agreement (the "Transfer Agreement").  The

2

Transfer Agreement specified, among other things, the terms under which B&H and Howrey would allocate any future recoveries in two antitrust class actions which Howrey had previously pursued on a contingent fee basis: (i) a case in the United States District Court for the Eastern District of Tennessee, Case No. 2:08-md-01000 (hereinafter "SE Milk"); and (ii) a case in the United States District Court for the District of Vermont, Case No. 5:09-cv-00230 (hereinafter "NE Milk"; together with SE Milk, the "Milk Cases").

7. On April 11, 2011 (the "Petition Date"), certain creditors of Howrey filed an involuntary petition for relief under chapter 7 of the United States Bankruptcy Code initiating Case No. 11-31376-DM (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). On June 6, 2013, the Bankruptcy Court entered an order converting the Bankruptcy Case to a voluntary case under chapter 11 of the Bankruptcy Code.

8. As of the Petition Date, the principal amount of loans outstanding under the Pre-Petition Financing Documents was approximately $57 million, together with all accrued interest, fees, undrawn Letters of Credit, unreimbursed drawings under Letters of Credit, swap obligations and other amounts owing under the Pre-Petition Financing Documents (the "Pre-Petition Debt").

9. Pursuant to the terms of the Pre-Petition Financing Documents, the Pre-Petition Debt is secured by, among other things, liens and security interests (the "Pre-Petition Liens") granted by Howrey on substantially all of its personal property assets, including, without limitation, Howrey's main operating account maintained with Citibank (the "Operating Account").

10. Since the Petition Date, Citibank has continued to accrue and incur: (i) interest on the Pre-Petition Debt at the default rate provided by the Pre-Petition Financing Documents (the "Post-Petition Default Interest"); and (ii) attorney and other professional fees, costs, and

expenses incurred in representing Citibank's interests in the Bankruptcy Case (the "Post-Petition Fees").

11. On October 12, 2011, the Bankruptcy Court entered an Order Approving Appointment of Chapter 11 Trustee whereby the Bankruptcy Court approved Allan Diamond as Trustee.

12. Since the Petition Date, Citibank has permitted both Howrey's dissolution committee and the Trustee to use its cash collateral (as that term is defined in Bankruptcy Code Section 363(a)), pursuant to orders entered by the Bankruptcy Court on June 14, 2011; August 31, 2011; and December 9, 2011 (the "Cash Collateral Orders").

13. Since the Trustee's appointment, he has pursued Howrey's unfinished business and partner clawback claims against Howrey's former partners and the law firms that they joined. In addition to other litigation the Trustee is pursuing (including, without limitation, other avoidance actions under chapter 5 of the Bankruptcy Code and breach of fiduciary duty claims), the Trustee and his counsel believe this litigation is not subject to Citibank's Pre-Petition Liens (all such litigation claims collectively referred to herein as the "Unencumbered Litigation"). However, the Trustee and his counsel understands that Citibank contends that the Unencumbered Litigation is subject to its Pre-Petition Liens and has reserved its rights to assert an interest in any recoveries on such claims. The Trustee continues to pursue the Unencumbered Litigation.

14. On March 29, 2013, the Trustee reached a settlement (the "ALAS Settlement") with Attorneys' Liability Assurance Society (Bermuda) Ltd. ("ALAS Ltd.") and Attorneys' Liability Assurance Society, Inc., a Risk Retention Group ("ALAS, Inc."). Under the terms of the ALAS Settlement, Howrey will receive, among other potential monies, a specified amount of its share of the net worth of ALAS Ltd., computed and distributable in accordance with the Bye-Laws of ALAS Ltd., on May 1st of each of 2014, 2015, and 2016 (all such amounts owing to Howrey or

459981.1

4

the Trustee under the ALAS Settlement collectively referred to herein as the "Future ALAS Payments").  The Bankruptcy Court entered an order approving the ALAS Settlement on April 29, 2013.

15. On or about July 24, 2013, the Trustee reached a settlement (the "B&H Settlement") with B&H and the former Howrey partners who joined B&H (the "B&H Former Howrey Partners").  The B&H Settlement resolves Howrey's potential claims against B&H for: (i) fraudulent transfer claims related to the Transfer Agreement; (ii) unfinished hourly business claims; (iii) claims arising under Section 549 of the Bankruptcy Code; (iv) partner clawback claims against the B&H Former Howrey Partners; and (v) any future contingent fee recoveries payable to Howrey under the Transfer Agreement, as modified by the B&H Settlement (the contingent fee recoveries referred to in this clause are hereinafter the "Future Contingent Interests").  Pursuant to the B&H Settlement, Howrey shall receive cash totaling $41,015,057 (the "B&H Settlement Cash"), in addition to the Future Contingent Interests.

16. Citibank and the Trustee agree that, of the B&H Settlement Cash: (i) $35,421,121 is unquestionably attributable to recoveries from the Milk Cases that Howrey would have received under the Transfer Agreement and therefore is subject to Citibank's Pre-Petition Liens; and (ii) the amount recovered by Howrey from B&H in excess of the amount Howrey would have otherwise received under the Transfer Agreement is $3,326,190 (the "Incremental Interest").  Citibank and the Trustee dispute whether the Incremental Interest is also subject to Citibank's Pre-Petition Liens.

17. As of August 8, 2013, $617,433 was on deposit in Howrey's Operating Account, which the Trustee acknowledges is cash collateral subject to Citibank's Pre-Petition Liens and the provisions of the Cash Collateral Orders.

459981.1

5

18. As of September 30, 2013, Citibank and the Trustee agree that Howrey will owe Citibank a total of approximately $41,368,566, which is comprised of the following: (i) $34,288,208 in principal on the Pre-Petition Debt; (ii) $348,484 in pre-petition interest on the Pre-Petition Debt; (iii) $5,255,836 in Post-Petition Default Interest; and (iv) $1,476,038 in Post-Petition Fees, which includes estimated Post-Petition Fees through such date.

**Disputes with Citibank and the Negotiation of a Settlement**

19. As part of analyzing the Citibank Claim, I and my counsel have analyzed whether Citibank would prevail in litigation over whether the value of the Debtor's assets subject to Citibank's Pre-Petition Liens and post-petition liens (granted under the Cash Collateral Orders) exceed the Citibank Claim. Based upon my counsel's advice and my knowledge of the Debtor's asset categories, I believe it is likely that Citibank would prevail in litigation that it was (and is) over-secured at all relevant times.

20. Section 506(b) of the Bankruptcy Code provides in relevant part that "[t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b).

21. Section 506(a)(1) provides that the value of the secured creditor's interest in the collateral securing its claim is to be determined "in light of the purpose of the valuation and the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1). Pursuant to this section, property may be valued at different times for different purposes.

22. For example, by the time of the Cash Collateral Orders, Howrey owed Citibank approximately $57 million under the Pre-Petition Financing Documents. Effective September

459981.1

6

30, 2013, the Citibank Claim totals approximately $41,368,566. The collateral pledged to secure the Citibank Claim includes, among other assets: (a) interests in Howrey's work in progress, unbilled time, and accounts receivables; (b) interests in Howrey's contingent fee matters; (c) funds in Howrey's Operating Account; and (d) such further assets covered by replacement liens on the Debtor's post-petition assets to the extent of the approximately $19 million in cash collateral consumed by the Estate during this chapter 11 case (more than $11mm of which was consumed prior to my appointment).

23. A rough calculation demonstrates why Citibank is currently oversecured, and was likely over-secured at all points during this Bankruptcy Case. I agree that the collateral pledged to secure the Citibank Claim includes, among other things, $35,421,121 of the B&H Cash, $617,433 of cash collateral on deposit with the Trustee and replacement liens on all of the Debtor's post-petition assets to the extent of the approximately $19 million in cash collateral consumed by the estate during this chapter 11 case. Thus, *without* even taking into account other valuable pre-petition assets, such as those discussed in the paragraphs below, the value of the collateral currently (soon to be monetized, subject to this Court's order) available to Citibank to satisfy the Citibank Claim of approximately $41,368,566 is between $55 million and $56 million.

24. Moreover, Citibank would cite additional valuable collateral in support of its oversecurity claim. For example, Citibank's Pre-Petition Liens extend to whatever interest Howrey has in its remaining contingency fee cases, such as NE Milk/DFA and Online DVD/Walmart and Netflix, among others. In just one settlement in Online DVD (Walmart), Howrey's *quantum meruit* interest may be worth several million dollars. Additionally, Citibank has claimed both pre-petition and post-petition liens over Howrey's Net Worth Interest in ALAS, which was valued in excess of $7 million as of February 2013. Citibank has also claimed pre-

petition and post-petition liens over partner clawback and unfinished business claims, the value of which is substantial.

25. Based on this data, my review of the law, my discussions with counsel, my discussons with Committee counsel, and my settlement discussions with Citibank, I believe Citibank would likely prevail in litigation over whether the Citibank Claim is oversecured. Regardless of probability of success, I am certain that Citibank would litigate the issue vigorously and to a full and complete conclusion (including any appeals as necessary). Despite this determination, however, I was able to convince Citibank to provide a discount of over $1.7 million to the Estate from what Citibank would receive if it prevailed on the oversecurity issue.

26. Once it became apparent that the Trustee would reach final agreement regarding the B&H Settlement, the Trustee and his counsel began discussions with Citibank and its counsel regarding how to allocate the cash portion of the B&H Settlement. During those discussions, it was clear that various matters were disputes that, if not resolved amicably, were likely to lead to protracted litigation that could take years to resolve.

27. First, Citibank and the Trustee have a dispute regarding the scope of Citibank's Pre-Petition Liens. Citibank contends that its Pre-Petition Liens extend to all of the cash recovered under the B&H Settlement, including the Incremental Interest, as well as to amounts recovered on Unencumbered Litigation. While the Trustee disagrees with Citibank's contentions and believe the Estate owns 100% of the Incremental Interest and amounts recovered on the Unencumbered Litigation free and clear of the Pre-Petition Liens, the Trustee acknowledges that there are potentially meritorious arguments to the contrary, and any such litigation would require (a) construing the Transfer Agreement and related documents, (b) construing the Pre-Petition Liens and related documents, (c) construing the Cash Collateral Orders and related documents, and (d) applying the terms of all of these documents consistently and in accordance with

459981.1

8

bankruptcy law. Moreover, resolution of these issues likely would require additional intensive fact inquiry into all of the circumstances surrounding the negotiation and execution of the Transfer Agreement and the Pre-Petition Financing Documents.

28. Second, Citibank and the Trustee have had longstanding and continuing discussions regarding the Estate's continued use of Citibank's cash collateral in the Operating Account. The Estate requires various funds to maintain Estate operations and continue to pursue claims and litigation for the benefit of the Estate and its constituencies. Citibank contends that the B&H Settlement would leave the estate with millions of dollars to fund continued operations and litigation, which would eliminate Howrey's need for continued use of Citibank's cash collateral. While the Trustee agrees with Citibank that the B&H Settlement will result in a significant recovery and provide much needed cash to the estate, the Trustee was not willing to pay Citibank the funds in the Operating Account without first ensuring that: (a) the Estate indeed received sufficient amounts from the B&H Settlement to fund operations and litigation; and (b) Citibank would agree to certain concessions regarding Post-Petition Default Interest.

29. Third, Citibank and the Trustee have a dispute regarding Citibank's accrual of Post-Petition Default Interest inasmuch as the Trustee believes that Citibank's continued accrual of post-petition interest at the default, rather than contract, rate would be inequitable if Citibank's principal is repaid in full, and particularly if Citibank were to compound its interest at the default rate which it is contractually entitled to do.

30. With these and other issues as the background for our conversations, the Trustee and his counsel negotiated with Citibank intensively over the past few weeks. In preparation for these discussions, either the Trustee or his counsel have: (a) discussed, analyzed, and reviewed the legal and factual issues surrounding the disputes between Howrey and Citibank; and (b) discussed, analyzed, and reviewed the estate's financial position.

459981.1

9

31. Early this month, the Trustee reached an agreement in principle with Citibank, which we proceeded to reduce to a written settlement agreement. By August 15, 2013, the parties signed the Citibank Settlement, which is attached hereto as **Exhibit A**.

32. Under the terms of the Citibank Settlement, the Howrey estate receives:

- An agreement from Citibank that will permit the estate to retain $4,596,079 of the cash portion of the B&H Settlement.

- An agreement from Citibank to allocate the Initial Citibank Paydown (as that term is defined in the Citibank Settlement) to completely satisfy the principal and pre-petition interest portions of the Pre-Petition Debt, and to reduce the post-petition interest by nearly half. This will pay off – and stop the accrual of post-petition interest on – nearly 90% of the Pre-Petition Debt.

- An agreement from Citibank to voluntarily reduce the Unpaid Citibank Claim (as that term is defined in the Citibank Settlement) by an amount equal to the difference between (a) the amount of Post-Petition Default Interest owing as of the Effective Date and (b) the amount of post-petition interest which would have accrued through the Effective Date if such interest were calculated at the contract non-default rate pursuant to the Pre-Petition Financing Documents. For illustrative purposes only, if the Effective Date were to occur on September 30, 2013, this would result in a discount of approximately $1,761,129, which represents more than 33% of the total amount of post-petition interest claimed by Citibank and exceeds the net present value discount that the Estate accepted in connection with the structured pay-out portion of the B&H Settlement.

33. Under the Citibank Settlement, Citibank receives:

- A paydown through a portion of the B&H Settlement and a transfer from the Operating Account totaling $37,036,411.

- The Trustee's agreement that post-petition interest (at the non-default contract rate) and additional attorney or professional fees, costs, and expenses will continue to accrue until the Discounted Unpaid Citibank Claim is indefeasibly repaid in full.

- The Trustee's agreement that it will promptly upon receipt pay over to Citibank (a) 100% of any amounts received or recovered on account of the Future Contingent Interests (as that term is defined in the Citibank Settlement), (b) 25% of any amounts received or recovered on account of the Future ALAS Payments, (c) 25% of any amounts received or recovered on account of the Unencumbered Litigation, and (d) 100% of any amounts received or recovered on account of any other assets (other than as described in clauses (a) – (c) above) that are subject to

459981.1

Case: 11-31376   Doc# 1422   Filed: 08/16/13   Entered: 08/16/13 09:43:51   Page 10 of 25

the Pre-Petition Liens, including, without limitation, the proceeds of any of Howrey's non-contingent accounts receivable and personal property

- The Trustee also has the unilateral discretion to accelerate future payments to Citibank in order to pay off the remaining Discounted Unpaid Citibank Claim in full, and secure final releases for and on behalf of the Estate.

**BASIS FOR RELIEF**

34. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

35. "The bankruptcy court has 'great latitude' in approving compromise agreements." *Woodson v. Fireman's Insurance, Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, the compromise must be "fair and equitable" and "in the best interest of the estate." *Martin v. Kane* (*In re A & C Properties*), 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854 (1986).

36. To evaluate a compromise, a bankruptcy court considers "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re A & C Properties*, 784 F.3d at 1381.

37. Although the Trustee, as the proponent of the settlement, bears the burden of persuasion (*see id.*), "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter," *In re Mickey Thompson, Entertainment Group, Inc.*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003).

38. Here, as supported by the Trustee's accompanying declaration attached hereto as **Exhibit B,** the factors weigh in favor of settlement.

Case: 11-31376   Doc# 1422   Filed: 08/16/13   Entered: 08/16/13 09:43:51   Page 11 of 25

**39. Factor #1: Probability of Success in the Litigation.** The Citibank Settlement aligns with what I and my counsel estimate to be the approximate probability of success in any litigation with Citibank. Specifically, the settlement with Citibank allocates only 30% of the Incremental Interest to Citibank, which reflects a 70% probability that I would prevail in litigation on this issue. Similarly, the settlement with Citibank allocates only 25% of future payments (such as the ALAS Future Payments and future recoveries from the Unencumbered Litigation) to the Discounted Unpaid Citibank Claim, which reflects a 75% probability that I would prevail in litigation on this issue. If Howrey lost this litigation, however, the estate would lose 100% of both the Incremental Interest and the future payments. Settling at a 25 to 30% risk factor to avoid this possibility is consistent with my assessment of the relative strengths of the Estate's and Citibank's legal arguments and therefore supports the first *A&C Properties* factor.

**40. Factor #2: The Difficulties to be Encountered in Collection.** Here, the collection issue is whether the estate would be permitted to utilize any monies recovered in the B&H Settlement while litigating with Citibank. If Citibank prevailed in prohibiting the Estate from using the B&H Settlement to fund operations or litigation, or if Citibank refused continued access to its cash collateral, the estate's ongoing operations and litigation would be jeopardized, which would have a significant deleterious impact on creditor recoveries. The settlement with Citibank avoids this result, and ensures that the Estate will have sufficient resources to fund valuable litigation claims, which will inure to the benefit of all creditors. Thus, I believe the Citibank Settlement satisfies the second *A&C Properties* factor.

**41. Factor #3: The Complexity of the Litigation Involved and its Expense, Inconvenience and Delay.** Litigating with Citibank over the scope of its Pre-Petition Liens and any additional security provided by the Cash Collateral Orders is complex for the reasons described above. However, the larger issue is expense, inconvenience, and delay – without the

B&H Settlement and the Citibank Settlement, the estate will continue to be largely dependent upon continued use of Citibank's cash collateral (which, itself, has been dramatically depleted during this Bankruptcy Case). This would leave the estate without the funds or time to litigate with Citibank over the scope of its Pre-Petition Liens. Further, the inconvenience of litigating with Citibank would be substantial: I am making progress in completing additional settlements of all kinds (including, without limitation, unfinished business, clawback, gap avoidance, preference, and breach of fiduciary claims). Moreover, I will be preparing for and continuing with pending litigation against myriad defendants involving significant unfinished business and clawback claims that are being defended vigorously. (Many motions to dismiss those claims are set for hearing in October 2013.) I am further dealing with a multitude of other administrative issues and potential litigation claims in the Estate. Adding litigation against a determined and well-funded opponent would only serve to inconvenience the Estate by distracting me from the litigation recoveries that will begin to repay administrative, priority, and general unsecured creditors. I therefore believe it is beyond doubt that the Citibank Settlement satisfies the third *A&C Properties* factor.

42. **Factor #4: The Paramount Interest of the Creditors.** Finally, the Citibank Settlement is in the best interests of all creditors. In the short-term, the Citibank Settlement eliminates the administrative expense associated with requested funding and negotiating budgets with Citibank. In the long-term, this settlement brings the estate significantly closer to being able to formulate and propose a chapter 11 plan, as well as trying to remit funds to priority and general unsecured creditors. Since the beginning of this Bankruptcy Case, recoveries to priority and general unsecured creditors has been subordinated to Citibank's secured debt. This settlement will satisfy the vast majority of this debt, leaving little to be satisfied from ongoing recoveries (some of which, like the ALAS Future Payments, are already in place).

For these and other reasons, I have obtained the unqualified approval of the Creditors Committee for the Citibank Settlement. Accordingly, the Citibank Settlement meets the fourth and final *A&C Properties* factor.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Motion and enter and order approving the Debtor's compromise with Citibank as described above.

Dated: August 16, 2013

 /s/ Andrew B. Ryan
Stephen T. Loden, Esq. *(pro hac vice)*
Andrew B. Ryan, Esq. *(pro hac vice)*
DIAMOND McCARTHY LLP
909 Fannin, 15th Floor
Houston, TX 77010
Telephone: 713-333-5100
Facsimile: 713-333-5199
sloden@diamondmccarthy.com
aryan@diamondmccarthy.com

Eric A. Nyberg, Esq. (Bar No. 131105)
Chris D. Kuhner, Esq. (Bar No. 173291)
KORNFIELD, NYBERG, BENDES & KUHNER, P.C.
1970 Broadway, Suite 225
Oakland, CA 94612
Telephone: 510-763-1000
Facsimile: 510-273-8669

*Counsel for Allan B. Diamond,*
*Chapter 11 Trustee for Howrey LLP*
.

# **NOTICE OF SERVICE**

__X__ (CM/ECF) The document was electronically served on the parties to this action via the mandatory United States Bankruptcy Court of California CM/ECF system upon filing of above described document:

## **SEE ATTACHED SERVICE LIST**

__X__ (ELECTRONIC MAIL SERVICE) By electronic mail (e-mail) the above listed document(s) without error to the email address(es) set forth below on this date:

## **SEE ATTACHED SERVICE LIST**

__X__ (UNITED STATES MAIL) By depositing a copy of the above-referenced documents for mailing in the United States Mail, first class postage prepaid, at Houston, Texas, to the parties listed, at their last known mailing addresses, on this date:

## **SEE ATTACHED SERVICE LIST**

_____ (OVERNIGHT COURIER) By depositing a true and correct copy of the above referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

_____ (COURIER SERVICE) By providing true and correct copies of the above referenced documents [with copies of the supporting detailed invoices/attorney time records for the Final Fee Application] via courier delivery, to the following on or about _____:

_____ (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those people listed on the attached service list, on the date above written.

*/s/ Andrew B. Ryan*
Andrew B. Ryan

459981.1

15

*VIA CM/ECF:*

**United States Trustee**

Minnie Loo, Esq.
Donna S. Tamanaha, Esq.
Office of the U.S. Trustee
235 Pine Street. 7th Floor
San Francisco, CA 94104-3484
*Email:* *Minnie.Loo@usdoj.gov*
*Email:* *Donna.S.Tamanaha@usdoj.gov*
*Email:* *USTPRegion17.SF.ECF@usdoj.gov*
*Email:* *ltroxas@hotmail.com*

**Chapter 11 Trustee**

Allan B. Diamond
**Diamond McCarthy, LLP**
Two Houston Center
909 Fannin Street, Suite 1500
Houston, Texas 77010
*Email:* *adiamond@diamondmccarthy.com*

**Counsel for the Chapter 11 Trustee**

**Diamond McCarthy, LLP**
Howard D. Ressler, Esq.
*Email:* *hressler@diamondmccarthy.com*
Stephen T. Loden, Esq.
*Email:* *sloden@diamondmccarthy.com*
Jason M. Rudd, Esq.
*Email:* *jrudd@diamondmccarthy.com*
Andrew B. Ryan, Esq.
*Email:* *aryan@diamondmccarthy.com*

**Kornfield Nyberg Bender & Kuhner P.C.**
Eric Nyberg
*Email:* *e.nyberg@kornfieldlaw.com*
Chris D. Kuhner
*Email:* *c.kuhner@kornfieldlaw.com*

**Debtor's Counsel**

**Wiley Rein LLP**
H. Jason Gold
Valerie P. Morison
Dylan G. Trache
*Email:* *jgold@wileyrein.com*
*Email:* *vmorrison@wileyrein.com*
*Email:* *dtrache@wileyrein.com*

**Murray & Murray**
Robert A. Franklin
Craig M. Prim
Jenny Lynn Fountain

459981.1

16

|   |   |   |
|---|---|---|
| 1 | | *Email*: rfranklin@murraylaw.com |
| | | *Email*: cprim@murraylaw.com |
| 2 | | *Email*: jfountain@murraylaw.com |
| 3 | | **Joel D. Adler** |
| 4 | | **Email:** jadler@adlerlaw.net |
| 5 | **Duane Morris LLP** | Geoffrey A. Heaton, Esq. |
| | | **Email:** gheaton@duanemorris.com |
| 6 | | Aron M. Oiner, Esq. |
| 7 | | **Email:** roliner@duanemorris.com |
| 8 | **Law Offices of Latham & Watkins** | Kimberly A. Posin, Esq. |
| | | **Email:** kim.posin@lw.com |
| 9 | | **Email:** colleen.greenwood@lw.com |
| 10 | **Murray & Murray** | Craig M. Prim, Esq. |
| | | **Email:** cprim@murraylaw.com |
| 11 | | Robert A. Franklin, Esq. |
| 12 | | **Email:** rfranklin@murraylaw.com |
| | | Jenny L. Fountain, Esq. |
| 13 | | **Email:** jlfountain@murraylaw.com |
| 14 | **Official Committee of Unsecured Creditors** | **Whiteford, Taylor & Preston LLP** |
| 15 | | Bradford F. Englander, Esq. |
| | | **Email:** benglander@wtplaw.com |
| 16 | | John F. Carlton, Esq. |
| | | **Email:** jcarlton@wtplaw.com |
| 17 | | Justin P. Fasano, Esq. |
| 18 | | **Email:** jfasano@wtplaw.com |
| 19 | **Counsel for The Irvine Company, LLC** | **Allen Matkins, et al.** |
| | | **Email:** mgreger@allenmatkins.com |
| 20 | | **Email:** krodriguez@allenmatkins.com |
| 21 | **Counsel for Creditor Citibank, N.A.** | **Paul, Weiss, Rifkind, Wharton & Garrison** |
| 22 | | Kelley A. Cornish, Esq. |
| 23 | | **Email:** kcornish@paulweiss.com |
| 24 | | **McNutt Law Group, LLP** |
| | | Scott H. McNutt, Esq. |
| 25 | | *Email:* smcnutt@ml-sf.com |
| 26 | **Counsel for Creditor Protiviti, Inc.** | **Pachulski, Stang, Ziehl & Jones** |
| | | John D. Fiero, Esq. |
| | | **Email:** jfiero@pszjlaw.com |

Email: _ksuk@pszjlaw.com_
Email: _ocarpio@pszjlaw.com_

**Counsel for Creditor Oracle America, Inc.**

**Buchalter Nemer**
Shawn M. Christianson, Esq.
Email: _schristianson@buchalter.com_

**Counsel for Creditor U.S. Bank, N.A.,**
**as Trustee**

**Perkins Coie LLP**
David J. Gold, Esq.
Email: _dgold@perkinscoie.com_
Gabriel Liao, Esq.
Email: _gliao@perkinscoie.com_

**Counsel for Attorneys' Liability Assurance**
**Society, Inc.,** _A Risk Retention Group_

**Perkins Coie LLP**
Alan D. Smith, Esq.
Email: _adsmith@perkinscoie.com_

**Counsel for Creditors Advanced Discovery**
**LLc, Give Something Back, Inc., Jan Brown**
**& Associates, Kent Daniels & Associates, Inc.,**
**L.A. Best Photocopies, Inc., Western**
**Messenger Service, Inc.**

**Trepel McGrane Greenfield LLP**
Maureen A. Harrington, Esq.
Email: _mharrington@tmcglaw.com_
Christopher D. Sullivan, Esq.
Email: _csullivan@tgsdlaw.com_
A. Morgan Jones, Esq.
Email: _amorganjones@msn.com_
Email: _truckeepam@yahoo.com_

**Counsel for BP/CGCENTER I, LLC**

**Allen, Matkins, Leck, Gamble and**
**Mallory**
William W. Huckins
Email: _whuckins@allenmatkins.com_

**Counsel for Creditor Warner Investment, L.P.**

**McKenna Long and Aldridge LLP**
Gregg S. Kleiner, Esq.
Email: _gkleiner@mckennalong.com_
Michael A. Isaacs, Esq.
Email: _misaacs@mckennalong.com_
Email: _aworthing@mckennalong.com_

**Counsel for Creditor Dewey & LeBoeuf LLP**

**Dewey and LeBoeuf**
Paul S. Jasper, Esq.
Email: _pjasper@dl.com_

**Counsel for Creditor Iron Mountain**
**Information Management Inc.**

**Bartlett, Hackett and Feinberg**
Frank F. McGinn, Esq.
Email: _ffm@bostonbusinesslaw.com_

459981.1

18

| | |
|---|---|
| **Counsel for Creditor Hines REIT 321 North Clark Street, LLC** | **DLA Piper LLP** <br> Frank T. Pepler, Esq. <br> ***Email:*** *frank.pepler@dlapiper.com* |
| **Counsel for Creditor Stephanie Langley** | **Outten and Golden LLP** <br> Rene S. Roupinian, Esq. <br> ***Email:*** *rst@outtengolden.com* <br> ***Email:*** *jxh@outtengolden.com* |
| **Counsel for Creditor Stephanie Langley** | **Law Offices of James D. Wood** <br> James D. Wood, Esq. <br> ***Email:*** *jdw@jdwoodlaw.com* |
| **Counsel for Creditor Pension Benefit Guaranty Corp.** | **Office of the Chief Counsel** <br> John Holland Ginsberg, Esq. <br> ***Email:*** *ginsberg.john@pbgc.gov* |
| **Counsel for Interested Party Connecticut General Life Insurance Company** | **Schnader Harrison Segal and Lewis** <br> Melissa Lor, Esq. <br> ***Email:*** *MLor@Schnader.com* |
| **Counsel for Howrey Claims LLC** | **McGrane LLP** <br> William McGrane, Esq. <br> ***Email:*** *william.mcgrane@mcgranellp.com* |
| | **Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP** <br> Christian D. Jinkerson, Esq. <br> ijinkerson@kleinlaw.com |
| **Counsel for Interested Party Connecticut General Life Insurance Co.** | Melissa Lor <br> ***Email***: mlor@schnader.com |
| **Counsel for Creditor Knickerbocker Properties, Inc. XXXIII** | **Seyfarth Shaw LLP** <br> Scott Olson, Esq. <br> ***Email***: *solson@seyfarth.com* |
| **Counsel for Creditor Texas Comptroller of Public Accounts** | **Bankruptcy & Collections Division** <br> Kimberly Walsh, Esq. <br> ***Email:*** *bk-kwalsh@oag.state.tx.us* |
| **Counsel for Creditor 200 S. Main Street Investors, LLC** | **Ballard Spahr Andrews and Ingersoll** <br> Rebecca J. Winthrop, Esq. <br> ***Email:*** *WinthropR@ballardspahr.com* <br> Penny M. Costa, Esq. <br> ***Email***: *costap@ballardspahr.com* |

459981.1

| | |
|---|---|
| **Counsel for Creditor Citibank, N.A.** | **Peitzman Weg LLP** |
| | Larry Peitzman, Esq. |
| | *Email: lpeitzman@peitzmanweg.com* |
| | |
| **Counsel for Amy J. Fink** | **Jones Day** |
| | Robert A. Trodella |
| | *Email*: *rtrodella@jonesday.com* |
| | |
| **Counsel for Harris County** | **Linebarger Goggan Blair & Sampson LLP** |
| | John P. Dillman |
| | *Email*: *houston_bankruptcy@lgbs.com* |
| | |
| **Counsel for Informal Group of Certain Former Howrey Attorneys and Defendant Unum Life Insurance Company of America** *Cecily.dumas@dumasclark.com* | **Dumas & Clark LLP** |
| | Cecily A. Dumas |
| | *Email:* |
| | |
| | Robert E. Clark |
| | *Email: Robert.clark@dumasclark.com* |
| | |
| **Counsel for SAP America, Inc.** | **Cooper White & Cooper LLP** |
| | Peter C. Califano |
| | *Email*: *pcalifano@cwclaw.com* |
| | |
| **Counsel for SAP America, Inc.** | **Brown & Connery LLP** |
| | Donald K. Ludman, Esq. |
| | *Email: dludman@brownconnery.com* |
| | |
| **Counsel for McKenna Long and Aldridge** | Michael A. Isaacs, Esq. |
| | *Email*: *misaacs@mckennalong.com* |
| | *aworthing@mckennalong.com* |
| | |
| **Counsel for Jeffrey M. Judd** | **Judd Law Group** |
| | Jeffrey M. Judd, Esq. |
| | *Email*: *jeff@juddlawgroup.com* |
| | *melanie@juddlawgroup.com* |
| | |
| **Counsel for McGrane LLP** | William Joseph Walraven, Esq. |
| | *Email: anna.song@mcgranellp.com* |
| | |
| **Counsel for Cooper US, Inc.** | **Cooper Industries, Inc.** |
| | Paula Beck Whitten, Esq. |
| | *Email:* |
| *paula.whitten@cooperindustries.com* | |
| | |
| **Counsel for Neal Gerber & Eisenberg LLP** | **Hanson Bridgett LLP** |

459981.1

| | |
|---|---|
| | Nancy J. Newman |
| | *Email:* *nnewman@hansonbridgett.com* |
| **Counsel for Defendant Kelly Services, Inc.** | Ruth Elin Auerbach, Esq. |
| | *Email:* *attorneyruth@sbcglobaln.net* |
| **Counsel for Creditor Rami Dalal** | Teresa A. Blasberg, Esq. |
| | *Email:* *tablasberg@earthlink.net* |
| **Counsel for Defendant Sheppard Mullin Richter & Hampton LLP** | Richard W. Brunette. Esq. |
| | *Email:* *rbrunette@sheppardmullin.com* |
| | *Email:* *rryland@sheppardmullin.com* |
| **Counsel for Defendant Barbara G. Werther** | Louis J. Cisz, III, Esq. |
| | *Email:* *lcisz@nixonpeabody.com* |
| **Counsel for Defendant Davidson Law Group, Ralls & Niece LLP, Ropes & Gray LLP, Ben Davidson, Geert Goeteyn, John W. Ralls, Stephen Mavroghenis, Informal Group of Certain Former Howrey Attorneys, and Teresa Corbin** | Robert E. Clark, Esq. |
| | *Email:* *robert.clark@dumasclark.com* |
| **Counsel for Defendant Recommind, Inc.** | Patrick M. Costello, Esq. |
| | *Email:* *pcostello@vectislawgroup.com* |
| | *Email:* *clee@vectislawgroup.com* |
| **Counsel for Defendant Hogan Lovells US LLP** | Diana D. DiGennaro, Esq. |
| | *Email:* *diana.digennaro@aporter.com* |
| | *Email:* *jhoskins@howardrice.com* |
| | Jonathan Hughes, Esq. |
| | *Email:* *jonathan.hughes@aporter.com* |
| | *Email:* *joanne.caruso@aporter.com* |
| | Pamela Phillips, Esq. |
| | *Email:* *pamela.phillips@aporter.com* |
| | *Email:* *sfcalendar@aporter.com* |
| **Counsel for Defendant James R Batchelder, And Interested Party Certain Former Partners Partners of Day Casebeer Madrid & Batchelder LLP** | G. Larry Engel, Esq. |
| | *Email:* *lengel@mofo.com* |
| | Vincent J. Novak |
| | *Email:* *vnovak@mofo.com* |
| | *Email:* *jkline@mofo.com* |
| **Counsel for Defendant Baker Hughes Incorporated** | Gregg M. Ficks, Esq. |
| | *Email:* *gficks@coblentzlaw.com* |
| **Counsel for Interested Party Informal Group of** | Matthew Heyn, Esq. |

| | |
|---|---|
| **Former Level II Howrey Partners** | *Email:*  mheyn@ktbslaw.com |
| **Counsel for Defendant Medco Health Solutions, Inc.** | Michael B. Ijams, Esq. |
| | *Email:*  mijams@curtislegalgroup.com |
| | *Email:*  achristensen@curtislegalgroup.com |
| **Counsel for Defendant Legal Placements, Inc. And Lexolution, LLC** | Bruce H. Jackson, Esq. |
| | *Email:* bruce.jackson@bakermckenzie.com |
| | *Email:* christine.vonseeburg@bakermckenzie.com |
| **Counsel for Defendant Ceridian Benefit Services, Inc.** | Ori Katz, Esq |
| | *Email:*  okatz@sheppardmullins.com |
| **Counsel for Defendant Kilpatrick Townsend & Stockton LLP** | Louise E. Ma, Esq. |
| | *Email:*  lma@kilpatricktownsend.com |
| | *Email:*                              sbaker-lehne@kilpatricktownsend.com |
| **Counsel for Interested Party Ad Hoc Committee Of Certain Former Howrey Partners** | John H. MacConaghy, Esq. |
| | *Email:*  macclaw@macbarlaw.com |
| | *Email:*  smansour@macbarlaw.com |
| | *Email:*  kmuller@macbarlaw.com |
| **Counsel for Defendant Hunton & Williams LLP** | Matthew A. Mannering, Esq. |
| | *Email:*  mmannering@hunton.com |
| | *Email:*  lgodfrey@hunton.com |
| **Counsel for Defendant Bunsow De Mory Smith & Allison LLP** | Randy Michelson, Esq. |
| | *Email:* randy.michelson@michelsonlawgroup.com |
| **Counsel for Defendant Venable LLP** | Jennifer L. Nassiri Esq. |
| | *Email:*  jnassiri@venable.com |
| **Counsel for Defendant TSG Reporting, Inc. & Stockton LLP** | Howard S. Nevins, Esq. |
| | *Email:*  hnevins@hsmlaw.com |
| | *Email:*  lsamosa@hsmlaw.com |
| **Counsel for Defendant Intelligent Management Solutions, I** | Valerie Banter Peo, Esq. |
| | *Email:*  vpeo@schnader.com |
| | *Email:*  mpadilla@schnader.com |
| **Counsel for Defendant Cornerstone Research, Inc.** | Steven G. Polard, Esq. |
| | *Email:*  stevenpolard@dwt.com |
| | *Email:*  melissawells@dwt.com |

459981.1

22

| | |
|---|---|
| **Counsel for Defendants Joseph Albanese &** **Associates, Inc., Stemcell Technologies, Inc.,** **and Leigh Kirmsse** | Scott A. Schiff, Esq. *Email: sas@soukup-schiff.com* |
| **Counsel for Defendant SJ Berwin LLP, and** **Defendant Michael Knospe,** ctatelbaum@hinshawlaw.com | Charles M. Tatelbaum, Esq. *Email:* *Email: csmith@hinshawlaw.com* |
| **Counsel for Defendant Haynes and Boone, LLP** | Alan R. Wechsler, Esq. *Email: alan.wechsler@haynesboone.com* |
| **Counsel for Defendant Kasowitz Benson** **Torres & Friedman LLP** | Margaret Ziemianek, Esq. *Email: mziemianek@kasowitz.com* *Email: courtnotices@kasowitz.com* |
| **Counsel for SJ Berwin LLP** | Charles M. Tatelbaum, Esq. *Email: ctatelbaum@hinshawlaw.com* *Email: csmith@hinshawlaw.com* |

*VIA EMAIL:*

| | |
|---|---|
| **Counsel for Creditor Citibank, N.A.** | **Paul, Weiss, Rifkind, Wharton &** **Garrison** Kelley A. Cornish, Esq. *Email: kcornish@paulweiss.com* Diane Meyers, Esq. *Email:dmeyers@paulweiss.com* Jacob J. Adlerstein, Esq. *Email: jadlerstein@paulweiss.com* ayoung@paulweiss.com |
| | **Ballard Spahr LLP** Matthew Moncur, Esq. *Email: moncurm@ballardspahr.com* |
| | **EMC Corporation** c/o Receivable Management Services Steven Sass, Esq. *Email: steven.sass@rmsna.com* Ronald Rowland, Esq. *Email: Ronald.rowland@rmsna.com* |
| | **Olin Corporation** S. Christian Mullgardt *Email: scmullgardt@olin.com* |

459981.1

23

_VIA U.S. MAIL:_

Richard Burdge, Esq.
The Burdge Law Firm PC
500 S Grand Ave Ste 1500
Los Angeles, CA 90071

Jeffrey C. Wisler, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19899
_Attorneys for Interested Party Connecticut General Life Insurance Company_

IKON Office Solutions
Recovery & Bankruptcy Group
3920 Arkwright Road, Suite 400
Macon, GA 31210

EMC Corporation
c/o RMS Bankruptcy Recovery Services
Attn: President or General/Managing Agent
P.O. Box 5126
Timonium, MD 21094-5126

Salter & Company LLC
4600 East-West Highway, Suite 300
Bethesda, MD 20814

County of Loudoun Virginia
Belkys Escobar
1 Harrison St., S.E. 5th Fl.
Leesburg, VA 20175-3102

Matura Farrington Staffing Services, Inc.
700 So. Flower Street, Suite 2505
Los Angeles, CA 90017

Guy Davis
Protiviti Inc.
1051 East Cary Street, Suite 602
Richmond, VA 23219

George E. Shoup, III
Development Specialists, inc.

459981.1

24

6375 Riverside Drive, Suite 200
Dublin, OH 43017-5373

Kyle Everett
Development Specialists, Inc.
235 Pine Street, Suite 1150
San Francisco, CA 94104

James W. Martin
DHR International
5425 Wisconsin Ave., 4th Floor
Chevy Chase, MD 20815

459981.1

25