WILLIAM MCGRANE [057761]
MCGRANE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
(415) 292-4807
william.mcgrane@mcgranellp.com

FRANK R. UBHAUS [046085]
BERLINER COHEN
10 Almaden Boulevard, 11th Floor
San Jose, CA 95113
(408) 286-5800
frank.ubhaus@berliner.com

Attorneys for Advanced Discovery, LLC, Kent Daniels and Assoc., Inc., and L.A. Best Photocopies, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HOWREY LLP,<br><br>    Debtor | Case No. 11-31376 DM<br><br>Adversary Proceeding No. [] |
| ADVANCED DISCOVERY, LLC, KENT DANIELS AND ASSOC., INC. and L.A. BEST PHOTOCOPIES, INC.,<br><br>    Plaintiffs,<br>v.<br><br>DIAMOND MCCARTHY LLP;<br><br>    Defendant. | **COMPLAINT FOR BREACH OF FIDUCIARY DUTY; DECLARATORY RELIEF**<br><br>**[Demand for Jury]** |

Come now plaintiffs Advanced Discovery, LLC, Kent Daniels and Assoc., Inc., and L.A. Best Photocopies, Inc. (the Present Clients) and allege:

**The Parties**

1. The Present Clients are each creditors holding filed unsecured creditor claims in this Howrey LLP bankruptcy case (respectively, Howrey and Debtor's Bankruptcy Case).

2. Defendant Diamond McCarthy LLP (Diamond) is a Texas limited liability partnership. Diamond presently employs Christopher D. Sullivan, a member of the State Bar of California, as a partner. Sullivan was previously a partner in a law firm formerly known as Trepel McGrane Greenfield LLP and now known as Greenfield Draa & Harrington LLP (Trepel). Diamond is general counsel to Allan Diamond (Trustee), the trustee in the Debtor's Bankruptcy Case. The Trustee is also a name partner in Diamond.

**Jurisdiction and Venue**

3. The Court has jurisdiction over this matter under 28 U.S.C. § 1334 in that this action arises in or is related to the Debtor's Bankruptcy Case.

4. Venue in this district is appropriate under 28 U.S.C. § 1409.

**Charging Allegations**

5. During March 2011, Sullivan persuaded a disgruntled partner of Howrey to give him an internal memorandum marked "Confidential-Attorney Client Privileged" (the Confidential Howrey Memorandum). Sullivan then turned over that Confidential Howrey Memorandum to various other partners in Trepel, urging that they use the information contained therein to evaluate whether Howrey was a candidate for an involuntary bankruptcy petition while also stressing that the fact Trepel was in possession of the Confidential Howrey Memorandum should itself be kept a secret even to the point of his not allowing any copy of

that document to be preserved in Trepel's electronic files, such that no copy of this document is presently available for purposes of attaching same to this Complaint.

6. Based largely on the information contained in the Confidential Howrey Memorandum respecting Howrey's insolvency, the identity and locations of Howrey's creditors and the locations of Howrey's principal assets in the United States, the then-managing partner of Trepel's San Francisco office, William McGrane, offered Trepel's legal services to various Trepel vendors as well as to certain other Howrey creditors for purposes of facilitating those Howrey creditors' joint filing of an involuntary bankruptcy petition against Howrey in the Northern District of California, a federal district where Howrey had two separate offices, one in San Francisco and the other in Silicon Valley.

7. On April 11, 2011 Trepel filed an involuntary bankruptcy petition against Howrey on behalf of three client creditors of Howrey, as to two of which client creditors Trepel already had a pre-existing business relationship dating over many years.

8. The scope of Trepel's engagement with its initial three creditor clients was for Trepel to represent those three creditor clients for purposes of their seeking an order for relief against Howrey that would result in Debtor's Bankruptcy Case being venued in the Northern District of California and which would otherwise **_not_**, to the greatest extent possible, leave those three creditor clients exposed in any manner whatsoever to any possible future adverse consequences, such as their later suffering a successful objection to the bona fide nature of their claims on account of their having accepted Trepel's offer of Trepel's legal services for purposes of filing the involuntary bankruptcy petition in question.

9. In this connection, Trepel expressly advised its three creditor clients that Trepel maintained $5 million in malpractice insurance and that Trepel was of the professional opinion that its creditor clients were privileged to file an involuntary bankruptcy petition against

1 Howrey without any substantial risk of adverse consequences coming to them as a result of their participation in such a potentially contested matter.

10. Trepel also expressly advised its three creditor clients that no charges were to be made to any of them, with any recompense to Trepel to come instead from the Bankruptcy Court under the Bankruptcy Code, if at all.

11. One integral and necessary part of any engagement respecting the filing of an involuntary bankruptcy petition is that the law firm representing the petitioning creditors must be prepared to demonstrate that the claims held by petitioning creditors are not subject to any bona fide dispute. Filing an involuntary bankruptcy petition based on claims that are subject to any bona fide dispute exposes the petition itself to dismissal and the petitioning creditors and their counsel to an award of attorney's fees and costs as well as an award of actual and punitive damages for making a bad faith filing. In other words, each creditor who either initiates an involuntary bankruptcy petition or subsequently joins as a petitioning creditor in an involuntary bankruptcy petition must engage counsel who are ready, willing and able to defend the validity of the creditor's claim.

12. As an integral and necessary part of its own scope of engagement with both its initial three creditor clients, and then, later on, with respect to its subsequent four creditor clients (the latter of whom joined as petitioning creditors after April 11, 2011) Trepel first satisfied itself that all seven of its creditor clients owned claims which were not subject to bona fide dispute and then, between April 22, 2011 and April 26, 2011, Trepel filed Claims 2-8 in the Debtor's Bankruptcy Case on behalf of all of its seven creditor clients. Each of the additional four creditor clients had hired Trepel based on the same scope of engagement as the first three creditor clients had hired Trepel.

13. Consistent with Trepel's then continuing obligation to defend Claims 2-8 as not being subject to any bona fide dispute, Trepel listed itself as the only party to whom any notices were to be sent with respect to Claims 2-8 and specifically did not list any of its seven creditor clients as themselves being parties entitled to any independent notice. This was done because Trepel had previously agreed as part of its scope of engagement that it would use its best efforts to see to it that no adverse consequences came to its seven creditor clients as a result of their participation in filing and prosecuting an involuntary bankruptcy petition against Howrey.

14. On June 6, 2011, an order for relief was granted in the Debtor's Bankruptcy Case based on a voluntary stipulation to become a bankrupt by Howrey.

15. Following June 6, 2011, Trepel, acting, *inter alia*, through Sullivan, continued to actively represent its seven creditor clients for various purposes, including determining the composition of the Official Committee of Unsecured Creditors, negotiating the use of cash collateral and, finally, settling venue matters in a manner consistent with the main original goal in first filing the involuntary bankruptcy petition in the Northern District of California, i.e., finally obtaining a Northern District of California venue for the Debtor's Bankruptcy Case.

16. On June 25, 2011, for reasons unrelated to this case, McGrane resigned from Trepel. On and after June 26, 2011, Sullivan became the Trepel partner responsible for the Debtor's Bankruptcy Case within Trepel and, on June 26, 2011, Sullivan wrote to one of Trepel's seven creditor clients that he then understood Trepel's continuing role as of that date was "to get you all paid, if possible."

17. On July 7, 2011, Sullivan next caused a Notice etc. (Docket No. 133) to be filed in the Debtor's Bankruptcy Case, which Notice etc. recited that, while the name of Trepel had been modified to delete McGrane's name and, *inter alia*, add Sullivan's name, that Trepel as an entity would still continue to represent, *inter alia*, the Present Clients into the indefinite future

and that "Any and all notices and documents regarding this action should now be sent and addressed as follows: TREPEL GREENFIELD SULLIVAN & DRAA LLP, 150 California Street, Suite 2200, San Francisco, CA 94111."

18. Between July 7, 2011 and May 1, 2014, Sullivan personally received all notices and documents regarding the Debtor's Bankruptcy Case on behalf of the Present Clients on a daily basis through the ECF system. More than a thousand such notices and documents were sent to Sullivan on this basis during that time.

19. On May 1, 2014, without any notice to the Present Clients and while the Present Clients still remain subject to the risk of a claim objection by the Trustee, Sullivan became a partner in Diamond.

20. Moreover, less than week after Sullivan became a partner in Diamond, the Trustee, using Diamond as his counsel, filed a settlement motion seeking to strip all creditors, including the Present Clients, of any individual rights to sue former Howrey partners for alter ego.

21. In response to a disqualification motion brought by, *inter alia*, the Present Clients (which motion was summarily denied by the Bankruptcy Court on May 22, 2014 and which denial is the subject of an application for leave to appeal) Diamond asserted, *inter alia*, that Sullivan's representation of the Present Clients somehow ceased on June 6, 2011, and that this was so despite the requirements of Local Civil Rule 11-5 (incorporated by reference [and made applicable to bankruptcy cases as well as other civil actions] by Bankruptcy Local Rule 1001-2 [Applicable Local Rules]) that required both a notice of withdrawal and an order of withdrawal before Sullivan could ethically withdraw from his then role as counsel of record for the Present Clients in the Debtor's Bankruptcy Case.

22. Sullivan remains counsel of record for the Present Clients in that he has never obtained any order from any court permitting his withdrawal as counsel of record for any of the Present Clients. Sullivan continues to receive notices and documents, including the notices and documents associated with the adverse settlement motion, through the ECF system in his capacity as counsel of record for the Present Clients albeit that his present email address for purposes of his receiving such notices and documents is now csullivan@diamondmccarthy.com.

**First Claim for Relief (Breach of Fiduciary Duty)**

23. Present Clients reallege ¶¶ 1-22.

24. It is and was a breach of fiduciary duty on the part of Diamond to have denied that Diamond presently represents Present Clients (i) given the fact that Sullivan is now exclusively employed as a partner in Diamond and also remains counsel of record for Present Clients in the Debtor's Bankruptcy Case; (ii) further given that Sullivan has never obtained an order of withdrawal under Applicable Local Rules; (iii) further given that the Present Clients are still liable to have their claims objected to by any interested parties in Debtor's Bankruptcy Case, specifically including, but not limited to, the Trustee; and (iv) further given that Sullivan's new client, the Trustee, is not just potentially adverse to the Present Clients *vis-à-vis* his possibly making future claims objections, but he is actually adverse to the Present Clients by way of the pending settlement motion which threatens to strip the Present Clients of their individual alter ego rights against the former Howrey partners.

25. As a direct, natural and proximate result of the breaches of fiduciary duty alleged herein, the Present Clients have incurred and will continue to incur damages in an amount to be proven at trial on account of Diamond's improper conduct in concurrently representing both them and the Trustee over their objection.

Now therefore the Present Clients pray judgment as hereafter set forth.

**Second Claim for Relief (Declaratory Relief)**

26. Present Clients reallege ¶¶ 1-25.

27. An actual controversy has arisen and is in need of judicial resolution as follows:

   A. The Present Clients contend that Diamond (acting through Sullivan who is now exclusively employed as a partner in Diamond) are their present attorneys because (i) the Present Clients have not received the maximum monetary consideration on account of their filed unsecured creditor claims or any monetary consideration on account of same whatsoever and instead their claims remain subject to objection by any interested party, including but not limited to, the Trustee; (ii) Sullivan has never obtained an order of withdrawal from the Bankruptcy Court as required by Applicable Local Rules in order to ethically withdraw from representing what is otherwise a continuing client in Debtor's Bankruptcy Case; and (iii) absent the entry of an order of withdrawal pursuant to Applicable Local Rules in favor of Sullivan there is no factual or legal basis for Diamond to ethically claim that they are not presently in a continuing attorney-client relationship with the Present Clients. See Rule 3-700(A)(1), Cal. Rules of Professional Conduct.

Wherefore the Present Clients pray judgment as follows:

1. For damages in an amount to be proven at trial.
2. For a declaration that the Present Clients are still in a continuing attorney-client relationship with Diamond through Sullivan.
3. For such other and further relief as to the Court may seem just.

| | | |
|---|---|---|
| 1 | Dated: June 13, 2014 | Berliner Cohen<br>McGrane LLP |
| 2 | | |
| 3 | | By: /s/ *William McGrane*<br>William McGrane |
| 4 | | Attorneys for Plaintiffs Advanced Discovery, LLC, Kent Daniels and Assoc., Inc. and L.A. Best Photocopies, Inc. |
| 5 | | |

## JURY DEMAND

Plaintiffs demand a jury in this action.

Dated: June 13, 2014

Berliner Cohen
McGrane LLP

By: /s/ *William McGrane*
    William McGrane

Attorneys for Plaintiffs Advanced Discovery, LLC, Kent Daniels and Assoc., Inc. and L.A. Best Photocopies, Inc.