WILLIAM McGRANE [057761]
McGRANE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
(415) 292-4807
william.mcgrane@mcgranellp.com

FRANK R. UBHAUS [046085]
BERLINER COHEN
10 Almaden Boulevard, 11th Floor
San Jose, CA 95113
(408) 286-5800
frank.ubhaus@berliner.com

Attorneys for Advanced Discovery, LLC,
Howrey Claims, LLC, Kent Daniels and
Assoc., Inc. and L.A. Best Photocopies, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HOWREY LLP,<br><br>Debtor. | Case No. 11-31376<br><br>Chapter 11<br><br>**ADVANCED CREDITORS' SURREBUTTAL OBJECTIONS TO SETTLEMENT**<br><br>Date: June 24, 2014<br>Time: 9:30 a.m.<br>Judge: Hon. Dennis Montali<br>Place: 235 Pine Street<br>22nd Floor<br>San Francisco, CA 94111 |

**Preliminary Statement**

Because Movants have filed various replies that go far beyond the various objections to settlement previously advanced by the Advanced Creditors at Dockets Nos. 1743 (Advanced Creditors' Objection 1 [AO1]) and 1794 (Advanced Creditors' Objection 2 [AO2]); see Docket Nos. 1833 (Klee Represented Parties Reply [KR]), 1834 (Committee Reply [CR][1]), and 1836 (Trustee Reply [TR]), the Advanced Creditors file this short surrebuttal in the hopes of demonstrating both the ultimate unwisdom as well as the real impropriety of the Bankruptcy Court's approving the proposed settlement as same is now presented to it for approval by the Movants.[2]

---

[1] The CR consists mainly of an *ad hominem* attack on both William McGrane and McGrane LLP (McGrane). However, McGrane—unlike, say, Christopher Sullivan and the law firm now know as Greenfield Draa & Harrington LLP —fully complied with Bankruptcy Local Rule 1001-2 by obtaining what is a now final withdrawal order memorializing both of their unopposed resignation from their prior employment by the Committee, done for contemporaneously well-documented reasons of conscience. See Docket No. 802. Also, 11 U.S.C. § 1103(b) only forbids the adverse ***simultaneous*** representation of unsecured creditors and an unsecured creditors committee. See In the Matter of Oliver's Stores, Inc., 79 B.R. 588 (Bankr. D. N.J. 1987). Next, and in the Ninth Circuit at least, an unsecured creditors committee has only a limited attorney-client privilege as against members of its own constituency and that privilege does not extend to any period of time during which any particular unsecured creditors were not adverse to such a committee (and here even the possibility of adversity never arose between the Advanced Creditors and the Committee until well after McGrane had ceased representing the Committee and then, doing academic research, McGrane first determined that limited liability partnerships were likely to be treated as corporations as opposed to partnerships for alter ego purposes in bankruptcy). See In re: Subpoenas Duces Tecum dated March 16, 1992, 978 F.2d 1159 (9th Cir. 1992). Finally, since the state law duty of loyalty results in disqualification based on the automatic imputation of attorney-client privileged information to a counsel found to have breached that duty, in the absence of any possible such attorney-client privileged information in bankruptcy to begin with, there can be no logical basis for imposing any duty of loyalty in favor of the Committee and against McGrane under relevant state law based on McGrane's prior representation of the Committee. As the CR is wholly irrelevant to any issue before this Bankruptcy Court *vis-à-vis* the proposed settlement, it will not be addressed any further in this Advanced Creditors Surrebuttal Objections to Settlement (AO3).

[2] This AO3 adopts all abbreviations previously employed in AO2.

**Argument**

The AO2 previously argued that granting the Klee Represented Parties a general release based on a Derivative Test (which is unquestionably what the proposed settlement would purport to do if approved [see AO2 at 2:6-11]) is something well beyond the Bankruptcy Court's having previously applied the duck test on January 22, 2013, when it first dismissed Howrey Claims, LLC v. Alexander et. al., United States Bankruptcy Court for the Northern District of California, Adversary Proceeding No. 12-03155 DM (Docket No. 1 as filed in Adversary Proceeding No. 12-03155 [the Howrey Alter Ego Case]). See Docket No. 46 as filed in the Howrey Alter Ego Case.[3]

---

[3] Docket Nos. 1 and 46 are Exhibits 1-2 to the Supplemental Request for Judicial Notice filed herewith (SUPP RJN). The recital in Exhibit 2 to SUPP RJN that "this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)" has been rendered moot by the Supreme Court's recent Slip Opinion issued in Executive Benefits Insurance Agency v. Arkison, __ U.S. __, 2014 U.S. LEXIS 3993 (June 9, 2014) (Exhibit 1 to the Supplemental Compendium of Authorities [SUPP Compendium] filed herewith). In Part III the Supreme Court stated: "When a [bankruptcy] court identifies a claim as a *Stern* claim, it has necessarily 'held invalid' the 'application' of §157(b)—i.e., the 'core' label and its attendant procedures—to the litigant's claim. In that circumstance, the statute instructs that 'the remainder of th[e] Act . . . is not affected thereby.' That remainder includes §157(c), which governs non-core proceedings. With the 'core' category no longer available for the *Stern* claim at issue, we look to *§157(c)(1)* to determine whether the claim may be adjudicated as a non-core claim—specifically, whether it is 'not a core proceeding' but is 'otherwise related to a case under title 11.' If the claim satisfies the criteria of §157(c)(1), the bankruptcy court simply treats the claims as non-core: ***The bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for de novo review and entry of judgment.***" *Id*. at *18-19 (***emphasis*** added). What the Bankruptcy Court did in dismissing the Howrey Alter Ego Case was "determine … fraudulent conveyances" under 11 U.S.C. § 157(b)(2)(H), *i.e.*, first it decided that the Howrey Alter Ego Case itself amounted to a disguised fraudulent transfer action and only next did it proceed to dismiss the Howrey Alter Ego Case, as recharacterized (i.e., as "determine[d]"), on the grounds that it necessarily represented an attempt by Howrey Claims to misappropriate certain property of the estate in supposed violation of 11 U.S.C. § 362(a)(3). The Howrey Alter Ego Case—consisting, as it does, of an action entirely between non-debtor parties that in no way involves public rights any more than any other variety of supposed fraudulent transfer claims either could or would (see Exhibit 1 to SUPP RJN)—is thus a legitimate 'Stern claim' if ever there was a legitimate 'Stern claim,' quite regardless of who owns what *vis-à-vis* alter ego remedies under Ahcom Ltd. v. Hendrick Smelding, 623 F.3d 1248 (9th Cir. 2010), which latter precedent the Bankruptcy Court largely chose to ignore. Accordingly, the Bankruptcy Court should only have ***recommended*** dismissal of the Howrey Alter Ego Case to the District Court. It should never have gone so far

What has come back from both the KR and the TR in response to this aspect of the AO2 is a claim that, because Exhibit 2 to the SUPP RJN has not been stayed on appeal, it is, ***in and of itself***, sufficiently final as to support an 11 U.S.C. § 363(m) good faith finding. A finding that would, not coincidentally (and in the absence of yet another stay pending appeal), then have the happy bootstrapping effect—from Movants' standpoint at least—of actually cutting off the pending appeal of Exhibit 2 to the SUPP RJN. See KR 12:22-13:12; see also TR at 5:6-10, 6:25-9:10.

Nowhere discussed by either the KR or the TR, however, are the conflicts with both Executive Benefits and Stern (as discussed, *supra*, at FN. 3) which will necessarily be occasioned by this Bankruptcy Court's now deeming Exhibit 2 to the SUPP RJN as being anything more than a recommendation by the Bankruptcy Court to the District Court (the District Court being the place to which Exhibit 1 to the SUPP RJN was already headed in the normal course by virtue of a previously filed withdrawal motion which motion was improperly mooted by the Bankruptcy Court's *sua sponte* issuance of Exhibit 2 to the SUPP RJN [see Adversary Proceeding No. 12−03155 DM, Docket Nos. 24, 25 and 26]).

Even more to the point, neither the KR nor the TR in any manner address the fact that Exhibit 2 to the SUPP RJN only dismissed a case that alleged duck test type facts and which case certainly did not involve the totality of what are the nearly infinite spectrum of Derivative Test

---

beyond the limits on its authority as first announced in Stern v. Marshall, 564 U. S. ___, 131 S.Ct. 2594 (2011) as to have issued a final judgment of dismissal respecting the Howrey Alter Ego Case based solely on its own, non-Article III status. Let alone now exceed the now even more well-defined limits on its authority post-Executive Benefits by way of its accepting an invitation to compound its first error in dismissing the Howrey Alter Ego Case—rather than merely recommending dismissal of that action—by now signing off on a settlement designed, *inter alia*, to cut off a pending appeal of its wrongful dismissal. Which appeal is otherwise fully briefed and now awaiting decision by the District Court in the persona of District Judge Saundra Brown Armstrong.

type facts that the Proposed Settlement at ¶¶1(b)(v) and /or 3(a)(i)-(iv) purports to 'sell' to the Klee Represented Parties. Thus res judicata/collateral estoppel cannot and should not be stretched so far as to cover all the myriad types of alter ego liability which the proposed settlement purports to first universally treat as estate property and then have the estate supposedly 'sell' to the Klee Represented Parties.[4]

Rather, and no matter how one slices it, the question of whether alter ego remedies are 'property' capable of exclusive ownership by bankruptcy estates (<u>Ahcom</u> clearly suggests they are not any kind of property) is no more finally settled law in the Ninth Circuit than is the issue of whether <u>Jewel</u>-type claims are 'property' capable of ownership by bankruptcy estates is also finally settled law in the Ninth Circuit. Instead both remain truly controversial. And, as will be seen, *infra*, such uncertainty is fatal to approval of the Proposed Settlement as drafted.

The next argument made by the AO2 was its contention, based on the Davis Article, that no bankruptcy court has ever once, in the whole 35-plus years history of litigation under the Bankruptcy Code, made a 11 U.S.C. § 363(m) good faith finding in a litigation settlement context. Neither the KR nor the TR in any way dispute the accuracy of Mr. Davis' careful scholarship regarding this conclusion nor do they dispute the accuracy of the Advanced Creditors' own legal research which has otherwise confirmed Mr. Davis' finding as of the present date.

Instead, the KR merely says that the Bankruptcy Court should now tread where no bankruptcy court has ever tread before simply because that's the only way the Klee Represented Parties are ever going to pay $4 million to settle their potential $30 million clawback liability, *i.e.*,

---

[4] Application of collateral estoppel/res judicata is itself clearly improper when it comes to holding, in a case where no class was ever certified, that the *sua sponte* dismissal evidenced by Exhibit 2 to the SUPP RJN ever bound any of the non-party Advanced Creditors (or anyone else) to holding in the Howrey Claims Alter Ego Case as opposed to binding just the putative class representative in the Howrey Claims Alter Ego Case, i.e., Howrey Claims, LLC.

4
Advanced Creditors' Surrebuttal Objections To Settlement

Case: 11-31376    Doc# 1837    Filed: 06/19/14    Entered: 06/19/14 10:07:59    Page 5 of 10

the Klee Represented Parties say they just won't pay if "[A] case that has been pending for three years … go[es] on for another three." KR at 13:26-28.

There is something very wrong-headed about the Klee Represented Parties' attempt to obtain an unprecedented 11 U.S.C. § 363(m) good faith finding based on threats such as the above. After all, it is beyond dispute that, on its face, <u>Ahcom</u> allowed individual creditors whose alter ego allegations largely consisted of claims of corporate looting to state a claim for relief against shareholders of a closely held corporation. And this despite the interposition of a bankruptcy. <u>See</u> <u>Ahcom</u>, *supra*, 623 F.3d at 1250.

Perhaps, given the disruption occasioned to the bankruptcy system as was previously and quite clearly articulated by this Bankruptcy Court, another court of equal or even superior competent jurisdiction will someday conclude that <u>Ahcom</u> went too far and simply overrule that decision. Or perhaps such a court may decide that <u>Ahcom</u> is subject to some alternative interpretation that prevents corporate looting and/or certain other type facts from being recycled into a separate alter ego case belonging to creditors and not the bankruptcy estate, as was done in the O'Reilly Decision that is now itself on appeal to the Ninth Circuit.

But none of this possible future judicial activity by higher courts in any way justifies an attempt to bootstrap a narrow duck test holding by this non-Article III Bankruptcy Court into a bootstrap justification for making an unprecedented 11 U.S.C. § 363(m) good faith finding respecting a settlement releasing all possible <u>Ahcom</u>-based alter ego rights on a Derivative Test basis. <u>See</u> <u>Nevada Business Credit, LLC v. Kavanagh (In re Golden Empire Air Rescue, Inc.)</u>, 2007 Bankr. LEXIS 4880, *12 (9th Cir. B.A.P. 2007) (citing <u>Hicks , Muse & Co., Inc. v. Brandt (In re Healthco International, Inc.)</u>, 136 F.3d 49 (1st Cir. 1998) and rejecting an attempt to obtain any 11 U.S.C. § 363(m) good faith finding in the context of a settlement of litigation under either Fed. R. Bankr. P., Rule 9019 or Fed. R. Bankr. P., Rule 6004 as being entirely inconsistent with

Advanced Creditors' Surrebuttal Objections To Settlement
Case: 11-31376   Doc# 1837   Filed: 06/19/14   Entered: 06/19/14 10:07:59   Page 6 of 10

the statutory language of 11 U.S.C. § 363(m)).[5]

Despite its own firm conviction—as was first expressed more than five years ago in Greenspan v. Orrick, Harrington & Sutcliffe (In re Brobeck Phleger & Harrison LLP), 408 B.R. 318 (Bankr. N.D. Cal. 2009)—that Big Law bankruptcy estates ought, as a matter of law, to be held to own fraudulent transfer claims as against successor law firms who subsequently took on hourly work from such defunct firms, this Bankruptcy Court has itself recently and entirely been overruled on that issue by the District Court. See Heller Ehrman LLP v. Davis, Wright, Tremaine, LLP, 2014 U.S. Dist. LEXIS 81087 (N.D. Cal. June 11, 2014) (copy of which is attached as Exhibit 2 to SUPP. Compendium).

In hindsight should we now think that this Bankruptcy Court could have/should have sought to avoid the ever-present potential for the District Court's disregarding its recommendations/decisions respecting Jewel-type claims by adopting the stratagem of approving a 'sale' of a portfolio of such Jewel-type claims to the highest bidder, throwing in a 11 U.S.C. § 363(m) good faith finding based solely on its own as-not-yet-reversed conclusions respecting that Jewel doctrine? Would that kind of entirely presumptuous conduct have been in any way consistent with the role envisioned for the bankruptcy courts by Executive Benefits and Stern? Of course not. But that is just what the Bankruptcy Court is effectively being asked to do in the here and now. And it would be just as wrong to do it here in Howrey as it would have been to do it

---

[5] It is quite significant that, in addition to not disputing the lack of any examples of a bankruptcy court ever making a 11 U.S.C. § 363(m) good faith finding in a litigation settlement context, neither the KR nor the TR bothers to discuss, let alone distinguish, either Nevada Business Credit or Hicks. All that is said is 'no 363(m) finding for us, no money for you.' That latter threat is not legal analysis, it is just the use of coercion to obtain something to which the Movants are not legally entitled: a determination something is finally settled law (and thus clearly property of the estate) when that something (the extent of Ahcom alter ego rights in the hands of individual creditors) is very far from being either finally settled law and/or clearly property of the estate.

there in Heller.[6]

Next, the KR seeks to litigate the merits of the Howrey Claims Alter Ego Case in the context of this motion to settle. See KR 3:11-9:4. This is not the time or place for such an exercise, and, in any case, all the briefs (including the brief of the Klee Represented Parties) are before the Bankruptcy Court as part of Group Exhibit 3 to the RJN), so the Advanced Creditors will not here reargue what is already well argued there. Nor is what is briefed in Group Exhibit 3 to the RJN the universe of what the Klee Represented Parties are trying to get immunity from by way of a general release here. That release literally encompasses every star in the night sky when it comes to alter ego and, if granted, would have the effect of eviscerating Ahcom, not merely limiting Ahcom so as to solely exclude corporate looting the way the duck test attempted to do. See AO2 at 1:10-5:2.[7]

Finally, the KR and the TR both claim there is nothing inherently violative of Resorts International, Inc. v. Lowenschuss (In re Fred Lowenschuss), 67 F.3d 1394 (9th Cir. 1995), *cert.*

---

[6] At TR 8:16-9:10 the trustee argues that it is enough that one Article III court has agreed with this Bankruptcy Court, referencing the O'Reilly Decision. This, of course, ignores the fact the District Court itself has no power to overrule the Ninth Circuit, only the Ninth Circuit or the Supreme Court can accomplish that rare feat. The Advanced Creditors point is simply that the Bankruptcy Court cannot and should not rely on its own rulings in making any unprecedented 11 U.S.C. § 363(m) good faith findings but should instead let the issue of what to do about Ahcom work itself out in the Article III courts, which Article III courts, in turn, obviously have their own easily understood hierarchy *inter se*.

[7] At KR5:2-7:4, the Klee Represented Parties first say the Bankruptcy Court should treat a never filed "Proposed Complaint etc." in the Howrey Alter Ego Case as if it represents the universe of what alter ego facts might exist here. As previously noted in FN. 4, *supra*, the Advanced Parties (with the exception of Howrey Claims, LLC) have nothing to do with the Howrey Alter Ego Case other than that they may someday possibly become class members if a class is ever certified and they don't choose to opt out. What alter ego facts these remaining Advanced Creditors other than Howrey Claims, LLC may someday independently wish to allege against the former Howrey partners are presently undetermined and indeterminable. That is no justification for 'selling' those presently unspecified alter ego claims when, as even the Klee Represented Parties admit, "[S]ome actions asserting alter ego liability are not derivative." (KR at 5:5-6 citing Ahcom at 1252).

*denied*, 517 U.S. 1243 (1996) in granting a channeling injunction here. See KR at 9:5-12:10; TR at 9:22-10:11. The fact the Trustee refused to make this Bankruptcy Court's grant of such a channeling injunction a mandatory part of the Proposed Settlement, however, entirely belies the claim that the Movants are not asking the Bankruptcy Court to tread on more and more dangerous ground as they perceive things.

In any case the argument against granting an injunction is quite simple: if all this Proposed Settlement truly involved were the bankruptcy estate's well and truly settled legal rights under 11 U.S.C. §§ 541, 544, and 548 then such an injunction would be unnecessary but not worth fighting about. However, and under Ahcom, alter ego remedies are very arguably not any kind of 'property' at all, let alone any sort of Chapter 5 property of the estate. They are instead, to quote the trustee in In re Emoral, Inc., 740 F.3d 875, 877 n.1 (3rd Cir. Jan. 24, 2014), and given the entirely unsettled state of the law, a kind of "Brooklyn Bridge." The ultimate 'ownership' of which bridge in Brooklyn is, if one is at all intellectually honest where things now stand, something that is entirely up for grabs in the Ninth Circuit as a result of Ahcom.

## Conclusion

Attempts at personalizing this bankruptcy case by way of the trustee's characterization of McGrane as a spoiler and/or by bombastic puffery concerning the Committee's long delayed disqualification motion being directed against McGrane should be treated as the white noise it truly is. Ahcom exists, but it has some rough edges, and those rough edges obviously have to be further dealt with. Given how little they ordinarily receive in most bankruptcy cases, small unsecured creditors have at least as much a stake in how expansively to read Ahcom as anyone else does. Probably more.

What to do with Ahcom, however, is ultimately a matter for the Article III courts. Albeit as such Article III courts are first properly informed by recommendations from this Bankruptcy

8
Advanced Creditors' Surrebuttal Objections To Settlement
Case: 11-31376   Doc# 1837   Filed: 06/19/14   Entered: 06/19/14 10:07:59   Page 9 of 10

1 | Court under <u>Executive Benefits</u>, but ***never*** with those Article III courts first being subjected to

2 | having their own jurisdiction interfered with by this Bankruptcy Court's making an 11 U.S.C. §

3 | 363(m) good faith finding despite (i) the lack of ***any*** relevant precedent and (ii) the lack of ***any***

4 | relevant supporting statutory language.  And this is true no matter how many dollars are being

5 | offered by the Klee Represented Parties in exchange for the Bankruptcy Court's making such an

6 | unjustified good faith finding.

7 | Dated:  June 19, 2014                                  McGRANE LLP
                                                          By: */s/ William McGrane*
8 |                                                              William McGrane

9 |                                                          Attorneys for Advanced Discovery, LLC,
                                                          Howrey Claims, LLC, Kent Daniels and Assoc.,
10 |                                                         Inc. and L.A. Best Photocopies, Inc.