**Entered on Docket**
**October 17, 2014**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**Signed and Filed: October 17, 2014**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 11-31376DM |
| HOWREY LLP, | ) |
| | ) |
| Debtor. | ) Chapter 11 |
| _____ | ) |

MEMORANDUM DECISION REGARDING (1) FINAL FEE APPLICATION OF
McGRANE LLP AND (2) MOTION TO DISQUALIFY McGRANE LLP
AND WILLIAM McGRANE

I.   INTRODUCTION

On July 29, 2014, this court held a hearing on and took under submission the Fourth and Final Application for Compensation ("Final App") by McGrane LLP ("MLLP") and its principal, William McGrane ("Mr. McGrane") for services rendered while acting as co-counsel for the Official Committee of Unsecured Creditors (the "Committee").  Although the Final App contains inconsistent information about the fees and costs sought by MLLP, the Master Summary on page 7 seeks final approval of fees in the amount of $78,680 and costs in the amount of $877.05.[1]  According to Part

_____

[1]By the court's calculations, MLLP has incurred fees and costs in the amount of $79,907.05, which consists of (1) $26,780 in fees allowed by an order entered on May 17, 2012; (2) $33,400 in fees and $62.25 in fees allowed by an order entered on September 26, 2012; and (3) an additional $18,850.00 in fees and

-1-

VII(B) of the Final App, MLLP has received a $63,925.64 payment, and seeks an additional compensation in the amount of $15,631.41.

After MLLP filed a third and final application (which has now been incorporated into the Final App) in October 2012, it commenced its representation of an entity that had acquired claims from certain creditors in an effort to recover estate assets via a class action. As a result, Allan Diamond, the chapter 11 trustee ("Trustee"), opposed the third application and filed a motion against MLLP and Mr. McGrane for enforcement of the automatic stay. The Committee joined Trustee's motion for enforcement of the stay and filed a motion to disqualify Mr. McGrane and MLLP. Following several hearings and further filings, the parties stipulated to an interim payment to MLLP, reserving all objections to any fees requested in MLLP's final application, which was to be filed no later than December 21, 2014. The court approved the stipulation by an order entered on November 26, 2013, and directed that Trustee pay MLLP $63,925.64 within five business days. MLLP filed the underlying Final App on May 30, 2014.

Both Trustee and the Committee opposed the Final App, contending that MLLP should not be compensated at all for its services while it was employed by the Committee. The opponents argued (among other things) that MLLP has acted adversely to its former client, the Committee, in derogation of the California Rules of Professional Responsibility. The court agrees and is therefore disallowing all fees sought by MLLP in its "Litigation" category, including the fees that were previously allowed on an

---

$814.80 sought in the Final App.

-2-

interim basis.  These disallowed fees total $46,325.00.  The court will therefore allow $32,355 in fees ($78,680 - $46,325) and $877.05 in expenses.  MLLP will have to disgorge to Trustee any amounts paid to it in excess of $33,232.05 (the total of the allowed fees and costs).  By the court's calculations, MLLP will have to disgorge $30,693.59 to Trustee.

Even if MLLP had not acted adversely to the interests of its former client, the court would reduce the fees significantly because (1) the work performed by MLLP exceeded the scope of its employment as set forth in its employment application and subsequent response to Trustee's opposition, (2) certain work performed either provided no benefit to the estate or was unnecessarily duplicative of work performed by other estate professionals, and (3) MLLP's first interim application for compensation reflects that it was billing the estate for work it performed on behalf of its purportedly former client (Matura Farrington Staffing Services, Inc. ("Matura")) and for resolving disputes with Mr. McGrane's former law firm.  And as the court mentioned at the hearing on MLLP's first interim application, the hourly rate ($800) charged by Mr. McGrane seemed high, particularly when he was billing in increments of .25 hours.[2]

---

[2]The blended hourly rate billed by MLLP during its representation of the Committee was $562.95.  In contrast, the August 2014 fee application the Committee's primary counsel reflected a blended hourly rate of $402.69 (fees of $222,322 divided by 480.5 hours billed in that time period).  The average billing rate of the Trustee's firm is even lower: $315.35.  The individual attorneys performing most of the work at the Trustee's firm bill less than $500 an hour.  Mr. Loden bills $465/hour; Mr. Rudd bills $440/hour; Mr. Ryan bills $350/hour; Mr. Sheppard and Ms. Welch bill $260/hour; Mr. Fishel bills $225/hour; and Ms. Burrow bills $190.00/hour.

Case: 11-31376   Doc# 2021   Filed: 10/17/14   Entered: 10/17/14 16:00:59   Page 3 of 23

While Mr. McGrane (but not his associate, Mr. Walreith) adjusted his billing increments to .1 hour (as required by this court's compensation guidelines) in subsequent applications, the $800 rate was excessive for some of the tasks performed (preparation of fee applications, etc.).  In light of the disallowance and disgorgement due to ethical conflicts (discussed below), the court will not make further downward adjustments based on these additional concerns.

In light of representations of Mr. McGrane and MLLP through counsel that they "have no intention of ever again appearing in this Howrey bankruptcy case," the court will deny as moot the motion to disqualify (subject to conditions described in Part III(B) below).

II. RELEVANT FACTS[3]

On April 11, 2011, creditors Give Something Back Inc., Jan Brown & Associates, and Matura commenced a chapter 7 involuntary case against Howrey LLP ("Howrey" or "Debtor").  Mr. McGrane, on behalf of his former firm, Trepel McGrane Greenfield LLP ("Trepel"), was the attorney of record for the petitioners. Thereafter, Mr. McGrane filed notices that Western Messenger Service, Inc., L.A. Best Photocopies, Inc., Kent Daniels and Associates, Inc., and Advanced Discovery LLC were joining in the involuntary chapter 7 petition.

On June 6, 2011, Debtor conditionally consented to entry of

_____

[3]The following discussion constitutes the court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052(a).

-4-

an order for relief and moved for conversion of the case to chapter 11. On the same day, the court entered an order for relief and converted the case to chapter 11, and Debtor acted as a debtor-in-possession until September 15, 2011, when the court granted the motion of Citibank N.A. to appoint a chapter 11 trustee.

The United States Trustee appointed the Committee on June 14, 2011,[4] and Matura was appointed as a member. Mr. McGrane and Trepel represented Matura in its capacity as a member of the Committee until August 3, 2011, when MLLP replaced Trepel. He and MLLP continued to represent Matura until December 16, 2011.

On October 20, 2011, the Court entered an order authorizing the employment of Bradford F. Englander and Whiteford Taylor Preston LLP (collectively, "WTP") as counsel for the Committee. On December 19, three days after Matura filed a substitution of counsel terminating MLLP's representation, the Committee filed an application to employ MLLP as co-counsel to WTP. In his declaration in support of the employment application, Mr. McGrane stated that he would "represent only the Committee, and not any of its respective individual members, in connection with the case." He also acknowledged in paragraph 13 that all of his court-approved compensation expenses would "be paid by the Bankruptcy Estate."

The Trustee filed a response to the employment application,

---

[4]The court authorized the employment of Felderstein Fitzgerald Willoughby & Pascuzzi LLP as counsel for the Committee on July 15, 2011. On October 3, 2011, Felderstein moved to withdraw as counsel for the Committee and indicated that if the court desired further information about the withdrawal, it would provide it. The court did not request further information.

-5-

in which he contended that the Committee failed to justify employment of additional counsel and that the scope of work to be performed by MLLP was "virtually identical" to the work approved in the WTP application. Trustee was concerned that employment of MLLP would "result in additional administrative costs from two law firms with overlapping and duplicative responsibilities representing the Committee." Trustee therefore requested that the Committee "(i) demonstrate the cause and necessity to support its unusual request to employ additional counsel; and (ii) [] clarify the specific roles and responsibilities for each of its counsel to ensure the cost effective representation of the Committee."

As reflected in his time entries appended to his first interim fee application, Mr. McGrane drafted a reply to the Trustee's response. That reply, filed by Mr. Englander, stated that the engagement of MLLP was appropriate to address connections that WTP had with certain parties in the case, such as Wiley Rein (Debtor's chapter 11 counsel) and Protiviti (another professional retained by the chapter 11 estate). "While these connections do not rise to the level of formal conflicts, having McGrane take the lead on behalf of the Committee with respect to ongoing fee disputes in connection with Protiviti and Wiley Rein would be prudent."[5] In addition, the reply noted that "*both [MLLP] and [WTP] have agreed to avoid unnecessary duplication of services, with the much larger [WTP] firm to take the lead in most matters,*

---

[5] The court has examined the narratives of the fee applications filed by MLLP covering the time period of December 15, 2011, through September 26, 2012. These fee applications do not describe any work performed by MLLP with respect to Protiviti or Wiley Rein.

-6-

and *with the [MLLP] firm to take the lead in matters only as, when and if it is specifically asked to do so by the Committee or [WTP]."* (Emphasis added). The reply acknowledges that "any violation of these undertakings by way of any sort of improper billing practices by either firm can, of course, [and] should be objected to by any interested party in any case." In light of this reply, Trustee did not further oppose the employment application and the court entered an order authorizing the employment of MLLP as co-counsel to the Committee on January 6, 2012.

MLLP filed its first interim fee application on April 17, 2012, seeking fees in the amount of $27,815.00 for, *inter alia,* investigating potential chapter 5 and section 723 causes of action and for consulting with Trustee about these causes of action. Moreover, it included entries in late March 2012 for "draft[ing] demand letter from K. Farrington to C. Sullivan" and for "E-mail correspondence with K. Farrington, W. Russell, C. Sullivan and B. Greenfield re transfer of Trepel Greenfield files, review[ing] demand letter from K. Farrington to C. Sullivan." Ms. Farrington is the principal of Matura, who was no longer represented by MLLP. At best, MLLP was billing the estate for a specific task performed on behalf of a former client; at worst, it was concurrently representing the interests of Ms. Farrington and Matura as well as those of the Committee without making the appropriate Rule 2014 disclosures.

On July 31, 2012, MLLP filed its second interim fee application, seeking fees and costs in the amount of $33,462.25. The second fee application indicates that Mr. McGrane, while

-7-

employed by the Committee, explored and researched theories of liability against Debtor's former partners under both California law and section 723 of the Bankruptcy Code, drafted a complaint asserting that the former partners of the Debtor have personal liability for the Debtor's debts, and evaluated claims under chapter 5 of the Bankruptcy Code. According to Trustee's objection to MLLP's final fee application, Trustee's counsel independently researched these claims (expending about 16 hours of time), found them insupportable and informed Mr. McGrane of their findings in May 2012. Nevertheless, Mr. McGrane continued to incur fees (more than $25,000) to research and develop these claims. In that vein, at the hearing on the second interim fee application on August 22, 2012, Mr. McGrane informed the court that the Committee was investigating whether the Debtor's possible failure to properly register with the California State Bar stripped the Debtor's former partners of their protection from personal liability for the firm's debts.

On September 20, 2012, MLLP sought permission to withdraw from its representation of the Committee. The Committee approved the request and five days later, the court signed an order authorizing the substitution of Mr. Englander and WTP as sole counsel for the Committee.

On October 19, 2012, MLLP filed a third and final fee application (subsequently replaced by the Final App) seeking final approval of $78,680 in fees and $877.05 in costs. Eleven days later, Howrey Claims LLC ("Howrey Claims") was formed, and on October 31, 2012, Howrey Claims purchased a claim from Jan Brown & Associates, a petitioning creditor formerly represented by Mr.

Case: 11-31376   Doc# 2021   Filed: 10/17/14   Entered: 10/17/14 16:00:59   Page 8 of 23

McGrane and Trepel, in the amount of $994.25.

Approximately one month after withdrawing from Committee representation, MLLP filed a complaint in this court (A.P. No. 12-3155) on behalf of Howrey Claims, asserting a class action alter ego suit against former Howrey partners (the "Alter Ego AP"). On November 9, 2012, Mr. McGrane filed a supplemental Rule 2014 declaration describing the circumstances surrounding his engagement on behalf of Howrey Claims and attaching excerpts of e-mails in which he unsuccessfully sought the Committee's acknowledgment that he could represent Howrey Claims in the Alter Ego AP.

On November 15, 2012, Trustee filed a motion for enforcement of the automatic stay seeking the entry of an order (1) declaring that the Alter Ego AP violated the automatic stay, and (2) declaring that Howrey Claims and its counsel would be held in contempt of court if they did not dismiss the Alter Ego AP and refrain from taking any further action to pursue recoveries from the former partners of the Debtor as the Debtor's alleged alter egos.

On December 7, 2012, the Committee filed a motion to file under seal a motion to disqualify Mr. McGrane and MLLP. Mr. McGrane filed an opposition to the motion to seal and a supporting declaration in which he publicly disclosed confidential information concerning the Committee's deliberations and strategy, including an internal memorandum and a term sheet regarding a proposed chapter 11 plan. (See Docket No. 910). The court granted the motion to seal the motion to disqualify, which the Committee filed on December 16, 2012.

-9-

Following a hearing on January 11, 2013, the court entered (on January 18, 2013) an order granting the Trustee's motion for enforcement of the automatic stay, holding that the claims asserted in the Alter Ego AP belonged to the Trustee and the estate. The court also sua sponte dismissed the Alter Ego AP without leave to amend. Howrey Claims filed two notices of appeal: one of the order enforcing the automatic stay and another of the order dismissing the Alter Ego AP.

On March 13, 2013, Howrey Claims, represented by other counsel, filed a motion to modify the automatic stay to permit it to file an alter ego class action against Debtor's former partners in the United States District Court for the Northern District of California (the "Alter Ego Motion"). On March 14, 2013, Mr. McGrane joined the Alter Ego Motion as an interested party. Trustee (later joined by the Committee and Citibank, N.A., the primary secured creditor) opposed the Alter Ego Motion. On March 25, 2013, Mr. McGrane, acting individually as an interested party, filed a reply brief in support of the Alter Ego Motion, which was joined by the purported movant (Howrey Claims). The Alter Ego Motion was amended on March 26, 2013, and again opposed by Trustee. On April 1, 2013, Mr. McGrane (again acting as an interested party) opposed the Committee's joinder to the Trustee's opposition.

At a hearing on April 5, 2013, the court denied the amended Alter Ego Motion and entered an order accordingly on April 7. Howrey Claims, this time represented by MLLP, filed a third notice of appeal. The district court consolidated all three appeals under Case No. C 13-0449 SBA, and on August 8, 2014, issued an

-10-

order affirming all three orders.

On May 5, 2014, the Trustee and the Committee filed a joint motion to approve a settlement with 61 former Howrey partners represented by Klee, Tuchin, Bogdanoff & Stern LLP (the "KTBS Settlement"). On May 10, 2014, acting on behalf of Advanced Discovery, LLC, Give Something Back, Inc., Howrey Claims, Kent Daniels and Assoc., Inc., L.A. Best Photocopies, Inc., Matura, and Western Messenger, Inc. (collectively, the "Advanced Creditors"), MLLP objected to the KTBS Settlement, contending (among other things) that alter ego claims are not property of the estate but rather constitute "a non-exclusive remedy available to anyone owning, *inter alia*, a substantive claim against a corporation, specifically including, but not limited to the Advanced Creditors."

In response to the Advanced Creditors' opposition, Mr. Englander filed a reply that highlighted the Committee's role in procuring the settlement and demonstrating how Mr. McGrane was acting contrary to the interests of his former clients in a matter directly related to his prior representation (i.e., maximizing recovery for the unsecured creditor body). As noted by Mr. Englander:

> [The] Committee actively participated throughout the nearly two-year negotiation with the KTBS Howrey Partners, and has analyzed the claims, defenses, and other material aspects of the Debtor's claims against them. The chair of the Committee, along with Committee counsel, attended the two-day mediation held between the Trustee, the Committee, and the KTBS Howrey Partners. That mediation was conducted with the assistance of retired bankruptcy judge Hon. Arthur J. Gonzalez. *The Committee not only supports [the KTBS Settlement]; it is a party to the settlement.* The Committee believes that the settlement is in the best interest of unsecured creditors.

-11-

Emphasis added. Notwithstanding the Committee's endorsement of and participation in the settlement, its former counsel (MLLP) opposed the settlement to the extent that it compromised alter ego claims asserted by Advanced Creditors. The Committee observed that these "new" alter ego claims were similar to Mr. McGrane's admitted "ill-conceived" theories that he researched and advocated while acting as Committee counsel:

> Mr. McGrane's "creativity" does not override the Trustee's business judgment, or legitimize Mr. McGrane's continued interference in the administration of the Howrey estate. *This is especially true where the Committee, which is the official representative of the unsecured creditors, and Mr. McGrane's former client, has determined that the settlement is in the best interests of the unsecured creditors.* Both the Trustee and the Committee have evaluated the various theories that Mr. McGrane from time-to-time has raised. The Trustee and the Committee also have considered the merits of the more conventional causes of action that could be asserted against the former Howrey partners represented by KTBS. Mr. McGrane and his token group of objecting creditors may not supplant the business judgment of the Trustee and the Committee with their own.

Emphasis added.

After extensive briefing and multiple hearings, the court overruled the objections of the Advanced Creditors to the KTBS Settlement, approved the settlement (except as to certain injunctive relief described in paragraph 1(c) of the settlement agreements), and denied Mr. McGrane's oral motion for a stay pending appeal. On June 27, 2014, the court entered an order approving the KTBS Settlement, and the Advanced Creditors (represented by MLLP and co-counsel) filed a notice of appeal on June 30, 2014 (Civil Case No. 14-03062 JD).

The Advanced Creditors moved the district court for a stay

-12-

pending appeal, which was denied by an order entered on July 14, 2014. On page 2 of the motion for stay pending appeal, Advanced Creditors identified the harm inflicted by former partners for which the Advanced Creditors were seeking redress: a taking by former partners of "tens of millions of dollars in draws from their now-bankrupt law firm despite their having actual knowledge that their taking such large draws would substantially interfere with Howrey LLP's ability to ever ultimately pay its trade creditors." In the district court's July 14 order denying the stay pending appeal, it held that Trustee's claims against former partners, "which he is pursuing for the benefit of all of Howrey's LLP's creditors, substantially overlap with appellants' alter ego claim." Mr. McGrane filed a stipulation to dismiss this appeal on August 11, 2014.

In the meantime, MLLP filed on behalf of the Advanced Creditors a motion to disqualify Diamond McCarthy LLP from representing the Trustee and to remove the Trustee.[6] Mr. McGrane contended that following his departure, the court's docket reflected that his former law firm (Trepel) remained as counsel of record to three of the petitioning creditors. He therefore argued that Diamond McCarthy should be disqualified because several of his former partners and associates at Trepel joined Diamond McCarthy in May 2014. Following a hearing, this court denied the

---

[6] The court mentions the action against Diamond McCarthy, while not specifically adverse to the interests of the Committee or the estate, and not a factor in reaching the harsh result against MLLP and Mr. McGrane, to illustrate just another of the inexplicable and unnecessary actions that have added confusion and expensive distractions to the administration of this complicated bankruptcy estate.

-13-

motion by order dated May 22, 2014; MLLP filed a motion for leave to appeal, which was docketed by the district court as a notice of appeal on May 23, 2014 (Civil Case No. 14-02724 JD). Thereafter, on June 13, 2014, MLLP commenced an adversary proceeding on behalf of the Advanced Creditors against Diamond McCarthy for breach of fiduciary duty and declaratory relief. He later requested the district court to withdraw the reference (Civil Case No. 14-02881-VC). On July 21, 2014, the district court entered an order treating all three matters (Civil Case Nos. 14-3062, 14-2724, and 14-2881) as related. Ultimately, following several unfavorable rulings, MLLP stipulated to dismissal of the actions.

III. DISCUSSION

    A.  <u>Violations of the Rules of Professional Conduct</u>

Attorneys appearing before this court are bound by B.L.R. 1001-2(a), which incorporates Civil L.R. 11-4(a). Civil L.R. 11-4(a)(1) in turn requires all attorneys to be familiar with and comply with the standards of professional conduct required of members of the State Bar of California. California Rule of Professional Conduct ("CRPC") 3-310 governs the representation of conflicting interests. CRPC 3-310(E) prevents an attorney or the attorney's firm from representing a client with interests that are adverse to a former client from whom the attorney has obtained confidential information unless the attorney obtains the written consent of the former client.[7]  <u>Allen v. Academic Games Leagues of</u>

---

[7] Rule 3-303(E) states:

    A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client,

-14-

<u>America, Inc.</u>, 831 F. Supp. 785, 787 (C.D. Cal. 1993). The California Supreme Court recently expounded on the ramifications of CRPC 3-310(E): "[A]n attorney is forbidden to do either of two things after severing (the) relationship with a former client. (The attorney) may not do anything which will injuriously affect (the] former client in any matter in which (the attorney) formerly represented (the client) nor may (the attorney) at any time use against (the) former client knowledge or information acquired by virtue of the previous relationship." <u>Oasis W. Realty, LLC v. Goldman</u>, 51 Cal.4th 811, 821, 250 P.3d 1115, 1121 (2011) (multiple citations omitted).[8]

Actual use of confidential information is not required to find that an attorney has violated CRPC 3-310(E); simple access to that information is sufficient. Because courts should not inquire into the specifics of communications between a client and its former counsel to show that the attorney did or did not obtain confidential information during the course of the former representation, the court must instead adopt a substitute test to determine whether an attorney has received confidential

_____

the member has obtained confidential information material to the employment.

Cal. R. Prof. Conduct 3-310(E).

[8]In <u>Oasis</u>, attorney Goldman represented Oasis in its effort to obtain approval of a redevelopment project. About two years after Goldman terminated the representation, he became involved in a political campaign to thwart the redevelopment project. Oasis sued Goldman for breach of fiduciary duty. Goldman filed an anti-SLAPP motion to strike the complaint. "The trial court held that the anti-SLAPP statute did not apply, in that the gravamen of the causes of action was not Goldman's petitioning activity but his breach of the duties of loyalty and confidentiality." <u>Id.</u> at 815.

-15-

information material to employment adverse to a client:

> The substitute approach adopted by the courts is the "substantial relationship" test. This test governs disqualification motions under Rule 3-310(E). (Multiple citations omitted). *Under the substantial relationship test, the subject matter of an attorney's current representation is considered substantially related to the subject matter of the attorney's prior representation if any information that was material to the evaluation, prosecution, settlement, or accomplishment of the prior representation is also material to the evaluation, prosecution, settlement, or accomplishment of the current representation.* (Citation omitted).

In re Muscle Improvement, Inc, 437 B.R. 389, 395 (Bankr. C.D. Cal. 2010) (emphasis added). If the two matters are substantially related, access to and possession of confidential information is presumed, and "and disqualification of the attorney's representation of the second client is mandatory." Id. Consequently, there is no need to establish that the attorney actually obtained confidential information to disqualify that attorney under the rules of professional conduct. Allen, 831 F. Supp. at 787. As noted by the California Supreme Court in its discussion of CRPC 3-310(E):

> Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is presumed and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm.

Flatt v. Superior Court of Sonoma County, 9 Cal.4th 275, 885 P.2d 950, 36 Cal.Rptr.2d 537 (1994), citing Rosenfeld Construction Co. v. Superior Court, 235 Cal.App.3d 566, 575, 286 Cal.Rptr. 609 (1991) ("If a substantial relationship is established, the

-16-

discussion should ordinarily end.  The rights and interest of the former client will prevail.").

In applying the "substantially related" test, the court must examine whether "the factual contexts of the two representations are similar or related."  Employers Ins. of Wausau v. Albert D. Seeno Const. Co., 692 F. Supp. 1150, 1162 (N.D. Cal. 1988), quoting Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980). In the present case, the factual contexts of the two representations are without doubt similar and related.  As counsel for the Committee, Mr. McGrane investigated potential claims against the former partners of Howrey; as counsel for Howrey Claims, he could utilize the knowledge he acquired as Committee counsel (such as specific factual details and legal theories) to pursue claims against the former partners and others, even though prosecution of such lawsuits on behalf of a limited group of class members jeopardized the ability of the Committee and the Trustee to pursue similar claims arising from the same nucleus of facts. He could (and did) use information obtained as counsel to the Committee to fight a significant settlement reached by the Committee and Trustee, thereby impairing the ability of the Committee and the Trustee to pursue consensual resolution of lawsuits or potential lawsuits.  And if he succeeded in prosecuting those lawsuits, he would be depleting assets and usurping claims that belong to the estate.[9]  As this court held,

---

[9] In pursuing the class action claims, MLLP appeared to actually disclose confidential information and research developed by the Committee and Trustee (with whom the Committee had a joint privilege agreement) during his tenure as co-counsel for the Committee.  MLLP's first fee application includes time entries regarding investigations into potential chapter 5 and section 723

-17-

discussion should ordinarily end.  The rights and interest of the former client will prevail.").

In applying the "substantially related" test, the court must examine whether "the factual contexts of the two representations are similar or related."  Employers Ins. of Wausau v. Albert D. Seeno Const. Co., 692 F. Supp. 1150, 1162 (N.D. Cal. 1988), quoting Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980). In the present case, the factual contexts of the two representations are without doubt similar and related.  As counsel for the Committee, Mr. McGrane investigated potential claims against the former partners of Howrey; as counsel for Howrey Claims, he could utilize the knowledge he acquired as Committee counsel (such as specific factual details and legal theories) to pursue claims against the former partners and others, even though prosecution of such lawsuits on behalf of a limited group of class members jeopardized the ability of the Committee and the Trustee to pursue similar claims arising from the same nucleus of facts. He could (and did) use information obtained as counsel to the Committee to fight a significant settlement reached by the Committee and Trustee, thereby impairing the ability of the Committee and the Trustee to pursue consensual resolution of lawsuits or potential lawsuits.  And if he succeeded in prosecuting those lawsuits, he would be depleting assets and usurping claims that belong to the estate.[9]  As this court held,

---

[9] In pursuing the class action claims, MLLP appeared to actually disclose confidential information and research developed by the Committee and Trustee (with whom the Committee had a joint privilege agreement) during his tenure as co-counsel for the Committee.  MLLP's first fee application includes time entries regarding investigations into potential chapter 5 and section 723

-17-

and the district court affirmed, Mr. McGrane violated the automatic stay when he filed the Alter Ego AP. That, in and of itself, was detrimental and adverse to the interests of his former client.

More importantly, Mr. McGrane took a position directly adverse to his former client when he opposed the KTBS Settlement negotiated and supported by the Committee. Again, the substance of the settlement pertained to matters substantially similar to those he investigated while counsel for the Committee, and he is thus presumed to have acquired confidential information in the course of his former representation. MLLP thus violated its ethical duties to its former client, the Committee, when it represented the conflicting interests of the Advanced Creditors on a matter which was substantially related to its prior representation of the Committee.

Mr. McGrane argued that his fiduciary duties to the Committee ended when he withdrew from representation of it. In other words, he contends that post-withdrawal conduct is not pertinent to a

claims. Similarly, the time entries appended to MLLP's second fee application reflect that Mr. McGrane was developing similar theories that could be asserted directly against the former partners of Howrey. After MLLP withdrew from representation of the Committee, it filed the Alter Ego AP on November 9, 2012. In a memorandum to potential class members dated November 17, 2012, Mr. McGrane discussed several theories of recovery that been investigated (and even rejected, as with the potential section 723 claims) during his tenure as counsel to the Committee. (The letter is appended as Exhibit "E" to Mr. Englander's declaration in support of the Committee's opposition to MLLP's fee application, which was filed on July 8, 2014.) The closing paragraph of that letter highlights the similarity of the claims and attempts to justify a separate pursuit of those same claims, stating that even if Trustee recovered 100% of all "multiple and very large fraudulent transfers," the "creditors will still never be made whole" given the costs of estate administration.

-18-

determination of his entitlement to compensation for services

rendered pre-withdrawal.  He is mistaken.  Withdrawal from

employment as a professional of the estate does not absolve him

from honoring his duty of loyalty to the former client, the

Committee:

> An attorney is forbidden to do either of two things
> after severing his relationship with a former client.
> *He may not do anything which will injuriously affect his
> former client in any manner in which he formerly
> represented him,* nor may he at any time use against his
> former client knowledge or information acquired by
> virtue of the previous relationship." . . .
>
> The relationship between attorney and client is a
> fiduciary relation of the very highest character, and
> binds the attorney to most conscientious fidelity --
> uberrima fides.  Among other things, the fiduciary
> relationship requires that the attorney respect his or
> her clients' confidences.  It also means that the
> attorney has a duty of loyalty to his or her clients.

In re Jaeger, 213 B.R. 578, 587 (Bankr. C.D. Cal. 1997) (emphasis

added), quoting Deukmejian v. Brown, 29 Cal.3d 150, 172 Cal.Rptr.

478, 480, 624 P.2d 1206 (1981) and Zador Corp. v. Kwan, 31

Cal.App.4th 1285, 37 Cal.Rptr.2d 754, 758 (1995).

"It is the general rule in conflict of interest cases that

where an attorney violates his or her ethical duties to the

client, the attorney is not entitled to a fee for his or her

services."  Cal Pak Delivery, Inc. v. United Parcel Service, Inc.,

52 Cal.App.4th 1, 60 Cal.Rptr.2d 207, 215 (1997).

Even though Mr. McGrane's conduct that violates CRPC 3-310(E)

necessarily occurred after he withdrew from representation, the

court may deny or reduce fees incurred prior to withdrawal.  In

addition, a bankruptcy court may deny compensation to an estate

professional "on account of such attorney's wrongdoing,

-19-

negligence, or serious breaches of fiduciary obligations." _In re_
_Wilde Horse_ _Enterprises, Inc._, 136 B.R. 830, 844 (Bankr. C.D. Cal.
1991). Here, MLLP owes ongoing ethical responsibilities to the
Committee and its constituency. It violated those ethical duties
when it attempted to usurp claims belonging to the estate,
disclosed confidential Committee negotiations and strategy in
public filings, and vigorously opposed a settlement reached and
supported by the Committee.

A chapter 11 liquidation is an ongoing judicially-supervised
process. Court-appointed professionals have "a high fiduciary
duty to the estate" and "must abide by the highest professional
standards." _Wilde Horse_, 136 B.R. at 840. Permitting former
counsel for the Committee to espouse a position that jeopardizes
the interests of the Committee for the benefit of another client
compromises the judicial process. "Improper conduct on the part of
officers or attorneys has frequently been penalized by withholding
compensation or reimbursement or both." _Id._, _quoting_ _Matter of_
_Ranchero Motor Inn, Inc._, 527 F.2d 1044 (9th Cir. 1975).

> [T]he Court has the flexibility to tailor the relief
> necessary to remedy an attorney's misconduct.
> [Citations omitted]. _Violations of the Code or_
> _professional ethics or breaches of fiduciary duties can_
> _give rise to the reduction, denial, or other forfeiture_
> _of compensation or other sanctions._ [Citations
> omitted]. Ethical violations are relevant to fee
> determinations for lawyers representing a Chapter 11
> debtor in possession. [Citation omitted].

_Wilde Horse_, 136 B.R. at 844 (emphasis added). "Unethical conduct
by a fiduciary in a bankruptcy case damages the public's
confidence in judicially supervised reorganizations, whether or
not there is actual damage to the estate. Denial of compensation
is an appropriate deterrent to such conduct." _In re Rivers_, 167

-20-

B.R. 288, 302 (Bankr. N.D. Ga. 1994).

In light of the foregoing, with no reluctance, but with great regret that such a result is necessary because of the conduct of such a seasoned and experienced professional as Mr. McGrane is, the court will allow MLLP on a final basis only $32,355 of its requested fees and $877.05 in costs. That amount is the court's best guess at the value of MLLP's work unrelated to the matters that it handled for the Committee that were substantially related to the matters on which it later acted adverse to the Committee and the estate on behalf of Advance Creditors. To the extent that MLLP has previously received payment in excess of these allowed fees and costs sums, the excess payment, $30,693.59 ($63,925.64 - $33,232.05), shall be disgorged within 30 days of entry of an order consistent with this memorandum decision.

B.   <u>Disqualification of MLLP and Mr. McGrane</u>

Since the hearing on the Committee's renewed motion to disqualify MLLP and Mr. McGrane on July 30, 2014, Mr. McGrane has withdrawn from all adversary proceedings, contested matters and related appeals. <u>See</u> correspondence at Docket Nos. 1985, 1986, and 1988, a letter dated September 16 from Mr. McGrane's counsel representing that Mr. McGrane and MLLP "have no intention of ever again appearing in this Howrey bankruptcy case." As long as Mr. McGrane and MLLP abide by this representation to the court, and do not appear in the present Howrey bankruptcy case, any adversary proceeding or contested matter in the case, or in any action in another forum against Howrey or its former members, the motion to disqualify will be considered moot. The motion to disqualify may nevertheless be revived if MLLP or Mr. McGrane again violate any

-21-

1 ethical duty to their former client, the Committee.

2 IV.   <u>DISPOSITION</u>

3     MLLP has violated relevant rules governing professional

4 conduct and has breached the fiduciary duty to its former client,

5 the Committee.   This court will therefore deny fees in the amount

6 of $46,325, will finally allow fees in the amount of $32,355 and

7 costs in the amount of $877.05, and will require MLLP to disgorge

8 $30,693.59.   The court is concurrently issuing an order consistent

9 with this memorandum decision.

10

11             **END OF MEMORANDUM DECISION**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-

COURT SERVICE LIST

Howard M. Garfield, Esq.
Mecklet Bulger Tilson Marick & Pearson LLP
575 Market St., Ste. 2200
San Francisco, CA 94105