Bradford F. Englander (CA Bar # 122108)
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
(703) 280-9081
(703) 280-3370 (facsimile)
E-mail: benglander@wtplaw.com
Attorneys for the Official Committee of
Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

In re

HOWREY LLP,

       Debtor.

Case No. 11-31376 DM
Chapter 11
Hon. Dennis Montali

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENTS WITH BUNSOW, DE MORY, SMITH & ALLISON, LLP, HENRY BUNSOW, DENISE DE MORY AND BRIAN SMITH**

TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of the estate of Howrey LLP ("Howrey" or "Debtor"), hereby submits this motion ("Motion") pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for entry of an order approving a settlement agreement between the Committee and Bunsow, De Mory, Smith & Allison, LLP (the "Bunsow Firm") and former Howrey partners Henry Bunsow ("Bunsow"), Denise De Mory ("De Mory") and Brian Smith ("Smith") (collectively, the "Former Howrey Partners" and each a "Former Howrey Partner," and collectively with the Bunsow Firm, the "Settlement Counterparties"). This settlement (if approved) will resolve any and all claims between the Committee (on behalf

1

of the Howrey Esate), the Bunsow Firm and the Former Howrey Partners without the need for additional litigation costs, and provides cash payments of $275,000 to the Estate, as well as the waiver of asserted claims in the aggregate amount of approximately $3,213,000, over $500,000 of which is asserted as priority claims. The settlement is well within the Committee's reasonable business judgment. In support of this Motion, the Committee represents as follows:

## JURISDICTION

1. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b). This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2).

## BACKGROUND

2. On April 11, 2011, certain creditors of Howrey filed a chapter 7 involuntary petition against the Debtor. On June 6, 2011, the Court entered an order converting the above captioned case to a case under chapter 11 of the Bankruptcy Code.

3. On September 22, 2011, the Court entered an order granting a motion to appoint a chapter 11 trustee. On October 7, 2011, the U.S. Trustee for the Northern District of California appointed Allan B. Diamond (the "Trustee") as chapter 11 trustee for the estate of Howrey. On October 12, 2011, the Court entered an order approving the appointment of the Trustee.

4. On May 30, 2013, the Bankruptcy Court entered its *Second Order Granting Joint Motion of the Official Committee of Unsecured Creditors and Allan B. Diamond, Chapter 11 Trustee Pursuant to 11 U.S.C. §§ 105(a), 1103(c), and 1109(b) for Entry of an Order Granting Leave, Standing, and Authority to Committee to Prosecute and Settle Causes of Action on Behalf of the Debtor's Estate,* which, authorized the Committee to commence, prosecute and settle claims of the Estate against, and to enter into tolling agreements with, certain former Howrey partners and the law firms which they joined, including the Settlement Counterparties.

5.      The Committee and its counsel have analyzed potential claims to recover valuable assets of Howrey's Estate, including claims against certain former Howrey partners and their successor law firms relating to "unfinished business" of Howrey and also known as *Jewel v. Boxer* claims. In various adversary complaints filed in this Court, the Trustee and Committee have alleged that Howrey's former partners attempted to shield themselves and their successor law firms from unfinished business claims by executing a so-called Jewel Waiver on the eve of Howrey's dissolution. In alleging that the Jewel Waiver provided no benefit to Howrey (or its creditors), the Trustee and Committee have sought to avoid the Jewel Waiver as a fraudulent transfer under applicable bankruptcy and state laws and to require the successor law firms to return the profits received from Howrey's unfinished business.

6.      On June 3, 2013, the Committee filed a Complaint (the "Complaint") against the Bunsow Firm and the Former Howrey Partners initiating Adversary Proceeding No. 13-03158-DM (the "Adversary Proceeding"). On August 16, 2013, the Settlement Counterparties filed an Answer to the Complaint. The Complaint asserts a number of claims against the Settlement Counterparties including claims to the profits collected by the Bunsow Firm on former Howrey client matters arising out of the Former Howrey Partners' alleged duty to account to Howrey ("Unfinished Business Claims") and claims to avoid and recover pre-dissolution transfers from Howrey to the Former Howrey Partners (the "Distribution Claims").

7.      On October 21, 2014, the Committee and the Settlement Counterparties participated in mediation in an effort to resolve the claims in the Complaint.

8.      Following the mediation, the Committee, the Bunsow Firm, and the Former Howrey Partners reached the settlement outlined in the attached Settlement Agreement (the "Settlement"), a copy of which is attached as **Exhibit A**. As discussed below and in Declaration

3

of Ronald L. Rowland attached as **Exhibit B**, the Committee has determined in the exercise of its reasonable business judgment that the proposed Settlement is fair and reasonable within the standards discussed below, and that it is in the best interests of the Howrey Estate. *See* Roland Decl. ¶ 10. The Trustee did not participate in the mediation or the settlement negotiations among the Committee and the Settlement Counterparties. The Trustee took no role in the approval of the Settlement and is a signatory to the Agreement solely for the purpose of confirming the releases provided in the Agreement.

9. In response to the Committee's discovery requests, the Bunsow Firm provided information concerning matters that originated at Howrey (the "Former Howrey Matters"), and data showing the Former Howrey Matters generated approximately $1,159,068.41 in gross revenue collected by Bunsow Firm following the dissolution of Howrey (the "Bunsow Unfinished Business Revenue").

10. The Unfinished Business Claims against the Settlement Counterparties are complicated by the fact that the Former Howrey Partners first went from Howrey to Dewey & LeBoeuf LLP ("Dewey") for a period before going to the Bunsow Firm. Certain unfinished business matters were transferred from Howrey to Dewey pursuant to a Contingent Matter Transfer Agreement (the "CMTA"). Pursuant to the CMTA, Dewey paid $900,000 to Howrey for certain items of unfinished business; Howrey also provided certain limited releases to Dewey and its partners under the CMTA. These releases have been raised as defenses by the Settlement Counterparties. Rowland Decl. ¶ 11.

11. The Committee also reviewed information regarding payments made to the Former Howrey Partners within a year prior to the bankruptcy. Bunsow and De Mory were Level II Partners with Howrey. Bunsow received $1,564,397 in the year before the bankruptcy.

4

De Mory received $367,965.40 in the year before the bankruptcy, including $50,000 that is classified as a bonus. Smith was a Level I Partner; he received $325,126.79 from Howrey in the year before the bankruptcy, including $2,500 designated as return of capital. *See* Rowland Decl. ¶ 8.

12. For the reasons discussed below, the Committee submits that the proposed Settlement is within the range of reasonableness and in the best interests of the estate. By this Motion, the Committee, therefore, requests that the Court approve the Settlement and grant the other requested relief so the bankruptcy estate can reap the benefits of this compromise.

## TERMS OF PROPOSED SETTLEMENTS

13. Following months of arm's length negotiations, the Parties have reached a proposed resolution of the Unfinished Business Claims and Distribution Claims. The material terms of the proposed settlement agreement with the Committee, the Bunsow Firm and the Former Howrey Partners for which approval is sought by this Motion are as follows:

   a. **Settlement Payment**: On or before August 1, 2015, the Settlement Counterparties shall pay $275,000 (the "Settlement Payment") to the Trustee via check or wire transfer. *See* Settlement ¶ 2.

   b. **Claims to be Withdrawn**: The Settlement Counterparties shall also withdraw all proofs of claims they filed against the Howrey Estate. *See* Settlement ¶ 4.

   c. **Mutual Releases**: Upon the timely payment of the Settlement Payment, the Committee and the Trustee will release claims against the Settlement Counterparties that Howrey or its estate has ever had, now has, or shall have against the Settlement Counterparties. *See* Settlement ¶ 3. The Settlement Counterparties will provide complementary releases to the Howrey estate and the Committee. *See* Settlement. ¶ 4.

## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

14. By this Motion, the Committee seeks the entry of an order pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a) approving the Settlement. As

5

discussed below, the Settlement provides a fair and equitable resolution of the Parties' disputes and is in the best interests of the Howrey Estate.

15. Bankruptcy Rule 9019(a) provides, in part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). The Rule empowers bankruptcy courts to approve compromises and settlements that are "fair and equitable" and "in the best interest of the estate." *Martin v. Kane* (*In re A & C Properties*), 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854 (1986). "The bankruptcy court has 'great latitude' in approving compromise agreements." *Woodson v. Fireman's Insurance, Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988).

16. To evaluate a compromise, a bankruptcy court considers "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re A & C Properties*, 784 F.3d at 1381.

17. In addition to the four prong test set forth in *A & C Properties*, it is also well established that "the law favors compromise and not litigation for its own sake." *See Port O'Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976).

18. Although the Committee, as the proponent of the settlement, bears the burden of persuasion (*see id.*), a court generally gives deference to the settlement proponent's business judgment in deciding whether to settle a matter. *In re Mickey Thompson, Entertainment Group, Inc.*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003).

19. As discussed in the Rowland Declaration, the Committee has determined in the exercise of its reasonable business judgment that the proposed Settlement is fair and reasonable within the standards discussed above, and that it is in the best interests of the Howrey estate. *See* Rowland Decl. ¶ 10.

20. Here, there is no question that the Settlement is in the best interests of the estate. First, the Settlement compares satisfactorily to the range of settlements previously obtained in this case. *See* Rowland Decl. ¶ 12. Second, the Settlement was achieved without additional cost, delay, and uncertainty of litigation that would likely include, among other things, a motion for summary judgment and a trial in this Court. There is a certain litigation risk involved in pursuit of Unfinished Business and Distribution Claims against the Settlement Counterparties that is heightened somewhat by factors and defenses unique to the Bunsow Firm and the Former Howrey Partners. The proposed settlement provides for a substantial amount of cash ($275,000) for the Howrey estate, and provides for the waiver of over $3.2 million in claims, including over $500,000 of asserted priority claims.

**The Settlement of Unfinished Business Claims**

21. Generally, there is a litigation risk for the Committee in pursuit of its Unfinished Business Claims against successor firms that hired former Howrey partners. There have been a number of rulings on unfinished business claims already in these proceedings, as well as rulings in other courts addressing the legal theories inherent in the Unfinished Business Claims. Suffice it to say, the law on these issues is in flux and is generally unsettled. Some of the rulings in this case are on interlocutory appeal and, therefore, there remains a risk that unfinished business claims, in general, will be affected by the results of that appeal.

22. Of greater impact is the additional defense of release asserted by the Settlement Counterparties. The fact that the unfinished business obtained by the Bunsow Firm first went to Dewey (which had its own bankruptcy and unfinished business claims) and may have been the subject of releases associated with the CMTA, provides litigation challenges that are not present in other unfinished business claims being pursued by the Howrey estate. Rowland Decl. ¶ 11.

**The Settlement of Distribution Claims**

23. The Committee's resolution of the Distribution Claims with the Former Howrey Partners is reasonable and will provide some cash for the Howrey estate, and a waiver of substantial general unsecured and priority claims. The Committee believes the Distribution Claims against the Level II Partners (Bunsow and De Mory) are significantly stronger than the Unfinished Business Claims and the Distribution Claims against Smith, a Level I Partner. The Former Howrey Partners are subject to Distribution Claims for payments made to them from the second quarter of 2010 through the first quarter of 2011, the time period during which the Committee contends Howrey was insolvent, unable to pay its debts as they came due, or inadequately capitalized. The Committee's settlement of $275,000 equals approximately 14.25% of the distributions received by Bunsow and De Mory (the two Level II Partners) during the one-year period leading up to the bankruptcy. Because the Distribution Claims against Bunsow and De Mory are the strongest in the Complaint, the Committee evaluates the Settlement on how this 14.25% recovery compares with other settlements that the Trustee has reached with Level II partners. The Committee has determined that this 14.25% rate compares satisfactorily against other such settlements.

24. The Committee considers the Distribution Claims against Smith to be weaker than those against Bunsow and De Mory. Smith was a Level I Partner while at Howrey. Status as a Level I Partner provides Smith with legal arguments regarding the reasonably equivalent value

8

element of fraudulent conveyance claims that Level II Partners do not have.  Rowland Decl. ¶¶ 8, 11.

25. While the Committee believes that Howrey was insolvent in the second quarter of 2010, the Committee recognizes that insolvency is more difficult (and costly) to prove farther back in time than at the point of dissolution.  Given the time, expense, and uncertainty associated with litigation of distributions to the Former Howrey Partners, the Committee believes that the Settlements are within the range of reasonableness and will provide a substantial monetary benefit to the estate.  *See* Rowland Decl. ¶ 11.

26. In summary, because the proposed settlements satisfy all of the *A & C Properties* factors, the Committee has concluded in its business judgment that the Settlement is fair, equitable, and in the best interest of the estate, and should be approved by the Court.  *See* Rowland Decl. ¶ 10.

## CONCLUSION

For the foregoing reasons, the Committee respectfully requests that the Court grant the Motion and enter an order approving the Settlement with the Bunsow Firm and the Former Howrey Partners as described above.

Dated:  June 5, 2015                              Respectfully submitted,


/s/ *Bradford F. Englander*
Bradford F. Englander (CA Bar # 122108)
Whiteford, Taylor & Preston L.L.P.
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
(703) 280-9081
(703) 280-3370 (facsimile)
E-mail: benglander@wtplaw.com
*Attorneys for the Official Committee of Unsecured Creditors of Howrey, LLP*

**NOTICE OF SERVICE**

__X__ (CM/ECF) The document was electronically served on the parties to this action via the mandatory United States Bankruptcy Court of California CM/ECF system upon filing of above described document:

**SEE ATTACHED SERVICE LIST**

__X__ (ELECTRONIC MAIL SERVICE) By electronic mail (e-mail) the above listed document(s) without error to the email address(es) set forth below on this date:

**SEE ATTACHED SERVICE LIST**

__X__ (UNITED STATES MAIL) By depositing a copy of the above-referenced documents for mailing in the United States Mail, first class postage prepaid, at Houston, Texas, to the parties listed, at their last known mailing addresses, on this date:

**SEE ATTACHED SERVICE LIST**

_____ (OVERNIGHT COURIER) By depositing a true and correct copy of the above referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

_____ (COURIER SERVICE) By providing true and correct copies of the above referenced documents [with copies of the supporting detailed invoices/attorney time records for the Final Fee Application] via courier delivery, to the following on or about _____:

_____ (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those people listed on the attached service list, on the date above written.

*/s/ Rebekah R. Odom*
Rebekah R. Odom

*94249*