| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9 | MICHAEL S. GREGER (BAR NO. 156525)<br>ALLEN MATKINS LECK GAMBLE<br>  MALLORY & NATSIS LLP<br>1900 Main Street, Fifth Floor<br>Irvine, California 92614-7321<br>Phone: (949) 553-1313<br>Fax: (949) 553-8354<br>E-Mail: mgreger@allenmatkins.com<br><br>IVAN M. GOLD (BAR NO. 121486)<br>ALLEN MATKINS LECK GAMBLE<br>  MALLORY & NATSIS LLP<br>Three Embarcadero Center, 12th Floor<br>San Francisco, CA 94111-4074<br>Phone: (415) 837-1515<br>Fax: (415) 837-1516<br>E-Mail: igold@allenmatkins.com |
| 10 | Attorneys for Creditor<br>The Irvine Company LLC |

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>HOWREY LLP,<br><br>    Debtor. | Case No. 11-31376<br><br>Chapter 11<br><br>**THE IRVINE COMPANY LLC'S RESPONSE REGARDING OBJECTION TO CLAIM NO. 618-1 FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS [DOCKET 2299]**<br><br>Date:  July 30, 2015<br>Time:  1:30 p.m.<br>Place:  Courtroom 22<br>          235 Pine Street<br>          San Francisco, California |

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618-1 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Case: 11-31376    Doc# 2315    Filed: 07/16/15    Entered: 07/16/15 16:06:59    Page 1 of 16

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| | A. TIC's Lease | 2 |
| | B. The Involuntary Bankruptcy Filing and Entry of an Order for Relief | 3 |
| | C. The Debtor's Rejection of the Lease | 3 |
| | D. The TIC Gap Claim | 4 |
| III. | TIC'S RESPONSE TO THE COMMITTEE'S OBJECTION | 4 |
| | A. The Committee's Objection Is Not Supported by Admissible Evidence | 4 |
| | B. The TIC GAP Claim Is Entitled to Priority Under Sections 502(f) and 507(a)(3) of the Code | 5 |
| |    1. The TIC Gap Claim "Arose" During the Gap Period | 6 |
| | C. The TIC Gap Claim Was Incurred in the Ordinary Course | 10 |
| | D. Joinder | 12 |
| IV. | CONCLUSION | 12 |

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618-1 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cukierman v. Uecker (In re Cukierman)*,
 265 F.3d 846 (9th Cir. 2001)...................................................................................... 8

*Hamilton v. Lumsden (In re Geothermal Resources Int'l)*,
 93 F.3d 648 (9th Cir. 1996) ...................................................................................... 11

*In re Allegheny Int'l, Inc.*,
 954 F.2d 167 (3d Cir. 1992) ....................................................................................... 4

*In re Baab Steel, Inc.*,
 495 B.R. 530 (Bankr. D. Colo. 2013) ...................................................................... 11

*In re Clothes, Inc.*,
 35 B.R. 489 (Bankr. D.N.D. 1983) ............................................................................ 7

*In re CSVA, Inc.*,
 140 B.R. 116 (Bankr. W.D.N.C. 1992) ..................................................................... 6

*In re Dant & Russell, Inc.*,
 853 F.2d 700 (9th Cir. 1988) .................................................................................... 10

*In re King*,
 305 B.R. 152 (Bankr. S.D.N.Y. 2004) ....................................................................... 4

*In re Leather Factory, Inc.*,
 475 B.R. 710 (Bankr. C.D. Cal. 2012) ...................................................................... 9

*In re Manufacturer's Supply Co.*,
 132 B.R. 127 (Bankr. N.D. Ohio 1991) ..................................................................... 5

*In re Nat'l Refractories & Minerals Corp.*,
 297 B.R. 614 (Bankr. N.D. Cal. 2003) ...................................................................... 9

*In re New Valley Corp.*,
 2000 U.S. Dist. LEXIS 12663 (D.N.J. Aug. 31, 2000) ........................................ 6, 10

*In re Pan Trading Corp.*,
 125 Bankr. 869 (Bankr. S.D.N.Y. 1991) ................................................................ 7, 8

*In re Penninsula Roofing & Sheet Metal, Inc.*,
 9 B.R. 257 (Bank. N.D. Mich. 1981) ...................................................................... 11

*In re Warehouse Club*,
 184 B.R. 316 (Bankr. N.D. Ill. 1995) ........................................................................ 8

*Joan Cook, Inc. v. Graham White Mfg. Co.*,
 1993 Bankr. LEXIS 777 (Bankr. S.D. Fla. May 14, 1993) ....................................... 6

*Lundell v. Anchor Constr. Specialists, Inc.*,
 223 F.3d 1035 (9th Cir. 2000) .................................................................................... 4

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM FILED BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS

(11)

| | Page(s) |
|---|---|
| *TreeSource Indus. v. Midway Engineered Wood Prods. (In re TreeSource Indus.)*, 363 F.3d 994 (9th Cir. 2004) | 9 |
| *Upstairs Gallery v. Macklowe W. Dev. Co., L.P. (In re Upstairs Gallery)*, 167 B.R. 915 (B.A.P. 9th Cir. 1994) | 2, 7, 8 |
| *Wright v. Holm (In re Holm)*, 931 F.2d 620 (9th Cir. 1991) | 4 |

**Statutes**

| | |
|---|---|
| 11 U.S.C. § 303(f) | 6 |
| 11 U.S.C. § 363 | 10 |
| 11 U.S.C. § 365(d)(3) | 7, 8 |
| 11 U.S.C. § 502(f) | passim |
| 11 U.S.C. § 502(g) | 9 |
| 11 U.S.C. § 507(a)(3) | passim |

**Rules**

| | |
|---|---|
| Fed. R. Bankr. P. 3001(f) | 4 |
LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**
1075288.01/OC
(iii)
THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 56186 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Case: 11-31376    Doc# 2315    Filed: 07/16/15    Entered: 07/16/15 16:06:59    Page 4 of 16

Creditor The Irvine Company LLC ("TIC") hereby responds to the Objection to Claim No. 618-1 (of The Irvine Company, LLC) by Official Committee of Unsecured Creditors ("Objection"), as follows:

## I. INTRODUCTION

In 2006, Debtor Howrey LLP (the "Debtor") entered into a lease of approximately 34,400 (later amended to 45,470) rentable square feet of office space in Irvine, California with TIC. The Official Committee of Unsecured Creditors (the "Committee") concedes that the Debtor entered into this lease in the ordinary course of the Debtor's business. Objection, pg. 18, ¶ 46. Following the rejection of its office lease by the Debtor after an order for relief was entered in the Debtor's involuntary bankruptcy case, TIC filed certain claims against the Debtor's estate. TIC's claims include a claim in the amount of $321,604.41 for the rent and other charges that accrued under TIC's lease during the period beginning with the involuntary bankruptcy filing and ending on the entry of an order for relief by this Court (the "TIC GAP Claim").[1] The TIC GAP Claim is entitled to priority under sections 502(f) and 507(a)(3) of the Bankruptcy Code.

Without citing to any authority addressing obligations to pay rent under nonresidential real property leases that accrue during the gap period, the Committee has taken the position that the TIC Gap Claim is not entitled to priority under sections 502(f) and 507(a)(3) because: (i) TIC, as a landlord with a prepetition lease, is statutorily ineligible for priority under section 502(f) because rent due under a prepetition lease is allegedly deemed to "arise" upon lease execution; and (ii) the rent that accrued during the gap period under TIC's lease allegedly did not "arise" in the ordinary course of the Debtor's business (even though the Committee readily concedes that TIC's lease was executed in the ordinary course of the Debtor's business). TIC submits that the Committee's Objection should be overruled for at least the following reasons:

---

[1] In its Objection, the Committee has not challenged the amount of the TIC Gap Claim. Rather, the Committee has merely challenged the characterization of the TIC Gap Claim as a priority claim under section 502(f) and 507(a)(3) of the Bankruptcy Code. TIC reserves the right to supplement this response to the extent that the Committee, in any way, seeks to challenge the amount of the TIC Gap Claim, rather than just the characterization of such claim as a priority claim.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618-1 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Case: 11-31376   Doc# 2315   Filed: 07/16/15   Entered: 07/16/15 16:06:59   Page 5 of 16

First, contrary to the Committee's argument, case law firmly establishes that the monthly rent due under a nonresidential real property lease "arises" from month to month when payment is due and payable under the lease; not when the underlying lease is first executed. As the Ninth Circuit BAP long ago recognized: "Current rent payments were held to rest upon current consideration, i.e., a grant of possession for the rent period, and therefore did not constitute preferences." *Upstairs Gallery v. Macklowe W. Dev. Co., L.P. (In re Upstairs Gallery)*, 167 B.R. 915, 941 (B.A.P. 9th Cir. 1994). Thus, the Committee's argument that the TIC Gap Claim arose for purposes of sections 502(f) and 507(a)(3) upon lease execution is without merit. Indeed, if this Court were to construe section 502(f) as the Committee suggests, *no nonresidential real property landlord could ever have an allowed priority claim under section 502(f) and 507(a)(3) of the Code in any involuntary bankruptcy case*.

Second, the Committee's contention that the obligation to pay rent under TIC's lease did not arise in the ordinary course of business is also incorrect. The Committee readily concedes – as it must – that TIC's lease was executed in the ordinary course. Objection, pg. 18, ¶ 46. Because the lease was executed in the ordinary course of business, the obligations that arose during the gap period also constitute ordinary course obligations.

Accordingly, this Court should overrule the Committee's Objection in its entirety.

## II. BACKGROUND

### A. TIC's Lease

TIC, as landlord, and the Debtor, as tenant, are parties to that certain Office Space Lease dated as of September 18, 2006, as amended by that certain First Amendment to Lease dated April 25, 2007 (collectively, the "Lease"). In accordance with the Lease, TIC leased to the Debtor certain nonresidential real property comprised of approximately 34,400 (later amended to 45,470) of rentable square feet of space located at 4 Park Plaza, Suites 1700 and 1800, Irvine, California (the "Premises"). A true and correct copy of the Lease is attached as Exhibit "1" to TIC's Proof of Claim No. 618 (the "TIC Claim").[2]

---

[2] For the Court's convenience, attached hereto as Exhibit "A" is a true and correct copy of the TIC Claim.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

-2-

Case: 11-31376    Doc# 2315    Filed: 07/16/15    Entered: 07/16/15 16:06:59    Page 6 of 16

### B. The Involuntary Bankruptcy Filing and Entry of an Order for Relief

On April 11, 2011 (the "Petition Date"), certain of the Debtor's creditors filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against the Debtor. On June 6, 2011, this Court entered its Order for Relief and Converting Case to One Under Chapter 11 [Docket No. 59] (the "Order for Relief").

### C. The Debtor's Rejection of the Lease

As part of its regular business operations, the Debtor was a party to numerous executory contracts and unexpired leases. Indeed, in its Schedule G, the Debtor scheduled that it was a party to approximately seventeen (17) office lease agreements, six (6) sublease agreements, and two (2) storage space agreements as of the Petition Date. *See* Schedule G [Docket No. 132, pgs. 136-163].

With respect to the Lease, the Committee states in the Objection:

> On information and belief, the Debtor surrendered the Premises on or about the Petition Date. Objection, pg. 3, ¶ 7.

This unsupported statement is not accurate. Following the involuntary bankruptcy filing, the Debtor maintained possession of the Premises. Indeed, as of the date the Order for Relief was entered, the Premises were full of the Debtor's furniture, trade fixture, and equipment. *See* Motion of the Debtor for Order Authorizing the Sale of All of the Debtor's Personal Property Located at 4 Park Plaza, Irvine, California 92614 Free and Clear of Liens [Docket No. 218] (the "Sale Motion"), pg. 3, ¶ 5 ("The Debtor currently has furniture, trade fixtures and equipment (collectively, the "Personal Property") located at the Premises.").

On or about June 6, 2011, the Debtor filed its Motion of the Debtor for Order (I) Authorizing the Rejection of Certain Unexpired, Leases and Subleases Effective as of the Date of the Motion and (II) Authority to Abandon Certain Personal Property [Docket No. 63] (the "Rejection Motion"). Notably, in the Rejection Motion, the Debtor expressly acknowledged that:

> Following the Petition Date, through the entry of the Order for Relief ("Gap Period"), the Debtor continued to operate its business in accordance with § 303(f) of the Bankruptcy Code.

Rejection Motion, pg. 3, ¶ 3.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618-1 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

-3-

Case: 11-31376    Doc# 2315    Filed: 07/16/15    Entered: 07/16/15 16:06:59    Page 7 of 16

In addition, while the Debtor sought to abandon certain property located on other landlords' premises as part of the Rejection Motion, the Debtor expressly did not abandon any of its Personal Property located at the Premises. Rejection Motion, pgs. 4-5, ¶ 5. Consequently, this Court granted the Rejection Motion, but did not authorize the abandonment of the Personal Property.

### D. The TIC Gap Claim

On or about October 11, 2011, TIC timely filed the TIC Claim in the Debtor's bankruptcy case asserting an aggregate prepetition, nonpriority unsecured claim in the amount of $1,801,769.99. See Exhibit "A" attached hereto. In the TIC Claim, TIC asserted, among other claims, the following priority claim:

> On or about June 6, 2011, the Bankruptcy Court entered an order for relief under chapter 11 of the Bankruptcy code in the above-captioned bankruptcy case. . . . From the Petition Date through June 6, 2011, the Debtor failed to pay $321,604.41 in rent and other damages due under the Lease (the "Gap Claim"). [TIC's] Gap Claim is entitled to priority pursuant to section 507(a)(3) of the Bankruptcy Code.

TIC Claim, pg. 3.

## III. TIC'S RESPONSE TO THE COMMITTEE'S OBJECTION

### A. The Committee's Objection Is Not Supported by Admissible Evidence

Bankruptcy Rule 3001(f) states: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Therefore, a party objecting to a claim must overcome the prima facie validity of the proof of claim by producing "sufficient evidence to negate one or more of the sworn facts in the proof of claim. . . ." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992); *In re King*, 305 B.R. 152, 162 (Bankr. S.D.N.Y. 2004). In other words, the objection must "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039-40 (9th Cir. 2000); *Allegheny*, 954 F.2d at 173-74. A proof of claim, by itself, is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

-4-

Case: 11-31376  Doc# 2315  Filed: 07/16/15  Entered: 07/16/15 16:06:59  Page 8 of 16

Notwithstanding the Committee's burden with respect to the Objection, the Committee did not support its Objection with admissible evidence. For example, with respect to the Lease, the Committee states:

> <u>On information and belief</u>, the Debtor surrendered the Premises on or about the Petition Date. Objection, pg. 3, ¶ 7 (emphasis added).

The Committee's alleged information and belief is not evidence. Moreover, the Committee's statement is demonstrably false. As noted above, during the entire gap period, the Debtor maintained possession of the Premises which were full of the Personal Property. Even after the Petition Date, the Debtor's Personal Property remained in the Premises until it was sold as part of the Sale Motion. Given the Committee's failure to support its Objection with admissible evidence, the Court should overrule the Committee's Objection.

**B.   The TIC GAP Claim Is Entitled to Priority Under Sections 502(f) and 507(a)(3) of the Code**

The period between the date an involuntary petition is filed and the date that a bankruptcy court enters an order for relief in an involuntary case is commonly referred to as the "gap period." Claims that arise during the gap period are commonly referred to as "gap claims." Sections 502(f) and 507(a)(3) of the Bankruptcy Code provide for the allowance and priority of gap claims. Section 502(f) states:

> In an involuntary case, a claim arising <u>in the ordinary course of the debtor's business or financial affairs</u> after the commencement of the case but before the earlier of appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed . . . the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(f) (emphasis added).

Section 507(a) of the Bankruptcy Code affords gap claims priority in payment ahead of other unsecured claims. *See* 11 U.S.C. § 507(a)(3). Gap claims are given priority under section 507(a)(3) to encourage creditors to extend credit to a debtor against whom an involuntary petition is filed. *In re Manufacturer's Supply Co.*, 132 B.R. 127, 128 (Bankr. N.D. Ohio 1991) ("Section 502(f) is intended to protect creditors who deal with an involuntary debtor during the

gap period, such as lessors, trade creditors and similar parties, consistent with section 303(f)'s specific authority allowing an involuntary debtor to conduct its business in an ordinary manner while its ultimate status is adjudicated.").

While the Bankruptcy Code does not define the term "arising in the ordinary course of the debtor's business or financial affairs" in section 502(f), courts interpreting section 502(f) have determined that rent that first comes due under a nonresidential real property lease during the gap period falls within the definition of a "gap claim" that is entitled to priority under sections 502(f) and 507(a)(3). *See, e.g., Joan Cook, Inc. v. Graham White Mfg. Co.,* 1993 Bankr. LEXIS 777 (Bankr. S.D. Fla. May 14, 1993) (rent accrued during gap period is allowable under section 502(f)); *In re CSVA, Inc.*, 140 B.R. 116, 118 (Bankr. W.D.N.C. 1992) (postpetition rent entitled to priority under section 502(f)); *and In re New Valley Corp.*, 2000 U.S. Dist. LEXIS 12663 (D.N.J. Aug. 31, 2000). As the court in *New Valley Corp.* stated:

> Undeniably, [the landlord's] claim for unpaid rent is a "claim arising in the ordinary course of [the debtor's] business after the commencement of the case but before . . . the order for relief." *Id.* § 502(f). <u>Indeed, rent payments fall within the common understanding of ordinary course obligations, and the rent payments in dispute fall within the period ("gap period") identified by section 502(f)</u>. Hence, the claim falls squarely within section 502(f) and, therefore, "shall be allowed."

*New Valley,* at 55 (emphasis added).

Notably, the Committee failed to cite to the foregoing authority (or any authority addressing rent due under a nonresidential real property lease) in its Objection and instead attempts to raise two technical objections to the characterization of the TIC Gap Claim as a priority claim under sections 502(f) and 507(a)(3) of the Code. As shown, below, however, both of the Committee's technical arguments fail.

### 1. The TIC Gap Claim "Arose" During the Gap Period

Without citing to any authority addressing monthly rent obligations arising under an unexpired nonresidential real property lease during the gap period, the Committee generally argues that the TIC Gap Claim is not entitled to priority because the monthly rent due under the Lease allegedly "arose" outside of the gap period. Objection, pgs. 7-16. According to the

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Case: 11-31376   Doc# 2315   Filed: 07/16/15   Entered: 07/16/15 16:06:59   Page 10 of 16
1075288.01/OC                                -6-

Committee, a claim for monthly rent under a nonresidential real property lease "arises" for purposes of section 502(f) of the Code when the underlying lease is first executed. Armed with this false conclusion, the Committee then argues that prepetition landlords are statutorily ineligible to assert priority claims under sections 502(f) and 507(a)(3) of the Code as a matter of law. The Committee's position is without merit for several reasons.

<u>First</u>, the Committee has ignored the authority identified in Section III (B) above that expressly allowed landlord claims for rent arising under a lease during the gap period as priority claims under sections 502(f) and 365(d)(3). The Committee's arguments directly contradict this authority.

<u>Second</u>, contrary to the Committee's unsupported argument, case law firmly establishes that monthly rent and other charges due under a nonresidential real property lease are deemed to "arise" in the month such charges first come due; not upon lease execution as argued by the Committee. *See*, *e.g.*, *Upstairs Gallery v. Macklowe W. Dev. Co., L.P. (In re Upstairs Gallery)*, 167 B.R. 915 (B.A.P. 9th Cir. 1994); *In re Pan Trading Corp.*, 125 Bankr. 869, 875 (Bankr. S.D.N.Y. 1991); *Child World v. Service Merchandise Co. (In re Child World)*, 173 B.R. 473, 477 (Bankr. S.D.N.Y. 1994) ([I]t is well settled that the obligation to pay rent is deemed to arise on the due dates provided in the lease and not when the lease is signed."); *In re Clothes, Inc.*, 35 B.R. 489, 491 (Bankr. D.N.D. 1983). As stated by the bankruptcy court in *Clothes, Inc.*:

> Under § 365 of the Code, an unexpired lease on real property is treated as an executory contract which involves an exchange of rights and obligations throughout the term of the lease. <u>As each month comes up, the lessee becomes obligated anew for that month's rent and in return, the lessor becomes obligated to provide the lessee with the leasehold for that month. Pre-code decisions have generally held that the payment of current rent is premised upon current consideration and did not constitute a preference.</u>

*Clothes, Inc.*, 35 B.R. at 491 (emphasis added).

Similarly, the Ninth Circuit BAP in *Upstairs Gallery* quoted:

> . . . [I]n the "garden variety" rent case, lease payment obligations arise when they become due and payable, and not when the lease is signed, rental payments have generally been treated differently than periodic payments on other types of longer term debt.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

-7-

Case: 11-31376    Doc# 2315    Filed: 07/16/15    Entered: 07/16/15 16:06:59    Page 11 of 16

*Upstairs Gallery*, at 918 (quoting *In re Pan Trading Corp.*, 125 Bankr. 869, 875 (Bankr. S.D.N.Y. 1991)). Indeed, the Ninth Circuit BAP further stated:

> . . . lease payment obligations arise when they become due and payable because of the contemporaneous manner in which money and services are exchanged and the facile divisibility of the separate rent payments. <u>As a rule, payments apply specifically to the period in which they are paid</u>.

*Upstairs Gallery*, at 918 (emphasis added).

Contrary to the Committee's Objection, therefore, case law firmly establishes that monthly rental obligations "arise" under a unexpired nonresidential real property lease when payments are due on a monthly basis; not upon lease execution. Accordingly, the Committee's Objection, which entirely fails to address or analyze monthly rent obligations arising under an unexpired nonresidential real property lease, should be overruled.

<u>Third</u>, unlike regular creditors who have an option to do business with the debtor postpetition, a landlord (as a result of the automatic stay and the debtor's continued occupancy of the premises) is in effect forced to become an involuntary creditor of the estate. *Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846 (9th Cir. 2001) ("The landlord is forced to provide current services – the use of its property, utilities, security, and other services – without current payment. No other creditor is put in this position"); *see also In re Warehouse Club*, 184 B.R. 316, 317 (Bankr. N.D. Ill. 1995). The Committee's argument would mean that not only are landlords forced to provide possession to an involuntary bankruptcy debtor, but they are also statutorily ineligible for any priority claim stemming from such postpetition possession.

<u>Fourth</u>, the Committee's construction of section 502(f) would also render section 365(d)(3) of the Code meaningless. Under section 365(d)(3) of the Code, a debtor is required to timely perform obligations "<u>arising</u> under any unexpired lease of nonresidential real property . . ." 11 U.S.C. § 365(d)(3) (emphasis added). If the Committee's construction of the term "arising" is accepted for purposes of nonresidential real property leases, obligations under a lease would all be deemed to "arise" upon lease execution, and a debtor would have no obligation to perform under a nonresidential real property lease postpetition in accordance with section 365(d)(3) of the Code. Of course, the Ninth Circuit has firmly rejected such arguments. *Cukierman,* 265 F.3d at 851

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

-8-

Case: 11-31376    Doc# 2315    Filed: 07/16/15    Entered: 07/16/15 16:06:59    Page 12 of 16

(trustee must timely perform all postpetition obligations arising under nonresidential real property lease).

Fifth, the Committee's reliance on section 502(g) and the Ninth Circuit's ruling in *TreeSource Indus. v. Midway Engineered Wood Prods. (In re TreeSource Indus.)*, 363 F.3d 994, 998 (9th Cir. 2004), to support its argument is entirely without merit. By its plain language, 502(g) only applies to "a claim *arising* from the rejection . . ." of a lease. 11 U.S.C. § 502(g). Here, the gap period obligations under the Lease arose *prior* to the rejection of the Lease which did not occur until after the entry of the Order for Relief. Thus, section 502(g) does not, in any way, restrict TIC's gap period claim. Likewise, *TreeSource* does not even address 502(f) gap claims and actually undercuts the Committee's position by stating: "If the debtor ultimately rejects, then all claims arising from a debtor's nonperformance of a post-petition, pre-rejection lease obligation are entitled to administrative expense priority." Id. at 998. In using this language, the Ninth Circuit clearly recognized that monthly rent due postpetition "arises" in the month that it is due.[3] Moreover, the Ninth Circuit also firmly recognized that all postpetition rent is entitled to priority notwithstanding section 502(g).

Finally, the Committee has failed to support its position with any authority stating that monthly rent under a nonresidential real property lease arises for purposes of any provision of the Code upon lease execution. Instead, the only authority the Committee cites addressing leases at all are cases involving indemnity claims, not monthly rent accruing under a lease.

In sum, contrary to the Committee's position, monthly rent claims under a nonresidential real property lease "arise" when such payments are due under the lease, not when the lease is first executed. Therefore, the monthly rent and other charges that came due under the Lease following the Petition Date and prior to the entry of the Order for Relief are entitled to priority under sections 502(f) and 507(a)(3) of the Code because they arose during the gap period.

//

---

[3] This approach is consistent with bankruptcy court decisions throughout the Ninth Circuit applying the so-called proration approach to postpetition stub rent. *In re Leather Factory, Inc.*, 475 B.R. 710 (Bankr. C.D. Cal. 2012); *see also In re Nat'l Refractories & Minerals Corp.*, 297 B.R. 614 (Bankr. N.D. Cal. 2003).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

-9-

Case: 11-31376    Doc# 2315    Filed: 07/16/15    Entered: 07/16/15 16:06:59    Page 13 of 16

### C. The TIC Gap Claim Was Incurred in the Ordinary Course

As a secondary argument, the Committee argues, *without any supporting evidence*, that the TIC Gap Claim did not arise in the ordinary course of business of the Debtor because the Debtor allegedly elected to dissolve on March 16, 2011, one month prior to the Petition Date. TIC submits that the Committee's ordinary course argument is also without merit for the following reasons:

First, the Committee does not support its argument with admissible evidence and it should be rejected for that reason alone. Moreover, contrary to the Committee's position that the Debtor dissolved prepetition, the Debtor in the Rejection Motion admitted that it "continued to operate its business in accordance with section 303(f) . . . " during the gap period. Rejection Motion, pg. 3, ¶ 3.

Second, as set forth in the authority above, "rent payments fall within the common understanding of ordinary course obligations. . . ." *New Valley,* at 55.

Third, while the Bankruptcy Code does not define the term "ordinary course of business," the phrase is used in several sections of the Code. For example, courts interpreting section 363 of the Code commonly use two tests to determine whether a transaction is in the ordinary course: (1) the horizontal dimensions test; and (ii) the vertical dimensions test. *In re Dant & Russell, Inc.*, 853 F.2d 700, 704 (9th Cir. 1988). Under both tests, the monthly obligations of rent accruing under the Lease would constitute ordinary course payments.

The horizontal test compares whether the transaction at issue "is of the type that other similar business would engage in as ordinary business." *Id.* In effect, this test is aimed at determining whether the transaction is abnormal or unusual, in which case it is probably not in the ordinary course. Under the horizontal test, there is no question that a law firm similar to Howrey enters into many real property office leases. Indeed, the Committee readily concedes – as it must – that the Lease for the Premises was entered into in the ordinary course. Objection, pg. 18(17-19) ("The Committee does not dispute that the parties entered into the Lease in the ordinary course of business. . . ."). Moreover, the Debtor's Schedule G illustrates that the Lease was ordinary course for the Debtor. In its Schedule G, the Debtor scheduled that it was a party to approximately

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1075288.01/OC

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

-10-

Case: 11-31376   Doc# 2315   Filed: 07/16/15   Entered: 07/16/15 16:06:59   Page 14 of 16

seventeen (17) office lease agreements, six (6) sublease agreements, and two (2) storage space agreements as of the Petition Date. *See* Schedule G [Docket No. 132, pgs. 136-163]. Clearly, the Debtor in the ordinary course entered into similar real property leases as the Lease. Given that the Lease was entered into in the ordinary course, it is axiomatic that the obligations arising thereunder arose in the ordinary course.

The vertical dimension test views a transaction from the perspective of creditors. This test measures the types of risks that creditors impliedly agreed to when they extended credit to the debtor and determines whether the transaction at issue is within the range or risks reasonably expected by creditors. Monthly payments due under the Lease also constitute ordinary course payments under the vertical dimension test. Clearly, hypothetical creditors doing business with the Debtor reasonably expected the Debtor to be a party to nonresidential real property leases. Indeed, next to the cost of labor, lease expenses are one of the major categories of expenses of a law firm. As a result, the Lease and the monthly obligations that arose thereunder qualify as ordinary course under the vertical test as well.

The Committee does not cite to any case authority which provides that obligations arising under a lease admittedly entered into in the ordinary course of business cease to qualify as ordinary course obligations where the debtor enters the zone of insolvency. Rather, the Committee cites to decisions where courts found that professional fees incurred following either the closing of a business or an involuntary petition filing do not qualify as ordinary course obligations. *See In re Penninsula Roofing & Sheet Metal, Inc.*, 9 B.R. 257, 261 (Bank. N.D. Mich. 1981) (payments of professional fees incurred following closure of business not ordinary course); and *In re Baab Steel, Inc.*, 495 B.R. 530, 534 (Bankr. D. Colo. 2013) (professional fees incurred during gap period not ordinary course). The Committee also cites to *Hamilton v. Lumsden (In re Geothermal Resources Int'l)*, 93 F.3d 648, 650 (9th Cir. 1996), for the proposition that employment contracts *first entered into during the gap period are not ordinary course*. Here, however, the Lease was not entered into during the gap period. Quite to the contrary, the Lease was entered into by the Debtor well outside of the gap period in the ordinary course of the

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1075288.01/OC -11-

THE IRVINE COMPANY LLC'S RESPONSE TO OBJECTION TO CLAIM NO. 618 BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Case: 11-31376    Doc# 2315    Filed: 07/16/15    Entered: 07/16/15 16:06:59    Page 15 of 16

Debtor's business. As such, the obligations arising thereunder are quintessential ordinary course, and the Committee's Objection should be overruled.

### D. Joinder

To the extent not inconsistent with the foregoing, TIC joins in any oppositions filed by landlords to the Committee's objections to: (i) Claim No. 956-2 [Docket No. 2291]; Claim No. 690-1 [Docket No. 2293]; and Claim No. 570-3 [Docket No. 2295].

## IV. CONCLUSION

For the foregoing reasons, TIC respectfully urges this Court to overrule the Committee's Objection.

Dated: July 16, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: /s/ Michael S. Greger
MICHAEL S. GREGER
Attorneys for Creditor
The Irvine Company LLC