DIAMOND MCCARTHY LLP
Stephen T. Loden, Esq. (*Pro Hac Vice*)
2200 Post Oak Blvd., Suite 1000
Houston, Texas 77056
Phone: (713) 333-5100
Fax: (713) 333-5199
*sloden@diamondmccarthy.com*

*Counsel for Allan B. Diamond,*
*Chapter 7 Truste*

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HOWREY LLP,<br><br>Debtor. | Case No.: 11-31376 DM<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S MOTION FOR AUTHORITY TO SELL CERTAIN ASSETS OF THE DEBTOR'S ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND RELATED RELIEF** |

TO: THE HONORABLE DENNIS MONTALI,
UNITED STATES BANKRUPTCY JUDGE

Allan B. Diamond, chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of the captioned debtor ("Debtor"), hereby requests the entry of an order approving the sale of certain assets of the Debtor's Estate to Oak Point Partners, LLC ("Oak Point") free and clear of liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 105 and 363, and related relief ("Motion"), authorizing the Trustee to (i) sell the Estate's Remnant Assets, as defined herein, pursuant to the terms of the "Asset Purchase Agreement" with Oak Point annexed as **Exhibit 1** (the "Purchase Agreement") to the Declaration of Allan B. Diamond, dated September 10, 2026 (the "Diamond Declaration") submitted in support of the Motion and attached as **Exhibit A**, (ii) waiving the fourteen-day stay under Bankruptcy Rule 6004(h), and (iii) granting such other and further relief as this Court deems just and proper, and respectfully represents as follows:

**Jurisdiction**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363, as well as Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

**Background**

***The Debtor and the Bankruptcy Case***

3. The Debtor was a law firm and a limited liability partnership organized under the laws of the District of Columbia, founded in 1956.

4. On April 11, 2011, certain creditors filed an involuntary chapter 7 petition against the Debtor.

5. On June 6, 2011, the Debtor filed the *Ex Parte Consent to Entry of an Order for Relief and Motion to Convert Debtor's Case to Chapter 11* (ECF Doc. No. 58) and the Court entered its *Order for Relief and Converting Case to One Under Chapter 11* (ECF Doc. No. 59).

6. On November 16, 2015, after notice and a hearing, the Court entered the *Order Converting Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b)* (ECF Doc. No. 2448) (the "Conversion Order"). The Conversion Order approved the conversion of this case from one under chapter 11 of the Bankruptcy Code to a case under chapter 7, effective as of 12:01 a.m. Pacific Time, December 1, 2015 (the "Conversion Date").

7. On December 1, 2015, the Office of the U.S. Trustee for Region 17 appointed Allan B. Diamond as the chapter 7 trustee for the Estate, and on December 8, 2015, the Clerk served *Notice to Creditors and Other Parties in Interest* (ECF Doc. No. 2458).

***The Remnant Assets***

8. Since being appointed, the Trustee has administered the Debtor's Estate for the benefit of its creditors in accordance with the Trustee's power and duties. The Trustee is now in the process of winding down the administration of this case. To that end, the Trustee is engaged in efforts to ensure that the maximum value of the Estate's remaining assets is realized, which efforts include pursuing the sale of any remaining assets.

9. The Trustee has determined that there might exist property of the Debtor's Estate, consisting of known or unknown assets or claims, which have not been previously sold, assigned, or transferred (collectively, "Remnant Assets"). Potential unknown assets might include unscheduled refunds, overpayments, deposits, judgments, claims, or other payment rights that would accrue in the future.

10. The Trustee has conducted due diligence and has confirmed that, except with respect to the East Texas Property (desribed below), that he remains unaware of the existence of any Remnant Assets, and certainly none that could return value to the Estate greater than the Purchase Price. Accordingly, the Trustee has determined that the cost of pursuing the Remnant Assets will likely exceed the benefit that the Estate would possibly receive on account of the Remnant Assets.

11. The Trustee is aware of one specific Remnant Asset, which consists of a small parcel of real estate which is generally described as follows:

> Account # R78495 CPC: 8062-002-0241 – Sherwood Forest #2, Block 2, Lot 24 The E 60' Acres .2163

(the "East Texas Property"). The Trustee has researched the history of the East Texas Property, and has confirmed that it was transferred to Howrey LLP prior commencement of this bankruptcy case, in lieu of fees for legal services provided. The Trustee has confirmed that local taxing authorities have placed liens against the East Texas Property for delinquent property taxes in approximately the amount of $232.27 (the "Tax Lien"). The Trustee has further confirmed that the East Texas Property is of


Case: 11-31376 Doc# 2945 Filed: 09/10/26 Entered: 09/10/26 14:39:46 Page 3 of 19

little value, especially in light of the Tax Lien and when compared to the transaction costs that would be involved were attempts made to market it for sale.

12. Remnant Asset sales have become commonplace at the close of commercial bankruptcy cases because they allow for additional funds to be brought into the estate, while simultaneously avoiding the expense and burdens associated with reopening cases for later-discovered assets. Such sales provide a prudent way to fully and finally administer all assets of a debtor's estate.

13. The Trustee and Oak Point have negotiated the Purchase Agreement, which generally provides for a purchase price of $12,500 ("Purchase Price") for all Remnant Assets to be paid by Oak Point to the Trustee for the benefit of the Debtor's Estate. The negotiations were conducted at arm's length and in good faith. The Trustee has no connection to Oak Point, and is unaware of any relationship between Oak Point and the Debtor, the Debtor's principals, or its agents. Further, there is no evidence of bad faith or a lack of good faith.

14. In accordance with the Purchase Agreement, the Remnant Assets specifically exclude (a) cash held at the time of the Purchase Agreement in the Trustee's fiduciary bank account for the Debtor's case; provided, however, that any cash that exists in such bank account one year from the date of the closing of the Debtor's case, except as provided in sub provision (b) herein, shall be Remnant Assets; (b) any returned or undeliverable creditor claim distribution checks that require administration in accordance with 11 U.S.C. § 347(a); (c) any and all Goods[1] (e.g., office furniture) of the Debtor; (d) the books and records used by the Debtor in the ordinary course of business, but excluding any recent statements, notices or correspondence received by the Trustee relating to Remnant Assets specifically acquired in the Purchase Agreement; and (e) the Purchase Price for the Remnant Assets.

15. In the Trustee's business judgment, the Purchase Price represents a fair and reasonable

---

[1] The term "Goods" as used herein shall have the meaning ascribed to it under § 9-102(a)(44) of the Uniform Commercial Code.

sales price for the Remnant Assets and represents the highest and best offer for the sale of the Remnant Assets. Additionally, the benefit of receiving immediate payment for the Remnant Assets, which are largely unknown, outweighs the potential benefit of retaining the Remnant Assets. Finally, the Trustee believes that the cost of pursuing the Remnant Assets will likely exceed the benefit that the Estate would possibly receive.

***Outstanding, Liens, Claims, Encumbrances, and Interests***

16. The secured claims held by Citibank, N.A. were satisfied prior to the entry of the Conversion Order, pursuant to the Withdrawal of Claim filed August 31, 2015 (ECF Doc. No. 2374).

17. Other than with respect to the Tax Lien concerning the East Texas Property, the Trustee does not know of any parties which have or can assert a lien, claim, encumbrance, or interest in or to the Remnant Assets at this time.

**Bidding Procedures**

18. Contemporaneously herewith, the Trustee has filed a notice of the Motion ("Notice"), which establishes a deadline by which objections or responses to this Motion must be filed with the Court ("Response Deadline").

19. The Trustee is prepared to consummate the sale of the Remnant Assets to Oak Point pursuant to the terms set forth herein and in the Purchase Agreement. Notwithstanding, in the event a party other than Oak Point (each, a "Competing Bidder") wishes to purchase the Remnant Assets, the Trustee requests that the Court approve the Trustee's application of the overbid procedures set forth below (collectively, "Bidding Procedures"), the practicality and efficiency of which serve the best interests of the Debtor's Estate and creditors:[2]

a. Each Competing Bidder who wants to participate in the overbid process must present the Trustee with a written overbid on or before the Response Deadline set forth in the

[2] The Trustee makes this request out of an abundance of caution to protect the interests of the Debtor's Estate and its creditors. Trustees too often receive sale inquiries that merely suggest an interest in bidding but are not actual overbids, resulting in unnecessary time and expense to the estate if they must prepare for an auction and hearing all for naught. The Trustee understands that the Bidding Procedures may be considered mooted in the absence of a Competing Bidder.

Notice;

b. any Competing Bidder for the Remnant Assets must purchase the Remnant Assets under the same terms and conditions set forth in the Purchase Agreement, other than the Purchase Price;

c. a first overbid by a Competing Bidder for the Remnant Assets must be at least $2,500 more than the Purchase Price, or a total of $15,000;

d. a written overbid submitted by any Competing Bidder must be accompanied by a Cashier's Check to the Trustee in the amount of such Competing Bidder's first overbid;

e. in the event of an overbid that meets the foregoing conditions (each, a "Qualified Bid"), the Trustee shall file with the Court within three (3) business days of the Response Deadline a notice that indicates the identity of all Competing Bidders and the amount of their respective Qualified Bids;

f. thereafter, the Trustee will notify Oak Point and any Competing Bidders of the date and time by which each party may submit to the Trustee by email its respective sealed best and final bid to determine the winning bidder, the identity of which the Trustee will disclose to Oak Point and the Competing Bidders within one (1) business day;

g. regardless of the election made by the Trustee under subparagraph (f) above, the Trustee will request that the Court approve the winning bidder as the purchaser at the hearing on the Motion.[3]

**Requested Relief**

20. By this Motion, the Trustee seeks the entry of an order pursuant to 11 U.S.C. §§ 105 and 363(b), (f), and (m), as well as Bankruptcy Rule 6004, (a) authorizing the Trustee to sell the Remnant Assets free and clear of all liens, claims, interests, and encumbrances; and (b) approving the terms of the Purchase Agreement.

**Authority for Requested Relief**

21. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."

[3] In the event that Oak Point is not the winning bidder, the parties reserve the right to request a reasonable break-up fee of $1,500 to compensate Oak Point for the time and expense incurred in acting as the stalking horse bidder, ensuring the highest value to the Estate and its creditors. *See In re Samuels Jewelers, Inc.*, Case No. 18-11818 (Bankr. D. Del.), Dkt. No. 1024 (Jan. 12, 2024) (awarding break-up fee equal to 30% of the original bid to account for the time, effort, and value that the remnant asset bidder unilaterally brings at the end of bankruptcy case and noting that a typical 3% break-up fee should not apply in asset sales that deal with low value or extremely high value asset acquisitions).

11 U.S.C. § 363(b)(1). Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

22. To approve the use, sale or lease of property outside the ordinary course of business, the Court must find that such sale is supported by the sound business judgment of the debtor or trustee, as the case may be. *See In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) (requiring good faith purchasing); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp*., 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith); *In re Ionosphere Clubs, Inc*., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); and *In re Phoenix Steel Corp*., 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

23. A trustee's showing of sound business judgment, in turn, need not be unduly exhaustive; instead the trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp*., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp*., 973 F.2d 141, 144 (2d Cir. 1992).

24. The Trustee submits that the sale of the Remnant Assets pursuant to the Purchase



Case: 11-31376 Doc# 2945 Filed: 09/10/26 Entered: 09/10/26 14:39:46 Page 7 of 19

Agreement represents a prudent and proper exercise of the Trustee's business judgment under the circumstances, and is in the best interests of creditors of the Debtor's Estate. Specifically, the Purchase Agreement was negotiated at arm's length and in good faith, and the Trustee believes that the Purchase Price is reasonable and represents fair value. Indeed, the Trustee is not aware of any future assets or claims that may be liquidated, obtained or otherwise administered, and absent the sale to Oak Point, the Debtor's Estate would not realize any benefit on account of the Remnant Assets. Therefore, the Trustee respectfully requests that the Court approve the sale of the Remnant Assets to Oak Point.

25. Moreover, based on the foregoing, Oak Point should be deemed a good faith purchaser. Although the Bankruptcy Code does not define "good faith purchaser," the United States Court of Appeals for the Third Circuit construing section 363(m), has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d at 147; *see also In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); and *In re Vanguard Oil & Serv. Co.*, 88 B.R. 576, 580 (E.D.N.Y. 1988).

26. Additionally, section 363(f) of the Bankruptcy Code permits a trustee to sell assets free and clear of all interests which may be asserted against such assets, with any such interests attaching to the net proceeds of the sale, if subject to the rights and defenses of a debtor with respect thereto:

a. Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

b. Such entity consents;

c. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d. Such interest is in bona fide dispute; or

e. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when

proceeding pursuant to section 363(b), it is only necessary to meet one of the five conditions of section 363(f). To the extent that there are interests that may be asserted in the Remnant Assets, the Trustee believes that one or more of the aforementioned conditions have been satisfied. Thus, the sale of the Remnant Assets pursuant to section 363(f) should be approved.

27. Specifically, as stated above and other than with respect to the Tax Lien on the East Texas Property, the Trustee is not aware of any parties with an interest, lien, claim, or encumbrances on or to the Remnant Assets, or the proceeds thereof. Accordingly, the Trustee seeks approval of the sale of the Remnant Assets pursuant to § 363(f)(3) and/or § 363(f)(4).

28. Further, in order to comply with Bankruptcy Rule 6004, all parties required to be served with this Motion under prior Orders of this Court will be given sufficient opportunity to object to the relief requested in the Motion, and any such entity that does not object to the sale of the Remnant Assets free and clear of its lien(s), if any, should be deemed to have consented.

29. Finally, the Trustee's proposed Bidding Procedures are appropriate and should be approved by the Court provided that a Competing Bidder submits an overbid to purchase the Remnant Assets. The Bidding Procedures not only provide parties sufficient notice for participation, but also permit the Trustee to apply a fair, practical and efficient means to receive and evaluate overbids for the Remnant Assets. Courts have routinely held that when the sale of assets in bankruptcy is done on a competitive bidding basis, as is proposed herein, it is appropriate to require parties submitting competing bids to submit bids that exceed the existing bid by a specified amount. *See, e.g.*, *In re Financial News Network Inc.*, 931 F.2d 217 (2d Cir. 1991). Oak Point has expended, and will continue to expend, considerable time, money, and energy pursuing the purchase of the Remnant Assets as proposed herein, and has engaged in good faith, arm's length negotiations with the Trustee.

**<u>Waiver of Stay of Order</u>**

30. To successfully implement the Purchase Agreement, the Trustee also seeks a waiver of



Case: 11-31376 Doc# 2945 Filed: 09/10/26 Entered: 09/10/26 14:39:46 Page 9 of 19

the fourteen-day stay under Bankruptcy Rule 6004(h).

**Notice**

31. As detailed in the Notice of Service, this Motion was served in compliance with the Court's Order Limiting Notice, paragraph 3(a) (ECF Doc. No. 240) applicable in this case, which satisfies the service and notice requirements of Bankruptcy Rule 2002(a)(2), and specifically served on the Debtor, the Office of the United States Trustee, and Oak Point. The Trustee submits, and requests that this Court determine, that such notice is proper and adequate; no further notice is required; and that other and further notice be waived.

WHEREFORE, the Trustee respectfully requests entry of an order authorizing the sale of the Remnant Assets pursuant to the terms of the Purchase Agreement, waiving the fourteen-day stay under Bankruptcy Rule 6004(h), and granting such other and further relief as this Court deems just and proper.

Dated: September 10, 2026

*/s/ Stephen T. Loden*

Stephen T. Loden, Esq. (*Pro Hac Vice*)
2200 Post Oak Blvd., Suite 1000
Houston, Texas 77056
Phone: (713) 333-5100
Fax: (713) 333-5199
*sloden@diamondmccarthy.com*

*Counsel for Allan B. Diamond,*
*Chapter 7 Trustee*

***NOTICE OF SERVICE IN COMPLIANCE WITH ORDER LIMITING NOTICE (DOC. NO. 240)***

*X (CM/ECF) The document was electronically served on the parties to this action via the mandatory United States Bankruptcy Court of California CM/ECF system upon filing of above-described document on this date:*

***SEE ATTACHED SERVICE LIST***

*__ __ (ELECTRONIC MAIL SERVICE) By electronic mail (e-mail) the above listed document(s) without error to the email address(es) set forth below on this date:*

*__ __ (UNITED STATES MAIL) By causing a copy of the above-referenced documents to be deposited for mailing in the United States Mail, first class postage prepaid, to the parties listed at their last known mailing addresses, on this date:*

*__ __ (OVERNIGHT COURIER) By depositing a true and correct copy of the above referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.*

*__ __ (COURIER SERVICE) By providing true and correct copies of the above referenced documents via courier delivery, to the following on or about ________________:*

*__ __ (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those people listed on the attached service list, on the date above written.*

*/s/ Stephen T. Loden*

# EXHIBIT A

DIAMOND MCCARTHY LLP
Stephen T. Loden, Esq. (*Pro Hac Vice*)
2200 Post Oak Blvd., Suite 1000
Houston, Texas 77056
Phone: (713) 333-5100
Fax: (713) 333-5199
*sloden@diamondmccarthy.com*

*Counsel for Allan B. Diamond, Chapter 7 Truste*

UNITED STATES BANKRUPTCY COURT
NORHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HOWREY LLP,<br><br>Debtor. | Case No.: 11-31376 DM<br>Chapter 7<br><br>**DECLARATION OF ALLAN B. DIAMOND IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION FOR AUTHORITY TO SELL CERTAIN ASSETS OF THE DEBTOR'S ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND RELATED RELIEF** |

Allan B. Diamond, makes this declaration under 28 U.S.C. § 1746, and states:

1. I am over the age of eighteen and I am competent to make this Declaration. I have personal knowledge of the facts in this matter, except where stated upon information and belief.

2. I am the chapter 7 trustee (the "Trustee") for the estate (the "Estate") of Howrey LLP ("Debtor"). I make this declaration in support of Chapter 7 Trustee's Motion for Authority to Sell Certain Assets of the Debtor's Estate Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C §§ 105 and 363 and Related Relief (the "Motion")[1] seeking entry of an order pursuant to Bankruptcy Code §§ 105 and 363, Bankruptcy Rule 6004, and Local Bankruptcy Rule 6004-1, authorizing the sale of the Remnant Assets, as defined herein, to Oak Point Partners, LLC ("Oak Point") pursuant to the terms of the Purchase Agreement, as defined herein, waiving the

[1] All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

fourteen-day stay under Bankruptcy Rule 6004(h), and granting such other and further relief as this Court deems just and proper.

3. I have read the Motion and agree with the factual statements contained therein.

4. As set forth in the Motion, subject to Court approval, I have negotiated an agreement with Oak Point to purchase the Estate's right, title, and interest in and to any remaining property of the estate, consisting of known or unknown assets or claims, which have not been previously sold, assigned, or transferred (collectively, "Remnant Assets"). A copy of the asset purchase agreement with Oak Point is annexed hereto as Exhibit 1 (the "Purchase Agreement").

5. In accordance with the Purchase Agreement, the Remnant Assets do not include (a) cash held at the time of the Purchase Agreement in my fiduciary bank account for the Debtor's case; provided, however, that any cash that exists in such bank account one year from the date of the closing of the Debtor's case, except as provided in sub provision (b) herein, shall be Remnant Assets; (b) (b) any returned or undeliverable creditor claim distribution checks that require administration in accordance with 11 U.S.C. § 347(a); (c) any and all Goods[2] (e.g., office furniture) of the Debtor; (d) the books and records used by the Debtor in the ordinary course of business, but excluding any recent statements, notices or correspondence I receive relating to Remnant Assets specifically acquired in the Purchase Agreement; and (e) the Purchase Price for the Remnant Assets.

6. Oak Point has agreed to pay $12,500 ("Purchase Price") for the Remnant Assets. I believe that the Purchase Price is reasonable, for fair value, and was negotiated at arm's length and in good faith.

7. Other than with respect to the East Texas Property (as that term is defined in the Purchase Agreement), I am unaware of any Remnant Assets. I have determined that the cost of

[2] The term "Goods" as used herein shall have the meaning ascribed to it under § 9-102(a)(44) of the Uniform Commercial Code.

pursuing any Remnant Assets would likely exceed the benefit that the Estate would possibly receive on account of such Remnant Assets.

8. In the absence of the proposed sale, the Estate likely would have derived no economic benefit from the Remnant Assets.

9. I believe that the proposed sale is in the best interest of the Estate, because the sale provides the Estate with an immediate cash payment of $12,500 for the Remnant Assets, from which the Estate likely would derive no economic benefit otherwise.

10. The proposed sale has been negotiated in good faith between the parties. I am informed and believe that Oak Point is not related to the Debtor, to my counsel, or to me.

11. Other than with respect to the Tax Lien on the East Texas Property, the Trustee does not know of any parties which have or can assert a lien, claim, encumbrance, or interest in or to the Remnant Assets at this time.

Executed on Sept. 10, 2026

ALLAN B. DIAMOND
Chapter 7 Trustee for Howrey LLP



Case: 11-31376 Doc# 2945 Filed: 09/10/26 Entered: 09/10/26 14:39:46 Page 15 of 19

# EXHIBIT 1

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement"), dated as of Sept. 10, 2026, is by and between **ALLAN B. DIAMOND, not individually, but solely as chapter 7 trustee** ("Trustee" or "Seller") **of HOWREY LLP** ("Debtor") **BANKRUPTCY ESTATE** ("Estate") and **OAK POINT PARTNERS, LLC** ("Purchaser").

## WITNESSETH:

**WHEREAS**, on or about April 11, 2011, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against the Debtor in the United States Bankruptcy Court for the Northern District of California ("Court"), assigned Case No. 11-31376; and

**WHEREAS**, on or about June 6, 2011, the Court entered an order for relief and converted the case to one under chapter 11 of the Bankruptcy Code; and

**WHEREAS**, on or about December 1, 2015, the Debtor's bankruptcy case was converted to a case under chapter 7 of the Bankruptcy Code, and on December 2, 2015, the Trustee was appointed as chapter 7 trustee of the Debtor's Estate; and

**WHEREAS**, at the time of the execution of this Agreement and continuing into the future, there may be property of the Estate remaining, consisting of known or unknown assets or claims which have not been previously sold, assigned, or transferred (collectively, "Remnant Assets");

**WHEREAS**, Remnant Assets specifically **include** any remaining real property of the Estate, including that certain parcel located in the State of Texas, generally described as follows: Account # R78495 CPC: 8062-002-0241 – Sherwood Forest #2, Block 2, Lot 24 The E 60' Acres .2163 (the "East Texas Property"), which the Trustee confirmed was transferred to Debtor prior to the commencement of Debtor's bankruptcy case, in lieu of fees for legal services provided, and remains subject to a lien of local taxing authorities for delinquent property taxes in the amount of approximately $232.27 (the "Tax Lien"); and

**WHEREAS**, Remnant Assets specifically **exclude**: (a) cash held at the time of this Agreement in the Seller's fiduciary bank account for the Debtor's case; provided, however, that any cash that exists in such bank account one year from the date of the closing of the Debtor's case, except as provided in sub provision (b) herein, shall be Remnant Assets; (b) any returned or undeliverable creditor claim distribution checks that require administration in accordance with 11 U.S.C. § 347(a); (c) any and all Goods[1] (e.g., office furniture) of the Debtor; (d) the books and records used by the Debtor in the ordinary course of business, but excluding any recent statements, notices or correspondence received by the Seller relating to Remnant Assets specifically acquired in this Agreement; and (e) the Purchase Price (as hereinafter defined) to be delivered pursuant hereto; and

**WHEREAS**, subject to Court approval, Seller has the power and authority to sell and assign all right, title and interest in and to the Remnant Assets to Purchaser, including, but not limited to the proceeds thereof.

**NOW THEREFORE**, in consideration of the promises and mutual undertakings herein contained,

---

[1] The term "Goods" as used herein shall have the meaning ascribed to it under § 9-102(a)(44) of the Uniform Commercial Code.

Seller and Purchaser agree as follows:

1. **Purchase Price.** The Purchase Price shall be good funds in the amount of Twelve Thousand Five Hundred and No/100 Dollars ($12,500.00) payable within 3 business days of receipt by Purchaser of this executed Agreement and the entry of a non-appealable Order of the Court approving this Agreement.

2. **Assignment of Remnant Assets.** Seller hereby irrevocably and unconditionally sells, assigns, transfers and conveys to Purchaser all of Seller's right, title and interest under, in and to the Remnant Assets, as well as any and all claims and rights related to the Remnant Assets, including, without limitation, all cash, securities, instruments and other property that may be paid or issued in conjunction with the Remnant Assets and all amounts, interest, and costs due under the Remnant Assets.

3. **Authority to Sell.** Subject to Court approval, the sale of the Remnant Assets by Seller is made pursuant to the authority vested in Seller.

4. **Payments Received on Remnant Assets.** Seller further agrees that any payments received by Seller on account of any Remnant Assets shall constitute property of Purchaser to which Purchaser has an absolute right, and that Seller will promptly deliver such payment to Purchaser at Purchaser's address set forth below. Seller agrees to use reasonable efforts to forward to Purchaser notices received with respect to any Remnant Assets.

5. **Seller's Representations and Warranties.** In consideration of Purchaser's agreements herein and to induce Purchaser to enter into this Agreement, Seller represents and warrants to Purchaser that Seller has full lawful right, title, power and authority to enter into this Agreement and to convey Seller's interest to Purchaser in the Remnant Assets as is set forth in this Agreement.

**EXCEPT AS SPECIFICALLY SET FORTH HEREIN, SELLER SELLS, ASSIGNS, AND TRANSFERS THE REMNANT ASSETS TO PURCHASER "AS IS, WHERE IS" WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, WHETHER EXPRESS, IMPLIED OR IMPOSED BY LAW.**

6. **Free and Clear Sale.** Other than with respect to the Tax Lien on the East Texas Property, the sale of Remnant Assets shall be free and clear of any liens, claims, or encumbrances pursuant to 11 U.S.C. § 363(f).

7. **No Assumption of Liabilities.** Notwithstanding any other provision of this Agreement, and other than with respect to the Tax Lien on the East Texas Property, the parties agree that Purchaser is acquiring only the Remnant Assets and rights and interests related thereto, and that Purchaser is not acquiring or assuming, nor shall it be deemed to have acquired or assumed, any liabilities or obligations, including lien obligations, of Seller or its affiliates of any kind or nature, whatsoever, whether known or unknown, existent or future, arising out of, or in connection with, the Remnant Assets, except as may otherwise expressly be provided herein.

8. **Documents of Assignment.** From time to time upon request from Purchaser, Seller shall execute and deliver to Purchaser such documents reasonably requested by Purchaser to evidence and effectuate the transfer contemplated by this Agreement in a form reasonably acceptable to the parties hereto. However, Purchaser shall reimburse Seller for its reasonable costs associated with such compliance.

9. **Limited Power of Attorney.** Solely with respect to the Remnant Assets, and to the extent permitted by law, Seller hereby irrevocably appoints Purchaser as its true and lawful attorney and authorizes Purchaser to act in Seller's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Remnant Assets herein assigned. Seller grants unto Purchaser full authority to do all things necessary to enforce the transfer of the Remnant Assets



Case: 11-31376 Doc# 2945 Filed: 09/10/26 Entered: 09/10/26 14:39:46 Page 18 of 19

to Purchaser and its rights thereunder pursuant to this Agreement.

10. **Entire Agreement.** This Agreement embodies the entire agreement and understanding between Seller and Purchaser and supersedes any and all prior agreements and understandings with respect to the subject matter hereof. This Agreement may not be amended or in any manner modified unless such amendment or modification is in writing and signed by both parties.

11. **Benefits and Binding Effect.** All provisions contained in this Agreement or any document referred to herein or relating hereto shall inure to the benefit of and shall be binding upon the respective successors and assigns of Seller and Purchaser.

12. **Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of California, without giving effect to choice of law principles of the State of California.

13. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument, and copies or facsimiles of execution signatures shall be equivalent to original signatures.

**THIS AGREEMENT** has been duly executed as of the day and year first above written.

**OAK POINT PARTNERS, LLC**

By: ______________________
Name: PAUL J. STANDFIELD
Its: Chief Financial Officer

Address *(for regular mail and mail forwarding)*: PO Box 1033, Northbrook, IL 60065-1033
Address *(for overnight delivery)*: 5215 Old Orchard Road, Suite 1000, Skokie, IL 60077
Tel (847) 483-8000 Fax (847) 655-2746

**HOWREY LLP BANKRUPTCY ESTATE**

By: ______________________ Chapter 7 Trustee
Name: ALLAN B. DIAMOND
Its: Chapter 7 Trustee

Address: 2200 Post Oak Blvd, Suite 1000, Houston, TX 77056